STUART F. DELERY
Principal Deputy Assistant Attorney General
MELINDA HAAG
United States Attorney
ELIZABETH J. SHAPIRO
Deputy Branch Director
STEVEN Y. BRESSLER D.C. Bar No. 482492
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch

  P.O. Box 883
  Washington, D.C.  20044
  Telephone:  (202) 305-0167
  Facsimile:  (202) 616-8470
  Email: Steven.Bressler@usdoj.gov

Attorneys for the United States Department of Justice

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>JUSTICE, )<br>)<br>Defendant. )<br>———————————————————— ) | Case No. 4:11-cv-05221-YGR<br><br>Date:  February 19, 2013<br>Time:  2:00 p.m.<br>Place:  Oakland U.S. Courthouse<br>Judge:  Hon. Yvonne Gonzalez Rogers<br><br>**NOTICE OF MOTION AND MOTION<br>FOR SUMMARY JUDGMENT AND<br>MEMORANDUM IN SUPPORT** |

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................................................. 1

MOTION FOR SUMMARY JUDGMENT .......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES
PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 2

      A. Section 215 of the USA Patriot Act ......................................................................... 2

      B. Plaintiff's FOIA Request and This Civil Action ...................................................... 3

ARGUMENT ........................................................................................................................ 6

  I.     FOIA Requires the Disclosure Only of Non-Exempt
        Records, and This Court Lacks Jurisdiction to Compel
        the Disclosure of Exempt Records ............................................................................ 6

  II.    The Defendants Have Properly Withheld Records that Are
        Exempt from Disclosure under FOIA ....................................................................... 8

      A. The Defendants Have Properly Withheld Records under
         FOIA Exemption 1 .................................................................................................... 8

      B. The Defendants Have Properly Withheld Records under
         FOIA Exemption 3 .................................................................................................. 10

      C. The Defendants Have Properly Withheld Privileged
         Materials under FOIA Exemption 5 ....................................................................... 12

          1.  The Government Has Properly Withheld
             Deliberative Materials ................................................................................... 13

          2.  The Government Has Properly Withheld
             Attorney-Client Communications ................................................................. 16

      D. The FBI Has Properly Withheld Documents Subject
         to Exemption 7(E) ................................................................................................... 17

      E. Defendants Have Produced All Reasonably Segregable
         Portions of Responsive Records ............................................................................. 19

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*ACLU Found. v. Dep't of Justice*,
    833 F. Supp. 399 (S.D.N.Y. 1993) ..................................................................................19

*ACLU v. Dep't of Defense*,
    628 F.3d 612 (D.C. Cir. 2011) ......................................................................................11

*Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*,
    830 F.2d 331 (D.C. Cir. 1987) ........................................................................................7

*Assembly of State of Cal. v. Dep't of Commerce*,
    968 F.2d 916 (9th Cir. 1992) ...................................................................................13, 14

*Balridge v. Shapiro*,
    455 U.S. 345 (1982) ......................................................................................................10

*Barmes v. IRS*,
    60 F. Supp. 2d 896 (S.D. Ind. 1998) .............................................................................16

*Berman v. CIA*,
    501 F.3d 1136 (9th Cir. 2007) ........................................................................................9

*Binion v. Dep't of Justice*,
    695 F.2d 1189 (9th Cir. 1983) ......................................................................................18

*Brinton v. Dep't of State*,
    636 F.2d 600 (D.C. Cir. 1980) ......................................................................................15

*CIA v. Sims*,
    471 U.S. 159 (1985) ...................................................................................................6, 12

*Carter v. United States Dep't of Commerce*,
    307 F.3d 1084 (9th Cir. 2002) ................................................................................12, 14

*Church of Scientology v. Dep't of Army*,
    611 F.2d 738 (9th Cir. 1979) ........................................................................................18

*City of Va. Beach v. Dep't of Commerce*,
    995 F.2d 1247 (4th Cir. 1993) ......................................................................................16

*Coastal Delivery Corp. v. U.S. Customs Serv.*,
    272 F. Supp. 2d 958 (C.D. Cal. 2003) ...........................................................................7

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ......................................................................14, 16

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
331 F.3d, 918 (D.C. Cir. 2003) ...........................................................................7

*Dep''t of Air Force v. Rose*,
425 U.S. 352 (1976) ..............................................................................................6

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ...............................................................................................14

*Dow Jones & Co. v. Dep't of Justice*,
917 F.2d 571 (D.C. Cir. 1990) ...........................................................................13

*Essential Info., Inc. v. U.S. Info. Agency*,
134 F.3d 1165 (D.C. Cir. 1998) .........................................................................10

*FTC v. Warner Communications, Inc.*,
742 F.2d 1156 (9th Cir. 1984) ...........................................................................14

*Fisher v. Dep't of Justice*,
772 F. Supp. 7 (D.D.C. 1991) ............................................................................19

*Fitzgibbon v. CIA*,
911 F.2d 755 (D.C. Cir. 1990) ...........................................................................10

*Frugone v. CIA*,
169 F.3d 772 (D.C. Cir. 1999) .........................................................................7, 9

*Green v. IRS*,
556 F. Supp. 79 (N.D. Ind. 1982) ......................................................................16

*Greyshock v. U.S. Coast Guard*,
107 F.3d 16, 1997 WL 51514 (9th Cir. Feb. 6, 1997) .......................................12

*Hale v. U.S. Dep't of Justice*,
973 F.2d 894 (10th Cir. 1992) .............................................................................6

*Halperin v. CIA*,
629 F.2d 144 (D.C. Cir. 1980) .............................................................................9

*Hayden v. NSA*,
608 F.2d 1381 (D.C. Cir. 1979) .........................................................................12

*Hunt v. CIA,*
    981 F.2d 1116 (9th Cir. 1992) ......................................................................7, 9

*In re Sealed Case,*
    737 F.2d 94 (D.C. Cir. 1984) ...........................................................................17

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989)...........................................................................................6

*Keys v. Dep't of Justice,*
    830 F.2d 337 (D.C. Cir. 1987) .........................................................................18

*Klamath Siskiyou Wildlands Ctr. v. Dep't of Interior,*
    Civ. No. 07-325-CL, 2007 WL 4180685 (D. Or. Nov. 21, 2007) ....................19

*Krikorian v. Dep't of State,*
    984 F.2d 461 (D.C. Cir. 1993) .........................................................................12

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) .........................................................................11

*Lewis v. IRS,*
    823 F.2d 375 (9th Cir. 1987) ...........................................................................18

*MacPherson v. IRS,*
    803 F.2d 479 (9th Cir. 1986) ...........................................................................18

*Maricopa Audubon Soc'y v. U.S. Forest Serv.,*
    108 F.3d 1082 (9th Cir. 1997) .........................................................................14

*Maynard v. CIA,*
    986 F.2d 547 (1st Cir. 1993)............................................................................12

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) .........................................................................16

*Milner v. Dep't of Navy,*
    ---U.S.---, 131 S. Ct. 1259 (2011).............................................................17, 18

*Minier v. CIA,*
    88 F.3d 796 (9th Cir. 1996) ...............................................................6, 7, 9, 11

*Miscavige v. IRS,*
    2 F.3d 366 (11th Cir. 1993) ...............................................................................6

*Mobil Oil Corp. v. EPA*,
   879 F.2d 698 (9th Cir. 1989) ............................................................................16

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975)................................................................................12, 13, 15

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
   402 F. Supp. 2d 211 (D.D.C. 2005) .................................................................19

*New York Times v. Dep't of Justice*,
   --- F. Supp. 2d --, 11 Civ. 6990 , 11 Civ. 7562, 2012 WL 1869396
   (S.D.N.Y. May 17, 2012)...........................................................................10, 11

*New York Times Co. v. DOD*,
   499 F. Supp. 2d 501 (S.D.N.Y. 2007).............................................................11

*North Dartmouth Prop., Inc. v. Dep't of Hous. & Urban Dev.*,
   984 F. Supp. 65 (D. Mass. 1997) .....................................................................14

*PHE, Inc. v. Dep't of Justice*,
   983 F.2d 248 (D.C. Cir. 1993) .........................................................................17

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
   421 U.S. 168 (1975).........................................................................................16

*Rockwell Int'l Corp. v. Dep't of Justice*,
   235 F.3d 598 (D.C. Cir. 2001) .........................................................................15

*Rosenfeld v. United States Dep't of Justice*,
   57 F.3d 803 (9th Cir. 1995) .............................................................................18

*Russell v. Dep't of Air Force*,
   682 F.2d 1045 (D.C. Cir. 1982) .......................................................................13

*Safecard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) .........................................................................7

*Salisbury v. United States*,
   690 F.2d 966 (D.C. Cir. 1982) ...........................................................................9

*United States v. Weber Aircraft Corp.*,
   465 U.S. 792 (1984).........................................................................................13

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981).........................................................................................16

*Vaughn v. Rosen,*
    523 F.2d 1136 (D.C. Cir. 1975). ..................................................................14

*Weinberger v. Catholic Action of Hawaii,*
    454 U.S. 139 (1981) .......................................................................................8

*Wilkinson v. FBI,*
    633 F. Supp. 336 (C.D. Cal. 1986) ..............................................................18

## STATUTES, RULES AND EXECUTIVE ORDERS

Fed. R. Civ. P. 56 .................................................................................................1

5 U.S.C. § 552 ......................................................................................................1

5 U.S.C. § 552(a)(4)(B) .......................................................................................7

5 U.S.C. § 552(b)(1) .............................................................................................8

5 U.S.C. § 552(b)(3) ...........................................................................................10

5 U.S.C. § 552(b)(5) ......................................................................................3, 12

5 U.S.C. § 552(b)(7)(E) ......................................................................................17

5 U.S.C. § 552(b)(9) ...........................................................................................19

13 U.S.C. §§ 8 (2006) .........................................................................................14

13 U.S.C. § 9 (2006) ...........................................................................................14

13 U.S.C. §214 (2006) ........................................................................................14

50 U.S.C. § 403-1(i) ...........................................................................................11

50 U.S.C. § 1801 ..................................................................................................2

50 U.S.C. § 1861 ..................................................................................................3

50 U.S.C. § 1861(a)(1) .....................................................................................1, 2

50 U.S.C. § 1861(c)(2)(D) ....................................................................................3

Executive Order ("E.O.) 13,526, "Classified National Security Information,
    75 Fed. Reg. 707 (Dec. 29, 2009) ................................................................8

USA PATRIOT Act, Pub. L. 107-56, 115 Stat. 272 (2001) ............................................................2

PATRIOT Sunsets Extension Act of 2011, Pub. L. No. 112-14, 125 Stat. 216 (2011) ...............2, 3

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on February 19, 2013, at 2:00 p.m. in the United States Courthouse at Oakland, California, defendant, the United States Department of Justice, by and through undersigned counsel, will move this Court for summary judgment on all of plaintiff's claims in its Amended Complaint.

## MOTION FOR SUMMARY JUDGMENT

Defendant, the United States Department of Justice, hereby moves for summary judgment on all of the claims in plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 56 and the Freedom of Information Act, 5 U.S.C. § 552, for the reasons more fully set forth in the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiff in this Freedom of Information Act ("FOIA") case, the Electronic Frontier Foundation, seeks release of documents that describe the government's interpretation and use of its authority under Section 215 of the USA PATRIOT Act. Section 215 permits the Director of the Federal Bureau of Investigation ("FBI") to apply to the Foreign Intelligence Surveillance Court ("FISA Court") for a court order directing the production of "any tangible things" for certain authorized national security investigations. 50 U.S.C. § 1861(a)(1). The classified use of this authority is critical to countering threats to the nation. Public disclosure of the intelligence collection conducted pursuant to Section 215 would expose highly sensitive intelligence sources and methods to the United States' adversaries and, therefore, reasonably could be expected to cause serious or exceptionally grave damage to the security of the United States.

Plaintiff's initial FOIA request broadly sought virtually all documents concerning Section 215 in the files of various components of defendant, the U.S. Department of Justice. Defendant processed plaintiff's request and produced some documents to plaintiff while withholding others in part or in full. By agreement of the parties, their cross-summary judgment motions will focus on the withholding by defendant's components the FBI, National Security Division ("NSD"), and Office of Legal Counsel ("OLC") of more limited categories of documents, described further below, that generally include significant legal analysis or interpretation of Section 215. As set forth below, and in the declarations of government officials submitted herewith, the withheld documents or portions of documents over which the parties will cross-move for summary judgment are properly exempt from disclosure under FOIA. The Court should, therefore, grant summary judgment to defendant on plaintiff's FOIA claim.

## BACKGROUND

### A. Section 215 of the USA PATRIOT Act

Section 215—originally enacted on October 26, 2001 as part of USA PATRIOT Act, Pub. L. 107-56, 115 Stat. 272 (2001)—amends the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801, *et seq*. Section 215 permits the Director of the FBI to apply to the FISA Court for a court order directing the production of "any tangible things" for certain authorized national security investigations. 50 U.S.C. § 1861(a)(1). In order to issue such an order, the FISA Court must find, among other things, that there are reasonable grounds to believe that: (1) the tangible things sought are relevant to an authorized national security investigation; (2) the investigation is being conducted under guidelines approved by the Attorney General under Executive Order 12333, as amended; and (3) if a U.S. person is the subject of the investigation, the investigation is not being conducted solely on the basis of First Amendment

protected activities. *See* 50 U.S.C. § 1861. In addition, the FISA Court may only require the production of records that can be obtained with a grand jury subpoena or any other court order directing the production of records or tangible things. *See* 50 U.S.C. § 1861(c)(2)(D).

As initially enacted, Section 215 was set to expire on December 31, 2005. USA PATRIOT Act, § 224. Congress subsequently reauthorized Section 215 for limited periods of time on several occasions. *See* 50 U.S.C. § 1861 note. On May 26, 2011, Congress reauthorized Section 215 until June 1, 2015. *See* PATRIOT Sunsets Extension Act of 2011, Pub. L. No. 112-14, 125 Stat. 216 (2011).

**B. Plaintiff's FOIA Request and This Civil Action**

In letters dated June 2, 2011, plaintiff made its requests under the FOIA to DOJ components OLC, OIP, NSD, and FBI. First Am. Compl. ¶ 14, ECF No. 9, Answer to First Am. Compl. ¶ 14, ECF No. 14. Plaintiff broadly requested under the FOIA all agency records (including, but not limited to, electronic records) created from January 1, 2004 to the date of the request discussing, concerning, or reflecting the DOJ or any of its component's interpretation or use of Section 215. *See id.*

The parties subsequently agreed to narrow the scope of plaintiff's FOIA request. First, in the summer and fall of 2011, plaintiff agreed to limit its request to OLC to legal opinions or memoranda prepared by OLC concerning Section 215. *See* Am. Compl. ¶ 18, Answer ¶ 18, Declaration of Paul Colborn ¶¶ 6, 8. On October 26, 2011, plaintiff filed this lawsuit. *See* Complaint. And on November 16, 2011, OLC informed plaintiff that it had located two documents responsive to plaintiff's FOIA request which DOJ was withholding in full pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5), pursuant to the attorney-client and deliberative process privileges. *See* Answer ¶ 18, Colborn Decl. ¶ 8.

The parties agreed to further narrow the scope of plaintiff's FOIA request by stipulation filed on February 10, 2012 (ECF No. 21), and endorsed by the Court on February 16, 2012 (ECF No. 22).[1]  The parties also stipulated to a schedule for processing of plaintiff's FOIA request, as narrowed, and production of non-exempt documents.  *See* ECF Nos. 22, 25.  Pursuant to that schedule, defendant generally completed processing and production by approximately July 1, 2012.  *See, e.g.,* Hardy Decl. ¶ 26 (processing completed and documents released on June 28, 2012, with a supplemental release made on August 20, 2012), Bradley Decl. ¶ 5 (NSD released documents and responded to plaintiff's request on August 11, 2011); Colborn Decl. ¶ 8 (processing completed in November 2011).[2]

Following discussions between counsel, in their summary judgment pre-filing letters the parties memorialized their agreement to further narrow the scope of material that would be subject to summary judgment motions practice.  *See* Letter from Steven Y. Bressler to the Court dated August 22, 2012, ECF No. 32; Letter from Mark Rumold to the Court dated August 24, 2012, ECF No. 33.  Specifically, the parties agreed that summary judgment motions will deal with the government's withholding of "the following categories of documents created from January 1, 2004 to June 2, 2011 and containing significant legal analysis or interpretation of Section 215:"

---

[1]    By stipulation, the parties agreed to exclude from processing of plaintiff's FOIA request:  (1) drafts of responsive documents for which a final version is either identified and withheld, or partially released, pursuant to a valid FOIA exemption, or released in full;(2) emails concerning such drafts of documents for which a final version is either identified and withheld, or partially released, pursuant to a valid FOIA exemption, or released in full; (3) records that are purely logistical, such as emails between officials attempting to schedule a meeting; (4) acquisition applications and supporting documentation submitted to the Foreign Intelligence Surveillance Court. *See* ECF No. 22.  The parties also agreed that only one version of every responsive email need be processed and released or withheld in full pursuant to a valid FOIA exemption. *Id.*

[2]    Department of Justice component the Office of Information Policy also completed processing of plaintiff's FOIA request by July 1, 2012, pursuant to the parties' stipulation, but the documents or portions of documents withheld as exempt by OIP do not fall under the categories that the parties have agreed to litigate in cross-motions for summary judgment.  *See* Letter from Steven Y. Bressler to the Court dated August 22, 2012, ECF No. 32; Letter from Mark Rumold to the Court dated August 24, 2012, ECF No. 33.

(1) legal opinions or memoranda concerning or interpreting Section 215 of the USA Patriot Act; (2) guidelines for government personnel regarding the use of Section 215; (3) reports provided to Congress by the FBI or DOJ concerning or memorializing the Executive Branch's interpretation or use of Section 215; (4) rulings, opinions or memoranda of the FISC concerning or interpreting Section 215; and (5) legal opinions or memoranda concerning or interpreting rulings, opinions, or memoranda of the FISC interpreting Section 215. The parties [further] agreed that the following types of documents are excluded from further litigation at this time: (1) email responsive to Plaintiff's FOIA requests or the above categories from the files of NSD; (2) records that are purely logistical; (3) applications and supporting documentation submitted to the FISC; (4) the operational files of the NSD Office of Intelligence and its predecessor, the Office of Intelligence Policy and Review; and (5) records that were previously processed by the FBI in response to FOIA request numbers 1017326 (by the Electronic Privacy Information Center in 2005) and 1138791 (by EFF in 2010).

*See* ECF No. 32 at 1-2; ECF No. 33 at 2 & n.6. As described below and in the Declarations of

Mark A. Bradley and David M. Hardy filed herewith, NSD and FBI have withheld documents

that fall within those categories of information pursuant to FOIA Exemptions 1, 3, 5, and 7(E).

Plaintiff subsequently informed defendant that it wished to challenge the withholding

under FOIA Exemption 5 of only one of the two OLC memoranda located by defendant, and

defendant informed plaintiff it would seek summary judgment concerning another document

later located by NSD that mentions Section 215 only in passing and does not, therefore, qualify

as a document "containing significant legal analysis or interpretation of Section 215," but about

which defendant could provide no further information on the public record or otherwise to

plaintiff. Those two documents are addressed in the Colborn Declaration and the classified

Bradley Declaration, respectively. Plaintiff also informed defendant, through counsel, that

plaintiff does not challenge the FBI's withholding of the names and identifying information,

including telephone numbers and email addresses, of government employees pursuant to FOIA

Exemptions 6 and 7(C).

Accordingly, the United States Department of Justice now seeks summary judgment

concerning its withholding of the above-described categories of documents under the FOIA.

**ARGUMENT**

**I.    FOIA Requires the Disclosure Only of Non-Exempt Records, and This Court Lacks Jurisdiction to Compel the Disclosure of Exempt Records**

The Freedom of Information Act was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep''t of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation omitted).  However, the public's interest in government information under FOIA is not absolute – "[i]t extends only to information that sheds light upon the government's performance of its duties." *Hale v. U.S. Dep't of Justice*, 973 F.2d 894, 898 (10th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993).  "Congress recognized . . . that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166-67 (1985).

FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting *Rose*, 425 U.S. at 360-361 (1976)) (other citation omitted).  FOIA is designed to achieve a "workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *Id.* at 152 (citation omitted).

Toward that end, FOIA incorporates "nine exemptions which a government agency may invoke to protect certain documents from public disclosure." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996).  Despite the "liberal congressional purpose" of FOIA, the Supreme Court has recognized that the statutory exemptions are intended to have "meaningful reach and application." *John Doe*, 493 U.S. at 152.  "A district court only has *jurisdiction* to compel an agency to disclose *improperly withheld* agency records," *i.e.*, records that do "not fall within an exemption." *Minier*, 88 F.3d at 803 (emphasis in original).  Thus, "[r]equiring an agency to disclose exempt information is not authorized by FOIA." *Id.* (quoting *Spurlock v. FBI*, 69 F.3d 1010, 1016 (9th Cir. 1995)).

FOIA actions are generally resolved through summary judgment motions pursuant to Fed. R. Civ. P. 56.  *See Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA

cases should be handled on motions for summary judgment . . ."); *Coastal Delivery Corp. v. U.S. Customs Serv.*, 272 F. Supp. 2d 958, 962 (C.D. Cal. 2003) (same, citing *id.*).  Under FOIA, courts conduct *de novo* review to determine whether the government properly withheld records under any of the FOIA's nine statutory exemptions.  5 U.S.C. § 552(a)(4)(B).  The government bears the burden of justifying non-disclosure.  *Minier*, 88 F.3d  at 800.  "The agency may meet its burden by submitting a detailed affidavit showing that the information 'logically falls within the claimed exemptions.'"  *Id.* (quoting in part *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)).  The Court must accord a presumption of good faith to agency declarations submitted in support of claimed exemptions.  *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Moreover, courts afford deference to the agency's declarations regarding withholding in instances of national security – "a uniquely executive purview."  *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d, 918 926-27 (D.C. Cir. 2003).  Although the court still conducts *de novo* review of an agency's actions, "*de novo* review in FOIA cases is not everywhere alike."  *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).  Because "courts have little expertise in either international diplomacy or counterintelligence operations, [they] are in no position to dismiss the [agency's] facially reasonable concerns" about the harm that disclosure could cause to national security.  *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999).  As the Ninth Circuit has directed, for exemptions related to national security, "the district court [is] required to accord 'substantial weight' to [the agency's] affidavits" as long as it is not "controverted by contrary evidence in the record or by evidence of [agency] bad faith."  *Hunt*, 981 F.2d at 1119 (citation, internal quotation omitted).

The discussion below, the declarations, and *Vaughn* indexes, demonstrate that the Defendants have provided the proper bases for all of the challenged withholdings pursuant to 5 U.S.C.  § 552(b).  Because the Defendants have shown that they have properly withheld

materials that are exempt from disclosure, they are entitled to summary judgment with respect to the Plaintiff's FOIA claims.

## II.    The Defendants Have Properly Withheld Records that Are Exempt from Disclosure under FOIA

### A.    The Defendants Have Properly Withheld Records under FOIA Exemption 1

FOIA Exemption 1 protects records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to Executive order."  5 U.S.C. § 552 (b)(1); *accord, e.g.*, *Weinberger v. Catholic Action of Hawaii*, 454 U.S. 139, 144 (1981).  In other words, under Exemption 1 material that has been properly classified is exempt from disclosure. *Weinberger*, 454 U.S. at 144-45.  For information to be properly classified pursuant to Exemption 1, it must meet the requirements of Executive Order ("E.O.") 13,526, "Classified National Security Information," 75 Fed. Reg. 707 (Dec. 29, 2009):

(1) an original classification authority is classifying the information;
(2) the information is owned by, produced by or for, or is under the control of the United States Government;
(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

*Id.* § 1.1, 75 Fed. Reg. at 707.  The Executive Order lists three classification levels for national security information:  top secret, secret, and confidential.  *Id.* § 1.2, 75 Fed. Reg. at 707-08.  The declarant for NSD, Mark A. Bradley, and the declarant for FBI, David M. Hardy, are original classification authorities.  *See* Bradley Decl. ¶ 2; Hardy Decl. ¶ 2.

In reviewing classification determinations under Exemption 1, the courts have repeatedly stressed that "substantial weight" must be accorded agency affidavits concerning classified status of the records at issue, and that summary judgment is appropriate if the agency submits a detailed affidavit showing that the information logically falls within the exemption. *See Minier*,

88 F.3d at 800; *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) ("summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith").  Moreover, if "the agency's statements meet this standard, the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency." *Halperin*, 629 F.2d at 148; *see also Frugone*, 169 F.3d at 775 ("Mindful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns."); *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982) ("'The Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [effects] might occur as a result of public disclosure of a particular classified record.'") (quoting S. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974)).

The declarations and *Vaughn* indexes submitted herewith fully support application of Exemption 1, as they describe "the justifications for nondisclosure with reasonably specific detail," *Hunt*, 981 F.2d at 1119, and demonstrate "that the information [withheld] logically falls within the claimed exemption[]." *Id.*; *see also Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) (same); *Minier*, 88 F.3d at 800 (same).  *See* Classified Bradley Decl. & Exhibits; Hardy Decl. ¶ 71.  NSD, for example, has withheld classified information that relates to intelligence activities that, if disclosed, could be expected to cause serious or exceptionally grave damage to national security.  *See* Bradley Decl., ¶¶ 9-11; Classified Bradley Decl. & Exhibits.  One document withheld by NSD is a classified report to Congress describing a sensitive intelligence collection program conducted pursuant to Section 215.  *Id.*  In another FOIA case in which the plaintiff sought information concerning Section 215, and that report in particular, the Southern District of New York "agree[d] that the Report 'contains specific descriptions of the manner and means by which the United States Government acquires tangible things for certain authorized

investigations pursuant to Section 215'" and credited "the Government's assertion that disclosing this information could enable America's adversaries to develop means to degrade and evade the nation's foreign intelligence collection capabilities." *New York Times v. Dep't of Justice*, --- F. Supp. 2d ----, Nos. 11 Civ. 6990 (WHP), 11 Civ. 7562 (WHP), 2012 WL 1869396, *5 (S.D.N.Y. May 17, 2012) (citing a Declaration of Mark Bradley). Similarly, FBI has withheld classified information pertaining to intelligence activities, sources, and methods that, if disclosed, could be expected to cause serious damage to national security. Hardy Decl. ¶ 71. Thus, FBI has withheld information identifying a foreign national who was the target of a national security investigation, the release of which could reasonably be expected to compromise other national security investigations. *Id.* ¶ 71. NSD also has withheld classified information that relates to intelligence activities that, if disclosed, could be expected to cause serious or exceptional grave damage to national security. Bradley Decl. ¶¶ 9-11; Classified Bradley Decl. & Exhibits. Based on these declarations, the Defendants have properly withheld classified material under Exemption 1.

### B. The Defendants Have Properly Withheld Records under FOIA Exemption 3

The Defendants properly invoke Exemption 3, which applies to records that are "specifically exempted from disclosure" by other federal statutes "if that statute – establishes particular criteria for withholding t or refers to the particular types of material to be withheld." 5 U.S.C. § 552(b)(3). In promulgating FOIA, Congress included Exemption 3 to recognize the existence of collateral statutes that limit the disclosure of information held by the government, and to incorporate such statutes within FOIA's exemptions. *See Balridge v. Shapiro*, 455 U.S. 345, 352-53 (1982); *Essential Info., Inc. v. U.S. Info. Agency*, 134 F.3d 1165, 1166 (D.C. Cir. 1998). Under Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."" *Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990).

NSD's declarations support the "two-part inquiry [that] determines whether Exemption 3 applies to a given case." *Minier*, 88 F.3d at 800-01 (citing *Sims*, 471 U.S. at 167). "First, a court must determine whether there is a statute within the scope of Exemption 3. Then, it must determine whether the requested information falls within the scope of the statute." *Id.* In this case, NSD has withheld classified Congressional reporting and supporting documentation; materials submitted to, or opinions and/or orders issued by, the Foreign Intelligence Surveillance Court; internal Executive Branch communications and analysis; and guidelines and training documents concerning the use of Section 215. Bradley Decl. ¶ 8. As Mr. Bradley explains in his public declaration, and more fully in his classified declaration, many of these materials are properly withheld under Exemption 3 because their release would reveal intelligence sources and methods. And, as Mr. Bradley also explains, the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i), protects intelligence sources and methods from unauthorized disclosure. *See* Bradley Decl. ¶ 13. This statute indisputably qualifies as an Exemption 3 statute. *See ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009); *New York Times*, 2012 WL 1869396; *New York Times Co. v. DOD*, 499 F. Supp. 2d 501, 512 (S.D.N.Y. 2007).

As noted, the government has determined that disclosure of the withheld documents would reveal information pertaining to intelligence methods and activities. *See* Bradley Decl. ¶ 13. The Classified Bradley Declaration provides further information regarding the intelligence sources and methods discussed in the withheld documents. Because the specific information relating to intelligence sources and methods contained in the Classified Bradley Declaration is

itself classified, it cannot be disclosed on the public record. The information is accordingly being provided to the Court *ex parte* and *in camera*.[3]

As the Supreme Court discussed in *Sims*, it is the duty of the responsible Executive Branch officials, "not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising" intelligence sources and methods. 471 U.S. at 180. The Court observed that, in the National Security Act of 1947, Congress did not limit the scope of "intelligence sources and methods" in any way. *Id.* at 169. Rather, it "simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the [responsible agency] needs to perform its statutory duties with respect to [the relevant intelligence activities]." *Id.* at 169-170. Applying this deferential standard, the government's classified submission establishes that the documents withheld pursuant to Exemption 3 are, in fact, protected from disclosure under Exemption 3.

### C. The Defendants Have Properly Withheld Privileged Materials under FOIA Exemption 5

Defendant has withheld materials pursuant to Exemption 5, which shields from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has clarified that Exemption 5 exempts "those documents, and only those documents that are normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also Carter v. United States Dep't of*

---

[3]     *In camera, ex parte* review of classified declarations in FOIA cases is common and appropriate where a more detailed public explanation cannot be provided without revealing the very information that is sought to be protected. *See, e.g., Krikorian v. Dep't of State*, 984 F.2d 461, 464-65 (D.C. Cir. 1993); *Maynard v. CIA*, 986 F.2d 547, 557 (1st Cir. 1993); *Hayden v. NSA*, 608 F.2d 1381, 1385 (D.C. Cir. 1979); *Greyshock v. U.S. Coast Guard*, 107 F.3d 16, 1997 WL 51514 (9th Cir. Feb. 6, 1997) (unpublished) ("It is well settled that a court may examine an agency declaration *in camera* and *ex parte* when release of the declaration would disclose the very information that the agency seeks to protect." (citation omitted)).

Commerce, 307 F.3d 1084, 1088 (9th Cir. 2002). Exemption 5 thus protects from disclosure records that would be privileged in civil litigation under doctrines such as the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984); *see also Sears, Roebuck & Co.*, 421 U.S. at 132, 149, 154; *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082 (9th Cir. 1997).

### 1. The Government Has Properly Withheld Deliberative Materials

The general purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151. Courts have recognized that this privilege is an "ancient [one] . . . predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 573 (D.C. Cir. 1990) (internal quotations marks and citation omitted). Thus, agencies may invoke the privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See Sears, Roebuck & Co.*, 421 U.S. at 150-54; *Assembly of State of Cal. v. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992); *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

Documents covered by Exemption 5 include those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears, Roebuck & Co.*, 421 U.S. at 150.

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal

quotation marks and citations omitted).

   The deliberative process privilege of Exemption 5 extends to those documents that are

both "predecisional" and "deliberative." *See Carter v. U.S. Dep't of Commerce*, 307 F.3d at

1089; *Maricopa Audubon Soc'y*, 108 F.3d at 1093; *Assembly of the State of Cal.*, 968 F.2d at

920. The Ninth Circuit has "adopted the D.C. Circuit's definition of these terms." *Maricopa

Audubon Soc'y*, 108 F.3d at 1093. A document is "predecisional" if it was "generated before the

adoption of an agency policy." FTC v. Warner Communications, Inc., 742 F.2d 1156, 1161 (9th

Cir. 1984) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir.

1980)); *see also Carter*, 307 F.3d at 1089 (a pre-decisional document is one prepared in order to

assist an agency decisionmaker in arriving at his decision); s*ee also North Dartmouth Prop., Inc.

v. Dep't of Hous. & Urban Dev.*, 984 F. Supp. 65, 69 (D. Mass. 1997) (emphasizing the

importance of protecting the "ingredients" of the agency's decisionmaking process). A

document is "deliberative" if it is "a direct part of the deliberative process" in that it "makes

recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d

1136, 1143-44 (D.C. Cir. 1975). "In practice, there is some overlap" between these two terms.

*Assembly of State of Cal.*, 968 F.2d at 920.

   The government's declarations and *Vaughn* indexes demonstrate that it has properly

withheld documents that are subject to the deliberative process privilege. The documents contain

discussions pertinent to pre-decisional matters before Executive Branch agencies. For example,

OLC has withheld a legal memorandum dated January 4, 2010 prepared by OLC providing

confidential legal advice to the Department of Commerce regarding the interaction between

disclosure provisions in the Patriot Act, as amended, and prohibitions on disclosure in the Census

Act, 13 U.S.C. §§ 8, 9, 214 (2006). Colborn Decl. ¶ 13. As Mr. Colborn explains,

> [t]he Memorandum is pre-decisional because it was prepared by OLC to aid the
> Department of Commerce in considering what actions to take, consistent with the
> agency's legal obligations, with respect to the potential disclosure of census information

to federal law enforcement or national security officers. The Memorandum is deliberative because it constitutes legal advice from OLC to the Department of Commerce for use in the agency's deliberations regarding how to comply with its legal obligations regarding the confidentiality of census information.

*Id.* ¶ 15.[4] FBI has withheld a draft letter containing an individual FBI employee's proposed interpretation of Section 215 as it relates to FISA use authority, Hardy Decl. ¶ 54, and communications in which FBI officials receive and consider recommendations concerning how the FBI should use Section 215 orders, *id.* ¶ 57. *Accord* Hardy Decl. ¶¶ 61, 68, 73, 74. The defendant has properly determined that these materials are subject to the deliberative process privilege, and should be withheld as exempt from disclosure under FOIA Exemption 5. As noted, the documents are deliberative in nature, such that their disclosure would harm the agencies' deliberative processes by chilling free and frank discussions on matters of significant public policy. These documents contain opinions, recommendations, and comments that were both predecisional and deliberative. (*E.g.*, Colborn Decl., ¶¶ 13-21; Hardy Decl. ¶¶ 54, 57, 61, 68, 73, 74.) The willingness of government officials and employees to provide honest and open assessments and advice depends on the ability of federal agencies to protect those opinions from routine public oversight. *Id.*; *see also Sears, Roebuck & Co.*, 421 U.S. at 150-51 ("[T]hose who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process.") (internal quotation marks omitted). Legal advice "fits exactly within the deliberative process rationale for Exemption 5." *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980). Moreover, many of the documents that have been withheld are drafts, which inherently fall under the deliberative process privilege, because such documents, before they are finalized, necessarily concern pre-decisional and

---

[4]     As Mr. Colborn explains in his declaration, the Census Memorandum was shared with the U.S. Senate Select Committee on Intelligence in April 2011. Colborn Decl. ¶ 17 & Exhibit D. In a letter accompanying the memorandum, the Department of Justice "asked that 'the Committee maintain the confidentiality of this opinion, which provided confidential legal advice to a client and has not been released publicly.'" *Id.* Defendant does not now assert that the Census Memorandum is protected by the attorney-client privilege because the attorney-client privilege can potentially be waived by a disclosure outside the attorney-client relationship. Disclosure to a congressional committee of a document protected by the deliberative process privilege does not waive *that* privilege, however. *See, e.g.*, *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001). This is particularly true when, as here, the disclosure is accompanied by a request that the congressional committee preserve the document's confidentiality. *Id.*

deliberative information.  *See, e.g., City of Va. Beach v. Dep't of Commerce*, 995 F.2d 1247,

1253 (4th Cir. 1993); *see also Mobil Oil Corp. v. EPA*, 879 F.2d 698, 703 (9th Cir. 1989).

Where, as here, the documents were "prepared in order to assist an agency decisionmaker

in arriving at his decision," *see Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S.

168, 184 (1975), and include "recommendations, draft documents, proposals, suggestions, and

other subjective documents which reflect the personal opinions of the writer rather than the

policy of the agency," *Coastal States Gas Corp.*, 617 F.2d at 866, the agencies may protect them

under Exemption 5.

### 2. The Government Has Properly Withheld Attorney-Client Communications

FBI has withheld documents, in whole or in part, as exempt under Exemption 5 pursuant

to the attorney-client privilege.  *See* Hardy Decl. ¶¶ 64, 67, 72, 74.  The privilege is properly

invoked with respect to these documents.  The attorney-client privilege protects from disclosure

under FOIA "confidential communications between an attorney and his client relating to a legal

matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S. Dep't

of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).  The privilege encompasses both facts

divulged from a client to his attorney and opinions given by an attorney to his client based on,

and thus reflecting, those facts.  *See Barmes v. IRS*, 60 F. Supp. 2d 896, 901 (S.D. Ind. 1998).

The privilege also encompasses communications between attorneys that reflect information

supplied by their clients.  *See Green v. IRS*, 556 F. Supp. 79, 85 (N.D. Ind. 1982), *aff'd*, 734 F.2d

18 (7th Cir. 1984).  With respect to government personnel, the privilege encompasses

confidential communications with government attorneys not only by "control group" personnel

but also by lower echelon employees.  *See Upjohn Co. v. United States*, 449 U.S.383, 392-97

(1981).  A government agency "needs the . . . assurance of confidentiality so it will not be

deterred from full and frank communications with its counselors." *Coastal States Gas Corp.*,

617 F.2d at 863.  The attorney-client privilege thus protects confidential communications made

between clients and their attorneys when the communications are for the purpose of securing legal advice or services. *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).

FBI has properly withheld documents pursuant to the attorney-client privilege. The withheld documents consist of confidential communications between government attorneys and government personnel with respect to matters for which legal advice had been sought, such as whether FBI could obtain a Section 215 order from the FISA Court in a particular situation. *E.g.*, Hardy Decl. ¶¶ 70, 72. Likewise, FBI has withheld confidential legal communications between government attorneys and government personnel concerning interpretation of Section 215. Hardy Decl. ¶ 74, n.26 & accompanying text. The disclosure of these records would reveal confidential and privileged attorney-client communications, and would interfere with the client's ability to seek legal advice from government attorneys; accordingly. FBI has properly withheld these documents pursuant to the attorney-client privilege.

**D. The FBI Has Properly Withheld Documents Subject To Exemption 7(E)**

Exemption 7(E) protects from disclosure information compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions," or where it would "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Congress intended that Exemption 7(E) protect from disclosure techniques and procedures used to prevent and protect against crimes as well as techniques and procedures used to investigate crimes after they have been committed. *See, e.g., PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)). *See also Milner v. Dep't of Navy*, --- U.S. ----, 131 S. Ct. 1259, 1272-73 (2011) (Alito, J., concurring) (stating that "Particularly in recent years, terrorism prevention and national security measures have been recognized as vital to effective law enforcement efforts in our Nation[;]" also stating

that "'law enforcement purposes'" under FOIA Exemption 7 "involve more than just investigation and prosecution," and that "security measures are critical to effective law enforcement as we know it.").

To determine if Exemption 7(E) applies, the Court must determine whether the records were "compiled for law enforcement purposes" within the meaning of FOIA. *Rosenfeld v. United States Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995). To satisfy this threshold requirement, the agency need only demonstrate that it is a law enforcement agency and that the records were compiled pursuant to its authorized law enforcement duties. *See Lewis v. IRS*, 823 F.2d 375, 379 (9th Cir. 1987); *Wilkinson v. FBI*, 633 F. Supp. 336, 343 (C.D. Cal. 1986); *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979). *Accord Milner*, 131 S. Ct. at 1272 (law enforcement purposes within the meaning of Exemption 7 include national security measures). The Ninth Circuit accords special deference to law enforcement agencies in an Exemption 7 threshold determination. *Binion v. Dep't of Justice*, 695 F.2d 1189, 1194 (9th Cir. 1983). Thus, an agency with a clear law enforcement mandate need only establish a "rational nexus" between its law enforcement duties and the document for which Exemption 7 is claimed. *Id.* at 1193-1194; *Church of Scientology*, 611 F.2d at 748; *MacPherson v. IRS*, 803 F.2d 479 (9th Cir. 1986) (citing *Binion*, 695 F.2d at 1194). "The rational nexus test requires courts to accord a degree of deference to a law enforcement agency's decisions to investigate." *Rosenfeld*, 57 F.3d at 808. *See also Keys v. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987). The FBI is indisputably a law enforcement agency, and plaintiff requested only information related to Section 215, a tool used by the FBI to obtain business record information pursuant to a court order and as part of authorized national security investigations. Hardy Decl. ¶ 43. The rational nexus to "law enforcement purposes" under FOIA is clear. *See id.*; *Milner*, 131 S. Ct. at 1272. Accordingly, plaintiff's request necessitates review under Exemption 7(E).

The FBI has asserted Exemption 7(E) to protect certain confidential FBI investigative techniques and procedures used by FBI agents and support personnel in obtaining Section 215

business records orders. *See* Hardy Decl. ¶¶ 51-52. Although Mr. Hardy discusses the harm that could reasonably be expected to flow from public release of this information, *id.* ¶ 52, such techniques and procedures are categorically protected by the Exemption, without any need for inquiry into the harm that would result from their disclosure. *Fisher v. Dep't of Justice*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992) (unpublished table decision). *See also ACLU Found. v. Dep't of Justice*, 833 F. Supp. 399, 407 (S.D.N.Y. 1993).

Accordingly, the Court should grant summary judgment for the FBI as to its Exemption 7(E) withholdings.

### E. Defendants Have Produced All Reasonably Segregable Portions of Responsive Records

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9). This provision does not require disclosure of records in which the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information exists because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words."); *see also Klamath Siskiyou Wildlands Ctr. v. Dep't of Interior*, Civ. No. 07-325-CL, 2007 WL 4180685, at *8 (D. Or. Nov. 21, 2007) ("In cases where nonexempt material is inextricably intertwined with exempt material and the deletion of the exempt material would leave only meaningless words and phrases, the entire document is exempt."). The defendant has reviewed the withheld material and have disclosed all non-exempt information that reasonably could be disclosed. *See* Bradley Decl. ¶ 12, Colborn Decl. ¶ 15; Hardy Decl. ¶ 78. Accordingly, the Department of Justice has produced all "reasonably segregable portion[s]" of the responsive records. 5 U.S.C. § 552(b).

**CONCLUSION**

For all of the foregoing reasons, the Court should grant defendant's Motion for Summary Judgment and enter judgment for the Department of Justice.

Dated: November 16, 2012

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

MELINDA HAAG
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

  /s/ Steven Y. Bressler
STEVEN Y. BRESSLER D.C. Bar #482492
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:     (202) 305-0167
Facsimile:     (202) 616-8470
Steven.Bressler@usdoj.gov

Counsel for the U.S. Department of Justice