# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>     Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>     Defendant. | Case No. 4:11-cv-05221-YGR |

## DECLARATION OF PAUL P. COLBORN

I, Paul P. Colborn, declare as follows:

1.      I am a Special Counsel in the Office of Legal Counsel ("OLC") of the United States Department of Justice (the "Department") and a career member of the Senior Executive Service.  I joined OLC in 1986, and since 1987 I have had the responsibility, among other things, of supervising OLC's responses to requests it receives under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  I submit this declaration in support of the Government's Motion for Summary Judgment.  These statements are based on my personal knowledge, on information provided to me by OLC attorneys and staff working under my direction, and on information provided to me by others within the Executive Branch of the Government.

## OLC'S RESPONSIBILITIES

2.      The principal function of OLC is to assist the Attorney General in his role as legal adviser to the President of the United States and to departments and agencies of the Executive Branch.  OLC provides advice and prepares opinions addressing a wide range of legal questions

involving the operations of the Executive Branch. OLC does not purport to make policy decisions, and in fact lacks authority to make such decisions. OLC's legal advice and analysis may inform the decision-making of Executive Branch officials on matters of policy, but OLC's legal advice does not dictate the policy choice to be made.

3.    Although OLC publishes some opinions and makes discretionary releases of others, OLC legal advice is generally kept confidential. One important reason OLC legal advice often needs to stay confidential is that it is part of a larger deliberative process—a process that itself requires confidentiality to be effective. The Supreme Court long ago recognized that "efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'" *Envtl. Protection Agency v. Mink*, 410 U.S. 73, 87 (1973) (quoting S. Rep. No. 89-813, at 9 (1965)). If government agencies and OLC had to conduct deliberations with knowledge that their deliberations would be open to public view, such discussions would naturally be chilled or inhibited, and the effectiveness and efficiency of government policy making would suffer as a result.

4.    These deliberative confidentiality concerns apply with particular force to OLC advice because of OLC's role in the decision-making process: OLC is often asked to provide advice and analysis with respect to very difficult and unsettled issues of law in connection with ongoing Executive Branch deliberations. Frequently, such issues arise in connection with highly complex and sensitive activities of the Executive Branch. So that Executive Branch officials may continue to request, receive, and rely on candid legal advice from OLC on such sensitive matters in connection with their internal deliberations, it is essential that OLC legal advice

provided in the context of such deliberations not be inhibited by concerns about public disclosure.

### PLAINTIFF'S FOIA REQUEST

5. On June 3, 2011, OLC received a FOIA request dated June 2, 2011 from Mark Rumold on behalf of the Electronic Frontier Foundation ("EFF"). *See* Exhibit A, attached hereto (without attachments to the FOIA request). The request sought agency records created from January 1, 2004 to the present "discussing, concerning, or reflecting the DOJ or any of its component's interpretation or use" of orders issued pursuant to Section 215 of the Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("Patriot Act"),[1] and included a list of eight categories of documents.

6. On June 27, 2011, a lawyer then working in OLC had a telephone conversation with Mark Rumold of EFF. In that conversation, Mr. Rumold agreed to narrow EFF's request to OLC opinions and legal memoranda concerning Section 215 of the Patriot Act.

7. On October 26, 2011, EFF filed this lawsuit.

8. By letter dated November 16, 2011, I responded to EFF's FOIA request on behalf of OLC. The letter confirmed that EFF had agreed to narrow its request to OLC opinions and legal memoranda concerning Section 215 of the Patriot Act. The letter also informed EFF that OLC had searched its files and found two documents responsive to the request, which OLC was withholding pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5), on the grounds that the documents were protected by the deliberative process and attorney-client privileges. *See*

---

[1] Section 215 of the Patriot Act, Pub. L. No. 107-56 (2001), codified as amended at 50 U.S.C. §1861-1862, amended the Foreign Intelligence Surveillance Act of 1978 to authorize the Director of the Federal Bureau of Investigation, or a designee, to apply for an order requiring the production of "any tangible things" for an investigation to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism or clandestine intelligence activities.

Exhibit B, attached hereto.  In paragraph 9 of the Stipulation and [Proposed] Order Regarding Processing of FOIA Requests (Doc. 22; filed Feb. 16, 2012), the parties confirmed that OLC need only process and release, or withhold pursuant to a valid FOIA exemption, "OLC legal opinions and memoranda concerning or interpreting Section 215."

9.       On March 8, 2012, the Office of Information Policy ("OIP"), which was processing the same FOIA request from EFF for the Department's senior management offices, referred one document to OLC for direct response to EFF.  By letter dated March 15, 2012, on behalf of OLC, I informed Mr. Rumold of EFF that the document referred by OIP to our office for processing was the same document as one of the two documents OLC had withheld in its November 16, 2011 response, and that OLC continued to withhold that document pursuant to Exemption Five.  *See* Exhibit C, attached hereto.

## OLC'S SEARCH

10.      OLC's final work product, such as the opinions or legal memoranda that EFF requested here, is stored principally in two locations, depending on whether the final work product is classified or unclassified.  First, OLC's final unclassified work product is stored electronically in a shared central storage system that consists of documents in their original file format (e.g., Microsoft Office, WordPerfect, PDF) collected in folders, which are organized by date, on a shared network drive on the Department of Justice electronic file server.  While OLC maintains physical files containing its final unclassified work product, it is OLC's practice to save all final unclassified work product to its electronic central storage system; accordingly, if OLC has provided any unclassified written advice or has memorialized any unclassified oral advice in writing, that advice should be accessible and searchable through this system.  OLC uses a sophisticated search engine, called Isys Search Software ("Isys"), to perform keyword

searches of this collection of final work product files. Isys searches the full text of documents (including PDF files) within this collection of final work product, as opposed to searching only document titles or e-mail subject lines.

11.     Second, OLC may have classified substantive records that could be responsive to a FOIA request. Paper files containing classified documents must be stored either in individual safes or in OLC's Sensitive Compartmented Information Facility ("SCIF"). In its SCIF OLC maintains a file of classified legal memoranda and opinions that is not part of any individual custodian's files but rather is intended to serve as part of the Office's records regarding final classified legal advice that has been provided by OLC. It is OLC's practice to include copies of any classified legal memoranda and opinions in this file; accordingly, any such memoranda or opinion should be located in this file.

12.     In this instance, an OLC attorney initiated a search for OLC opinions and legal memoranda concerning Section 215 of the Patriot Act with the assistance of an OLC paralegal. First, the OLC paralegal conducted a search for unclassified opinions and legal memoranda on OLC's central storage system using Isys to perform a keyword search for responsive records. As indicated above, OLC identified two documents responsive to that request, which OLC withheld pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5). Second, the OLC attorney asked two Deputy Assistant Attorneys General of OLC who are primarily responsible for national security matters whether OLC had rendered any classified opinions or legal memoranda concerning Section 215. These senior OLC officials indicated to the OLC attorney that they did not recall any OLC legal opinions or memoranda concerning the interpretation or use of section 215.[2]

---

[2] In processing EFF's FOIA request, the National Security Division ("NSD") of the Department of Justice identified one additional, classified document (containing a passing reference to 50 U.S.C. § 1861) that OLC had not located in its search. I understand that, after consultation with OLC, NSD has withheld that document pursuant to FOIA Exemptions One and

**DOCUMENT PROTECTED UNDER EXEMPTION FIVE**

13.    EFF seeks one of the two unclassified documents withheld by OLC under Exemption Five.  That document is a legal memorandum dated January 4, 2010 prepared by OLC providing confidential legal advice to the Department of Commerce regarding the interaction between disclosure provisions in the Patriot Act, as amended, and prohibitions on disclosure in the Census Act, 13 U.S.C. §§ 8, 9, 214 (2006) ("Census Memorandum").  The memorandum does not describe or analyze the application of section 215 in the context of any particular national security investigation or program.  The Census Memorandum is also the document referred by OIP to OLC.

14.    FOIA's Exemption Five exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption Five incorporates the traditional privileges that the government may assert in civil litigation against a private litigant and exempts from FOIA's reach documents covered by such privileges.  Exemption Five applies to the Census Memorandum because the document is protected by the deliberative process privilege.

15.    The Census Memorandum is protected by the deliberative process privilege because the Memorandum is pre-decisional and provided legal advice as part of an Executive Branch deliberative process.  The Memorandum is pre-decisional because it was prepared by OLC to aid the Department of Commerce in considering what actions to take, consistent with the agency's legal obligations, with respect to the potential disclosure of census information to federal law enforcement or national security officers.  The Memorandum is deliberative because

Three, 5 U.S.C. § 552(b)(1) & (3).  I understand that NSD will address the bases for withholding that document in the classified Declaration of Mark Bradley.

it constitutes legal advice from OLC to the Department of Commerce for use in the agency's deliberations regarding how to comply with its legal obligations regarding the confidentiality of census information.  The Census Memorandum contains no non-privileged, segregable information that can be released.

16.     Compelled disclosure of the Census Memorandum would harm the deliberative processes of the Executive Branch.  Attorneys at OLC are often asked to provide advice and analysis with respect to very difficult and unsettled questions of law.  It is essential to the proper functioning of the Executive Branch that OLC's legal advice not be inhibited by concerns about the risk of public disclosure.  Protecting the confidentiality of OLC's memoranda conveying legal advice provided in the context of Executive Branch deliberations is essential both to ensure that creative and sometimes controversial legal arguments and theories may be examined candidly, effectively, and in writing, and to ensure that the President, his advisers, and other Executive Branch officials continue to request and rely on frank legal advice from OLC on sensitive matters.

17.     To the best of my knowledge, the Census Memorandum has not been made public, and it has been disclosed only within the federal government for legitimate government purposes.  In April 2011, the Department shared the Memorandum in confidence with the U.S. Senate Select Committee on Intelligence.  In a April 7, 2011 letter to Senators Dianne Feinstein, Chairman, and Saxby Chambliss, Vice Chairman, of the U.S. Senate Select Committee on Intelligence, Ronald Weich, Assistant Attorney General for Legislative Affairs, responded to a request from committee staff for the Census Memorandum.  The letter states that the Census Memorandum was provided to the Foreign Intelligence Surveillance Court ("FISC") in connection with an application submitted by the Department in a matter that was concluded.  The

letter indicated that the Department had provided the Senate Committee with the application

(including the memorandum) and asked that "the Committee maintain the confidentiality of this

opinion, which provided confidential legal advice to a client and has not been released publicly."

*See* Exhibit D, attached hereto.

18.     Disclosure to a congressional committee of a document protected by the

deliberative process privilege does not waive that privilege.  *See, e.g.*, *Rockwell Int'l Corp. v.*

*U.S. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001).   This is particularly true when, as

here, the disclosure is accompanied by a request that the congressional committee preserve the

document's confidentiality.  *Id.*  Since the attorney-client privilege can potentially be waived by

a disclosure outside the attorney-client relationship, OLC has decided to rely in this litigation

only on the deliberative process privilege as a basis for continued withholding of the document,

and not also on the attorney-client privilege, as originally cited in OLC's November 2011

response to the FOIA request.

19.     To the best of my knowledge, the Census Memorandum has never been publicly

adopted or incorporated by reference by any policymaker as a basis for a policy decision.

20.     It is important to recognize the adverse consequences that compelled disclosure of

the Census Memorandum would inflict on Executive Branch deliberative processes.  As

discussed above, such forced disclosure would seriously undermine substantial confidentiality

interests of the Executive Branch in receiving full and frank advice from legal advisers.  If the

confidentiality of such advice is readily breached, Executive Branch officials will be reluctant to

continue to request and rely on legal advice from OLC on sensitive matters—a result that would

undermine the public's interest in an Executive Branch that strives to abide by the rule of law.

21.     In sum, I respectfully submit that the Census Memorandum is covered by the deliberative process privilege and thus may properly be withheld pursuant to FOIA Exemption Five.  The compelled disclosure of the document would harm the deliberative processes of the Executive Branch.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: November 16, 2012

PAUL P. COLBORN

# EXHIBIT A

SBT

**VIA EMAIL** — DOJ.OIP.Initial.Requests@usdoj.gov

Office of Public Affairs
c/o Carmen L. Mallon
Chief of Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001

RECEIVED

**JUN - 3 2011**

Office of Information Policy

RE:   <u>**Freedom of Information Act Request and Request for Expedited Processing**</u>

Dear FOIA Officer:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice ("DOJ") and its components on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

Since its inception, the USA PATRIOT Act (the "Patriot Act") has engendered controversy. In particular, the government's use of one provision — Section 215 — has consistently sparked concern among elected officials, civil rights advocates, and citizens. This request seeks agency records specifically related to the DOJ's interpretation and use of Section 215.

Section 215 of the Patriot Act, which amended the Foreign Intelligence Surveillance Act ("FISA"), provides federal government agencies with the power to obtain a court order for "any tangible thing" upon a showing that the requested items are "relevant to an authorized [counterintelligence or counterterrorism] investigation." 50 U.S.C. §§ 1861(a)(1), (b)(2)(A). Section 215, along with Section 206 (the "roving wiretap" provision) and the "lone wolf" provision of the Intelligence Reform and Terrorism Prevention Act of 2004, were initially schedule to sunset in 2005, but, after brief extensions, were subsequently reauthorized for four additional years.

In 2009, DOJ attorneys publicly disclosed that Section 215 orders were being used to support a "sensitive collection program."[1] Shortly after this disclosure, elected officials briefed on the government's interpretation and use of 215 orders began to question the legitimacy of the government's use of its expanded Patriot Act powers. Senator Richard Durbin, a member of the

---

[1] Testimony of Todd Hinnen, House Judiciary Committee, "Hearing on the USA Patriot Act," Septemeber 22, 2009, *available at* http://judiciary.house.gov/hearingshear_090922.html.

454 Shotwell Street • San Francisco, CA 94110 USA
☎ +1 415 436 9333     🖷 +1 415 436 9993     🌐 www.eff.org     ✉ information@eff.org

Senate Judiciary Committee, stated that the government's use of "Section 215 is unfortunately cloaked in secrecy. Some day that cloak will be lifted, and future generations will ask whether our actions today meet the test of a democratic society: transparency, accountability, and fidelity to the rule of law and our Constitution."[2]

Similarly, then-Senator Russ Feingold, a member of both the Senate Judiciary Committee and the Senate Select Committee on Intelligence, stated: "There is information about the use of Section 215 orders that I believe Congress and the American people deserve to know . . . [Section 215 orders] have been misused."[3] Despite the Senators' admonitions, Section 215 was reauthorized until 2011.

In May 2011, during the limited debate on the reauthorization of the expiring provisions of the Patriot Act, two Senators on the Senate Select Committee on Intelligence again voiced concerns about the government's use of 215 orders. In an interview, Senator Ron Wyden stated that he was "extremely interested in reforming [Section 215]."[4] Then, in a speech on the Senate floor, Senator Wyden declared:

> "I want to deliver a warning this afternoon: when the American people find out how their government has secretly interpreted the Patriot Act, they will be stunned and they will be angry . . . . The fact is that anyone can read the plain text of the Patriot Act, and yet many members of Congress have no idea how the law is being secretly interpreted by the executive branch."[5]

Senator Tom Udall echoed similar concerns about the scope of Section 215: "Congress is granting powers to the executive branch that lead to abuse, and frankly shield the Executive Branch from accountability."[6]

Senators Wyden and Udall co-sponsored an amendment to the reauthorization of the Patriot Act. The amendment would have required government officials to "not secretly reinterpret public laws and statutes in a manner that is inconsistent with the public's understanding of these laws, and [to] not describe the execution of these laws in a way that misinforms or misleads the

---

[2] Remarks of Sen. Richard Durbin, Senate Judiciary Committee "Executive Business Meeting," (October 1, 2009) *available at*
http://judiciary.senate.gov/resources/webcasts/index.cfm?changedate=09-28-09&p=all.
[3] Statement of Sen. Russ Feingold, Senate Judiciary Committee Hearing, "Reauthorizing the USA PATRIOT Act: Ensuring Liberty and Security," September 23, 2009, *available at*
http://judiciary.senate.gov/hearings/testimony.cfm?id=4062&wit_id=4083.
[4] Spencer Ackerman, *There's a Secret Patriot Act, Senator Says*, Wired (May 27, 2011), *available at* http://www.wired.com/dangerroom/2011/05/secret-patriot-act/.
[5] Statement of Sen. Ron Wyden, On Patriot Act Reauthorization (May 26, 2011), *available at*
http://wyden.senate.gov/newsroom/press/release/?id=34eddcdb-2541-42f5-8f1d-19234030d91e.
[6] Statement of Sen. Tom Udall, On Patriot Act Reauthorization (May 26, 2011), *available at*
http://markudall.senate.gov/?p=press_release&id=1090.

454 Shotwell Street • San Francisco, CA 94110 USA
☎ +1 415 436 9333   📠 +1 415 436 9993   🌐 www.eff.org   ✉ information@eff.org

public."[7] The amendment would have also required the Attorney General to publish "the legal basis for the intelligence collection activities described in [a] February 2, 2011 report [from the Attorney General and Director of National Intelligence regarding intelligence collection authorities scheduled to expire under Section 224 of the Patriot Act]." Again, over the objection of Senators briefed on the government's secret interpretation and use of Section 215, the three expiring provisions of the Patriot Act were extended until 2014.

Accordingly, EFF hereby requests agency records (including, but not limited to, electronic records) created from January 1, 2004 to the present discussing, concerning, or reflecting the DOJ or any of its component's interpretation or use of Section 215 orders, including:

1) All reports, memoranda, guidance, presentations, legal briefs, emails, or any other record describing the types of "tangible things" which the DOJ or any of its components has sought or has the authority to seek through Section 215 orders, whether "pure" or "combination" orders (i.e., a 215 order made in conjunction with a pen register/trap and trace order);

2) All reports, memoranda, guidance, presentations, legal briefs, emails, or any other record related to the use of Section 215 orders to further any "sensitive collection program," as referenced above;

3) All reports, memoranda, guidance, presentations, legal briefs, emails, or any other record relating to the scope of the DOJ or any of its component's authority under Section 215 or the legal basis for "sensitive collection programs" supported by Section 215 orders, including any briefings provided to the Senate Select Committee on Intelligence or the Senate Judiciary Committee, including the February 2, 2011 report described above;

4) All reports, memoranda, guidance, presentations, legal briefs, emails, or any other record related to modifications by the Foreign Intelligence Surveillance Court to applications for Section 215 orders submitted by the DOJ or any of its components;

5) All reports, memoranda, guidance, presentations, legal briefs, emails, or any other record related to the Foreign Intelligence Surveillance Court's refusal to grant any applications for Section 215 orders submitted by the DOJ or any of its components;

6) All reports, memoranda, guidance, presentations, legal briefs, emails, or any other record related to the DOJ or any of its component's withdrawal of any applications for Section 215 orders from the Foreign Intelligence Surveillance Court;

---

[7] Proposed amendment of S.B. 1308, *available at*
http://static1.firedoglake.com/28/files/2011/05/Wyden-Udall-Amendment.pdf.

454 Shotwell Street • San Francisco, CA 94110 USA
📞 +1 415 436 9333   📠 +1 415 436 9993   🌐 www.eff.org   ✉ information@eff.org

7) All reports, memoranda, guidance, presentation, legal briefs, emails or any other record related to the number of U.S. persons identified as subjects in Section 215 orders and the number of non-U.S. persons identified as subjects in Section 215 orders;

8) Copies of any invoices, receipts, bills, or any other similar document sent to the DOJ or any of its components by any business or organization in order to be reimbursed for the cost of compliance with a Section 215 order.

**Request for Expedited Processing**

For the reasons discussed below, a "compelling need" exists for the records sought in this request, and, as such, EFF is entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 28 C.F.R. §§ 16.5(d)(1)(ii) and (iv).

*Expedited Processing under 28 C.F.R. § 16.5(d)(1)(ii)*

EFF is entitled to expedited processing of this request because there is "an urgency to inform the public about an actual or alleged federal government activity" and EFF is "primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii).

An "urgency to inform the public" about the topic of a request exists when the request "concerns a matter of current exigency to the American public," when the consequences of delaying a response would "compromise a significant recognized interest," and when the request concerns "federal government activity." *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001).

Regarding the first prong of the *Al-Fayed* standard, a FOIA request "concerns a matter of current exigency" when there has been widespread media coverage of the topic of the request. *See Al-Fayed*, 254 F.3d at 311 (noting the first prong is satisfied when "there is substantial interest, either on the part of the American public or the media" in the subject of the request); *see also ACLU v. Dep't of Def.*, 2006 U.S. Dist. LEXIS 36888 at *7 (N.D. Cal. 2006) ("[E]xtensive media interest usually is a fact supporting. . . urgency in the processing of FOIA requests."); *Gerstein v. CIA*, 2006 U.S. Dist. LEXIS 89847, *18 (N.D. Cal. 2006) (citing *ACLU*).

The information sought by EFF's request has generated substantial media interest — both about the reauthorization of the Patriot Act generally, and about the federal government's use of Section 215 specifically. The reauthorization of the Patriot Act received coverage from essentially every major media outlet in the United States. *See, e.g.*, Charlie Savage, *Deal Reached on Extension of Patriot Act*, N.Y. Times at A16 (May 20, 2011);[8] Lisa Mascaro, *Patriot Act Provisions Extended Just in Time*, L.A. Times (May 27, 2011);[9] Tom Cohen, *Obama*

---

[8] *Available at* https://www.nytimes.com/2011/05/20/us/20patriot.html?scp=2&sq=patriot%20act&st=cse.
[9] *Available at* http://articles.latimes.com/2011/may/27/nation/la-na-patriot-act-20110527.

454 Shotwell Street • San Francisco, CA 94110 USA
☎ +1 415 436 9333   🖷 +1 415 436 9993   🌐 www.eff.org   ✉ information@eff.org

*Approves Extension of Expiring Patriot Act Provisions,* CNN (May 27, 2011);[10] *Obama Signs Last-Minute Patriot Act Extension,* FoxNews (May 27, 2011).[11] A Google News search of articles containing "Patriot Act" from the past week yields over 2,800 results. *See* screenshot of Google News results (attached).

Furthermore, there has been considerable media scrutiny of the specific topic of this request — namely, the legality and legitimacy of the federal government's interpretation and implementation of Section 215. *See, e.g.,* Charlie Savage, *Senators Say Patriot Act is Being Misinterpreted,* N.Y. Times at A17 (May 27, 2011);[12] Stephen Spencer Davis, *Obama Signs Patriot Act Extension: But not Before 2 Democratic Senators Hint that Justice Department is Abusing Law,* Slate (May 27, 2011);[13] Spencer Ackerman, *There's a Secret Patriot Act, Senator Says,* Wired (May 27, 2011);[14] Jacob Sullum, *Renewed Patriot Act Treads on Our Liberty,* Chicago Sun-Times (June 1, 2011);[15] Declan McCullagh, *Patriot Act Renewed Despite Warnings of 'Secret' Law,* CNET News (May 28, 2011);[16] Joan McCarter, *Udall, Wyden Warn of Government Overreach in PATRIOT Act, Administration's 'Secret' Law,* Daily Kos (May 31, 2011);[17] John Tomasic, *Udall Warns of Government Overreach in Light of Vote Against Patriot Act,* Washington Independent (May 27, 2011);[18] E.D. Kain, *The Secret PATRIOT Act and the End of Limited Government in America,* Forbes (May 26, 2011);[19] *4 Senators Win Promise of a Patriot Act Hearing,* AP, (May 26, 2011);[20] *'Secret' Legal Interpretation of Patriot Act Provisions Troubles 2 Senators,* AP (May 26, 2011);[21] Mark Benjamin, *Democrats Describe Secret Justice Department Spying Opinion,* Time (May 27, 2011);[22] Steven Aftergood, *Sen. Wyden Decries 'Secret Law' on PATRIOT Act,* Secrecy News (May 25, 2011).[23]

---

[10] *Available at* http://www.cnn.com/2011/POLITICS/05/27/congress.patriot.act/index.html.

[11] *Available at* http://www.foxnews.com/politics/2011/05/27/senate-clearing-way-extend-patriot-act/.

[12] *Available at*
https://www.nytimes.com/2011/05/27/us/27patriot.html?scp=3&sq=patriot%20act&st=cse

[13] *Available at*
http://slatest.slate.com/posts/2011/05/27/patriot_act_extension_obama_signs_law_despite_claims_that_the_ju.html.

[14] *Available at* http://www.wired.com/dangerroom/2011/05/secret-patriot-act/.

[15] *Available at* http://www.suntimes.com/news/otherviews/5716014-417/renewed-patriot-act-treads-on-our-liberty.html.

[16] *Available at* http://news.cnet.com/8301-31921_3-20067005-281.html.

[17] *Available at* http://www.dailykos.com/story/2011/05/31/980839/-Udall,-Wyden-warn-of-government-overreach-in-PATRIOT-Act,-administrations-secretlaw-.

[18] *Available at* http://washingtonindependent.com/110229/udall-warns-of-government-overreach-in-light-of-vote-against-patriot-act.

[19] *Available at* http://blogs.forbes.com/erikkain/2011/05/26/the-secret-patriot-act-and-the-end-of-limited-government-in-america/.

[20] *Available at* http://www.miamiherald.com/2011/05/26/2237067/2-senators-win-promise-of-patriot.html.

[21] *Available at*

454 Shotwell Street • San Francisco, CA 94110 USA
☎ +1 415 436 9333   📠 +1 415 436 9993   🌐 www.eff.org   ✉ information@eff.org

As demonstrated by the considerable media interest in both Patriot Act reauthorization broadly and the government's interpretation and use of Section 215 specifically, this request concerns a "matter of current exigency" to the American public. *See Al-Fayed*, 254 F.3d at 310-11.

Regarding the second prong of the *Al-Fayed* standard, threats to citizens' civil liberties and privacy constitute a "significant recognized interest" that can be compromised by a delayed response to a FOIA request. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 (D.D.C. 2003); *Al-Fayed*, 254 F.3d 310. The statements of Senators Durbin, Feingold, Udall, and Wyden all raise serious and legitimate concerns about the threats posed to citizens' civil liberties by an expansive and, potentially, illegitimate interpretation of Section 215 by the federal government. *See supra* pgs 1 - 2. Any questionable use of Section 215 threatens "important individual liberties and privacy concerns which are of immediate public interest." *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 (D.D.C. 2003).

Third, there can be no question that the information sought in this request — records related to the federal government's use and interpretation of Section 215 — concern an actual federal government activity. 28 C.F.R. § 16.5(d)(1)(ii). DOJ officials have repeatedly confirmed that Section 215 is used by the DOJ and its components for a variety of purposes, including relied to further "sensitive collection programs." *See, e.g.,* Testimony of Todd Hinnen, House Judiciary Committee, "Hearing on the USA Patriot Act," Septemeber 22, 2009.[24]

Finally, as explained below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information" under 28 C.F.R. § 16.5(d)(1)(ii). Indeed, the FBI and other DOJ components have granted previous EFF requests for expedited processing under 28 C.F.R. § 16.5(d)(1)(ii) and have thus acknowledged that the organization is "primarily engaged in disseminating information." *See* Letter to David Sobel of EFF, dated October 21, 2009 (attached). Consequently, EFF is entitled to expedited processing of this request under 28 C.F.R. § 16.5(d)(1)(ii).

*Expedited Processing under 28 C.F.R.§ 16.5(d)(1)(iv)*

EFF is also entitled to expedited processing under 28 C.F.R. § 16.5(d)(1)(iv) because the subject of the request concerns "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

As demonstrated above, the federal government's interpretation and use of Section 215 is unquestionably the subject of widespread and exceptional media interest. *See* Expedited

http://www.washingtonpost.com/politics/secret-legal-interpretation-of-patriot-act-provisions-troubles-2-senators/2011/05/26/AG7ffiCH_story.html;
[22] *Available at* http://battleland.blogs.time.com/2011/05/27/democrats-describe-secret-justice-department-spying-opinion/.
[23] *Available at* http://www.fas.org/blog/secrecy/2011/05/wyden_secret_law.html.
[24] *Available at* http://judiciary.house.gov/hearingshear_090922.html.

454 Shotwell Street • San Francisco, CA 94110 USA
☎ +1 415 436 9333      📠 +1 415 436 9993      🌐 www.eff.org      ✉ information@eff.org

Processing under 28 C.F.R. § 16.5(d)(1)(ii), *supra* pg 5; *see also Edmonds v. FBI,* 2002 US Dist. LEXIS 26578, *10 (D.D.C. 2002) (noting "extensive media coverage" satisfied by "numerous newspaper articles in the printed press . . . and on TV"), *rev'd on other grounds* 417 F.3d 1319 (D.C. Cir 2005); *ACLU v. Dep't of Justice,* 321 F. Supp. 2d 24, 31 (D.D.C. 2004) (holding "widespread and exceptional media interest" existed under 28 C.F.R. § 16.5(d)(1)(iv) in request for records related to the FBI's use of Section 215).

Moreover, based on the statements of Senators Durbin, Feingold, Udall, and Wyden, legitimate questions exist about the government's interpretation of Section 215, "which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). Notably, those Senators have questioned whether Congress' reauthorization of Section 215 met "the test of a democratic society"[25] and warned that the American people would be "stunned and angry"[26] with the government's interpretation of Section 215. Comments such as these, coming from elected officials briefed on the DOJ's expansive interpretation and use of Section 215, call into question the integrity of that interpretation, thus undermining public confidence. Moreover, the widespread media attention given to the Senators' comments further affects public confidence. Consequently, the records sought in this request satisfy the requirements for expedited processing under 28 C.F.R. § 16.5(d)(1)(iv).

**Format of Documents**

FOIA provides that agency records include records "maintained by an agency in any format, including electronic format." 18 USC § 552(f)(2)(A). FOIA also provides that an agency should search for records in "electronic form or format," 18 USC § 552(a)(3)(C), and "shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 18 USC § 552(a)(3)(B). Accordingly, we request that, where available and appropriate, the requested records be provided in the following manner:

1) That files stored in electronic format be produced in electronic format;

2) That files be produced either in their native format (likely appropriate for spreadsheets and database files—for example, Microsoft Excel files produced as .xls electronic files) or as text-searchable pdf formatted files (likely appropriate for word processing documents, letters, memos, or emails);

3) That files preserve the "parent / child" relationship between records (for example, if an email has an attachment, that attachment—or, if appropriate, information regarding the attachment's withholding—should accompany or follow the pdf of the email); and that the beginning and ending of individual records is clearly indicated.

EFF also requests that all pages be consecutively numbered and that the page numbers of records withheld in full be clearly indicated in a document or file accompanying the produced records.

---

[25] *See* Remarks of Sen. Richard Durbin, *supra* page 2.
[26] *See* Statement of Sen. Ron Wyden, *supra* page 2.

454 Shotwell Street • San Francisco, CA 94110 USA
📞 +1 415 436 9333    📠 +1 415 436 9993    🌐 www.eff.org    ✉ information@eff.org

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because it qualifies as a "representative of the news media" pursuant to the FOIA and 28 C.F.R. §§ 16.11(b)(6), (d)(1). In requesting this classification, we note that the Department of Homeland Security has recognized that EFF qualifies as a "news media" requester, based upon the publication activities set forth below. *See* DHS stipulation (attached). In addition, the National Security Agency ("NSA") has previously determined that EFF is not only a "news media requester," but also "primarily engaged in disseminating information" for purposes of expedited processing. *See* NSA response to EFF FOIA request (attached). These precedents are particularly important in light of the fact that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[27] One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[28] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, https://www.eff.org, which reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues. EFF posts documents received in response to its FOIA requests here, along with accompanying analysis and commentary. *See* https://www.eff.org/issues/foia.

EFF has also regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at https://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (https://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues.[29]

In addition to reporting high tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at https://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

---

[27] Guidestar Basic Report, Electronic Frontier Foundation,
http://www.guidestar.org/pqShowGsReport.do?npoId=561625 (last visited July 8, 2009).
[28] *Id.*
[29] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

454 Shotwell Street • San Francisco, CA 94110 USA
☎ +1 415 436 9333   📠 +1 415 436 9993   🌐 www.eff.org   ✉ information@eff.org

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

EFF also records and releases podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml.

Due to these extensive publication activities, EFF is a "representative of the news media" under the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of search and duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k)(1). To determine whether a request meets this standard, regulations require the DOJ and its components to assess whether "[d]isclosure of the requested information . . . is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(1)(i), (ii). EFF's request clearly satisfies these criteria.

First, information concerning the Department of Justice and its components' interpretation and use of Section 215 clearly and directly relates to the "operations or activities of the federal government." 28 C.F.R. § 16.11(k)(2)(i).

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on the scope, legality, and legitimacy of the government's interpretation and use of Section 215. The requested information is not in the public domain and, therefore, will necessarily contribute to a more robust public understanding of the subject.

Third, the requested material will contribute to "public understanding" of the DOJ and its components' interpretation and use of Section 215. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information obtained through this request available to the public and the media through

454 Shotwell Street • San Francisco, CA 94110 USA
☎ +1 415 436 9333   📠 +1 415 436 9993 · . ⊕ www.eff.org   ✉ information@eff.org

its web site and the EFF newsletter, which highlight developments concerning privacy and civil liberties issues. Because EFF is a representative of the news media, EFF's request presumptively satisfies this criterion. *Id.*

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the DOJ's interpretation and use of Section 215. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Beyond the cryptic statements of four Senators and some limited testimony from DOJ officials, very little is known about the perceived scope of federal government under Section 215. As such, the response to this FOIA request will undoubtedly enhance the public's understanding of the subject.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(1)(ii). EFF is a 501(c)(3) nonprofit organization, and will not derive commercial benefit from the information at issue here.

Thank you for your consideration of this request. As the FOIA provides, I will anticipate a determination on our request for expedited processing within 10 calendar days and a determination with respect to the disclosure of requested records within 20 working days. If you have any questions or concerns, do not hesitate to contact me at 415.436.933 x 137 or at mark@eff.org.

To the best of my knowledge and belief, I certify this request to be true and correct.

Sincerely,

Mark Rumold
Open Government Legal Fellow

Attachments

454 Shotwell Street • San Francisco, CA 94110 USA
☎ +1 415 436 9333   🖷 +1 415 436 9993   ● www.eff.org   ✉ information@eff.org

# EXHIBIT B



**U.S. Department of Justice**

Office of Legal Counsel

---

*Washington, D.C. 20530*

November 16, 2011

Mark Rumold
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110

Dear Mr. Rumold:

This responds to your Freedom of Information Act request dated June 2, 2011, which you have agreed to narrow to opinions and legal memoranda concerning Section 215 of the Patriot Act. We have searched OLC's files and have found two documents that are responsive to your request. We are withholding these two documents pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5). The documents are protected by the deliberative process and attorney-client privileges.

I am required by statute and regulation to inform you that you have the right to file an administrative appeal. Any administrative appeal must be received within 60 days of the date of this letter by the Office of Information Policy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

*Paul P. Colborn*

Paul P. Colborn
Special Counsel

# EXHIBIT C



**U.S. Department of Justice**

Office of Legal Counsel

_____

*Washington, D.C. 20530*

March 15, 2012

Mark Rumold
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110

Dear Mr. Rumold:

This letter responds to your Freedom of Information Act (FOIA) request to the Department of Justice dated June 2, 2011.   The Office of Information Policy (OIP) has referred one document to the Office of Legal Counsel (OLC) for direct response to you.

In a letter dated November 16, 2011, OLC responded to you directly regarding that same FOIA request.   In that letter, we notified you that we had searched OLC's files and found two responsive documents, which we withheld pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5).   The document that OIP has referred to our office for processing is the same document as one of the two documents that OLC withheld in its November 16, 2011 response. We continue to withhold this document pursuant to Exemption Five.

Although I am aware that your request is the subject of ongoing litigation and appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.   Any administrative appeal must be received within 60 days of the date of this letter by the Office of Information Policy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001.   Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

*Paul P. Colborn*

Paul P. Colborn
Special Counsel

# EXHIBIT D



**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General                    *Washington, D.C. 20530*

April 7, 2011

The Honorable Dianne Feinstein
Chairman
The Honorable Saxby Chambliss
Vice Chairman
Select Committee on Intelligence
United States Senate
Washington, D.C. 20510

Dear Madam Chairman and Mr. Vice Chairman:

This responds to a request from Committee staff for an opinion by the Office of Legal Counsel dated January 4, 2010. This opinion was provided to the Foreign Intelligence Surveillance Court (FISC) in connection with an application submitted by the Department in a matter that is concluded.

We provided the Committee with the Supplemental Order of the FISC and our underlying application because we determined that the Order constitutes a significant construction or interpretation of a provision of the Foreign Intelligence Surveillance Act of 1978, as amended. *See* 50 U.S.C. § 1871(c). We ask that the Committee maintain the confidentiality of this opinion, which provided confidential legal advice to a client and has not been released publicly.

We hope that this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this, or any other matter.

Sincerely,

Ronald Weich
Assistant Attorney General

Enclosure