IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 11-cv-05221-SBA |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) ) |  |
| Defendant. | ) ) ) |  |

**DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section (RIDS), Records Management Division (RMD), formerly at the Federal Bureau of Investigation Headquarters (FBIHQ) in Washington, D.C., and currently relocated to Winchester, Virginia.   I have held this position since August 1, 2002.   Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law.   In that capacity, I had direct oversight of Freedom of Information Act (FOIA) policy, procedures, appeals, and litigation for the Navy.   From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters.   I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 269 employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, as amended by the OPEN

Government Act of 2007 and the OPEN FOIA Act of 2009; Privacy Act of 1974; Executive Order

13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and

Presidential and Congressional directives.   My responsibilities also include the review of FBI

information for classification purposes as mandated by Executive Order 13526[1], and the

preparation of declarations in support of FOIA Exemption 1 claims asserted under the FOIA.[2]   I

have been designated by the Attorney General of the United States as an original classification

authority and a declassification authority pursuant to Executive Order 13526 §§ 1.3 and 3.1.   The

statements contained in this declaration are based upon my personal knowledge, upon information

provided to me in my official capacity, and upon conclusions and determinations reached and

made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of the

FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.   Specifically, I am aware of

the FBI's response to plaintiff Electronic Frontier Foundation's FOIA request.

(4)     The FBI submits this declaration in support of its motion for summary judgment,

and will provide the Court and plaintiff with an explanation of the withholding of information

from these documents and the justifications in accordance with Vaughn v. Rosen, 484 F.2d 820

(D.C. Cir. 1973), pursuant to FOIA Exemptions (b)(1), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E), 5

U.S.C. § 552 (b)(1), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

## USA PATRIOT ACT, SECTION 215

(5)     The central subject of plaintiff's FOIA request is the FBI's use and interpretation of

---

1  75 Fed. Reg. 707 (2010).
2  5 U.S.C. § 552 (b)(1).

Section 215 of the USA PATRIOT Act.[3]   This particular section of the USA PATRIOT Act did not create any new investigative authority on the part of the FBI, but instead expanded the already existing authority found in the Foreign Intelligence Surveillance Act ("FISA") of 1978.[4] Originally, FISA required the FBI to apply to the Foreign Intelligence Surveillance Court ("FISA Court") for orders that would allow the FBI to conduct electronic surveillance for the purpose of collecting foreign intelligence information.[5]   In 1998, Congress amended FISA allowing the FBI to apply to the FISA Court for business records orders that would compel four types of businesses to release records in its possession.   Those businesses included:   common carriers; public accommodation facilities; physical storage facilities; and vehicle rental facilities.   The amendment was codified in 50 U.S.C. § 1861 and became known as the "business records" provision.   Section 215 of the USA PATRIOT Act expanded the provision and allows the FBI to obtain "any tangible things," including books, records, paper documents, and other items, from any business, organization, or entity, provided the item or items are for an authorized investigation to obtain foreign intelligence information not concerning a United States person, or to protect against international terrorism or clandestine intelligence activities, provided that such investigation of a United States person is not conducted solely upon the basis of activities protected by the First Amendment to the Constitution.

(6)     Section 215 of the USA PATRIOT Act is an indispensable investigative tool that continues to serve as a building block in many of the FBI's counterterrorism and

---

3 The term "USA PATRIOT Act" is an acronym for the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001).   It is commonly referred to as "the Patriot Act."
4 50 U.S.C. § 1801 et seq.
5 Applications for FISA orders were prepared and presented to the FISA Court by the Office of Intelligence Policy and Review ("OIPR").

counterintelligence investigations.   Section 215 business records orders have resulted in

numerous benefits by providing the FBI with valuable substantive information in connection with

an investigation.   The records collected have either confirmed prior investigative information or

have contributed to the development of additional investigative information, and have been

valuable in providing investigative leads.   Overall, Section 215 has been a vital tool in combating

terrorism, and ensuring the safety and security of the United States.

## CHRONOLOGY OF PLAINTIFF'S FOIA REQUESTS

(7)        Set forth below is a chronology and description of correspondence concerning

plaintiff's FOIA request which is the subject of this litigation.   Copies of the correspondence are

attached hereto as **Exhibits A--I**.

(8)        By letter dated June 2, 2011, plaintiff submitted a FOIA Act request to the

Department of Justice's Office of Information Policy ("OIP").   OIP forwarded the misdirected

FOIA request to FBIHQ for processing.   The plaintiff's request sought access to the following:

> "...agency records (including, but not limited to, electronic records)
> created from January 1, 2004 to the present discussing, concerning,
> or reflecting the DOJ or any of its component's interpretation or use
> of Section 215 orders…"

The plaintiff continued to describe the type of records sought and included the

following:

> "All reports, memoranda, guidance, presentations, legal briefs,
> emails, or any other record describing the types of "tangible things"
> which the DOJ or any of its components has sought or has the
> authority to seek through Section 215 orders, whether "pure" or
> "combination" orders…"

> "All reports, memoranda, guidance, presentations, legal briefs,
> emails, or any other record related to the use of Section 215 orders
> to further any "sensitive collection program…"

4

"All reports memoranda, guidance, presentations, legal briefs, emails, or any other record relating to the scope of the DOJ or any of its component's authority under Section 215 or the legal basis for "sensitive collection programs" support by Section 215 orders, including any briefings provided to the Senate Select Committee on Intelligence or the Senate Judiciary Committee…"

"All reports, memoranda, guidance, presentations, legal briefs, emails, or any other record related to modifications by the Foreign Intelligence Surveillance Court to applications for Section 215 orders…"

"All reports, memoranda, guidance, presentations, legal briefs, emails, or any other record related to the Foreign Intelligence Surveillance Court's refusal to grant any applications for Section 215 orders…"

"All reports, memoranda, guidance, presentations, legal briefs, emails, or any other record related to the DOJ or any of its component's withdrawal of any applications for Section 215 orders from the Foreign Intelligence Court;"

"All reports, memoranda, guidance, presentation, legal briefs, emails or any other record related to the number of U.S. persons identified as subjects in Section 215 orders and the number of non-U.S. persons identified as subjects in Section 215 orders;" and

"Copies of any invoices, receipts, bills, or any other similar document sent to the DOJ or any of its components by any business or organization in order to be reimbursed for the cost of compliance with a section 215 order."

Plaintiff also requested the following:   expedited processing under 28 C.F.R. § 6.5(d)(1)(ii) and (iv); status as a "news media" requester pursuant to the FOIA and 28 C.F.R. §§ 16.11(b)(6), (d)(1); and a fee waiver under 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11 (k)(1) on the grounds that disclosure of the requested information is in the public interest.  **(See Exhibit A).**

(9)   In an email dated June 2, 2011, plaintiff made a duplicate request to FBIHQ.   **(See Exhibit B)**.

5

(10)     By letter dated June 22, 2011, the FBI acknowledged receipt of plaintiff's request to FBIHQ and assigned it FOIA Request Number 1168091-000.   The FBI advised plaintiff it was searching the indices of the Central Records System ("CRS") for the requested information, and consideration was being given to plaintiff's request for a fee waiver and expedited processing.[6]   **(See Exhibit C).**

(11)     In a letter dated July 6, 2011, the FBI denied plaintiff's request for a fee waiver on the grounds that plaintiff did not satisfy a requirement.   The FBI stated that plaintiff failed to demonstrate how disclosure of the information is likely to contribute to an "understanding of government operations or activities." In order to be granted a fee waiver or a reduction in fees, two requirements must be satisfied.   First, the requester must establish that "disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."   Second, the requester must also demonstrate that "disclosure of the information…is not primarily in the commercial interest of the requester."   See 28 C.F.R. § 552(a)(4)(A)(ii).   A fee waiver is not warranted under the statute if one or both requirements are not met.   In determining if the first requirement has been met, the FBI considered the following four factors:   (1) whether the subject of the requested records concerns "the operations or activities of the government;" (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (3) whether disclosure of the requested information will contribute to "public understanding;" and (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities.   See 28 C.F.R. § 16.11(k)(2).   The FBI concluded the

6 The FBI's letter was created and stored electronically in the FBI's FOIA Document Processing System in Corel WordPerfect format.   As of October 1, 2012, the FBI no longer utilizes WordPerfect, and consequently, the letter has been electronically converted to Microsoft Word so it could be printed and included as an exhibit.   Although there might be minor formatting differences, the letter's substance is identical to that released to plaintiff.

second factor of the first requirement (disclosure is likely to contribute to an understanding of government operations) had not been met because "…a significant amount of information about Section 215 of the United States Patriot Act has been previously disseminated to the public." Lastly, plaintiff was advised of its right to appeal within sixty (60) days from the date of the letter by writing to OIP.[7]  **(See Exhibit D)**.

(12)   In a letter dated July 6, 2011, the FBI addressed plaintiff's request for expedited processing under 28 C.F.R. § 16.5 (d)(1).   The FBI granted expedited processing on the grounds there is "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information" and because there is "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."   See 28 C.F.R. § 16.5(d)(1)(ii) and (iv).   Lastly, plaintiff was advised of its right to appeal within sixty (60) days from the date of the letter by writing to OIP.[8]  **(See Exhibit E)**.

(13)   In a letter dated September 30, 2011, the FBI notified plaintiff of the status of his request and stated that the FBI is searching for, retrieving, scanning, and evaluating files that may be responsive to the request.   The plaintiff was also provided the phone number for the FOIPA Public Information Center in case of future inquiries.[9]  **(See Exhibit F)**.

(14)   On October 26, 2011, plaintiff filed a Complaint in the United States Court for the Northern District of California.

---

7 See supra fn. 6.
8 See supra fn. 6.
9 See supra fn. 6.

7

## EXPLANATION OF THE CENTRAL RECORDS SYSTEM

(15)    The Central Records System (CRS), which is utilized to conduct searches in response to FOIA and Privacy Act requests, enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities.   The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes and national security investigations.   This system consists of a numerical sequence of files broken down according to subject matter.   The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter (or program).   Certain records in the CRS are maintained at FBIHQ. Records that are pertinent to specific field offices of the FBI are maintained in those field offices. Although the CRS is primarily designed to serve as an investigative tool, the FBI utilizes the CRS to conduct searches that are likely to yield documents responsive to FOIA and Privacy Act requests.   The mechanism that the FBI uses to search the CRS is the Automated Case Support System (ACS).

(16)    The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.[10]  Entries in the General Indices fall into two categories:

> (a)   A main entry -- A main entry, or main file, carries the name corresponding with a subject of a file contained in the CRS.
>
> (b)   A reference entry -- A Reference entry, sometimes called a cross-reference, is generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another main file on a different subject matter.

---

10 The General Indices, which became fully automated on September 24, 1987, also include Index cards which allow a manual search for records prior to that date.

(17)    Access to the CRS files in FBI field offices is also obtained through the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations.   Searches made in the General Indices to locate records concerning a particular subject, such as U.S. Patriot Act, are made by searching the subject requested in the index.   FBI field offices have automated indexing functions.

(18)    On or about October 16, 1995, the ACS system was implemented for all field offices, Legal Attaches ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated.   Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is duplicated and moved to the ACS so that it can be searched.   Over 105 million records from the CRS were converted from automated systems previously utilized by the FBI.   Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.

(19)    ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

> (a)   Investigative Case Management (ICM) -- ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads.   The Office of Origin (OO), which sets leads for itself and other field offices, as needed, opens a case.   The field offices that receive leads from the OO are referred to as Lead Offices (LOs) - formerly known as Auxiliary Offices.   When a case is opened, it is assigned a Universal Case File Number (UCFN), which is utilized by all FBI field offices, Legats, and FBIHQ that are conducting or assisting in the investigation.   Using a fictitious file number 111-HQ-12345 as an example, an explanation of the UCFN is as follows:   111 indicates the classification for the specific type of investigation; HQ is the abbreviated form used for the OO of the investigation, which in this case is FBIHQ; and 12345 denotes the individual case file number for the particular investigation.

(b)   Electronic Case File (ECF) -- ECF serves as the central electronic repository for the FBI's official text-based documents.   ECF supports the universal serial concept, in that only the creator of a document serializes it into a file.   This provides a single-source entry of serials into the computerized ECF system.   All <u>original</u> serials are maintained in the OO case file.

(c)   Universal Index (UNI) -- UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed.   UNI, an index of approximately 115 million records, functions to index names to cases, and to search names and cases for use in FBI investigations.   Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

(20)    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent (SA) assigned to work on the investigation, the Supervisory SA (SSA) in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval.   Without a key (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., U.S. Patriot Act.

## SEARCHES FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

(21)    Plaintiff's FBIHQ request dated June 2, 2011, and assigned FOIA Number 1168091-000, sought records pertaining to Section 215 of the U.S. Patriot Act.   See ¶ 8.

(22)    In response to plaintiff's request for information, the FBI employed two search

10

mechanisms in an effort to identify responsive records.   The FBI (1) conducted a standard search for records in the CRS; and (2) performed an individualized inquiry by contacting various divisions within FBIHQ who were most likely to have potentially responsive records.

(23)   On June 17, 2011, the FBI conducted a search of the CRS to locate any main investigatory files or references maintained at FBIHQ using multiple variations of the term, "U.S. Patriot Act," including "USA Patriot Act Section 215," "USA PATRIOT ACT," "US Patriot Act," and "Patriot Act."   The date parameters for the search were January 1, 2004 to June 17, 2011 – the search cut-off date of the request.   The FBI identified 32 potentially responsive files as a result of the CRS search.   Each file was reviewed for responsiveness.   One file, file number 66F-HQ-C1364260, was identified as responsive to plaintiff's request.   The file was ordered, processed in accordance with the FOIA, and all non-exempt material released to plaintiff.

(24)   The FBI also conducted an individualized inquiry into various offices, sections and divisions at FBIHQ.   On September 28, 2011, the FBI prepared and circulated an Electronic Communication ("EC") to FBIHQ's divisions that were most likely to possess records responsive to plaintiff's FOIA request.[11]   These divisions included the Office of the Director, Office of Congressional Affairs ("OCA"), Office of General Counsel ("OGC")[12], and the National Security Law Branch ("NSLB").[13]   The EC detailed all eight items of interest from plaintiff's request and instructed all personnel within each division to conduct a thorough search for any documents in their possession, including emails and draft documents, which could be responsive.

(25)   A subsequent search of the CRS was conducted on June 17, 2011 and a second

---

11 An EC is the way the FBI communicates internally.
12 Within OGC, NSLB received a separate EC.
13 NSLB is a branch of OGC, but received a separate EC due to the nature of the request.

individualized inquiry was performed on December 16, 2011.   The CRS search resulted in the same responsive file.   See ¶ 23.   Additionally, in the individualized inquiry, the search included the following:   the Office of the Director; NSLB; and OCA.   Lastly, an email was sent on December 16, 2011 to each Chief Division Counsel ("CDC")[14] at the 56 Field Offices requesting any documents within their office concerning legal guidance or any interpretation that has been provided with respect to Section 215 of the USA PATRIOT Act.   All of the divisions and each of the 56 Field Offices responded.   The information provided consisted of presentations, ECs, memorandums, transcripts of Congressional hearings, emails, and information sheets.   All material was reviewed for responsiveness and the non-exempt information from the responsive records was released to the requester.

## RELEASE OF MATERIAL TO PLAINTIFF AND JUSTIFICATION OF DELETED MATERIAL

(26)   The FBI processed a total of 5,100 pages and released 2,049 pages in full or in part in interim releases made on March 15th, April 11th, May 15th, and June 28, 2012 as required by the Stipulation and Order dated February 16, 2012.[15]   **(See Exhibit G)**.   A supplemental release was also made on August 20, 2012, and consisted of material that was omitted inadvertently from previous releases.[16]   The exemptions asserted, as grounds for non-disclosure for portions of the documents, are FOIA Exemptions (b)(1), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

(27)   This declaration is accompanied by, and incorporates by reference a Vaughn Index (hereinafter "index") that provides a detailed description of the withheld material within each document.   The index specifies the relevant page ranges, dates of records (if any), the applicable

---

14 The CDC provides legal advice and support to the Special Agent in Charge of a Field Office.
15 See supra fn. 6.
16 See supra fn. 6.

exemptions, and a description of action taken with respect to each responsive page:   withheld in full ("WIF"), released in full ("RIF") or released in part ("RIP").   **(See Exhibit H)**.   The document categories were created for the ease of the court and plaintiff.

| Document | General Description |
|----------|---------------------|
| 1 | Bates Pages:  ACLU Sect. 215-1831 through 1834 |
| 2 | Bates Pages:  ACLU Sect. 215-2169 through 2178 |
| 3 | Bates Pages:  EFF Section 215-7 through 11 |
| 4 | Bates Pages:  EFF Section 215-111 through 112 |
| 5 | Bates Pages:  EFF Section 215-1133 through 1135 |
| 6 | Bates Pages:  EFF Section 215-1143 through 1214 |

## OVERVIEW OF WITHHELD MATERIAL

(28)   All documents have been thoroughly reviewed to achieve maximum disclosure consistent with the access provisions of FOIA.   All material that has been withheld is exempt from disclosure pursuant to a FOIA exemption or is non-responsive.   This Vaughn declaration is based on documents which the parties agreed on in the pre-filing letters to the Court and would be subject to summary judgment motions practice.   See Letter from Steven Y. Bressler to the Court dated August 22, 2012 (Dkt. No. 32); Letter from Mark Rumold to the Court dated August 24, 2012 (Dkt. No. 33).   Of the 96 pages, 16 pages are not responsive and have been removed as "outside the scope" of the request.   Additionally, 8 pages have been marked "duplicate" because they are identical to other documents already processed and released to plaintiff.   After eliminating documents marked "outside the scope," and "duplicate," there are 72 pages remaining.   Of the 72 pages, 16 pages have been released in part, 3 pages released in full, and 53

have been withheld in full pursuant to FOIA exemptions 1, 5, 6, 7(C), 7(E).   The 53 pages

withheld in their entirety are represented by an insertion of a deleted page sheet.   Each page of

the release is numbered with a specific Bates-stamp number in the lower right-hand corner to

identify the page, *e.g.*, ACLU Sect. 215-1or EFF Section 215-1.   **(See Exhibit I).**

**EXPLANATION OF WITHHELD MATERIAL:**
**JUSTIFICATION FOR NON-DISCLOSURE UNDER FOIA**

(29)    The remaining declaration provides a general discussion of the exemptions used,

and is followed by a specific explanation of all six documents and the application of each

exemption to the redactions in each document.    In the explanation, justification, and harm

analysis of the withheld material in the discussion of the sections that follow, there are also

threshold matters and several types of information contained in the documents that were

commonly withheld under the same exemption(s) and/or justifications throughout the processing

of the material.    Where more particularized justifications are necessary to explain withholdings,

such are contained in the below discussions.    The commonly applied exemptions and matters are

as follows:

      **A.**    **Exemption (b)(1)**
           **Classified Information**

(30)    The FBI's analysis of the withholding of classified information contained in these

documents is based on the standards articulated in the FOIA statute, 5 U.S.C. § 552 (b)(1).

Exemption (b)(1) protects from disclosure those records that are:

        (A)    specifically authorized under criteria established by an Executive Order to be
              kept secret in the interest of national defense or foreign policy; and

        (B)    are in fact properly classified pursuant to such Executive Order.

14

(31)     Before I consider an Exemption (b)(1) claim for withholding agency records, I determine whether the information in those records is information that satisfies the requirements of E.O. 13526, the Executive Order which governs the classification and protection of information that affects the national security,[17] and whether the information complies with the various substantive and procedural criteria of the Executive Order.   E.O. 13526, which was signed by President Barack Obama on December 29, 2009, is the Executive Order that currently applies to the protection of national security information.   I am bound by the requirements of E.O. 13526, when making classification determinations.

(32)     In order for information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption (b)(1), the information must meet the requirements set forth in E.O. 13526 § 1.1 (a):

   (1)     an original classification authority is classifying the information;

   (2)     the information is owned by, produced by or for, or is under the control of the United States Government;

   (3)     the information falls within one or more of the categories of information listed in § 1.4 of this order; and

   (4)     the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(33)     As I will explain in further detail below, in my role as an original classification authority, I have determined that the information withheld pursuant to Exemption (b)(1) is under the control of the United States Government, is classified and requires a classification marking at

---

17  Section 6.1 (cc) of E.O. 13526, defines "National Security" as "the national defense or foreign relations of the United States."

the "Secret" level since the unauthorized disclosure of this information reasonably could be

expected to cause serious damage to national security.   See E.O. 13526 § 1.2(a)(2).   In addition

to these substantive requirements, certain procedural and administrative requirements of E.O.

13526 must be followed before information can be considered properly classified, such as, proper

identification and marking of documents.   In particular, I made certain that all procedural

requirements of E.O. 13526 were followed:

> (1)    each document was marked as required and stamped with the proper
>        classification designation;
>
> (2)    each document was marked to indicate clearly which portions are
>        classified, which portions are exempt from declassification as set forth in
>        E.O. 13526 § 1.5(b);
>
> (3)    the prohibitions and limitations on classification specified in E.O. 13526 §
>        1.7 were adhered to;
>
> (4)    the declassification policies set forth in E.O. 13526 §§ 3.1 and 3.3 were
>        followed; and
>
> (5)    any reasonably segregable portions of these classified documents that did
>        not meet the standards for classification under E.O. 13526 were
>        declassified and marked for release, unless withholding was otherwise
>        warranted under applicable law.

## FINDINGS OF DECLARANT REGARDING
## EXEMPTION (b)(1)

(34)    With the above requirements in mind, I personally and independently examined

the FBI information withheld pursuant to Exemption (b)(1) in the documents selected by the

plaintiff.   As a result of this examination, I determined that the classified information continues

to warrant classification at the "Secret" level, and is exempt from disclosure pursuant to E.O.

13526 § 1.4 category (c) intelligence activities (including covert action), intelligence sources or

methods, or cryptology as the unauthorized disclosure of information that could reasonably be expected to cause serious damage to the national security.

## INTELLIGENCE ACTIVITIES, SOURCES AND METHODS

(35)     E.O. 13526 § 1.4 (c) exempts intelligence activities (including covert action), intelligence sources or methods, or cryptology.   An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of a national security interest.   An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization.   An intelligence activity or method has two characteristics.   First, the intelligence activity or method – and information generated by it – is needed by U.S. intelligence/counterintelligence agencies to carry out their missions.   Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved.   Classified information appears on Bates page EFF Section 215-1146 and has been withheld to protect intelligence activities of the FBI.

(36)     The classification redaction was made to protect from disclosure information that would reveal the actual intelligence activities and methods used by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets.   The criteria utilized in determining what actions by an individual or organization warrant the commencement of an investigation, or cause a certain activity to be given investigative attention over others, could be revealed through disclosure of these intelligence methods or activities.   The criteria applied and priorities assigned

17

in this record is used in the FBI's present intelligence or counterintelligence investigations, and are in accordance with the Attorney General's guidelines on FBI intelligence or counterintelligence investigations.   The FBI protected information specific to intelligence activities and methods because disclosure could reasonably be expected to cause serious damage to the national security.   The withheld information contained the name of an individual who was of investigative interest and public disclosure of such information would reveal the identity of the target and disrupt current national security investigations.   As a result, I have determined that this information is properly classified at the "Secret" level, properly withheld pursuant to E.O. 13526 § 1.4(c) and is exempt from disclosure pursuant to FOIA Exemption (b)(1).

## DEFENDANT'S BURDEN OF ESTABLISHING
## EXEMPTION (b)(1) CLAIMS

(37)   The information withheld in this case pursuant to Exemption 1 was examined in light of the body of information available to me concerning the national defense and foreign relations of the United States.   This information was not examined in isolation.   Instead, the information was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States' intelligence files, including the secrecy of that other information.   Equal consideration was given to the impact that other information, either in the public domain or likely known or suspected by present or potential adversaries of the United States, would have upon the information I examined, and upon attempts by a hostile entity to analyze such information.

(38)   In those instances where, in my judgment, the disclosure of this information could reasonably be expected to cause a serious damage to the national security, and its withholding

18

outweighed the benefit of disclosure, I exercised my prerogative as an original classification authority and designated that information as classified in the interest of national security at the "Secret" level, and invoked FOIA Exemption (b)(1) to prevent disclosure.   Likewise, the justifications for the withheld classified information have been prepared with the intent that they be read with consideration given to the context in which the classified information is found, but also other information already in the public domain, as well as information likely known or suspected by hostile intelligence entities.   It is my judgment that any greater specificity in the descriptions and justifications set forth with respect to the intelligence activities (including special activities), intelligence sources or methods, or foreign relations and activities could reasonably be expected to jeopardize the national security of the United States, and as a result, the information appearing in this document has been appropriately classified pursuant to E.O. 13526 and withheld pursuant to FOIA Exemption (b)(1).

### B.   Exemption (b)(5)
### Privileged Information

(39)    Exemption (b)(5) of the FOIA protects from mandatory disclosure records or information contained in "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   This exemption has been construed to exempt those documents or information normally privileged in the civil discovery context, including, as is the case here, the attorney-client privilege and the deliberative process privilege.   Generally, the attorney-client privilege protects confidential communications between an attorney and his/her client relating to a legal matter for which the client has sought professional advice.   This privilege encompasses any opinions given by an

19

attorney to his/her client based upon and reflecting those facts, as well as communications between attorneys that reflect client-supplied information.   The deliberative process privilege protects the internal deliberations of the government by exempting material that contains opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions, or recommendations.

## (b)(5)
## Attorney-Client Privilege

(40)    Exemption (b)(5) has been asserted to protect material covered by the attorney-client privilege.   The attorney-client privilege is appropriately asserted when legal advice of any kind is sought from a professional legal adviser in his or her capacity and the communications relating to that purpose are made in confidence to the client.   The communications are permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived.   This privilege encompasses confidential communications made to the attorney, not only by decision-making personnel, but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function.   Disclosure of the two-way communication between FBI attorneys and their clients would impede the full disclosure of all of the information that relates to the client's reasons for seeking legal advice, which is necessary if the professional mission is to be accomplished.

## (b)(5)
## Deliberative Process Privilege

(41)    The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation, and other non-factual information prepared in anticipation of agency decision-making.   The general purpose of the

20

deliberative process privilege is to prevent injury to the quality of agency decisions.   Thus,

material that contains or was prepared in connection with the formulation of opinions, advice,

evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may

properly be withheld.   Release of this type of information would have an inhibitive effect upon

the development of policy and administrative direction of an agency because it would chill the

full and frank discussion between agency personnel regarding a decision.   If agency personnel

knew that their preliminary opinions, evaluations, and comments would be released for public

consumption, they might be more circumspect in what they put in writing, and thereby, impede a

candid discussion of the issues surrounding a decision.   This would have a chilling effect on

internal discussions.

C.      **Exemption (b)(7) Threshold**

(42)      Exemption (b)(7) of the FOIA protects from mandatory disclosure records or

information compiled for law enforcement purposes, but only to the extent that disclosure could

reasonably be expected to cause one of the harms enumerated in the subpart of the exemption.

See 5 U.S.C. § 552(b)(7).   Before an agency can invoke any of the harms enumerated in

Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled

for law enforcement purposes.   Law enforcement agencies such as the FBI must demonstrate that

the records at issue are related to the enforcement of federal laws and that the enforcement

activity is within the law enforcement duty of that agency.   The remaining inquiry is whether the

disclosure would constitute a clearly unwarranted and unwarranted invasion of individuals'

privacy, and reveal techniques and procedures used during an investigation.

(43)      All records responsive to plaintiff's request pertain to Section 215 of the USA

21

PATRIOT Act, which is an essential investigative tool utilized by the FBI in national security investigations.   Section 215 allows the FBI access to business records through the issuance of a court order from the FISA Court.   This section of the USA PATRIOT Act allows the Director of the FBI to obtain a business records order from the FISA Court which requires a party to produce materials or records that will assist the FBI in conducting its authorized investigations "to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism or clandestine intelligence activities…"   See 50 U.S.C. § 1861(a)(1). Thus, the documents contained in this FOIA release fall within the law enforcement duties of the FBI, and the information readily meets the threshold requirement of Exemption (b)(7).

**D.**   **Exemptions (b)(6) and (b)(7)(C)**
**Clearly Unwarranted and Unwarranted Invasion of Personal Privacy**

(44)   5 U.S.C. § 552(b)(6) exempts from disclosure:

> personnel and medical files and similar files when the disclosure of such
> information would constitute a clearly unwarranted invasion of personal privacy.

(45)   5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement records
> or information . . . could reasonably be expected to constitute an
> unwarranted invasion of personal privacy.[18]

(46)   When withholding information pursuant to these exemptions, the FBI is required

to balance the privacy interests of the individuals mentioned in the records against any public

---

[18] The practice of the FBI is to assert Exemption (b)(6) in conjunction with Exemption (b)(7)(C).   Although the balancing test for Exemption (b)(6) uses a Awould constitute a clearly unwarranted invasion of personal privacy standard and the test for Exemption (b)(7)(C) uses the lower standard of Acould reasonably be expected to constitute an unwarranted invasion of personal privacy, the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.   The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

interest in its disclosure.   In asserting these exemptions, each item of information was examined

to determine the degree and nature of the privacy interest of every individual whose name and/or

identifying information appears in the records.   The public interest in disclosure of the

information is determined by whether it would inform plaintiff and the general public as to the

FBI's performance of its mission to enforce federal criminal statutes and to protect the national

security of the United States and/or how the information would shed light on the FBI's

performance of its mandated statutory duties.   In each instance where information was withheld

under these two exemptions, it was determined that individual privacy rights outweighed the

public interest.   The only recognized public interest is that which sheds light on the operations

and activities of the federal government.   Additionally, revelation of the names and/or

identifying information of individuals in the context of the FBI records could reasonably be

expected to cause harassment, embarrassment and/or humiliation, and thus constitute a clearly

unwarranted and an unwarranted invasion of personal privacy.   Therefore, the FBI concluded the

information should be withheld under Exemptions (b)(6) and (b)(7)(C), and determined that

individuals' privacy interests were not outweighed by any public interest in disclosure.   Every

effort has been made to release all segregable information contained in the records without

invading the privacy interests of individuals.

### (b)(6) and (b)(7)(C)
### Names and/or identifying information of FBI Special Agents and Support Personnel

(47)   Exemption (b)(6) and (b)(7)(C) have been asserted to protect the names and/or

identifying information (such as phone numbers) of FBI special agents ("SAs") and support

personnel who are responsible for conducting, supervising, and/or maintaining investigative

23

activities as well as the day-to-day operations and policy considerations of the FBI.   This

information was withheld in documents responsive to plaintiff's request.   From the indexed

documents, the names and/or identifying information that appear pertain primarily to FBI support

personnel.   These employees were assigned to handle tasks related to national security issues as

well as the FBI's legal interpretation, practice, and use of Section 215.   They were, and possibly

are, in positions of access to information regarding national security investigations and therefore

could become targets of harassing inquiries for unauthorized access to information and could

become victims of physical retaliation if their identities were released.   These individuals

maintain substantial privacy interests in not having their identities disclosed.   The FBI can

identify no discernible public interest in the disclosure of this information because disclosure of

the names and/or identifying information of FBI support employees would not shed light on the

operations and activities of the FBI.   Thus, disclosure of this information would constitute a

clearly unwarranted invasion of personal privacy and could reasonably be expected to constitute

an unwarranted invasion of personal privacy.   As a result, the FBI SAs and support personnel

maintain a substantial privacy interest in not having their identities disclosed.

### (b)(6) and (b)(7)(C)
### Names and/or Identifying Information Concerning Non-FBI Federal Government Personnel

(48)    Exemptions (b)(6) and (b)(7)(C) have also been asserted in order to protect the

names and/or identifying information of non-FBI federal government personnel such as

employees at the Department of Justice ("DOJ").   The relevant inquiry is whether public access to

this information would violate a recognized privacy interest and whether there is a public interest

in releasing their identities.   Disclosure of names and/or identifying information could subject

24

them to unauthorized inquiries and harassment, and would constitute a clearly unwarranted and

unwarranted invasion of their personal privacy.   The rationale for protecting non-FBI federal

employees is the same as that for FBI employees.

(49)   In balancing the legitimate privacy interest of these individuals against any public

interest in disclosure, the FBI determined there is a complete lack of a bona fide public interest in

disclosing this information because it will not shed light on the operations and activities of the

federal government. Accordingly, the FBI concluded that disclosure of this information would

constitute a clearly unwarranted invasion of personal privacy and could reasonably be expected to

constitute an unwarranted invasion of personal privacy.

   **E.**   **Exemption (b)(7)(E)**
         **Investigative Techniques and Procedures**

(50)   5 U.S.C. § 552 (b)(7)(E) provides for the withholding of:

>   records or information compiled for law enforcement purposes, but only to
>   the extent that the production of such law enforcement records or
>   information...(E) would disclose techniques and procedures for law
>   enforcement investigations or prosecutions, or would disclose guidelines
>   for law enforcement investigations or prosecutions if such disclosure could
>   reasonably be expected to risk circumvention of the law.

### (b)(7)(E)
### Investigative Techniques and Procedures

(51)   Exemption (b)(7)(E) has been asserted to protect techniques and procedures used by

FBI agents and support personnel in obtaining Section 215 business records orders.   A business

records order is an extremely important tool in combating terrorism and ensuring the safety of the

United States.   A business records order is issued by the FISA Court in cases where the FBI is

conducting a foreign intelligence investigation not concerning a United States person, or seeking

to prevent international terrorism or clandestine intelligence activities.   The issuance of such

orders permits the FBI to obtain important records and substantive information relevant to the investigation.  If information regarding specific techniques and procedures used in obtaining such an order become known, then individuals engaged in terrorist activities and those who desire to bring harm to the United States could alter their behavior in order to avoid detection.   Providing this information to the public, and ultimately to terrorist groups and individuals involved in criminal activities, would threaten the national security of the United States.

(52)    The investigative techniques and procedures that appear in these documents explain the requirements, procedure, and method for obtaining a Section 215 business records order. Release of this information would allow individuals to learn the type of information sought and examined by FBI agents, and would provide them the opportunity to alter their behavior in order to avoid detection and circumvent the law.   Therefore, the FBI properly withheld this information pursuant to Exemption (b)(7)(E).

**EXPLANATION OF WITHHELD MATERIAL FOR**
**EACH DOCUMENT**

**Document 1 – Bates Pages:   ACLU Sect. 215-1831 through 1834**

(53)    Document 1 has 4 responsive pages consisting of a draft letter regarding the procedure for obtaining a Section 215 business records order.   It discusses which officer of the FBI should have authority over the produced records as well as deliberates over the extent of such authority.   Of the 4 pages, 3 have been released in part and 1 page withheld in full.

(54)    Exemption (b)(5) has been applied to protect the deliberative process privilege. The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation, and other non-factual information prepared in anticipation of agency decision-making.   The general purpose of the deliberative process

privilege is to prevent injury to the quality of agency decisions.   Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld. Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision.   If agency personnel knew that their preliminary opinions, evaluations, and comments would be released for public consumption, they might be more circumspect in what they put in writing, and thereby, impede a candid discussion of the issues surrounding a decision.   The responsive material is a draft letter that includes the scrivener's evaluation and interpretation of Section 215.   More specifically, the drafter provided his/her interpretation of the FISA use authority.   FISA use authority means that information acquired by the FBI in response to an order for tangible things "…may be used and disclosed by Federal officers and employees without the consent of the United States person only in accordance with the minimization procedures…" and that "[n]o information acquired from tangible things received by the Federal Bureau of Investigation in response to an order…may be used or disclosed by Federal officers or employees except for lawful purposes."[19]   The draft letter is pre-decisional and only reflects the drafter's opinion, and does not represent official FBI policy.   Revealing an individual's interpretation or opinion does not enlighten the public as to the FBI's interpretation or use of Section 215.   The disclosure of these deliberative, pre-decisional discussions would have an inhibiting effect upon the development of policy and the administrative direction of the FBI. Thus, the FBI has properly withheld this information pursuant to Exemption (b)(5).

---

19 See 50 U.S.C. § 1861(h).

(55)    Exemption (b)(7)(E).    Exemption (b)(7)(E) has been asserted in document 1 to protect law enforcement records or information that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.    Plaintiff's request seeks information regarding the FBI's interpretation and use of Section 215 of the USA PATRIOT Act.    Section 215, also known as the "business records" provision, is an extremely important tool used in investigating and dismantling terrorist activities that threaten the safety and security of the United States.    The responsive material is a draft letter that describes the use of information acquired from a FISA business records order.[20]    It also discusses whether prior authorization is required before information can be used in criminal or administrative proceedings.    The letter provides details regarding FISA business records applications as well as the combination of other search methods and techniques used in investigations.    Disclosure of specific information used in obtaining FISA business records orders would allow counterintelligence and terrorist elements to gain valuable insight into the type of information sought by the FBI.    This knowledge would enable them to structure their terrorist activities in a manner so as to avoid detection.    Additionally, revealing other search methods and techniques used by the FBI would afford terrorists, and those attempting to harm the United States, the opportunity to modify their actions, avoid detection, and thwart investigative efforts. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(7)(E).

---

20 See 50 U.S.C. §1861(h).

**Document 2 – Bates Pages:   ACLU Sect. 215-2169 through 2178**

(56)     Document 2 has 10 responsive pages consisting of a memorandum from the Office of the Inspector General ("OIG"), which is an office within DOJ, and provides an analysis of the FBI's response to OIG recommendations.   The content of these communications between OIG and the FBI have been compiled and made into a report entitled, "A Review of the FBI's Use of Section 215 Orders for Business Records in 2006."[21]   The memorandum consists of communications between two government agencies and includes recommendations made by OIG, the FBI's response to these recommendations, and OIG's analysis in reply.   Of the 10 pages, all 10 pages were withheld in full.

(57)     Exemption (b)(5).   Exemption (b)(5) has been applied to protect the deliberative process privilege.   The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation, and other non-factual information prepared in anticipation of agency decision-making.   The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions.   Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld.   Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel.   If agency personnel knew that their preliminary opinions, evaluations, and comments would be released for public consumption, they might be more circumspect in what they put in writing, and thereby, impede a candid discussion of the

---

21 This report was released to the requester and is Bates stamped ACLU Sect. 215-1467 through 1564.

issues surrounding a decision.   The responsive material is a memorandum reflecting the communications between the FBI and OIG.   It includes OIG's assessments of the FBI's use of Section 215 business records orders as well as policy recommendations.   Additionally, it details the FBI's response to OIG recommendations by providing the FBI's opinion on policy recommendations.   Thus, the material contains or was prepared in connection with the formulation of opinions, evaluations, policy formulation, or recommendations and may properly be withheld.   Release of this kind of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel.   If agency personnel knew that their preliminary opinions, evaluations and comments would be release for public consumption, they might be more circumspect in what they put in writing, and thereby, impede a candid discussion of the issues. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(5).

(58)     Exemptions (b)(6) and (b)(7)(C).   Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names and/or identifying information of FBI Special Agents (SAs) and support personnel who were responsible for conducting, supervising, and/or maintaining investigative activities as well as for the day-to-day operations and policy considerations of the FBI.   The publicity associated with the release of their identities regarding an FBI project or policy consideration could trigger hostility toward employees.   These individuals were, and possibly are, in positions of access to material regarding intelligence investigations as well as sensitive information, and therefore could become targets of harassing inquiries for unauthorized access, if their identities are released, similar to those harms articulated previously for SAs.   The support personnel maintain a substantial privacy interest in not having their identity disclosed.

The responsive material is a memorandum and includes the name of an FBI employee on page 1 of the document.   As stated above, FBI support personnel maintain a substantial privacy interest. Accordingly, the FBI properly withheld this information pursuant to Exemptions (b)(6) and (b)(7)(C).

(59)   Exemptions (b)(6) and (b)(7)(C).   Exemption (b)(6) and (b)(7)(C) have also been asserted to protect the names and/or identifying information of non-FBI federal government personnel such as DOJ employees.   The relevant inquiry is whether public access to this information would violate a recognized privacy interest and whether there is a public interest in releasing their identities.   Disclosure of the names and/or identifying information could subject them to unauthorized inquiries and harassment that would constitute a clearly unwarranted and unwarranted invasion of their personal privacy.   The rationale for protecting non-FBI federal employees is the same as that for FBI employees.   The responsive material is a memorandum and contains the name of a DOJ employee on the first page.   As previously stated, non-FBI federal personnel maintain a substantial privacy.   The FBI determined that the individuals' privacy interest was not outweighed by public interest in its disclosure.   The FBI determined that the individual's privacy interest was not outweighed by public interest in its disclosure.   Therefore, the FBI properly withheld this information pursuant to Exemptions (b)(6) and (b)(7)(C).

## Document 3 – Bates Pages:   EFF Section 215-7 through 11

(60)   Document 3 has 5 responsive pages.   It consists of a draft letter dated April 16, 2009 and is addressed to Senators Feinstein and Bond regarding the re-authorization of three FISA provisions scheduled to sunset on December 31, 2009.   This letter was drafted by an FBI attorney

31

and was intended as a draft response to a March 31, 2009 letter from the Senate Select Committee on Intelligence ("SSCI").   Of the 5 pages, all 5 have been withheld in full.

(61)   Exemption (b)(5).   Exemption (b)(5) has been applied to protect the deliberative process privilege.   The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation, and other non-factual information prepared in anticipation of agency decision-making.   The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions.   Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld.   Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision.   If agency personnel knew that their preliminary opinions, evaluations, and comments would be released for public consumption, they might be more circumspect in what they put in writing, and thereby, impede a candid discussion of the issues surrounding a decision.   The responsive material is a draft letter addressed to two U.S. Senators, and includes FBI recommendations and opinions on possible re-authorization of three FISA provisions.   It also provides reasons for making the provisions permanent.   The draft letter is pre-decisional and is antecedent to the adoption of any official FBI policy.   The draft presents opinions, evaluations, and recommendations on the re-authorization of the sunset provisions.   Disclosure of these deliberative, pre-decisional discussions would have an inhibiting effect upon the development of policy and the administrative direction of the FBI. Thus, the FBI has properly withheld this information pursuant to Exemption (b)(5).

(62)   Exemption (b)(7)(E).   Exemption (b)(7)(E) has been asserted in document 3 to protect law enforcement records or information that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.   Exemptions (b)(7)(E) appears on pages 3 and 4 of the responsive material.   Part of the information withheld details the number of business records orders issued during a particular year and the specific type of order obtained.   This information, if it were to be released, would reveal the size, scope and frequency that business records orders are issued and used.   Armed with this information, individuals seeking to cause harm to the United States and circumvent detection would be able to piece the information into a mosaic revealing the specific law enforcement techniques and procedures.   Additional information describing the instances in which specific investigative techniques have been used to obtain certain types of records was also withheld (b)(7)(E).   Disclosure of this information would allow individuals to gain valuable insight into the type of information sought by law enforcement when making a business records request.   It would also inform the individual of the type of records that have been obtained in the past and the kind of information that is of national security interest.   This knowledge would enable them to structure their activities in a manner so as to avoid detection and possibly conceal such records from discovery.   Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(7)(E).

### Document 4 – Bates Pages:   EFF Section 215-111 through 112

(63)   Document 4 has 2 responsive pages and consists of a memorandum dated October 28, 2004.   It was drafted by the Deputy General Counsel of the FBI and addressed to NSLB

33

employees. The memorandum provides NSLB employees guidance on initiating and processing business records requests. Of the 2 pages, both have been withheld in full.

(64) Exemption (b)(5). Exemption (b)(5) has been asserted to protect material covered by the attorney-client privilege. The attorney-client privilege is appropriately asserted when legal advice of any kind is sought from a professional legal adviser in his or her capacity and the communications relating to that purpose are made in confidence to the client. The communications are permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived. This privilege encompasses confidential communications made to the attorney, not only by decision-making personnel, but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function. Disclosure of the two-way communication between FBI attorneys and personnel would impede the full disclosure of information that relates to the reasons why FBI personnel are seeking legal advice, which is necessary if the professional mission is to be accomplished. As a whole, the redactions taken pursuant to Exemption (b)(5), the attorney-client privilege, has been applied to this memorandum from the Deputy General Counsel. The Deputy General Counsel provides his/her legal interpretation and advice in applying 50 U.S.C. § 1861 to FBI practices. This communication was made in confidence and disclosure of its contents would impede FBI attorneys from freely providing information and legal guidance to different divisions within the FBI. Full and open communication is necessary to ensure that sound legal advice is provided. The FBI also withheld the information pursuant to the deliberative process privilege. The material contains opinions and advice regarding the initiating and processing of business records requests. Release of this type of information would have an inhibitive effect upon the development of policy and

administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision.   If agency personnel knew that their preliminary opinions and advice would be released for public consumption, they might be more circumspect in what they put in writing, and thereby, impede a candid discussion of the issues surrounding a decision. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(5).

(65)   Exemption (b)(6) and (b)(7)(C).   Exemption (b)(6) and (b)(7)(C) have been asserted to protect the names and/or identifying information of non-FBI federal government personnel such as DOJ employees.   The full names of two DOJ employees appear at the bottom of the memorandum.   The relevant inquiry is whether public access to this information would violate a recognized privacy interest and whether there is a public interest in releasing their identities.   Disclosure of their names could subject them to unauthorized inquiries and harassment, and would constitute a clearly unwarranted and unwarranted invasion of their personal privacy.   The rationale for protecting non-FBI federal employees is the same as that for FBI employees.   As previously stated, non-FBI federal personnel maintain a substantial privacy. The FBI determined that the individual's privacy interest is not outweighed by public interest in its disclosure.   Therefore, the FBI properly withheld this information pursuant to Exemptions (b)(6) and (b)(7)(C).

## Document 5 – Bates Pages:   EFF Section 215-1133 through 1135

(66)   Document 5 has 3 responsive pages and consists of email exchanges between FBI personnel in OGC regarding the ability to obtain business records orders in specific situations.   Of the 3 pages, all pages have been withheld in full.

35

(67)   Exemption (b)(5).   Exemption (b)(5) has been asserted to protect material covered by the attorney-client privilege.   The attorney-client privilege is appropriately asserted when legal advice of any kind is sought from a professional legal adviser in his or her capacity and the communications relating to that purpose are made in confidence to the client.   The communications are permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived.   This privilege encompasses confidential communications made to the attorney, not only by decision-making personnel, but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function.   Disclosure of the two-way communications between FBI attorneys and personnel would impede the full disclosure of information in relation to the client's reasons for seeking legal advice, and is necessary if the professional mission is to be accomplished.   As a whole, Exemption (b)(5), the attorney-client privilege, has been applied to emails between FBI attorneys and personnel.   The emails begin with an inquiry into the ability to obtain a business records order from a particular source and whether that source of records falls under the statute.   The email sought legal advice and guidance, and the initial as well as subsequent emails were made in confidence.   Disclosure of the email exchanges and its contents would impede FBI attorneys from freely providing information and legal guidance.   Such full and open communication is necessary to ensure that sound legal advice is provided.   Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(5).

(68)   Exemption (b)(5).   Exemption (b)(5) has also been applied to protect the deliberative process privilege.   The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation,

and other non-factual information prepared in anticipation of agency decision-making.   The

general purpose of the deliberative process privilege is to prevent injury to the quality of agency

decisions.   Thus, material that contains or was prepared in connection with the formulation of

opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or

recommendations may properly be withheld.   Release of this type of information would have an

inhibitive effect upon the development of policy and administrative direction of an agency because

it would chill the full and frank discussion between agency personnel regarding a decision.   If

agency personnel knew that their preliminary opinions, evaluations, and comments would be

released for public consumption, they might be more circumspect in what they put in writing, and

thereby, impede a candid discussion of the issues surrounding a decision.   The email exchange

occurred between FBI employees discussing their opinions and thoughts on the statutory meaning

of various terms, and how different meanings could impact internal practice.   The emails present

opinions, advice, and impressions.   The disclosure of these deliberative, pre-decisional

discussions would have an inhibiting effect upon the development of policy and would discourage

and inhibit candid discussion between FBI personnel.   Thus, the FBI has properly withheld this

information pursuant to Exemption (b)(5).

(69)   Exemptions (b)(6) and (b)(7)(C).   Exemptions (b)(6) and (b)(7)(C) have been

asserted to protect the names and/or identifying information of FBI personnel who are responsible

for day-to-day operations and policy considerations.   The publicity associated with the release of

their identities regarding the creation and implementation of FBI policies could trigger hostility

toward the employees involved.   FBI support personnel are assigned to handle tasks related to

official criminal investigations and/or assist in forming policies.   These individuals were, and

possibly are, in positions of access to material regarding intelligence investigations as well as

sensitive information, and therefore could become targets of harassing inquiries for unauthorized

access, if their identities are released.   The support personnel maintain a substantial privacy

interest in not having their identity disclosed.   The responsive material is an email exchange

between FBI personnel concerning the statutory meaning of terms and its practical implication on

obtaining certain types of business records.   Releasing their names would not provide any benefit,

and would constitute a clearly unwarranted invasion of personal privacy and could reasonably be

expected to constitute an unwarranted invasion of personal privacy.   Accordingly, the FBI

properly withheld this information pursuant to Exemptions (b)(6) and (b)(7)(C).

### Document 6 – Bates Pages:   EFF Section 215-1143 through 1214

(70)     Document 6 has 72 pages and consists of various documents including the

following:   an email exchange between FBI personnel concerning draft answers, to be used by the

Director, in responding to questions posed by Field Offices; email exchanges among FBI

personnel regarding a sample ex parte order for possible use in obtaining certain types of records;

email exchanges between FBI personnel concerning the proposed bill for re-authorization of

Section 215 and the requirement for minimization procedures; email communications between

FBI personnel seeking advice on the procedures for obtaining educational records; email

exchanges among FBI personnel seeking advice on obtaining certain records using Section 215;

email communications between FBI personnel regarding a discussion on the business records

statute and delegation authority; email exchanges between FBI personnel concerning a question on

National Security Letters and business records orders; email interactions between FBI personnel

regarding a draft document and recommended changes to FISA; email exchanges among FBI

38

personnel concerning FISA business records and FISA use rules; and a draft document providing guidance on obtaining business records orders.   Of the 72 pages, 32 pages have been WlF, 13 pages RIP, 3 pages released in full, 8 pages removed as duplicates, and 16 pages removed as outside the scope of the request.

(71)   Exemption (b)(1).   Exemption (b)(1) has been asserted to protect national security information.   Exemption (b)(1) protects from disclosure those records that are specifically authorized under the criteria established by an E.O. 13526.   Additionally, the records have to be properly classified and must follow the standards set forth in the E.O.   The FBI determined the information withheld (b)(1) on Bates page EFF Section 215-1146 relates to national security and has met the substantive requirement.   The same information involves intelligence activities used by the FBI.   More specifically, it contains the name of a foreign individual who was of investigative interest.   Public disclosure of this information would reveal the identity of the target and could negatively impact other national security investigations.   Additionally, the FBI followed procedural requirements.   The information was reviewed and met the following:   it was classified by an original classification authority; it is owned by and under the control of the United States; the information falls under one of the categories of information listed under E.O. 13526 § 1.4; and the original classification authority determined that the unauthorized disclosure of the information could reasonably be expected to result in damage to our national security.   The remaining parts of the page have been withheld pursuant to other statutory exemptions.   The FBI protected this information because it related to intelligence activities and methods, and the disclosure of it could reasonably be expected to cause serious damage to national security.   The FBI concluded that such information has been properly classified at the "Secret" level pursuant to

E.O. 13526 § 1.4(c).   Accordingly, the FBI appropriately withheld the information from disclosure pursuant to FOIA Exemption (b)(1).

(72)   Exemption (b)(5).   Exemption (b)(5) has been asserted to protect material covered by the attorney-client privilege.   The attorney-client privilege is appropriately asserted when legal advice of any kind is sought from a professional legal adviser in his or her capacity and the communications relating to that purpose are made in confidence to the client.   The communications are permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived.   This privilege encompasses confidential communications made to the attorney, not only by decision-making personnel, but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function.   Disclosure of the two-way communications between FBI attorneys and FBI personnel would impede the full disclosure of information that relate to the client's reasons for seeking legal advice, which is necessary if the professional mission is to be accomplished.   As a whole, the redactions taken pursuant to Exemption (b)(5), the attorney-client privilege, has been applied to these email exchanges between OGC attorneys and FBI personnel.   A detailed description of these documents will follow in ¶ 74.

(73)   Exemption (b)(5).   Exemption (b)(5) has also been applied to protect the deliberative process privilege.   The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation, and other non-factual information prepared in anticipation of agency decision-making.   The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions.   Thus, material that contains or was prepared in connection with the formulation of

40

opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld.   Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision.   If agency personnel knew that their preliminary opinions, evaluations, and comments would be released for public consumption, they might be more circumspect in what they put in writing, and thereby, impede a candid discussion of the issues surrounding a decision.   The email exchanges occurred between FBI employees and included discussions about personal opinions and thoughts on the legal meaning of statutory terms, how the meanings could impact practice, and deliberations over draft documents and proposed answers to QFRs.   The emails and attachments presented opinions, advice, and impressions.   The disclosure of these deliberative, pre-decisional discussions would have an inhibiting effect upon the development of policy and would discourage and inhibit candid discussion between FBI personnel.   Thus, the FBI has properly withheld this information pursuant to Exemption (b)(5).   A detailed description of these documents will follow in ¶ 74.

(74)     This set of documents begins with an email and attachment regarding draft answers, to be used by the Director, in responding to questions posed by Field Offices.[22]   The email is between two OGC attorneys and the document attached contains draft answers to questions regarding the Patriot Act and business records orders.   The email interactions were between two OGC attorneys and were sent in confidence.   Additionally, the email and attachment contain draft answers that were pre-decisional and did not reflect official FBI policy.   The second

---

22  Bates pages EFF Section 215-1143 through 1145

41

document consists of an email chain between FBI employees in OGC, and the Jacksonville and Washington Field Offices.[23]   In this exchange, FBI personnel, including OGC attorneys, discuss whether business records orders can be used to obtain certain types of records.   The OGC attorneys provide their personal opinions, legal interpretations of the statute, and guidance to the Jacksonville and Washington Field Offices for obtaining such documents.   In these communications, FBI personnel deliberate over the potential process for obtaining these types of records.   The emails have been withheld (b)(5) because they contain legal interpretations and guidance as well as personal opinions.[24]   The third document consists of emails between OGC attorneys and an attachment.   The email exchanges discuss the proposed Congressional bill and suggested changes to FISA.   They also discuss the potential impact that such changes could have on business records.[25]   The emails concern the re-authorization of the USA PATRIOT Act and the possible requirement for minimization procedures.   The attached document is a Congressional bill and is a draft version of Sections 501, 502, and 106A.   The attachment is a draft, and contains markups and suggestions by FBI personnel.   The email chain and attachment have been withheld (b)(5) because they consist of legal opinions and guidance from OGC attorneys.   Additionally, they include personal opinions of the proposed bill as well as markups and suggestions.   The fourth document is an email exchange between FBI personnel at the Washington and Jacksonville Field seeking advice and discussing the procedure for obtaining certain types of records.[26]   The withheld information is an opinion given by an FBI employee in relation to the use of an ex parte

---

23 Bates pages EFF Section 215-1146 through 1148
24 In a subsequent review, the FBI has determined the emails on Bates page EFF Section 215-1148 involve the deliberative process, so Exemption (b)(5) has been asserted in addition to Exemption (b)(7)(E).
25 Bates pages EFF Section 215-1150 through 1161
26 Bates pages EFF Section 215-1162 through 1163

court order and therefore, was withheld (b)(5).   The fifth document is an email exchange between an OGC attorney and FBI personnel at the Tampa Field Office seeking advice on obtaining certain records through the use of Section 215.[27]   The email sought legal advice and guidance on how to obtain a particular kind of business record and the OGC attorney provided his/her legal advice. The email also contains the attorney's opinions and evaluations.   The emails were withheld (b)(5) because they involved legal advice as well as the thoughts and opinion of an OGC attorney.   The sixth document consists of email exchanges between OGC attorneys regarding Section 215 and the delegation authority.[28]   They discuss statutory language and the legislative history of the delegation authority.   The attorneys also provide their legal interpretations and personal opinions. The communications were between OGC attorneys, made in confidence, and included personal opinions.   Therefore, the information was withheld using Exemption (b)(5).   The seventh document is an email exchange between attorneys in OGC and FBI personnel.   The FBI personnel sought legal guidance on the use of business records orders and whether such records can be used to obtain certain types of records.[29]   The email responses include legal guidance and advice from OGC attorneys, and were sent in confidence.   Therefore, the information was withheld (b)(5). The eighth document contains emails between OGC attorneys discussing the statutory language of 50 U.S.C. § 1861 (a)(3) and other proposed changes to FISA.[30]   The communications focus proposed statutory language and their interpretations.   Additionally, they discuss their opinions of the proposed FISA statute and present suggested changes.   They also deliberate over the rephrasing of various parts of the statute.   Attached to the emails is a draft document containing

---

27  Bates pages EFF Section 215-1183 through 1184
28  Bates pages EFF Section 215-1185 through 1188
29  Bates pages EFF Section 215-1189 through 1190
30  Bates pages EFF Section 215-1192 and 1198

FBI comments and recommended changes to 50 U.S.C. 1861 (a)(3).   The information in the emails and attachment were protected (b)(5) because of the attorney-client and deliberative process privilege.   The attachment was pre-decisional and the emails include the personal thoughts, opinions, and impressions of FBI personnel.   The ninth document consists of an email exchange between attorneys in OGC and FBI personnel at the Washington Field Office.   The emails consist of questions posed by the Washington Field Office to OGC attorneys regarding FISA use rules and its applicability to business records.[31]   The email communications contain legal advice from OGC attorneys to FBI personnel and were made in confidence.   Additionally, it included non-factual information such as the personal opinions and advice of FBI personnel.   The entire document was withheld entirely under the attorney-client and deliberative process privileges pursuant to Exemption (b)(5).   The tenth and final document was drafted with the purpose of providing guidance on obtaining business records orders. [32]   The draft was never finalized and has not been adopted as official FBI policy.   The entire document was withheld (b)(5) under the deliberative process privilege because it is a draft and does not reflect current or past FBI policy.

   (75)   Disclosure of the above email exchanges and attachments would impede FBI attorneys from freely providing information and legal guidance.   Such full and open communication is necessary to ensure that sound legal advice is provided.   Additionally, many of the emails presented opinions, advice, and impressions.   The disclosure of these deliberative, pre-decisional discussions would have an inhibiting effect upon the development of policy and would discourage and inhibit candid discussion between FBI personnel. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(5).

---

31 Bates pages EFF Section 215-1201 through 1203
32 Bates pages EFF Section 215-1204 through 1214

(76)   Exemptions (b)(6) and (b)(7)(C).   Exemptions (b)(6) and (b)(7)(C) have been asserted to protect the names and/or identifying information of FBI personnel who are responsible for the day-to-day operations such as formulating FBI policy.   The publicity associated with the release of their identities could trigger hostility toward the employees who were involved.   These individuals were, and possibly are, in positions of access to material regarding intelligence investigations as well as sensitive information, and therefore could become targets of harassing inquiries for unauthorized access, if their identities are released.   The support personnel maintain a substantial privacy interest in not having their identity disclosed.   The responsive material consists of email exchanges between FBI personnel concerning the statutory meaning of terms, their practical application, and seeking legal advice and guidance.   Releasing their names would not provide any benefit, and would constitute a clearly unwarranted invasion of personal privacy and could reasonably be expected to constitute an unwarranted invasion of personal privacy. Accordingly, the FBI properly withheld this information pursuant to Exemptions (b)(6) and (b)(7)(C).

(77)   Exemption (b)(7)(E).   Exemption (b)(7)(E) has been asserted in document 6 to protect law enforcement records or information that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for national security investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.   The withheld information details the procedure for obtaining certain types of records through the use of business records orders. [33]   This information, if it were to be released, would reveal techniques, the type of information sought, and the procedures used for

---

[33] Bates pages EFF Section 215-1147 through 1148

45

obtaining certain types of records.   Disclosure of this information would allow individuals to gain

valuable insight into the type of information sought by the FBI.   It would also inform them of the

type of records that can be obtained, and the procedure and techniques used in obtaining the

records.   This knowledge would enable them to structure their activities in a manner so as to avoid

detection and possibly conceal such records from discovery.   Accordingly, the FBI has properly

withheld this information pursuant to Exemption (b)(7)(E).   Additionally, (b)(7)(E) has been

asserted to protect secure internal email addresses of FBI personnel.[34]   Secure internal email

addresses are used by FBI personnel during the daily performance of their jobs.   Disclosure of this

information would expose the FBI to the possibility that computer-savy individuals could

compromise the effectiveness of the FBI's internal computer system by devising ways in which to

access – and tamper with – the system without detection.   Release of this information would

reveal vulnerable internal information and impede the effective use of such internal system.   The

FBI has properly withheld this information pursuant to Exemption (b)(7)(E) because the foregoing

information could reasonably be expected to impede the FBI's effectiveness of its law

enforcement techniques and procedures and potentially aid in circumvention of the law.   Lastly,

Exemption (b)(7)(E) has been asserted to protect the specific information that is needed when

applying for a business records order.[35]   The withheld information details the procedure and type

of information sought when obtaining an order business records.   This information would reveal

techniques, the type of information needed, and the procedures used.   Disclosure of this

information would allow individuals to gain valuable insight and enable them to structure their

---

34 Bates pages EFF Section 215-1191
35 Bates pages EFF Section 215-1209 through 1210

activities in a manner so as to avoid detection and possibly conceal such records from discovery. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(7)(E).

## CONCLUSION

(78)   The FBI has processed and released all reasonably segregable information from records responsive to plaintiff's request to the FBI.   The information that was withheld in full and withheld in part was done pursuant to FOIA Exemptions (b)(1), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).   The FBI carefully examined the responsive documents and determined the information withheld from plaintiff, if disclosed, could reasonably be expected to cause harm to our national security, reveal privileged information, cause an unwarranted and clearly unwarranted invasion of the personal privacy interests of FBI employees and non-FBI federal employees as well as disclose investigative techniques and procedures.   Accordingly, all reasonably segregable, non-exempt information has been released in response to plaintiff's FOIA request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through I attached hereto are true and correct copies. Executed this 16 day of November, 2012.

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia