Jennifer Lynch (SBN 240701)
*jlynch@eff.org*
Mark Rumold (SBN 279060)
*mark@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | Case No. 4:11-cv-05221-YGR |
| Plaintiff, | **NOTICE OF CROSS MOTION AND** |
| | **CROSS MOTION FOR SUMMARY** |
| v. | **JUDGMENT AND OPPOSITION TO** |
| | **DEFENDANT'S MOTION FOR** |
| DEPARTMENT OF JUSTICE, | **SUMMARY JUDGMENT** |
| Defendant. | Date: February 19, 2013 |
| | Time: 2:00 p.m. |
| | Oakland Courthouse |
| | Hon. Yvonne Gonzalez Rogers |

1

**NOTICE OF MOTION**

2    PLEASE TAKE NOTICE that on February 19, 2013, at 2:00 pm in the United States

3  Courthouse at Oakland, California, plaintiff, Electronic Frontier Foundation, will, and hereby does,

4  cross move this Court for summary judgment on all of its claims.

5    Pursuant to Federal Rule of Civil Procedure 56, EFF seeks a court order requiring the

6  Department of Justice, and its components, Office of Legal Counsel, National Security Division,

7  and Federal Bureau of Investigation, to release records under the Freedom of Information Act, 5

8  U.S.C. § 552. EFF respectfully asks that this Court issue an order requiring the government to

9  release all records improperly withheld from the public and to grant waiver of all fees associated

10  with the processing of that request. This cross motion is based on this notice of cross motion, the

11  memorandum of points and authorities in support of this cross motion, the declaration of Mark

12  Rumold and attached exhibits in support of this cross motion, and all papers and records on file

13  with the Clerk or which may be submitted prior to or at the time of the hearing, and any further

14  evidence which may be offered.

15

16  DATED:  December 14, 2012          Respectfully submitted,

17

18                            _____/s/ Mark Rumold_____
                              Mark Rumold
19                            Jennifer Lynch
                              ELECTRONIC FRONTIER FOUNDATION
20                            454 Shotwell Street
                              San Francisco, CA 94110
21                            Telephone: (415) 436-9333
                              Facsimile: (415) 436-9993
22
                              Attorneys for Plaintiff
23                            ELECTRONIC FRONTIER FOUNDATION

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.      SECTION 215 OF THE USA PATRIOT ACT ...................................................... 2

    II.    EFF'S FOIA REQUESTS AND DEFENDANT'S RESPONSES........................... 4

PLAINTIFF'S OBJECTIONS TO DEFENDANT'S IN CAMERA, EX PARTE
    SUBMISSIONS.................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

    I.      GENERAL REQUIREMENTS OF THE FREEDOM OF INFORMATION
           ACT ...................................................................................................... 7

           A.    Summary Judgment and this Court's *De Novo* Review ................................ 8

           B.    Agencies Seeking to Withhold Records Must Provide Public Justifications
               for Those Withholdings in the Form of a *Vaughn* Index and Supporting
               Affidavits .................................................................................................. 9

           C.    Agencies May Not Shield Secret Agency Law From Disclosure Under
               FOIA ...................................................................................................... 10

    II.    DEFENDANT HAS FAILED TO SATISFY ITS BURDEN TO WITHHOLD
           RECORDS UNDER EXEMPTION 1 ....................................................... 12

           A.    Because NSD Failed to Submit a *Vaughn* Index Describing the Withheld
               Records, Defendant Has Not Met its Procedural Burden to Withhold
               Records Under Exemption 1 ...................................................................... 12

           B.    Because the Withheld Records Consist Primarily of Agency Law, NSD
               Has Failed to Establish a Logical Connection Between Release of the
               Records and Harm to National Security ...................................................... 15

           C.    The Possibility of Bad Faith or Improper Classification Warrants Close
               Judicial Scrutiny of NSD's Withholding Claims ........................................ 16

    III.   DEFENDANT HAS FAILED TO SATISFY ITS BURDEN TO WITHHOLD
           RECORDS UNDER EXEMPTION 3 ....................................................... 17

    IV.   DEFENDANT HAS FAILED TO SATISFY ITS BURDEN TO WITHHOLD
           RECORDS UNDER EXEMPTION 5 ....................................................... 19

V.      DEFENDANT HAS FAILED TO COMPLY WITH FOIA'S SEGREGABILITY
        REQUIREMENT ............................................................................................... 20

VI.     FBI'S PUBLIC INTEREST FEE WAIVER DENIAL WAS IMPROPER ............ 22

CONCLUSION .......................................................................................................... 23

# TABLE OF AUTHORITIES

### Federal Cases

*Abbotts v. Nuclear Regulatory Comm'n,*
  766 F.2d 604 (D.C. Cir. 1985)..................................................................................... 15

*ACLU v. Dep't of Defense,*
  389 F. Supp. 2d 547 (S.D.N.Y. 2005) ........................................................................ 17

*ACLU v. Dep't of Defense,*
  396 F. Supp. 2d 459 (S.D.N.Y. 2005) .................................................................. 11, 19

*ACLU v. Dep't of Defense,*
  628 F.3d 612 (D.C. Cir. 2011)..................................................................................... 18

*ACLU v. Dep't of Justice,*
  265 F. Supp. 2d 20 (D.D.C. 1980) .............................................................................. 15

*ACLU v. ODNI,*
  2011 WL 5563520 (S.D.N.Y. Nov. 15, 2011) ...................................................... 13, 17

*Afshar v. Dep't of State,*
  702 F.2d 1125 (D.C. Cir. 1983)................................................................................... 10

*Allen v. CIA,*
  636 F.2d 1287 (D.C. Cir. 1980)..................................................................................... 6

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State,*
  818 F. Supp. 1291 (N.D. Cal. 1992) ...................................................................... 10, 21

*Billington v. Dep't of Justice,*
  233 F.3d 581 (D.C. Cir. 2000)....................................................................................... 6

*Birch v. USPS,*
  803 F.2d 1206 (D.C. Cir. 1986)..................................................................................... 9

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.,*
  601 F.3d 143 (2d Cir. 2010) .......................................................................................... 8

*Brennan Center for Justice v. Dep't of Justice,*
  697 F.3d 184 (2nd Cir. 2012) ...................................................................................... 10

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ...................................................................................................... 8

*Center for Int'l Environ. Law v. USTR,*
  845 F. Supp. 2d 252 (D.D.C. 2012).......................................................................11, 16

*Coastal States Gas Corp. v. Department of Energy,*
    617 F.2d 854 (D.C. Cir. 1980).................................................................. 10, 11, 19, 20

*Coldiron v. DOJ,*
    310 F. Supp. 2d 44 (D.D.C. 2004)........................................................................... 14

*Ctr. for Auto Safety v. EPA,*
    731 F.2d 16 (D.C. Cir. 1984)................................................................................... 20

*Ctr. for Medicare Advocacy v. Dep't of Health and Human Serv's.,*
    577 F. Supp. 2d 221 (D.D.C. 2008)......................................................................... 22

*Ctr. for Nat'l Sec. Studies v. Dep't of Justice,*
    331 F.3d 918 (D.C. Cir. 2003).................................................................................... 8

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
    532 U.S. 1 (2001) ........................................................................................................ 8

*Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
    489 U.S. 749 (1989) ................................................................................................ 7, 8

*Dep't of Justice v. Tax Analysts,*
    492 U.S. 136 (1989) .................................................................................................... 8

*Doyle v. FBI,*
    722 F.2d 554 (9th Cir. 1983) ..................................................................................... 6

*Elec. Privacy Info Ctr. v. Dep't of Justice,*
    511 F. Supp. 2d 56 (D.D.C. 2007)........................................................................... 14

*Feshbach v. SEC,*
    5 F. Supp. 2d 774 (N.D. Cal. 1997).......................................................................... 8

*Founding Church of Scientology v. NSA,*
    610 F.2d 824 (D.C. Cir. 1979).......................................................................... 13, 21

*Goland v. CIA,*
    607 F.2d 339 (D.C. Cir. 1978).................................................................................... 8

*Goldberg v. Dep't of State,*
    818 F.2d 71 (D.C. Cir. 1987)........................................................................ 9, 15, 16

*Hardy v. ATF,*
    631 F.2d 653 (9th Cir. 1980) ................................................................................... 11

*In re All Matters Submitted to the Foreign Intelligence Surveillance Court,*
    218 F. Supp. 2d 611 (U.S. FISC 2002) ................................................................... 21

*In re Sealed Case,*
    310 F.3d 717 (U.S. FISCR 2002) ............................................................................ 21

*Int'l Counsel Bureau v. Dep't of Defense,*
    723 F. Supp. 2d 54 (D.D.C. 2010)................................................................. 9, 12

*Joint Anti-Fascist Refugee Comm. v. McGrath,*
    341 U.S. 123 (1951) ..................................................................................... 6

*Jones v. FBI,*
    41 F.3d 238 (6th Cir. 1994) ......................................................................... 16

*Jordan v. Dep't of Justice,*
    591 F.2d 753 (D.C. Cir. 1978)...................................................................... 10

*Judicial Watch, Inc. v. U.S. Postal. Serv.,*
    297 F. Supp. 2d 252 (D.D.C. 2004)............................................................. 20

*Kamman v. IRS,*
    56 F.3d 46 (9th Cir. 1995) ........................................................................... 9

*King v. Dep't of Justice,*
    830 F.2d 210 (D.C. Cir. 1987)................................................................*passim*

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009)...................................................... 9, 12, 17, 18

*Lion Raisons v. Dep't of Agric.,*
    354 F.3d 1072 (9th Cir. 2004) ...................................................................... 6, 7

*McGehee v. Dep't of Justice,*
    800 F. Supp. 2d 220 (D.D.C. 2011)............................................................. 18

*Mead Data Cent. v. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977)...................................................................... 21

*Milner v. Dep't of the Navy,*
    131 S.Ct. 1259 (2011) ................................................................................. 11

*N.Y. Times v. Dep't of Defense,*
    499 F. Supp. 2d 501 (S.D.N.Y. 2007) ......................................................... 18

*Nat'l Wildlife Fed'n v. U.S. Forest Service,*
    861 F.2d 1114 (9th Cir. 1988) ..................................................................... 8

*New York Times v. Dep't of Justice,*
    2012 WL 1869396 (S.D.N.Y. May 17, 2012) .............................................. 18

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ..................................................................................... 7

*NLRB. v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ...................................................................................... 10, 11, 19, 20

*NRDC v. Dep't of Defense,*
    388 F. Supp. 2d 1086 (C.D. Cal. 2005) ........................................................................ 20

*Oglesby v. Dep't of the Army,*
    79 F.3d 1172 (D.C.Cir.1996) ........................................................................................ 13

*Ollestad v. Kelley,*
    573 F.2d 1109 (9th Cir. 1978) ........................................................................................ 9

*Pacific Fisheries, Inc. v. United States,*
    539 F.3d 1143 (9th Cir. 2008) ...................................................................................... 20

*Riser v. Dep't of State,*
    2010 WL 4284925 (S.D. Tex. 2010) ............................................................................ 18

*Sterling Drug, Inc. v. FTC,*
    450 F.2d 698 (1971) ................................................................................................ 10, 19

*Stokes v. Brennan,*
    476 F.2d 699 (5th Cir. 1973) .......................................................................................... 1

*Tax Analysts v. IRS,*
    117 F.3d 607 (D.C. Cir. 1997) .......................................................................... 10, 11, 19

*Tax Analysts v. IRS,*
    362 F. Supp. 1298 (D.D.C. 1973) ................................................................................... 1

*United States v. Thompson,*
    827 F.2d 1254 (9th Cir. 1987) ........................................................................................ 6

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) .............................................................................. *passim*

*Wiener v. FBI,*
    943 F.2d 972 (9th Cir. 1991) ................................................................................. *passim*

*Wilkinson v. FBI,*
    633 F. Supp. 336 (C.D. Cal. 1986) ............................................................................. 21

*Willamette Indus., Inc. v. United States,*
    689 F.2d 865 (9th Cir. 1982) ...................................................................................... 20

### Federal Statutes

5 U.S.C. § 552(a)(2) .......................................................................................................... 11

5 U.S.C. § 552(a)(4)(A)(iii) ............................................................................................. 22

5 U.S.C. § 552(a)(4)(B) ........................................................................................... 8

5 U.S.C. § 552(b) ............................................................................................... 7, 20

5 U.S.C. § 552(b)(1) ............................................................................................. 12

5 U.S.C. § 552(b)(1)(B) ........................................................................................ 16

5 U.S.C. 552(b)(5) ......................................................................................... 17, 19

50 U.S.C. § 1861(a) .............................................................................................. 18

50 U.S.C. § 1861(a)(1) ........................................................................................... 2

50 U.S.C. § 1861(b)(2)(A) ...................................................................................... 2

50 U.S.C. § 1861(c) ................................................................................................ 2

50 U.S.C. § 1861(d) ................................................................................................ 2

50 U.S.C. § 403 .................................................................................................... 18

50 U.S.C. § 403-1(i) ........................................................................................ 17, 18

50 U.S.C. §§ 1801, *et seq.* ...................................................................................... 2

USA PATRIOT Act (Pub. L. 107-56, 115 Stat. 272 (2001)) ................................... *passim*

## Legislative Materials

155 Cong. Rec. S9563 (daily ed. Sept. 17, 2009) (statement of Sen. Feingold) ............................... 3

157 Cong. Rec. S3258 (daily ed. May 24, 2011) ................................................... 3

157 Cong. Rec. S3346, S3360 (daily ed. May 25, 2011) (SA 339 to S. 1038, 112th Cong. (2011)) ................................................................................................................ 3

157 Cong. Rec. S3386 (daily ed. May 26, 2011) ................................................... 3

157 Cong. Rec. S3389 (daily ed. May 26, 2011) (statement of Sen. Udall) .................................... 3

E.O. No. 13,526 § 1.7(a) ...................................................................................... 16

Remarks of Sen. Richard Durbin, Senate Judiciary Committee "Executive Business Meeting," (October 1, 2009) ............................................................................................... 2

PLAINTIFF'S CROSS MSJ AND OPP TO DEFENDANT'S MSJ

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

"[S]ecret law is an abomination." *Stokes v. Brennan*, 476 F.2d 699, 702 n. 3 (5th Cir. 1973) (citation omitted); *see also Tax Analysts v. IRS*, 362 F. Supp. 1298, 1310 (D.D.C. 1973) (citation omitted). This case challenges the federal government's well-documented development of secret law by seeking the disclosure of Defendant Department of Justice's ("DOJ") legal interpretation and analysis of a federal surveillance statute, Section 215 of the USA PATRIOT Act. By filing this case – and the Freedom of Information Act requests on which it is based – Plaintiff Electronic Frontier Foundation ("EFF") seeks to shed light on Defendant's use and interpretation of Section 215, which – according to several Senators – has been secretly interpreted in a manner inconsistent with the plain meaning of the statute and in a way that leads to abuse and misuse. Properly construed, the FOIA was designed to compel disclosure of precisely this type of agency record.

Nevertheless, Defendant has failed to release a single record that sheds light on the agency's interpretation of its surveillance powers. Despite FOIA's aversion to secret law, Defendant now asks this Court to approve the complete withholding of the agency's secret legal analysis and interpretation. More troubling, still – Defendant urges this Court to countenance its withholding based on secret evidence and without the benefit of adversarial testing.

Defendant's claim, at its core, is this: the agency's secret interpretation may be withheld from the public because parts of responsive records might involve intelligence sources and methods used in national security investigations. However, EFF has not requested, nor does it seek, the disclosure of specific intelligence sources, methods, activities, or targets of national security investigations. EFF only seeks disclosure of the agency's legal analysis. Defendant claims every case citation, every line, every paragraph, every holding, and every binding legal opinion within the requested records must be withheld because the records, if disclosed, would reveal intelligence sources and methods that would threaten harm to our nation's security. Such extraordinary claims defy logic and are inconsistent with the FOIA's broad mandate of disclosure. For the reasons that follow, EFF respectfully urges this Court to deny Defendant's motion for summary judgment, grant

EFF's cross motion, and order the production of the withheld records responsive to EFF's FOIA request.

## BACKGROUND

### I.      SECTION 215 OF THE USA PATRIOT ACT

Section 215 of the USA PATRIOT Act, which amended the Foreign Intelligence Surveillance Act ("FISA") of 1978, 50 U.S.C. §§ 1801, *et seq.*, provides the Director of the FBI with the power to obtain a secret court order for "any tangible things" relevant to an authorized national security investigation. 50 U.S.C. § 1861(a)(1), (b)(2)(A). The orders, issued *ex parte* and under seal by the Foreign Intelligence Surveillance Court ("FISC"), are accompanied by a gag order, forbidding the recipient – such as telecommunication companies, credit card companies, hospitals, or educational institutions – from ever disclosing having received the order. 50 U.S.C. § 1861(c), (d).

In 2009, DOJ attorneys publicly disclosed that Section 215 orders were being used to support a "sensitive collection program." Declaration of Mark Rumold ("Rumold Decl."), Exhibit 1 (*Testimony of Todd Hinnen*, *House Judiciary Committee*, "*Hearing on the USA Patriot Act*," September 22, 2009) at 8.

Since this disclosure, elected officials briefed on the government's interpretation and use of Section 215 orders have openly questioned the legality and legitimacy of the government's legal interpretation; the efficacy of the intelligence collection program Section 215 supports; and the Executive Branch's candor with the American public.

In 2009, Senator Richard Durbin, a member of the Senate Judiciary Committee, stated that the government's use of "Section 215 is unfortunately cloaked in secrecy. Some day that cloak will be lifted, and future generations will ask whether our actions today meet the test of a democratic society: transparency, accountability, and fidelity to the rule of law and our Constitution." Remarks of Sen. Richard Durbin, Senate Judiciary Committee "Executive Business Meeting," (October 1, 2009).[1] Similarly, then-Senator Russ Feingold, a member of both the Senate Judiciary Committee

---

[1] *Available at* http://judiciary.senate.gov/resources/webcasts/index.cfm?changedate=09-28-09&p=all [Remarks begin at 68:00].

and the Senate Select Committee on Intelligence ("SSCI"), stated: "There is information about the use of Section 215 orders that I believe Congress and the American people deserve to know . . . at least basic information about how they have been used." 155 Cong. Rec. S9563 (daily ed. Sept. 17, 2009) (statement of Sen. Feingold).

In May 2011, two Senators on the SSCI again voiced concerns about the government's use of Section 215 orders. In a speech on the Senate floor, Senator Ron Wyden ominously declared:

> I have served on the Intelligence Committee for over a decade and I wish to deliver a warning this afternoon. When the American people find out how their government has secretly interpreted the PATRIOT Act, they are going to be stunned and they are going to be angry. . . . The fact is anyone can read the plain text of the PATRIOT Act. Yet many Members of Congress have no idea how the law is being secretly interpreted by the executive branch[.]

157 Cong. Rec. S3386 (daily ed. May 26, 2011). Senator Mark Udall echoed similar concerns about the scope of Section 215: "Congress is granting powers to the [E]xecutive [B]ranch that lead to abuse, and frankly, shield the [E]xecutive [B]ranch from accountability." 157 Cong. Rec. S3258 (daily ed. May 24, 2011); *see also* 157 Cong. Rec. S3389 (daily ed. May 26, 2011) (statement of Sen. Udall) (further noting that the executive's "official interpretation of" the nation's laws should not "be kept secret.").

When Section 215 was scheduled to expire in 2011, Senators Wyden and Udall co-sponsored an amendment to its reauthorization, requiring government officials to "not secretly reinterpret public laws and statutes" and to "not describe the execution of these laws in a way that misinforms or misleads the public." *See* 157 Cong. Rec. S3360 (daily ed. May 25, 2011) (SA 384 to S. 1038, 112th Cong. § 3 (2011)).

In a September 2011 letter, Senators Wyden and Udall again criticized DOJ officials for making "misleading statements pertaining to the government's interpretation of surveillance laws." Rumold Decl., Ex. 2 (*Letter from Sen. Ron Wyden and Sen. Mark Udall to Attorney General Eric Holder*, Sept. 21, 2011) at 1. The letter criticized DOJ's claims that Section 215 is analogous to grand jury subpoenas, which the Senators "consider[ed] highly misleading" and "provide[d] the public with a false understanding of how surveillance law is interpreted in practice." *Id.* The letter

-3-

also criticized DOJ's claims that Section 215 was not a "secret law;" however, the letter noted "when the government relies on significant interpretations of public statutes that are kept secret from the American public, the government is effectively relying on secret law." *Id*. at 2.

More recently, in March 2012, Senators Wyden and Udall, in a letter to Attorney General Holder, again noted that it "is a matter of public record that section 215, which is a public statute, has been the subject of secret legal interpretations . . . [contained in] opinions issued by the Foreign Intelligence Surveillance Court." Rumold Decl., Exhibit 3 (*Letter from Sen. Ron Wyden and Sen. Mark Udall to Attorney General Eric Holder*, Mar. 15, 2012) at 1. The letter noted that the American public has a "need and a right to know how [Section 215] is being interpreted, so that they can ratify or reject decisions made on their behalf." *Id*. at 1-2. "American laws," the letter continued, "should not be made public only when government officials find it convenient. They should be public all the time, and every American should be able to find out what their government thinks those laws mean." *Id*. at 2. The Senators also noted their increasing skepticism "about the actual value of the 'intelligence collection operation'" supported by Defendant's secret legal interpretation of Section 215. *Id*. at 3.

## II.   EFF'S FOIA REQUESTS AND DEFENDANT'S RESPONSES

By letter dated June 2, 2011, EFF submitted FOIA requests concerning Section 215 to Defendant and its components DOJ-National Security Division (NSD), Federal Bureau of Investigation (FBI), Office of Information Policy (OIP), and Office of Legal Counsel (OLC). First. Am. Compl. ¶ 14 (Dkt. No. 9). EFF broadly requested all records, created from January 1, 2004 to the date of the request, concerning Defendant's interpretation and use of Section 215. *Id*. EFF also requested that the requests be given expedited treatment and that all fees associated with the processing of the request be waived. *Id*. ¶ 15. Defendants OLC, OIP, and FBI agreed to expedite the processing of EFF's request. *Id*. ¶¶ 17, 20, 30. Despite granting EFF's request for expedited processing, over the course of nearly five months, Defendant produced only 14 pages of Congressional testimony. *Id*. ¶¶ 18, 22, 25, 35. EFF filed suit in October 2011.

To facilitate processing of EFF's request and this Court's review, EFF has agreed – on multiple occasions – to narrow the scope of its requests. *See* Def. Mot. at 3-5. The parties agreed summary judgment briefing would only concern records containing "significant legal analysis or interpretation of Section 215." *See* Letter from Steven Y. Bressler to the Court dated August 22, 2012 at 2 (ECF No. 32). Defendant identified several types of responsive records meeting this description, including:

(1) legal opinions or memoranda concerning or interpreting Section 215 of the USA Patriot Act;

(2) guidelines for government personnel regarding the use of Section 215;

(3) reports provided to Congress by the FBI or DOJ concerning or memorializing the Executive Branch's interpretation or use of Section 215;

(4) rulings, opinions, or memoranda of the FISC concerning or interpreting Section 215; and

(5) legal opinions or memoranda concerning or interpreting rulings, opinions or memoranda of the FISC interpreting Section 215[.]

*Id.*; Def. Mot. at 5.

NSD has withheld an undisclosed number of records containing "significant legal analysis" under Exemptions 1, 3, and 5 of FOIA. Declaration of Mark Bradley ("Bradley Decl.") ¶¶ 9, 13, 14.[2] EFF maintains its challenge to all records withheld by NSD. OLC identified two records containing substantial legal analysis of the Section 215, Declaration of Paul Colborn ("Colborn Decl. ¶ 13; EFF maintains its challenge to only one record, withheld in its entirety under Exemption 5. FBI also withheld a number of records responsive to EFF's FOIA request. *See* Declaration of David M. Hardy ("Hardy Decl.") ¶ 28. However, in the interest of narrowing the issues in this litigation for the parties and the Court, EFF withdraws its challenges to the FBI's withholdings.[3]

---

[2] All references to the "Bradley Declaration" are to the publicly available declaration.

[3] While EFF withdraws its challenge to the propriety of the FBI's withholdings, EFF continues to challenge FBI's denial of a public interest fee waiver in response to EFF's request. *See* Section IV, *infra* at 22. FOIA provides that "[d]ocuments shall be furnished without any charge . . . if disclosure . . . is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552 (a)(4)(A)(iii).

In summary, all records subject to the parties' cross motions contain "significant legal analysis or interpretation" of Section 215 and have been withheld in their entirety under either Exemption 1, 3, or 5 of FOIA. EFF respectfully seeks summary judgment on the grounds that Defendant may not shield a body of secret agency law behind a veil of secrecy.

## PLAINTIFF'S OBJECTIONS TO DEFENDANT'S *IN CAMERA, EX PARTE* SUBMISSIONS

EFF objects to Defendant's *in camera, ex parte* submissions in support of its motion for summary judgment. *See* Bradley Decl. at 3. At this stage in the litigation, Defendant's attempt to circumvent FOIA's disclosure requirements by relying on secret evidence is procedurally improper. To excuse its impropriety, Defendant, in a footnote, states that "*[i]n camera, ex parte* review of classified declarations in FOIA cases is common and appropriate." Def. Mot. at 12 n. 3. That is not the law in this circuit. *See, e.g.*, *Lion Raisons v. Dep't of Agric.*, 354 F.3d 1072, 1083 (9th Cir. 2004); *United States v. Thompson*, 827 F.2d 1254, 1258-59 (9th Cir. 1987) ("[E]x parte proceedings are anathema in our system of justice.").

As a general rule, "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring). While procedural irregularities inherent in FOIA cases may, in limited circumstances, warrant the use of *in camera, ex parte* declarations, these procedural irregularities do not alter the strong presumption against *in camera, ex parte* submissions. *See Billington v. Dep't of Justice*, 233 F.3d 581, 586 (D.C. Cir. 2000) (district court receipt of *in camera* declaration "is disfavored"); *Allen v. CIA*, 636 F.2d 1287, 1298 n. 63 (D.C. Cir. 1980) (*In camera* affidavits "do not permit [plaintiffs] to respond, and thus should be employed only where absolutely necessary.")

In the Ninth Circuit, *in camera, ex parte* declarations filed in FOIA cases may be relied upon only in the "'exceptional case' and only *after* 'the government has submitted as detailed public affidavits and testimony as possible.'" *Lion Raisins*, 354 F.3d at 1083 (emphasis added) (citing *Doyle v. FBI*, 722 F.2d 554, 556 (9th Cir. 1983)). Indeed, in both *Lion Raisins* and in *Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991), the Ninth Circuit reversed the decision of the district court "[b]ecause the district court failed to require the government submit as much

information as possible in the form of public declarations *before* relying on *in camera* review." *Lion Raisins* at 1084 (emphasis added); *Wiener*, 943 F.2d at 979 (noting that, on remand, the FBI's declarations must "afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest").

Defendant has turned this requirement on its head: instead of first attempting to provide a meaningful, public description of the withheld records and the justification for their withholding, Defendant instead begins by submitting evidence *in camera*, *ex parte*. The Bradley Declaration is bereft of any meaningful factual basis for either this Court or EFF to assess Defendant's withholding claims. *See* Bradley Decl. ¶¶ 9-14. The declaration contains nothing more than conclusory justifications for withholding; nor does it describe why Defendant cannot provide a more robust public accounting of the type and content of the withheld documents.

Accordingly, at this stage in the litigation, Defendant's *in camera*, *ex parte* submissions should not form a basis for this Court's decisions. *Wiener*, 943 F.2d at 979 (agency must disclose "'as much information as possible without thwarting the [claimed] exemption purpose'") (citing *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987)). Only after failing to meet its evidentiary burden on the public record, and providing valid justifications for that failure, should this Court permit Defendant to submit evidence for *in camera*, *ex parte* consideration.

## ARGUMENT

## I.     GENERAL REQUIREMENTS OF THE FREEDOM OF INFORMATION ACT

FOIA is intended to safeguard the American public's right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

FOIA requires disclosure of all agency records at the request of the public unless the records fall within one of nine narrow exemptions. *See* 5 U.S.C. § 552(b). These "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective

of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The exemptions "have been consistently given a narrow compass," and agency records that "do not fall within one of the exemptions are improperly withheld[.]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

### A.       Summary Judgment and this Court's *De Novo* Review

FOIA disputes involving the propriety of agency withholdings are commonly resolved on summary judgment. *See, e.g.*, *Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1115 (9th Cir. 1988) (same). Summary judgment is proper when the moving party shows that "there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Feshbach v. SEC*, 5 F. Supp. 2d 774, 779 (N.D. Cal. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party who bears the burden of proof on an issue at trial "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* "In contrast, a moving party who will not have the burden of proof on an issue at trial can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

A court reviews the government's withholding of agency records *de novo*, and the government bears the burden of proving records have been properly withheld. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. An agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted). All doubts as to whether a FOIA exemption applies are resolved in favor of disclosure. *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010).

Finally, in FOIA cases implicating national security, courts are to afford "some measure of deference to the executive" when assessing claims of withholding. *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003). However, "deference is not equivalent to acquiescence." *Int'l Counsel Bureau v. Dep't of Defense*, 723 F. Supp. 2d 54, 63 (D.D.C. 2010).

And this measured deference does not diminish the agency's obligation to satisfy its substantive and procedural obligations under FOIA, *see Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009), nor does it affect the court's "independent responsibility" to conduct a thorough de novo review. *Goldberg v. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987) (noting that Congress amended FOIA to clarify its "intent that courts act as an independent check on challenged classification decisions").

**B.    Agencies Seeking to Withhold Records Must Provide Public Justifications for Those Withholdings in the Form of a *Vaughn* Index and Supporting Affidavits**

When claiming one of FOIA's exemptions, the agency bears the burden of providing a "relatively detailed justification for assertion of an exemption and must demonstrate to a reviewing court that records are clearly exempt." *Birch v. USPS*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (citations omitted). An agency may submit affidavits to satisfy its burden, but "the government may not rely upon conclusory and generalized allegations of exemptions." *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (citations omitted). Typically, agencies are required to produce a specialized type of affidavit, known as a *Vaughn* Index,[4] which catalogues and describes the documents withheld from the requester. *Wiener*, 943 F.2d at 977. The purpose of an agency's *Vaughn* index and accompanying affidavits is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Wiener*, 943 F.3d at 977 (citing *King*, 830 F.2d at 219).

In *King*, the D.C. Circuit reviewed the case law applying *Vaughn*, emphasizing that:

> [s]pecificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment if they are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping." To accept an

---

[4] The *Vaughn* Index takes its name from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), where the D.C. Circuit first established the procedural requirements an agency must satisfy to justify withholding records in FOIA cases. After reviewing the procedural difficulties unique to FOIA litigation, the D.C. Circuit ordered the agency to create an index containing a description of each document, describing "which portions of the document are disclosable and which are allegedly exempt," and a "relatively detailed" justification for each withholding. *Id.* at 826-27. The procedures set forth in *Vaughn* have been adopted by every Circuit. *See, e.g.*, *Ollestad v. Kelley*, 573 F.2d 1109, 1110 (9th Cir. 1978) (adopting *Vaughn* requirements in the 9th Circuit).

inadequately supported exemption claim "would constitute an abandonment of the trial court's obligation under the FOIA to conduct a *de novo* review."

830 F.2d at 219 (citations omitted); *Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1296 (N.D. Cal. 1992) (citing *King*, 830 F.2d at 224) ("[T]he agency must describe '*each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information.'") (emphasis in original).

### C.     Agencies May Not Shield Secret Agency Law From Disclosure Under FOIA

In passing FOIA, Congress intended to open agency action to public scrutiny. To this end, both the provisions of FOIA and cases interpreting the law have evinced a powerful aversion to attempts to hide agency "law" from public disclosure. Indeed, "[o]ne of the principal purposes of the Freedom of Information Act is to eliminate secret law." *Jordan v. Dep't of Justice*, 591 F.2d 753, 781 (D.C. Cir. 1978) (Bazelon, J., concurring) (citation omitted).

Courts have variously described the characteristics of agency working law. The "working law" of an agency consists of "those policies or rules, and the interpretations thereof, that either create or determine the extent of the substantive rights and liabilities of a person." *Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983) (internal citations and quotations omitted). If a document contains the "considered statements of the agency's legal position," that document also constitutes the agency's "law." *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997); *see also NLRB. v. Sears, Roebuck & Co.*, 421 U.S. 132, 152-53 (1975) ("[W]orking law" consists of "the reasons which did supply the basis for an agency policy actually adopted."). Moreover, a document's precedential affect, or a document that provides guidance for future agency action, also suggests its status as agency "law." *See Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (1971) (To prevent the development of "secret law," FOIA requires disclosure of "orders and interpretations which [the agency] actually applies in cases before it.") Agency attempts to "protect behind a label" this type of binding agency law should not be tolerated. *Coastal States*, 617 F.2d at 869.

Cases discussing the "working law" principle of FOIA have primarily arisen in the Exemption 5 context. *See, e.g.*, *Brennan Center for Justice v. Dep't of Justice*, 697 F.3d 184 (2nd Cir. 2012). However, because the principle is rooted in the affirmative disclosure provisions of the

Act,[5] FOIA's aversion to secret agency law is equally applicable to all FOIA exemptions. *See, e.g.*, *Hardy v. ATF*, 631 F.2d 653, 657 (9th Cir. 1980) (agency "secret law" not exempt under Exemption 2);[6] *Center for Int'l Environ. Law v. USTR*, 845 F. Supp. 2d 252 (D.D.C. 2012) (ordering document containing agency's interpretation of the phrase "in like circumstances" declassified and released) (appeal pending); *ACLU v. Dep't of Defense*, 396 F. Supp. 2d 459, 461 (S.D.N.Y. 2005) (rejecting claim under Exemption 3 for OLC opinion containing "official administrative interpretations" of law).

This Court must evaluate Defendant's withholding claims against this strong aversion to agency secret law. As admitted by Defendant, the only records at issue in this case contain "significant legal analysis or interpretation" of Section 215. *Compare* Def. Mem. at 4 ("significant legal analysis"), *with Tax Analysts*, 117 F.3d at 617 (records containing agency's "considered statements of the agency's legal position" must be disclosed). The withheld records also constitute precedential legal opinions and guidance for government employees. *Compare* Def. Mot. at 5 (withholding "rulings, opinions, or memoranda of the FISC" and "guidelines for government personnel"); *with Coastal States*, 617 F.2d at 869 (working law consists of records that served as "guidance . . . and were retained and referred to as precedent.").

As discussed in more detail below in the context of Defendant's particular exemption claims, Defendant has failed to satisfy both its procedural and substantive obligations in this case. Defendant has failed to provide a *Vaughn* index for the withheld records and has provided almost no factual information for either this Court or EFF to assess the propriety of the agency's

---

[5] 5 U.S.C. § 552(a)(2) requires that agencies make "available for public inspection and copying" the "final opinions, including concurring and dissenting opinions," "statements of policy and interpretations which have been adopted by the agency," and "administrative staff manuals and instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2)(A)-(C). As the Supreme Court has noted, these provisions demonstrate "a strong congressional aversion to secret (agency) law . . . and represent[] an affirmative congressional purpose to require disclosure of documents which have the force and effect of law." *NLRB v. Sears, Roebuck & Co*, 421 U.S. 132, 153 (1975).

[6] *Milner v. Dep't of the Navy*, 131 S.Ct. 1259 (2011) eliminated the High 2 exemption asserted by the agency in *Hardy*. Nevertheless, the principle – that FOIA's various exemptions may not be asserted to withhold agency law – remains applicable.

withholdings. Moreover, the withheld records in this case contain the agency's working law, and Defendant provides no justification for the propogation of agency secret law under any exemption .

## II.   DEFENDANT HAS FAILED TO SATISFY ITS BURDEN TO WITHHOLD RECORDS UNDER EXEMPTION 1

Defendant NSD has withheld an undisclosed quantity of records, constituting a body of agency secret law, under Exemption 1, which permits agencies to withhold records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense" and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).

However, Defendant's withholdings under Exemption 1 fail for three reasons. First, Defendant has failed to provide a *Vaughn* index that describes individual records with any precision, and the Bradley Declaration fails to cure this defect. Second, Defendant has failed to establish a logical connection between withholding, in its entirety, the agency's working law for Section 215 and the need to protect classified intelligence activities. Finally, the possibility of agency bad faith – suggested by Senators' public condemnation of Defendant's interpretation and use of Section 215 – warrants this Court's searching *de novo* review of Defendant's classification decisions. For these reasons, Defendant has failed to carry its burden to withhold the agency's working surveillance law under Exemption 1.

### A.   Because NSD Failed to Submit a *Vaughn* Index Describing the Withheld Records, Defendant Has Not Met its Procedural Burden to Withhold Records Under Exemption 1

By refusing to provide EFF with a *Vaughn* index of withheld records, Defendant has failed to satisfy its procedural obligations under FOIA. The general requirements of specificity in agency affidavits and *Vaughn* indices are no less applicable in cases involving national security-sensitive information. "Even when applying [E]xemption 1, 'conclusory affidavits that . . . are overly vague or sweeping will not, standing alone, carry the government's burden.'" *Int'l Counsel Bureau*, 723 F. Supp. 2d at 63 (quoting *Larson*, 565 F. 3d at 864). "The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually

disclosing information that deserves protection." *Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996).

NSD's reliance solely on the Bradley Declaration does not cure its failure to provide EFF with a *Vaughn* index of withheld records. First, because Defendant has refused to describe the withheld records with any specificity, the Bradley Declaration necessarily fails to permit this Court and EFF with sufficient information to assess the agency's exemption claims on a document-by-document basis. *See ACLU v. ODNI*, 2011 WL 5563520, *6 (S.D.N.Y. Nov. 15, 2011) (rejecting exemption claims based on nearly identical Bradley Declaration). Moreover, the Bradley Declaration fails to reveal even basic information about the withheld records: NSD has provided no indication of (1) the number of documents that have been withheld; (2) the number of pages in those documents; (3) the date on which the documents were created or classified; (4) the existence or proportion of classified and non-classified information within each document; and (5) even a general description of the content of the withheld documents. In sum, the Bradley Declaration falls woefully short of providing the factual basis necessary for this Court and EFF to assess Defendant's withholding claims. *See Wiener*, 943 F.2d at 978-79 (rejecting withholdings under Exemption 1 where "[n]o effort is made to tailor the explanation to the specific document withheld"); *Founding Church of Scientology v. NSA*, 610 F.2d 824, 831 (D.C. Cir. 1979) (holding explanations insufficient that "fail[ed] to indicate even in the slightest *how* agency functions might be unveiled" and "lack[ed] so much as guarded specificity as to the certain functions and activities that might be revealed") (internal quotations omitted).

And Defendant cannot argue that its declarations "reveal[ed] as much detail as possible" about the withheld records. *Oglesby*, 79 F.3d at 1176. Indeed, in another FOIA case in which many of the same records are at issue, NSD provided the plaintiff, the ACLU, with some of the generic information absent from the Bradley Declaration's description of the records in this case. *Compare* Rumold Decl., Ex. 4 (Draft *Vaughn* index of documents withheld by NSD in *ACLU v. FBI*, 11-cv-07562) ("ACLU NSD *Vaughn*") at 3, *with* Bradley Declaration ¶ 8. Both the Bradley Declaration and the ACLU NSD *Vaughn* divide responsive records into four identical categories of records. *See*

-13-

Bradley Decl. ¶ 8; Rumold Decl., Ex 4 (ACLU NSD *Vaughn*). One category of withheld records is identically described in both the Bradley Declaration and the ACLU NSD *Vaughn*. *Compare* Bradley Decl. ¶ 8(d), *with* Rumold Decl., Exhibit 4 (ACLU NSD *Vaughn*) (description of category IV). However, the descriptions of the other three categories of records provided to EFF conspicuously lack date ranges for the material, the number of documents located, and the number of responsive pages within those documents. *Compare* Bradley Decl. ¶ 8(a)-(c), *with* Rumold Decl., Exhibit 4 (ACLU NSD *Vaughn*) (describing categories I – III). While the ACLU NSD *Vaughn* is by no means a model of specificity, it does provide concrete evidence that Defendant can disclose more information about the records than it has. In the absence of some explanation warranting the inconsistent treatment of the two descriptions, the Bradley Declaration is not entitled to deference. *See e.g., Elec. Privacy Info Ctr. v. Dep't of Justice*, 511 F. Supp. 2d 56, 66 (D.D.C. 2007) (agency affidavits only entitled to deference concerning claims "where those predictions are sufficiently detailed and do not bear any indicia of unreliability").

Beyond describing each withheld record with the requisite specificity, Defendant must also " explain how the material falls within one or more of the categories of classified information" and "explain how disclosure of the material in question would cause the requisite degree of harm." *King*, 830 F.2d at 224; *Wiener*, 943 F.2d 980 (Defendant must provide requester with "sufficient information . . . to contest the withholding agency's conclusion that disclosure will result in damage to the nation's security."). The Bradley Declaration fails to do so.

"An agency cannot meet its burden of justifying non-disclosure simply by invoking the phrase 'national security.' *Coldiron v. DOJ*, 310 F. Supp. 2d 44, 53 (D.D.C. 2004) (citation omitted). "Unless the agency discloses 'as much information as possible without thwarting the [claimed] exemption's purpose,' the adversarial process is unnecessarily compromised." *Id.* at 979 (citing *King,* 830 F.2d at 224. In the absence of more specifically tailored and sufficiently detailed *Vaughn* submission, the Bradley Declaration has not even approached the level of factual detail necessary to justify the withholding of responsive records under Exemption 1.

**B.     Because the Withheld Records Consist Primarily of Agency Law, NSD Has Failed to Establish a Logical Connection Between Release of the Records and Harm to National Security**

The disclosure of classified intelligence activities, sources, and methods cannot logically be reconciled with NSD's insistence that "significant legal analysis" must be withheld in its entirety. Exemption 1 "permits the government to withhold documents and portions of documents which have been properly classified pursuant to Executive Order." *Wiener,* 943 F.2d at 979. FOIA allows requesters to challenge the government's withholdings under Exemption 1 and "requires the district court to review the propriety of the classification, and places the burden on the withholding agency to sustain its Exemption 1 claims." *Wiener*, 943 F.2d at 980 (citing *Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 606 (D.C. Cir. 1985); *Goldberg*, 818 F.2d at 77 (noting that Exemption 1 does not relieve the courts of their "independent responsibility" to review the agency's decision). To justify withholding under Exemption 1, the Government bears the burden of demonstrating a "logical connection" between the information defendant seeks to withhold and the claimed exemption. *ACLU v. Dep't of Justice*, 265 F. Supp. 2d 20, 29 (D.D.C. 1980).

Even without an adequate factual record, it is evident that Defendant's claims under Exemption 1 are overbroad. Here, Defendant seeks to withhold hundreds or even thousands of pages of *legal analysis*, in its entirety, because, it claims, disclosure would reveal "intelligence activities." Def. Mot. at 9. Standing alone, however, this bald assertion fails even a deferential test of logic. EFF does not seek the release of descriptions of the "sensitive intelligence collection program" that Defendant supports with Section 215 orders, *Id.*; rather, EFF seeks only the legal interpretations and analysis used to support that program. Undeniably, *some* parts of those analyses will be so intermingled with classified factual information that the legal analysis cannot be separated from its factual basis; but Defendant provides no reason to support its claim that *no* part of those analyses can be separated.

Defendant has provided no reason why specific intelligence sources activities could not be redacted from its supporting legal analysis and released in part. Barring this, Defendant's claims of exemption fail the "test of reasonableness, good faith, specificity and plausibility." *Center for Int'l*

*Environ. Law*, 845 F. Supp. at 258 (ordering agency to declassify and release document) (appeal pending) (citation omitted). Consequently, Defendant's claims under Exemption 1 fail.

### C. The Possibility of Bad Faith or Improper Classification Warrants Close Judicial Scrutiny of NSD's Withholding Claims

Defendant has argued the material it withheld under Exemption 1 is "properly classified." Def. Mot. at 8-10. However, the government may not classify information—and thus may not withhold it under Exemption 1—to "conceal violations of the law;" to "prevent embarrassment;" "restrain competition;" or to "to prevent or delay the release of information that does not require protection." E.O. No. 13,526 § 1.7(a); *see Goldberg v. Dep't of State*, 818 F.2d at 77 (stating court's obligation to "ensure that information *not* be classified" for improper purposes) (emphasis in original). Because EFF's FOIA requests and this litigation stem primarily from the complaints of Senators about abusive, misleading, and even unconstitutional agency conduct, it is possible that at least some of the information withheld under Exemption 1 has not been classified properly. 5 U.S.C. § 552(b)(1)(B) (material withheld must be "in fact properly classified pursuant to such Executive order"). At a minimum, the Court should review the agencies' Exemption 1 claims with heightened scrutiny. *Jones v. FBI*, 41 F.3d 238, 242-43 (6th Cir. 1994) (Where evidence of "bad faith or illegality with regard to the underlying activities which generated the documents" exists[,] . . . it would be an abdication of the court's responsibility to treat the case in the standard way[.]").

As described above, Senators briefed on Defendant's interpretation and use of Section 215 have described it in no uncertain terms: the interpretation has "lead to abuse" and employs secrecy to "shield the Executive Branch from accountability," *supra* at 3-4; Defendants are accused of "misleading" and "misinform[ing]" the American public, *id.*; and Defendant's interpretations may fail the test of "transparency, accountability, and fidelity to the rule of law and our Constitution." *Id*. At minimum, these claims – all by Senators familiar with Defendant's interpretation and many of the records at issue in this case – surely suggest a searching review of the agency's classification claims.

While EFF acknowledges that there may be *some* legitimately classified material within these records, given the utter lack of *any* factual basis on which to gauge Defendant's claims, the Court should be particular wary that parts of withheld records may be classified for an improper purpose. *See ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 564-65 (S.D.N.Y. 2005) (noting that inadequate supporting affidavits "raise concern" that defendant's withholding of classified information "is less to protect intelligence activities, sources or methods than to conceal possible 'violations of law' . . . or 'inefficiency' or 'embarrassment'" to the agency); *see also ACLU v. ODNI*, 2011 WL 5563520 at *8 (finding NSA declaration failed to show how disclosure of records related to "*misuse* and abuse" of the FISA Amendments Act would pose a risk to national security (emphasis in original)).

Given the agencies' inadequate *Vaughn* submissions and the context of the material at issue, they have not justified their withholdings under Exemption 1 and are not entitled to summary judgment.

## III. DEFENDANT HAS FAILED TO SATISFY ITS BURDEN TO WITHHOLD RECORDS UNDER EXEMPTION 3

Exemption 3 permits withholding where records are "specifically exempted from disclosure" by another federal statute. 5 U.S.C. § 552(b)(3). Defendant bears the burden of demonstrating "that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson*, 565 F.3d at 865. Defendant relies on the National Security Act of 1947, 50 U.S.C. § 403-1(i), as amended, to withhold responsive records. Def. Mot. at 11. However, Defendant's claim of exemption under this statute fails for two reasons: (1) the Department of Justice is not authorized to withhold information under this statute; and (2) even if properly invoked, Defendant has failed to demonstrate that *all* withheld material falls within the statute's reach.[7]

First, Defendant provides no authority suggesting that the Department of Justice may properly invoke 50 U.S.C. § 403-1(i) on its own authority. The statute itself provides that the

---

[7] EFF concedes that 50 U.S.C. § 403-1(i), properly invoked, is a withholding statute within Exemption 3's reach.

"Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." *Id*. Defendant has submitted nothing that indicates the Director of National Intelligence has exercised its authority to protect the information at issue in this case.

Nor has Defendant provided any statute, regulation, or case suggesting that the Department of Justice may assert the statute on its own behalf. NSD's assertion of the statute is particularly perplexing given that Section 215 only permits the Director of the FBI (or his designee) to apply for business records orders. 50 U.S.C. § 1861(a). Yet the FBI has not asserted Exemption 3 to withhold any information at issue in this case. *See* Hardy Decl. ¶ 26.[8]

No case cited by Defendant provides support for DOJ's sole invocation of the statute, either. *See* Def. Mot. at 11 (citing *ACLU v. Dep't of Defense*, 628 F.3d 612, 619, 625 (D.C. Cir. 2011) (involving CIA assertion of 50 U.S.C. § 403-1(i)); *Larson*, 565 F.3d at 865, 868 (involving NSA and CIA assertion of 50 U.S.C. § 403-1(i); *N.Y. Times v. Dep't of Defense*, 499 F. Supp. 2d 501, 507 n. 3, 512 (S.D.N.Y. 2007) (upholding DOJ assertion of § 403-1(i) where Director of National Intelligence submitted affidavit).[9] If Defendant is asserting Exemption 3 on behalf of another agency, then that agency must assert, on the public record, why the information contained within responsive records is allegedly exempt. *See, e.g.*, *Riser v. Dep't of State*, 2010 WL 4284925, *4 (S.D. Tex. 2010) (rejecting withholding claim under 50 U.S.C. § 403-1(i) where State Department asserted statute "'pursuant to instruction from the CIA FOIA Office")'. Defendant's unprecedented assertion of the National Security Act should not be casually accepted in passing.

Second, and identical to Defendant's overbroad assertion of Exemption 1, its claim under Exemption 3 that disclosure of *any* information contained within the responsive records would

---

[8] Indeed, as a component within the Department of Justice, it is not at all apparent that FBI could assert the National Security Act: Plaintiff's review of FOIA cases involving the National Security Act and 50 U.S.C. § 403 did not reveal a single instance where the FBI invoked the statute to withhold its own "intelligence sources and methods" or those of another DOJ component. *See e.g.*, *McGehee v. Dep't of Justice*, 800 F. Supp. 2d 220, 231-32 (D.D.C. 2011) (to justify FBI withholding under 50 U.S.C. § 403-1(i), CIA submitted declaration).

[9] Defendant cites *N.Y. Times v. Dep't of Justice*, 2012 WL 1869396 (S.D.N.Y. May 17, 2012) in support of its Exemption 3 claim. In that case, while the assertion of the National Security Act was made solely by the DOJ, the plaintiff did not challenge the DOJ's *authority* to assert the statute, but rather the statute's application to the withheld records.

reveal "intelligence sources and methods" is unavailing. *See* Section II(B), *supra* at 14-15. Defendant provides no legitimate, plausible, or logical reason that every word, of every line, of every page of information within legal analysis would reveal sensitive intelligence sources and methods. *See ACLU v. Dep't of Defense*, 396 F. Supp. 2d 459 (S.D.N.Y. 2005) (rejecting Exemption 3 claim). Accordingly, Defendant's withholding claims under Exemption 3 fail.

## IV. DEFENDANT HAS FAILED TO SATISFY ITS BURDEN TO WITHHOLD RECORDS UNDER EXEMPTION 5

Defendant has improperly asserted Exemption 5 to withhold a final, binding legal statement issued by the Office of Legal Counsel in response to a question from the Department of Commerce. Colborn Decl. ¶¶ 13-14. Exemption 5 provides a narrow exception for "inter-agency or intra-agency" records that would "not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). One of the privileges incorporated into Exemption 5 protects records that reflect an agency's "deliberative process"—that is, records reflecting the "opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150 (internal citations omitted). Even if a document is protected by the deliberative process privilege at the time it is prepared, however, the document can "lose that status if it is adopted, formally or informally, as the agency position on an issue[.]" *Coastal States*, 617 F.2d at 866.

Defendant's withholding of the OLC memorandum under Exemption 5 is improper because the document constitutes the binding legal interpretation of the Executive Branch. *See Tax Analysts*, 117 F.3d at 617 (agency's "considered statements of the agency's legal position" cannot be withheld under Exemption 5). OLC legal opinions are "*controlling* legal advice to Executive Branch officials." Rumold Decl., Exhibit 5 (*Memorandum for Attorneys of OLC, OLC Best Practices*, July 16, 2010) at 1 (emphasis added). Thus, OLC opinions, when they form the basis for agency action, are not "the ideas and theories which go into the making of the law," but the agency's "law itself," *Sterling*, 450 F.2d at 708, and cannot be withheld under Exemption 5.

From the information provided by the Colborn Declaration, it is apparent that the OLC memorandum provided the basis for further Executive Branch action. *See Judicial Watch, Inc. v.*

*U.S. Postal. Serv.*, 297 F. Supp. 2d 252, 261 (D.D.C. 2004) (document unavailable for withholding under Exemption 5 if "adopted formally or informally, as the agency position on the issue" or "used by the agency in its dealings with the public."). The opinion was subsequently distributed to both the SSCI and to the FISC, strongly suggesting Executive Branch reliance on the memorandum. *See* Colborn Decl. ¶ 17. Indeed, the memorandum was "provided to the [FISC] in connection with an application submitted by the Department in a matter that was concluded." *Id*. In this capacity, the memo presumably provided not just a legal *opinion*, but legal *support*, for the Executive Branch's application to the FISC. The OLC memorandum constitutes the "working law" of the agency: it provided "the reasons which did supply the basis for an agency policy actually adopted." *Sears*, 421 U.S. at 152.

Agencies are not allowed "to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege." *Coastal States*, 617 F.2d at 867. Defendant is not permitted to shield the OLC memorandum from disclosure, simply "because it is not designated as 'formal,' 'binding,' or 'final.'" *Id*. For this reason, Defendant has improperly withheld the OLC opinion under Exemption 5.[10]

## V.   DEFENDANT HAS FAILED TO COMPLY WITH FOIA'S SEGREGABILITY REQUIREMENT

Because FOIA's focus "is information, not documents, . . . the agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Willamette Indus., Inc. v. United States*, 689 F.2d 865, 867 (9th Cir.1982). FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *Pacific Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). The "'segregability' requirement applies to all documents and all exemptions in the FOIA." *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984).

In this circuit, "the district court must review the agency's 'segregability' decisions on a

---

[10] NSD has also withheld a document under Exemption 5. Bradley Decl. ¶ 14. However, Defendant has provided no description of the document, beyond asserting the privilege. While EFF maintains its challenge to the document's withholding, it is impossible to intelligently address the privilege without *some* description of the record.

document-by-document basis." *NRDC v. Dep't of Defense,* 388 F. Supp. 2d 1086, 1096 (C.D. Cal. 2005) (citing *Wiener*) (emphasis added). "The district court must make specific factual findings on the issue of segregability to establish that the required *de novo* review of the agency's withholding decision has in fact taken place." *Alliance for Nuclear Arms Control*, 818 F. Supp. at 1296 (citing *Wiener*). Indeed, "[i]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Church of Scientology v. Dep't of the Army*, 611 F.2d at 738, 744 (9th Cir. 1980) (citations and internal quotation marks omitted).

Defendant has utterly failed to provide this court with the requisite factual basis to assess, *de novo*, the agency's segregability decisions on a document-by-document basis. As a threshold matter, Defendant has refused to disclose how many documents are even at issue in the case, rendering this Court's document-by-document assessment impossible. Further, Defendant makes no attempt to explain why documents that consist primarily of legal analysis also contain no segregable information. In other circumstances, legal analysis supporting even the most sensitive intelligence collection programs has been partially released. *See* Rumold Decl., Exhibit 6 (*Memorandum for the Attorney General, Review of the Legality of the [redacted] Program*, May 6, 2004) (OLC opinion providing legal analysis of NSA spying program); Exhibit 7 (*Memorandum for the Attorney General*, Nov. 2, 2001) (preliminary OLC opinion providing legal analysis of NSA spying program). Opinions of the FISC, too, have been released with redactions. *See In re All Matters Submitted to the Foreign Intelligence Surveillance Court*, 218 F. Supp. 2d 611 (U.S. FISC 2002); *In re Sealed Case*, 310 F.3d 717 (U.S. FISC Rev. 2002); Rumold Decl., Exhibit 8 (*In re Motion for Release of Records*, Dkt. No. 07-01 (U.S. FISC Dec. 11, 2007); Exhibit 9 (*In re: Directives [redacted] Pursuant to Section 105B of the Foreign Intelligence Surveillance Act*, Dkt. No. 08-01 (U.S. FISC of Rev. 2008). Defendant provides no information about why such redactions are not feasible for the records at issue in this case.

Instead, in conclusory fashion, Defendant justifies its segregability analysis for potentially hundreds, or even thousands, of pages of responsive records with a short, three-sentence paragraph.

Bradley Decl. ¶ 12; *but see, Wilkinson v. FBI*, 633 F. Supp. 336, 350 (C.D. Cal. 1986) (denying summary judgment where FBI offered only "three conclusory sentences" in support of its segregability determinations). "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Mead Data Cent. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Defendant has failed to do so here. Consequently, Defendant has failed to satisfy its burden and is not entitled to summary judgment.

## IV.    FBI'S PUBLIC INTEREST FEE WAIVER DENIAL WAS IMPROPER

While EFF withdraws its challenge to the propriety of the FBI's withholdings, EFF continues to challenge FBI's denial of a public interest fee waiver in response to EFF's request. FOIA provides that "[d]ocuments shall be furnished without any charge . . . if disclosure . . . is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii).

EFF's FOIA requests noted the significant concerns raised by elected officials concerning the government's use of Section 215, how the requested records would shed light on the government's use of the provision, and how EFF did not have a commercial interest in the requested information. *See* Rumold Decl., Exhibit 10 (EFF FOIA Request to FBI) at 9-10. The FBI denied EFF's fee request on the grounds that "a significant amount of information about Section 215" had previously been released. Rumold Decl., Exhibit 11 (FBI Fee Waiver Denial). EFF timely appealed FBI's denial. Rumold Decl., Exhibit 12 (EFF Fee Waiver Appeal). OIP rejected EFF's appeal on the grounds that the FBI's fee waiver denial was "premature." Rumold Decl., Exhibit 14 (OIP Appeal Determination). FBI has refused to grant EFF's fee waiver request.

Because of the nature of the requested records and the information provided to FBI concerning the public's interest in the material, FBI should have granted EFF's fee waiver request. *See Ctr. for Medicare Advocacy v. Dep't of Health and Human Serv's.*, 577 F. Supp. 2d 221 (D.D.C. 2008) ("[P]laintiff's fee waiver request should have been evaluated based on the potential

contribution the *requested* information would have on the public's understanding, and not on the fact that some of the documents were publicly available.") (emphasis added).

## CONCLUSION

For all the foregoing reasons, the Court should deny Defendant's motion for summary judgment, grant EFF's motion for summary judgment, and order Defendant to immediately produce, with appropriate redaction (if any), all records responsive to EFF's FOIA request.

DATED:  December 14, 2012                    Respectfully submitted,


                                             _____/s/ Mark Rumold_____
                                             Mark Rumold
                                             Jennifer Lynch
                                             ELECTRONIC FRONTIER FOUNDATION
                                             454 Shotwell Street
                                             San Francisco, CA 94110
                                             Telephone: (415) 436-9333
                                             Facsimile: (415) 436-9993

                                             Attorneys for Plaintiff
                                             ELECTRONIC FRONTIER FOUNDATION