# Exhibit 3

# Exhibit 3

# United States Senate
WASHINGTON, DC 20510

March 15, 2012

The Honorable Eric Holder
Attorney General
United States Department of Justice
Washington, D.C.  20530

Dear Attorney General Holder:

We have discussed the dangers of relying on secret interpretations of public laws with
you on multiple occasions, both through correspondence and in person.  While we know
that you are generally aware of our views on this subject, we feel obliged to comment
specifically on the Justice Department's recent attempt to seek dismissal of two lawsuits
that have been filed under the Freedom of Information Act and that specifically pertain to
this problem of secret law.

The two lawsuits (filed by the New York Times and the American Civil Liberties Union)
seek to obtain information about how the United States government has interpreted the
text of the USA Patriot Act, specifically section 215 of that Act, the controversial
"business records" provision.

It is a matter of public record that section 215, which is a public statute, has been the
subject of secret legal interpretations.  The existence of these interpretations, which are
contained in classified opinions issued by the Foreign Intelligence Surveillance Court (or
"FISA Court") has been acknowledged on multiple occasions by the Justice Department
and other executive branch officials.

We believe most Americans would be stunned to learn the details of how these secret
court opinions have interpreted section 215 of the Patriot Act.  As we see it, there is now
a significant gap between what most Americans think the law allows and what the
government secretly claims the law allows.  This is a problem, because it is impossible to
have an informed public debate about what the law should say when the public doesn't
know what its government thinks the law says.

As we have said before, we believe that it is entirely legitimate for government agencies
to keep certain information secret.  Americans acknowledge that their government can
better protect national security if it is sometimes allowed to operate in secrecy and as
such, they do not expect the Obama Administration to publish every detail about how
intelligence is collected any more than early Americans expected George Washington to
tell them his plans for observing troop movements at Yorktown.  However, in a
democratic society – in which the government derives its power from the consent of the
people – citizens rightly expect that their government will not arbitrarily keep
information from them.  Americans expect their government to operate within the
boundaries of publicly-understood law, and as voters they have a need and a right to

know how the law is being interpreted, so that they can ratify or reject decisions made on their behalf. To put it another way, Americans know that their government will sometimes conduct secret operations, but they don't think that government officials should be writing secret law.

While the executive branch has worked hard to keep the government's official interpretation of the Patriot Act secret from the American public it has, to its credit, provided this information in documents submitted to Congress. However, these documents are so highly classified that most members of Congress do not have any staff who are cleared to read them. As a result, we can state with confidence that most of our colleagues in the House and Senate are unfamiliar with these documents, and that many of them would be surprised and angry to learn how the Patriot Act has been interpreted in secret.

A number of the senators who are familiar with these secret legal interpretations (including the two of us) have pressed the executive branch to declassify these interpretations so that Congress and the public can have an informed debate about the proper scope of the law. We have personally raised this issue in meetings, hearings, and correspondence (both classified and unclassified) with senior officials (including you) on many occasions over the years, thus far to no avail. It was initially encouraging when the Department of Justice and the Office of the Director of National Intelligence wrote to Senator Rockefeller and Senator Wyden in August 2009 to announce the establishment of a regular process for reviewing, redacting and releasing significant opinions of the FISA Court. Two and a half years later, however, this "process" has produced literally zero results. Not a single redacted opinion has been released.

The crux of the Justice Department's argument for keeping the official interpretation of the law secret is that this secrecy prevents US adversaries from understanding exactly what intelligence agencies are allowed to do. We can see how it might be tempting to latch on to this chilling logic, but we would note that it would then follow that all of America's surveillance laws should be secret, because that would make it even harder to guess how the United States government collects information. For example, when Congress passed the Foreign Intelligence Surveillance Act in 1978 it would have been useful to keep that law secret from the KGB, so that Soviet agents would not know how the FBI was allowed to track them. But American laws should not be made public only when government officials find it convenient. They should be public all the time, and every American should be able to find out what their government thinks those laws mean. We recognize that this obligation to be transparent with the public can be a challenge, but avoiding that challenge by developing a secret body of law is not an acceptable solution.

The Justice Department's motion to dismiss these Freedom of Information Act lawsuits argues that it is the responsibility of the executive branch to determine the best way to protect the secrecy of intelligence sources and methods. While this is indeed a determination for the executive branch to make, we are concerned that the executive branch has developed a practice of bypassing traditional checks and balances and treating these determinations as dispositive in all cases. In other words, when intelligence

officials argue that something should stay secret, policy makers often seem to defer to them without carefully considering the issue themselves.  We have great respect for our nation's intelligence officers, the vast majority of whom are hard-working and dedicated professionals.  But intelligence officials are specialists – it is their job to determine how to collect as much information as possible, but it is not their job to balance the need for secrecy with the public's right to know how the law is being interpreted.  That responsibility rests with policy makers, and we believe that responsibility should not be delegated lightly.

We would also note that in recent months we have grown increasingly skeptical about the actual value of the "intelligence collection operation" discussed in the Justice Department's recent court filing regarding the pending lawsuits.  This has come as a surprise to us, as we were initially inclined to take the executive branch's assertions about the importance of this "operation" at face value.  We will provide more detail about this skepticism in classified correspondence.

We hope that you will reconsider the Justice Department's stance on the issue of secret legal interpretations, as we continue to believe that this stance is contrary to core principles of American democracy and will serve our nation quite poorly over the long term.  Thank you for your attention to this matter.

Sincerely,

Ron Wyden
United States Senator

Mark Udall
United States Senator