Mark Rumold (SBN 279060)
*mark@eff.org*
Jennifer Lynch (SBN 240701)
*jlynch@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | Case No. 4:11-cv-05221-YGR |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| DEPARTMENT OF JUSTICE, | Date: February 19, 2013 |
| Defendant. | Time: 2:00 p.m. |
| | Place: Courtroom 5, 2nd Floor |
| | Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

SUPPLEMENTAL PROCEDURAL AND FACTUAL INFORMATION ........................................ 1

ARGUMENT ............................................................................................................................ 2

I.   THE BRADLEY DECLARATION STILL FAILS TO PROVIDE AN ADEQUATE
     FACTUAL BASIS TO SUPPORT THE WITHHOLDING OF THOUSANDS OF
     PAGES OF NSD RECORDS IN THEIR ENTIRETY ................................................... 3

     A.   This Court's Institutional Expertise, the Bradley Declarations'
          Inconsistencies, and the Failure to Account for Contrary Record Evidence
          Mitigate the Deference Typically Owed Defendant's Affidavits ................... 3

     B.   The Bradley Declarations Are Still Far Too Vague and Sweeping to Support
          Summary Judgment ...................................................................................... 5

     C.   Because Defendant Has Failed to Provide as Much Information on the
          Public Record as Possible, this Court Should Not Rely on the *In Camera*,
          *Ex Parte* Bradley Declaration ...................................................................... 6

II.  NEITHER EXEMPTION 1 NOR EXEMPTION 3 PERMIT DEFENDANT TO
     WITHHOLD THE LAW ITSELF ............................................................................... 7

     A.   Properly Construed, the Law – Whether in Statute, a Court's Opinion, or an
          Agency's "Working Law" – Cannot be Subject to Any of FOIA's
          Exemptions .................................................................................................. 8

     B.   The Law Itself Cannot Constitute an "Intelligence Source or Method" and,
          Thus, Does Not Logically Fall Within Exemptions 1 or 3 ........................... 10

III. DOJ CANNOT INVOKE THE NATIONAL SECURITY ACT TO WITHHOLD
     RECORDS UNDER EXEMPTION 3 ......................................................................... 11

IV.  THE OLC MEMO CANNOT BE WITHHELD UNDER THE DELIBERATIVE
     PROCESS PRIVILEGE BECAUSE IT CONSTITUTES THE DOJ'S WORKING
     LAW OR, ALTERNATIVELY, BECAUSE IT HAS BEEN ADOPTED AND
     RELIED UPON BY THE AGENCY ........................................................................... 12

V.    DEFENDANT'S FAILURE TO ADDRESS THE SEGREGABILITY OF NON-EXEMPT INFORMATION PRECLUDES SUMMARY JUDGMENT IN ITS FAVOR ........................................................................................................... 13

VI.    THIS COURT MAY RELY ON *IN CAMERA* REVIEW OF THE WITHHELD RECORDS TO AID ITS *DE NOVO* REVIEW ......................................................... 14

CONCLUSION ............................................................................................................... 15

PLAINTIFF'S REPLY ISO CROSS MSJ
CASE NO. 4:11-CV-05221-YGR

1

## TABLE OF AUTHORITIES

2

### Federal Cases

3

*ACLU v. Dep't of Defense,*
    396 F. Supp. 2d 459 (S.D.N.Y. 2005) ........................................................... 9

4

5

*ACLU v. Dep't of Justice,*
    681 F.3d 61 (2nd. Cir. 2012) ...................................................................... 9

6

*ACLU v. FBI,*
    429 F. Supp. 2d 179 (D.D.C. 2006) ............................................................ 5

7

8

*ACLU v. ODNI,*
    2011 WL 5563520 (S.D.N.Y. Nov. 15, 2011) ........................................ 3, 11

9

*Allen v. CIA,*
    636 F.2d 1287 (D.C. Cir. 1980) ................................................................ 14

10

11

*Banks v. Manchester,*
    128 U.S. 244 (1888) ................................................................................. 7

12

*Bonner v. Dep't of State,*
    928 F.2d 1148 (D.C. Cir. 1991) ................................................................ 15

13

14

*Campbell v. Dep't of Justice,*
    164 F.3d 20 (D.C .Cir. 1998) ................................................................ 3, 14

15

16

*CIEL v. USTR,*
    505 F. Supp. 2d 150 (D.D.C. 2007) .......................................................... 11

17

*CIEL v. USTR,*
    845 F. Supp. 2d 252 (D.D.C. 2012) ...................................................... 9, 11

18

19

*Coastal States Gas Corp. v. Dep't of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) ................................................................ 13

20

21

*Coldiron v. Dep't of Justice,*
    310 F. Supp. 2d 44 (D.D.C. 2004) ............................................................ 3

22

23

*Ctr. for Auto Safety v. EPA,*
    731 F.2d 16 (D.C. Cir. 1984) .................................................................. 14

24

*Ctr. for Nat'l Sec. Studies v. Dep't of Justice,*
    331 F.3d 918 (D.C. Cir. 2003) .................................................................. 3

25

26

*Dep't of the Air Force v. Rose,*
    425 U.S. 352 (1976) ................................................................................. 7

27

28

*EFF v. Dep't of Justice,*
   826 F. Supp. 2d. 157 (D.D.C. 2011) ...................................................................13

*EPIC v. Dep't of Justice,*
   511 F. Supp. 2d 56 (D.D.C. 2007) ......................................................................5

*Goldberg v. Dep't of State,*
   818 F.2d 71 (D.C. Cir. 1987) ............................................................................11

*Hardy v. ATF,*
   631 F.2d 653 (9th Cir. 1980)...............................................................................7

*Hayden v. NSA,*
   608 F.2d 1381 (D.C. Cir. 1979) .....................................................................5, 6

*In re Motion for Release of Court Records,*
   526 F. Supp. 2d 484 (FISA Ct. 2007) .................................................................4

*Jordan v. Dep't of Justice,*
   591 F.2d 753 (D.C. Cir. 1978) .......................................................................8, 9

*King v. Dep't of Justice,*
   830 F.2d 210 (D.C. Cir. 1987) ...........................................................................3

*Lane v. Dep't of Interior,*
   523 F.3d 1128 (9th Cir. 2008).............................................................................14

*Lardner v. Dep't of Justice,*
   2005 WL 758267 (D.D.C. Mar. 31, 2005)......................................................12

*Lion Raisins, Inc. v. Dep't of Agric.,*
   354 F.3d 1072 (9th Cir. 2004)............................................................................6

*Marbury v. Madison,*
   5 U.S. 137 (1803).................................................................................................4

*Meeropol v. Meese,*
   790 F.2d 942 (D.C. Cir. 1986) .........................................................................15

*Military Audit Project v. Casey,*
   656 F.2d 724 (D.C. Cir. 1981) ...........................................................................4

*N.Y. Times v. Dep't of Justice,*
   2013 WL 20543 (S.D.N.Y. Jan. 3, 2013)...................................................10, 11

*N.Y. Times v. Dep't of Justice,*
   872 F. Supp. 2d 309 (S.D.N.Y. 2012).............................................................11

*NLRB v. Sears,*
   421 U.S. 132 (1975)................................................................................7, 8, 13

*Oglesby v. Dep't of the Army,*
    79 F.3d 1172 (D.C. Cir. 1996) ............................................................. 3

*Papachristou v. Jacksonville,*
    405 U.S. 156 (1972) ............................................................................. 7

*Ray v. Turner,*
    587 F.2d 1187 (D.C. Cir. 1978) ........................................................ 14

*Sheppard v. Maxwell,*
    384 U.S. 333 (1966) ............................................................................. 7

*Sims v. CIA,*
    471 U.S. 159 (1985) ........................................................................... 10

*Spirko v. USPS,*
    147 F.3d 992 (D.C. Cir. 1998) .......................................................... 14

*Torres v. INS,*
    144 F.3d 472 (7th Cir. 1998) .............................................................. 7

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) .................................................... 13, 14

*Wiener v. FBI,*
    943 F.3d 972 (9th Cir. 1991)....................................................... 6, 13

**Federal Statutes**

5 U.S.C. § 552(a)(2) ...................................................................................8, 9

5 U.S.C. § 552(a)(4)(B) .................................................................................14

5 U.S.C. § 552(b) ..........................................................................................13

5 U.S.C. § 552(b)(1) ............................................................................*passim*

5 U.S.C. § 552(b)(3) ............................................................................*passim*

5 U.S.C. § 552(b)(5) ............................................................................*passim*

28 U.S.C. §§ 511 ...........................................................................................12

28 U.S.C. §§ 512 ...........................................................................................12

28 U.S.C. §§ 513 ...........................................................................................12

50 U.S.C. § 403-1(i)......................................................................10, 11, 12

50 U.S.C. § 1801, *et seq*...................................................................................................................10

USA PATRIOT Act (Pub. L. 107-56, 115 Stat. 272 (2001).......................................................*passim*

**Legislative Materials**

H.R. Rep. No. 89-1497........................................................................................................................8

**Other Authorities**

Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act
    (Feb. 1975)...................................................................................................................................8

Department of Justice, Office of the Inspector General, *A Review of the FBI's Use of Section 215
    Orders for Business Records in 2006* (March 2008) ........................................................2, 5

Exec. Order No. 13526........................................................................................................10, 11

**INTRODUCTION**

Defendant, the Department of Justice ("DOJ"), asks this Court to approve the withholding of thousands of pages of records in their entirety – records concerning the agency's use of Section 215, including the opinions of an Article III court and the agency's "working law"– based only on a conclusory, four-paragraph description of those records. Defendant asks this Court to defer to the agency's conclusions to withhold those records, despite its supporting affidavits' inconsistencies. And without citation to a single case, Defendant asks this Court to approve the withholding of *the law* on the grounds that it can be legitimately classified. Whatever the precise scope of Executive authority in cases involving national security, it is not so broad as Defendant claims here.

In contrast, the position of Plaintiff, Electronic Frontier Foundation ("EFF"), is far more modest. EFF's opening motion ("Pl. Mem.") acknowledged that appropriate redactions are justified to conceal legitimate "sources and methods" from disclosure. *See, e.g.*, Pl. Mem. at 1 (Dkt. No. 41) ("EFF has not requested, nor does it seek, the disclosure of specific intelligence sources, methods, activities, or targets of national security investigations."); *see also*, *id.* at 15, 21. Unprecedented and unwarranted, however, is Defendant's assertion that the law itself may be classified and withheld in its entirety because it "pertains to" intelligence sources and methods.

In light of elected officials admonitions concerning the Executive's interpretation of Section 215, Defendant's claims suggest its primary motivation in this case is not to shield "sources and methods" from disclosure to our nation's adversaries, but to shield its actions from the scrutiny of the American public. For the reasons that follow, Defendant has failed to satisfy its burden to withhold the requested records in their entirety. EFF respectfully urges this Court to grant Plaintiff's motion for summary judgment, and to enter an order compelling Defendant to release responsive records with appropriate redactions.

**SUPPLEMENTAL PROCEDURAL AND FACTUAL INFORMATION**

EFF's opening brief called attention to inconsistencies in the description of responsive records provided in the Bradley Declaration. Pl. Mem. at 13-14. In response, Defendant filed a supplemental declaration, which contained some basic information conspicuously absent from the initial declaration. *See* Supplemental Declaration of Mark A. Bradley ("Supp. Bradley Decl.") ¶ 4

(Dkt. No. 44-1).   Of note, the supplemental declaration states that the category of "Materials submitted to, or opinions and/[or] orders issued by, the Foreign Intelligence Surveillance Court" ("FISC") only contains records created between February 2006 to February 2011. *Id.*

The FBI began using its Section 215 authority in 2004. Supplemental Declaration of Mark Rumold ("Supp. Rumold Decl."), Exhibit 1 (FOIA document "ACLU Sect. 215-39"). From 2004 to 2006, the government applied for a total of 162 orders under Section 215. *Id.* During this time, 21 of those applications were so-called "pure" business records orders, while the remaining 141 applications were "combination" orders – that is, a hybrid order consisting of a Pen Register/Trap and Trace order and a business record order. *See id.*; *see also* Department of Justice, Office of the Inspector General*, A Review of the FBI's Use of Section 215 Orders for Business Records in 2006* (March 2008), at 20 (describing combination orders).[1]

Despite the FBI's application for 162 orders to the FISC from 2004 to 2006, Defendant did not locate a single record responsive to EFF's request during that time period. *See* Supp. Bradley Decl. ¶ 4(b).

## ARGUMENT

Still at issue in this case are more than 258 documents, comprising more than 2,671 pages, withheld in their entirety by the National Security Division ("NSD") under Exemptions 1 and 3 of FOIA. 5 U.S.C. § 552(b)(1), (3). A single record of the Office of Legal Counsel  ("OLC") has also been withheld in its entirety under Exemption 5. 5 U.S.C. § 552(b)(5).  As explained below, these records' withholding in their entireties is improper. For the reasons that follow, EFF respectfully urges this Court to deny Defendant's motion for summary judgment and to grant EFF's cross-motion.[2]

---

[1] *Available at* http://www.justice.gov/oig/special/s0803a/final.pdf.

[2] EFF has withdrawn its challenges to the FBI's withholdings, and the parties have resolved the FBI's public interest fee waiver denial. *See* Def. Mem. at 1, 25 n.10.  Contrary to Defendant's assertion, however, EFF did not withdraw its challenges out of agreement with the FBI's withholding decisions. *See id*. at 1. Rather, EFF believes further litigation, and this Court's resources, are best focused on NSD's extraordinary secrecy claims.

1
2

### I.   THE BRADLEY DECLARATION STILL FAILS TO PROVIDE AN ADEQUATE FACTUAL BASIS TO SUPPORT THE WITHHOLDING OF THOUSANDS OF PAGES OF NSD RECORDS IN THEIR ENTIRETY

3

Despite providing more information in its supplemental filing, Defendant still fails to

4

provide sufficient information on the public record for either this Court or EFF to assess the

5

legitimacy of NSD's withholdings. An agency's declaration supports summary judgment only if it

6

"afford[s] the FOIA requester a meaningful opportunity to contest, and the district court an

7

adequate foundation to review, the soundness of the withholding." *King v. Dep't of Justice*, 830

8

F.2d 210, 218 (D.C. Cir. 1987). The declaration must provide the requester with "as much detail as

9

to the nature of the document [as possible], without actually disclosing information that deserves

10

protection." *Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). A declaration's

11

insufficiency can stem from a "lack of detail and specificity, bad faith, [or a] failure to account for

12

contrary record evidence." *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C .Cir. 1998). Here,

13

the Bradley Declarations are not owed the deference Defendant asks of this Court. The

14

Declarations are inconsistent, fail to account for contrary record evidence, and fail to describe the

15

records with any specificity. Thus, the Declarations cannot provide the basis to withhold thousands

of pages of NSD records.

16

### A.   This Court's Institutional Expertise, the Bradley Declarations' Inconsistencies, and the Failure to Account for Contrary Record Evidence Mitigate the Deference Typically Owed Defendant's Affidavits

17

18

As acknowledged in EFF's opening motion, when the Court conducts its *de novo* review of

19

agency withholdings in national security FOIA cases, the Executive may be owed some deference

20

in its determinations. Pl. Mem. at 8-9. But that deference is not boundless, and summary judgment

21

on the basis of the Bradley Declarations would go well beyond those bounds.

22

While deference may be owed in the national security context, "even in Exemption 1

23

situations, the court is not to be a wet blanket." *Coldiron v. Dep't of Justice*, 310 F. Supp. 2d 44, 53

24

(D.D.C. 2004). "Neither FOIA itself" nor the cases interpreting the statute allow claims of harm to

25

national security to "relieve the government of its burden of justifying its refusal to release

26

information under FOIA." *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 939 (D.C.

27

Cir. 2003) (Tatel, J. dissenting). Congress explicitly rejected "blind deference" in national security

28

cases, and the Court's *de novo* review must amount to more than a "judicial spell check." *ACLU v. ODNI*, 2011 WL 5563520, at *6 (S.D.N.Y. Nov. 15, 2011).

As Defendant rightly notes, the deference traditionally owed stems from the differing institutional competencies of the Judicial and Executive Branches. Def. Mem. at 10 n.3. However, unlike records typically involved in national security cases, the records at issue in this case constitute the law – whether in the form of an Article III court's opinion[3] or in the form of binding agency interpretations and decisions. *See, e.g.*, Supp. Bradley Decl. ¶ 4(b) (records at issue include opinions and/or orders issued by [] the [FISC]"; 4(d) "Executive Branch guidelines [and] procedures" for using Section 215). Because it "is emphatically the province and duty of the judicial department to say what the law is[,]" *Marbury v. Madison*, 5 U.S. 137, 177 (1803), this Court's institutional expertise makes it particularly well-suited to review the claims made by Defendant in this case – that factual descriptions of intelligence sources and methods cannot be distinguished from the law and legal analysis that provides its authorization.

Moreover, even in cases involving national security, deference is not warranted where the agency's declarations are inconsistent or fail to account for contrary record information. *See Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). The Bradley Declarations have proven to be inconsistent and unworthy of deference. Indeed, the supplemental Bradley Declaration raises more questions than it purports to answer. After EFF noted a previous inconsistency between the descriptions provided by NSD to the ACLU and those provided to EFF, Pl. Mem. at 13-14, Defendant submitted additional information concerning the withheld records. Supp. Bradley Decl. ¶¶ 4, 5 (information not included due to "error"). Yet the information provided in the supplemental Bradley Declaration does not comport with information previously released by the agency: Defendant lists February 2006 as the date of the first responsive record submitted to the FISC, *id.*, yet, in materials provided to Congress and released to EFF in this case, Defendant reported having used Section 215 orders 162 times between 2004 and 2006. Supp. Rumold Decl., Ex. 1. Accordingly, and without explanation, Defendant would have both EFF and this Court

---

[3] "[T]he FISC is an inferior federal court established by Congress under Article III[.]" *In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 486 (FISA Ct. 2007).

believe *not a single record* containing "substantial legal analysis" was generated in the two-year period during which the FISC processed 162 business records applications.[4]

Another inconsistency concerns the selective disclosure of the types of records sought with 215 orders. For example, Defendant fails to explain why disclosure of the types of records sought (communications records) in connection with the FBI's "hybrid applications" has not harmed national security, while *any* discussion of the types of business records sought by the applications at issue in this case would. Still another inconsistency concerns Defendant's segregability obligations. EFF provided examples of instances in which both FISC opinions and legal analysis concerning sensitive "sources and methods" had been partially disclosed, with appropriate redactions. *See* Pl. Mem. at 20-22; Rumold Decl., Exs. 5-9. Defendant simply chooses to ignore those examples rather than explaining why the records at issue here cannot be similarly treated.

Thus, the Bradley Declarations bear "indicia of unreliability" and are not entitled to the deference normally afforded agency affidavits in national security cases. *See EPIC v. Dep't of Justice,* 511 F. Supp. 2d 56, 65-66 (D.D.C. 2007) (citing *ACLU v. FBI*, 429 F. Supp. 2d 179, 187-88 (D.D.C. 2006). While some measure of deference may normally attach to agency declarations in national security cases, that deference is not warranted where the Court's institutional competency is high, and where the agency's affidavits are inconsistent.

## B.  The Bradley Declarations Are Still Far Too Vague and Sweeping to Support Summary Judgment

Despite the provision of basic factual information about some of the withheld records, the Bradley Declarations remain deficient in almost every measurable respect. An affidavit in support of an agency's motion will not "suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Hayden v. NSA,* 608 F.2d 1381, 1387 (D.C. Cir. 1979) (footnote omitted). As noted in EFF's opening brief, Defendant failed to provide a sufficient factual basis for either this Court or EFF to test its claimed exemptions. Pl. Mem. at 12-15.

---

[4] The suggestion that there are no records from this two-year period is especially suspect, given the unusual "hybrid" theory the government relied on when obtaining 215 orders. *See* Department of Justice, Office of the Inspector General, *A Review of the FBI's Use of Section 215 Orders for Business Records in 2006* (March 2008), at 20.

The supplemental Bradley Declaration has not cured those defects. In fact, it is *still* unclear how many responsive records are at issue: without explanation, Defendant refuses to quantify the amount of withheld documents or pages of FISC material. *See* Supp. Bradley Decl. ¶ 4(b). Nor has Defendant described the "contents" of *any* withheld record. Defendant has only described four "categories" of records responsive to EFF's request. *See, e.g.*, Supp. Bradley Decl. ¶ 4(a) (documents sent to Congressional committees), 4(b) (material submitted to the FISC). Those record "categories," however, do not "describe any particular withheld document" or "identify the kind of information found in that document that would expose" the intelligence sources and methods Defendant seeks to protect. *See Wiener v. FBI*, 943 F.3d 972, 980 (9th Cir. 1991).

Nevertheless, Defendant still urges this Court to approve the withholding of every word, of every line, of every page, of over 2,000 pages of records. Summary judgment is only warranted when the agency has created "as full a public record as possible[] concerning the nature of the documents and the justification for nondisclosure." *Hayden*, 608 F.2d at 1384. Here, Defendant's extreme secrecy claims, and the vague and categorical declarations on which it bases its claims, preclude summary judgment in its favor.

### C. Because Defendant Has Failed to Provide as Much Information on the Public Record as Possible, this Court Should Not Rely on the In Camera, Ex Parte Bradley Declaration

As Defendant acknowledges, the rule in FOIA cases in the 9th Circuit is that the Court must "require the government to justify FOIA withholdings in as much detail as possible on the public record before resorting to *in camera* review." Def. Mem. at 16 (citing *Lion Raisins, Inc. v. Dep't of Agric.*, 354 F.3d 1072, 1084 (9th Cir. 2004)). Thus, until the "government has submitted as detailed public affidavits and testimony as possible[,]" *in camera* review of agency declarations is unwarranted. *Wiener*, 943 F.2d at 979. Defendant does not seriously suggest that it has disclosed as much information as possible. In a single, conclusory sentence, it states only that "providing further detail on the pubic record . . . would, itself, reveal some of the classified information that is exempt from disclosure." Supp. Bradley Decl. ¶ 4; Def. Mem. at 16-17. Defendant does not even attempt to explain *how* a more detailed itemization or description of the records would reveal intelligence sources or methods: without this information, and the other information conspicuously absent from the Bradley Declaration, *see supra* at 6-7, Defendant has failed to provide as much

information on the public record as possible. Accordingly, this Court should not rely on Defendant's *in camera*, *ex parte* declarations to form the basis for its decision.[5]

## II.   NEITHER EXEMPTION 1 NOR EXEMPTION 3 PERMIT DEFENDANT TO WITHHOLD THE LAW ITSELF

Undeniably, at least some of the NSD records withheld under Exemptions 1 and 3 constitute the law – both in the form of FISC opinions and the agency's working law. In a democracy, however, "[t]he idea of secret laws is repugnant." *Torres v. INS*, 144 F.3d 472, 474 (7th Cir. 1998). Defendant argues "the concept of 'secret law'" – and those principles opposing its development – are narrow and arise only in the "Exemption 5 context" of FOIA. Contrary to Defendant's claim, the aversion to "secret law" manifests itself throughout our legal system. *See, e.g.*, *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972) (due process) ("Living under a rule of law" requires that "'(all persons) are entitled to be informed as to what the State commands or forbids.'"); *Banks v. Manchester*, 128 U.S. 244, 253 (1888) (copyright) (Judicial opinions constitute "the authentic exposition and interpretation of the law, which, binding every citizen, [are] free for publication to all[.]"); *Sheppard v. Maxwell*, 384 U.S. 333, 349 (1966) (First Amendment) ("The principle that justice cannot survive behind walls of silence has long been reflected in the 'Anglo-American distrust for secret trials.'"). Public access to the law is not a narrow "carve-out" designed to "trump[]" FOIA exemptions, *see* Def. Mem. at 4: it is a basic tenet of democracy.

With the development and expansion of the modern administrative state, the Executive Branch became increasingly responsible for "lawmaking" and the resolution of "cases" – areas of governance traditionally reserved for the Legislative and Judicial Branches (and areas traditionally open to public scrutiny). FOIA represents Congress's response to this administrative expansion: FOIA was passed to "pierce the veil of administrative secrecy[,]" *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal citation omitted), and combating the development of agency secret law "was the primary target of the [A]ct's disclosure requirements." *Hardy v. ATF*, 631 F.2d 653, 657 (9th Cir. 1980); *see also NLRB v. Sears*, 421 U.S. 132, 138 (1975) (noting Act's purpose

---

[5] If, however, the Court elects to review the *ex parte*, *in camera* Bradley Declaration, this Court should order Defendant to produce responsive records for this Court's *in camera* comparison. *See* Section VI, *infra* at 14-15.

is "to prevent the creation of 'secret law'"); *Jordan v. Dep't of Justice*, 591 F.2d 753, 781 (D.C. Cir. 1978) (Bazelon, J., concurring) (noting one of FOIA's "principle purposes" was "to eliminate secret law").[6]

Thus, FOIA, taken as a whole, represents "a strong congressional aversion to 'secret (agency) law' . . . and represents an affirmative congressional purpose to require disclosure of documents which have 'the force and effect of law.'" *Sears,* 421 U.S. at 153 (1975) (citations omitted). Because the records withheld by Defendant "have the force and effect of law," *id.*, those records may not be withheld in their entirety under *any* FOIA exemption.

### A.   Properly Construed, the Law – Whether in Statute, a Court's Opinion, or an Agency's "Working Law" – Cannot be Subject to Any of FOIA's Exemptions

Seen through our legal system's general transparency and access requirements, and the "strong congressional aversion" to secret agency law, FOIA's nine narrow exemptions must all be construed and applied so as to avoid shielding the law – whether in the form of an Article III court's opinions or an agency's working law – from public disclosure. Nevertheless, Defendant argues that such law may be withheld under one, or possibly all, of FOIA's exemptions. Def. Mem. at 4, 8.[7] But this interpretation misapprehends the purpose of FOIA: the Act was designed to compel disclosure of an agency's working law. *Sears*, 421 U.S. at 153. The exemptions, properly construed, were never intended to reach records constituting such law. It defies reason to think

---

[6] The affirmative portions of FOIA, 5 U.S.C. § 552(a)(2)(A)-(C), further evidence the Congressional intent to prohibit secret agency law by requiring, among other things, the disclosure of "final opinions" and agency "statements of policy and interpretations." *See* Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act 19 (Feb. 1975) (explaining that the "primary purpose of subsection (a)(2) was to compel disclosure of what has been called 'secret law,' or as the 1966 House Report put it, agency materials which have 'the force and effect of law in most cases'" (quoting H.R. Rep. No. 89-1497, at 7)).

[7] Defendant misleadingly quotes *Sears* to suggest that a document constituting working law, if not exempt under Exemption 5, may be withheld under another exemption. *See* Def. Mem. at 8 ("To the contrary, the Supreme Court has noted explicitly that if a document constitutes working law. . . [it] may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5") (citing *Sears*). At that point in the opinion, however, the Supreme Court was considering records that were "adopt[ed] or incorporate[d] by reference . . . *in* what would otherwise be a final opinion[.]" *Sears*, 421 U.S. at 161 (emphasis added). The Court was not discussing, as Defendant suggests, an agency's "working law" (*i.e.*, the agency's "final opinion") itself. *See id*.

Congress would pass a statute with the goal of "eliminate[ing] secret law," *Jordan*, 591 F.2d at 781, but then provide nine exemptions through which the agency could perpetuate such secret law.

Defendant acknowledges that preventing the development of "secret law" precludes agencies from withholding working law under Exemption 2 and Exemption 5. *See* Def. Mem. at 4, 4 n. 2. Yet, despite the disparate and unrelated interests protected by those exemptions, Defendant suggests this principle does not apply across all FOIA's exemptions.[8]

Defendant mistakenly suggests the Second Circuit in *ACLU* sustained the withholding of the DOJ's working law under Exemption 1. *ACLU v. Dep't of Justice*, 681 F.3d 61, 70-71 (2nd. Cir. 2012). There, the district court held the CIA could not refuse to confirm or deny the existence of a legal memo under Exemption 3 because the memo's existence revealed nothing about CIA activities. *ACLU v. Dep't of Defense*, 396 F. Supp. 2d 459, 462 (S.D.N.Y. 2005). Following the district court's order, the CIA released "almost all of the contents of the OLC memoranda [at issue]." 681 F.3d at 70. Thus, in stark contrast to this case, and contrary to Defendant's claims, DOJ released much of the agency's "law" while withholding, with "limited redactions," protected "sources and methods." *See id.*

Defendant further suggests that the *CIEL* case does not "purport to apply the 'secret law' or 'working law' doctrine outside the context of Exemption 5." Def. Mem. at 6 (discussing *CIEL v. USTR*, 845 F. Supp. 2d 252 (D.D.C. 2012)). Indeed, the *CIEL* court did not couch its analysis in terms of "secret law"; however, the thrust of its analysis is the same. There, the Court held that the agency's interpretation of the phrase "in like circumstances" was improperly classified because the agency did "not present a logical or plausible explanation for its determination" to classify the document. *CIEL*, 845 F. Supp. 2d at 258 (USTR's arguments to withhold the agency's legal analysis did not "pass the test of reasonableness, good faith, specificity and plausibility") (internal citations and quotations omitted). The court's decision in *CIEL* mirrors EFF's position here: because of the type of document at issue, it is not logical or plausible to assert that intelligence

---

[8] Defendant further misrepresents EFF's position as requiring "that no legal analysis can be protected from public disclosure" under FOIA. Def. Mem. at 4. This is not EFF's position. Instead, legal analysis relied upon or serving as the basis for agency action is the agency's "law." While this law must be disclosed, non-binding legal analysis, analysis that is rejected, or analysis not relied upon by the agency, for example, may all still be legitimately withheld under FOIA.

sources and methods would be disclosed or that harm to national security could flow from its disclosure.

### B.     The Law Itself Cannot Constitute an "Intelligence Source or Method" and, Thus, Does Not Logically Fall Within Exemptions 1 or 3

At its core, Defendant's exemption claim can be distilled to this: the law – whether in the form of an Article III court's opinion or an agency's working law – may be withheld in its entirety because it "pertains to" an intelligence source or method. *See* Def. Mem. at 4, 7-8. Such a theory has no principled end and is inconsistent with FOIA's general transparency requirements. While an agency's authority to decide what constitutes intelligence sources or methods may be broad, *see Sims v. CIA*, 471 U.S. 159, 169 (1985), it cannot be limitless.

To withhold records under Exemption 1 and 3, Defendant must demonstrate that the disclosure of the records at issue would reveal sources and methods. *See* E.O. 13526 § 1.4(c) (classification for "intelligence sources or methods"); 50 U.S.C. § 403-1(i)(1) (protecting "intelligence sources and methods"). However, Defendant glosses over the critical distinction between classified *factual information* concerning sources and methods and the *law and legal analysis* used to approve (or disapprove) those tactics. Defendant's claim is not simply that it may withhold sources and methods from disclosure (a claim which EFF does not contest); rather, by withholding every word of every responsive record, its claim is that the *law itself* may be classified because it "pertains to . . . sources or methods." *See* E.O. 13526 § 1.4. Under this theory, the Executive could, for example, classify a statute, such as the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801, *et seq*. FISA "pertains to" classified sources or methods – specifically, FISA sets forth the scope of the government's ability to conduct national security surveillance with the United States. But such an absurd result is incompatible with democratic principles and with FOIA's purpose of preventing the development of secret law.

Defendant cites a single case in support of its proposition that an agency's law may be classified. Def. Mem. at 4 (citing *N.Y. Times v. Dep't of Justice*, 2013 WL 20543, *20 (S.D.N.Y. Jan. 3, 2013) ("*Targeted Killings*" case). That decision's analysis, however, erred in a number of critical respects and, furthermore, is not binding on this Court. First, the *Targeted Killings* court significantly understated its duty when conducting a *de novo* classification review. *Id*. at *19

(noting, incorrectly, that "[i]t lies beyond the power of this Court to declassify a document that has been classified in accordance with proper procedures"). A court's *de novo* review includes ensuring compliance with both the procedural *and* substantive requirements for classification. *See Goldberg v. Dep't of State*, 818 F.2d 71, 76-78 (D.C. Cir. 1987). Second, while the *Targeted Killings* court observed "the Government cites not a single case which holds that legal analysis can properly be classified[,]" *Targeted Killings* at *20, the Court then relied on a series of inapposite cases to support its unprecedented conclusion that the agency's law *can* be properly classified. *Id*. (citing *N.Y. Times v. Dep't of Justice*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012) (finding record legitimately classified, but *not* finding that the record actually constituted the law);[9] *ODNI*, 2011 WL 5563520, at *8 (holding agencies' public affidavits insufficient to justify summary judgment); and *CIEL v. USTR*, 505 F. Supp. 2d 150, 157 (D.D.C. 2007) (finding agency had "not proved the appropriateness of withholding" records under Exemption 1, and, as discussed *supra*, ordering the record declassified and disclosed in *CIEL*, 845 F. Supp. 2d at 252).

In sum, no controlling authority exists for the proposition that an agency may properly classify and withhold an agency's law in its entirety, much less authority for the proposition that the law itself can constitute an intelligence source or method under E.O. 13526.

### III. DOJ CANNOT INVOKE THE NATIONAL SECURITY ACT TO WITHHOLD RECORDS UNDER EXEMPTION 3

In support of its National Security Act exemption claim, Defendant argues DOJ can assert 50 U.S.C. § 403-1(i) to withhold records in FOIA cases. Def. Mem. at 18. However, the plain language of the statute vest authority to "protect sources and methods" with the Director of National Intelligence ("DNI"). 50 U.S.C. § 403-1(i). Because Defendant has not submitted a declaration from the DNI (or his designee), DOJ's reliance on the National Security Act is unavailing.

Defendant argues that "FOIA does not require that agency withholdings be justified by a specific official within the government." Def. Mem. at 18. To support this proposition, Defendant relies on an unpublished case involving the Presidential Communications Privilege. *Lardner v.*

---

[9] As previously noted, *N.Y. Times*, 872 F. Supp. 2d 309, involved a record which is also currently at issue in this litigation.

*Dep't of Justice*, 2005 WL 758267 at *7-9 (D.D.C. Mar. 31, 2005). Notably, the Court there wrote "[t]here is no indication in the text of the statute or elsewhere that Congress anticipated – much less demanded" that claims under Exemption 5 "would need to be made personally by the head of the agency." *Id*. at *8. In contrast, here, the plain text of the statute on which Defendant relies demonstrates precisely such a Congressional demand: the National Security Act provides "*the [DNI]* shall protect intelligence sources and methods[.]" 50 U.S.C. § 403-1(i)(1) (emphasis added). Indeed, the statute further demands that the DNI "may only delegate a duty or authority . . . under this subsection [§ 403-1(i)] to the Principal Deputy Director of National Intelligence." 50 U.S.C. § 403-1(i)(3). Thus, while FOIA may not generally require the invocation of an exemption by a specific government official, the National Security Act clearly does.

## IV. THE OLC MEMO CANNOT BE WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE BECAUSE IT CONSTITUTES THE DOJ'S WORKING LAW OR, ALTERNATIVELY, BECAUSE IT HAS BEEN ADOPTED AND RELIED UPON BY THE AGENCY

Defendant continues to improperly withhold the OLC Memo under the deliberative process privilege of Exemption 5. Whether the OLC Memo is characterized, itself, as the agency's working law, or whether it has lost its "predecisional" status through the Executive Branch's subsequent reliance on the Memo, the Memo is ineligible for withholding under Exemption 5.

First, because the OLC Memo itself constitutes the DOJ's "working law," it cannot be withheld under any FOIA exemption. Defendant concedes that the analysis set forth in the Memo is "controlling on [the] questions of law" covered by the Memo. Def. Mem. at 22. The Memo thus constitutes the controlling decision on a question of legal policy by the DOJ, the agency within the Executive Branch charged with resolving those questions. *See* 28 U.S.C. §§ 511-13 (vesting authority in Attorney General to provide legal advice when required). Even under Defendant's own conception of agency "working law" – a record that "reflect[s] . . . an agency's final disposition . . . that could have an impact on the substantive or procedural rights of members of the public," Def. Mem. at 19 – the Memo constitutes the DOJ's working law and may not be withheld under any exemption.

Alternatively, even if the OLC Memo is not treated as the Executive Branch's "working law," the Executive's reliance and adoption of the Memo makes it ineligible for withholding under

Exemption 5. *Sears*, 421 U.S. at 161 (noting deliberative process privilege waived where "agency chooses expressly to adopt . . . an intra-agency memorandum previously covered by Exemption 5"). Specifically, even if, as Defendant argues, the OLC Memo was predecisional at the time it was prepared, the Memo "can lose that status if it is adopted, formally or informally, as the agency position on an issue." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Based on the facts provided by Defendant, it appears the government relied on and adopted the Memo in support of its application to the FISC. *See* Pl. Mem. at 19-20. Defendant suggests "there are many circumstances" in which the government "might provide an OLC opinion to the FISC," and, thus, it is incorrect to infer that Defendant submitted the opinion "in direct support of an application." Def. Mem. at 23. If true, in order to carry its burden under the deliberative process privilege, Defendant bears the burden of describing those circumstances. *See EFF v. Dep't of Justice*, 826 F. Supp. 2d. 157, 167-68 (D.D.C. 2011) (assertion of Exemption 5 requires particularly detailed *Vaughn* indices, because privilege is "so dependent upon the individual document and the role it plays in the administrative process") (citing cases). In the absence clear indications to the contrary, the most reasonable conclusion to draw is that the DOJ adopted and relied upon the Memo, as evidenced by its submission to the FISC. This adoption, therefore, renders the OLC Memo ineligible for withholding under the deliberative process privilege.

## V.    DEFENDANT'S FAILURE TO ADDRESS THE SEGREGABILITY OF NON-EXEMPT INFORMATION PRECLUDES SUMMARY JUDGMENT IN ITS FAVOR

Defendant bears the burden of demonstrating that all non-exempt information has been segregated and released, 5 U.S.C. § 552(b), and this Court's *de novo* review must include a document-by-document finding on segregability. *Wiener*, 943 F.2d at 988. Yet Defendant asks this Court to approve the withholding of over 2,000 pages of records, in their entirety, with nothing more than a single, conclusory paragraph description of its segregability analysis. Bradley Decl. ¶ 12 (Dkt. No. 40-1).[10] This is far from the requisite document-by-document analysis. *See Wiener*, 943 F.2d at 988. And this failure, alone, precludes summary judgment in Defendant's favor.

___

[10] Defendant also states it is impossible to publicly describe "why there is no segregable, non-exempt material that can be released." Def. Mem. at 15. It is incredible to believe that *attempting* to

**VI.     THIS COURT MAY RELY ON *IN CAMERA* REVIEW OF THE WITHHELD RECORDS TO AID ITS *DE NOVO* REVIEW**

The Court is empowered to examine "agency records *in camera* to determine whether such records or any part thereof shall be withheld." 5 U.S.C. § 552(a)(4)(B). Summary judgment without *in camera* review is appropriate only where the government's affidavits "provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith." *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 22 (D.C. Cir. 1984); *see also Lane v. Dep't of Interior*, 523 F.3d 1128, 1136 (9th Cir. 2008). Here, given the inadequacy of the agency's *Vaughn* indices and contrary record information, *in camera* review of responsive records may be warranted. Further, EFF respectfully suggests that any review of Defendant's *in camera*, *ex parte* declaration (should the Court deem such a review necessary) be combined with an *in camera* review of the withheld records.

Moreover, there is a "greater call for *in camera* inspection" in "cases that involve a strong public interest in disclosure." *Allen v. CIA*, 636 F.2d 1287, 1299 (D.C. Cir. 1980). As the D.C. Circuit has explained:

> When citizens request information . . . the agency often deems it in its best interest to stifle or inhibit the probes. It is in these instances that the judiciary plays an important role in reviewing the agency's withholding of information. But since it is in these instances that the representations of the agency are most likely to be protective and perhaps less than accurate, the need for *in camera* inspection is greater.

*Id.* at 1299. In light of elected officials' outspoken criticism of the agency's interpretation and use of Section 215, *see* Pl. Mem. at 2-4, the need for *in camera* inspection is particularly strong here.

"A judge has discretion to order *in camera* inspection on the basis of an uneasiness, on a doubt" she wants satisfied before taking "responsibility for a *de novo* determination." *Spirko v. USPS*, 147 F.3d 992, 996 (D.C. Cir. 1998) (quoting *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978)) (internal quotation marks omitted). EFF submits that substantial doubt exists here, and

---

explain the agency's segregability analysis could risk disclosure of sources and methods. *See Campbell*, 164 F.3d at 31 ("[I]n most cases the agency should not have difficulty describing the context and nature of the withheld information without revealing its substance.").

suggests that the Court's *de novo* review would benefit from *in camera* inspection of the withheld documents.[11]

## CONCLUSION

Defendant attempts to paint this case, and its ability to withhold responsive records under FOIA, with an extraordinarily broad brush. It asks this Court to countenance the withholding of thousands of pages of records based upon a single, four-paragraph description. It asks the Court to defer to the Executive's expertise when its declarations contain unexplained inconsistencies. And it asks the Court to approve the unprecedented assertion that the law may be classified and withheld from the American public. EFF respectfully urges the Court to reject Defendant's unprecedented secrecy claims, and to order the disclosure of the withheld records with such appropriate and limited redactions (if any) that the Court deems necessary.

DATED:  January 18, 2013                    Respectfully submitted,


                                    ___*/s/ Mark Rumold*_____
                                    Mark Rumold
                                    Jennifer Lynch
                                    ELECTRONIC FRONTIER FOUNDATION
                                    454 Shotwell Street
                                    San Francisco, CA 94110
                                    Telephone: (415) 436-9333
                                    Facsimile: (415) 436-9993

                                    Attorneys for Plaintiff
                                    ELECTRONIC FRONTIER FOUNDATION

---

[11] Where a voluminous number of records are at issue, *in camera* inspection of a sample of documents claimed to be exempt can assist the Court in conducting a meaningful, yet manageable, *de novo* review. With "representative sampling," the agency assures the Court and the plaintiff that it is providing a selection of records for *in camera* review that are typical of *all* of the records that have been withheld. *See Bonner v. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991). The court can then extrapolate its conclusions based on the representative sample. *Id*. Another technique used by courts is to require production of a random selection, where the parties agree that the government will produce, *e.g.*, every third or tenth record at issue. *See Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986).