Mark Rumold (SBN 279060)
*mark@eff.org*
Jennifer Lynch (SBN 240701)
*jlynch@eff.org*
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>DEPARTMENT OF JUSTICE,<br><br>　　　　　　　Defendant. | Case No. 4:11-cv-05221-YGR<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S FURTHER SUBMISSIONS**<br><br>Hon. Yvonne Gonzalez Rogers<br>Courtroom 5 - 2nd Floor |

Pursuant to this Court's Order (ECF No. 52), Plaintiff Electronic Frontier Foundation ("EFF") respectfully submits its response to Defendant's supplemental filings in support of its motion for summary judgment (ECF Nos. 51, 51-1). Despite the submission of additional information about the withheld records at issue in this case, Defendant has still failed to provide an adequate basis for summary judgment in its favor.

This Court ordered Defendant to provide, among other information, a document-by-document accounting of (1) the number of pages in each withheld document, (2) a general description of the document,[1] and (3) the exemption claimed for its withholding. Order Re: Further Submissions on Cross-Motions for Summary Judgment ("Order") at 3 (ECF No. 49). EFF does not contest Defendant's compliance with this portion of the Court's Order. And, based on Defendant's provision of this information, EFF can further narrow the scope of the litigation by withdrawing its challenges to the following documents: Document 3 (Briefing paper for Congress at issue in *N.Y. Times v. Dep't of Justice*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012)), Document 50 (a draft, internal Executive branch memorandum), Document 63 (an internal Executive branch email), Document 64 (a draft internal, Executive branch memorandum), and Document 98 (internal Executive branch memorandum drafted in anticipation of a filing before the FISC).[2] *See* Second Supp. Decl. of Mark Bradley ("Third Bradley Decl."), Exhibit A ("*Vaughn* Index") (ECF No. 51-1) at 1, 6, 7, 11. Nevertheless, and despite EFF's best attempt to further narrow the scope of the litigation, Defendant continues to withhold 3,142 pages of responsive records in their entirety.

Beyond basic information about the requested records, this Court's Order further required Defendant to provide document-by-document descriptions of Defendant's purported justification for withholding records, as well as particularly tailored segregability analyses. Order at 3.

---

[1] The Order actually required Defendant to identify, consistent with the format employed in Defendant's earlier declarations, the "specific category" for each document. Order at 3. Instead of providing the category, Defendant's *Vaughn* index provides a general description of each document that, in many cases, is more descriptive than the categorical descriptions previously employed.

[2] These documents—constituting drafts, emails, specific descriptions of intelligence methods, and memos prepared in anticipation of litigation—are not the type of final, binding legal opinions and analyses that EFF seeks in this case.

Without explanation, Defendant failed to provide these document-by-document assessments, in spite of the Court's clear directive. Compounding matters, even the additional information provided by Defendant still constitutes little more than the type of "conclusory," "overly vague," and "sweeping" statements that "will not, standing alone, carry the government's burden." *Int'l Counsel Bureau v. Dep't of Defense*, 723 F. Supp. 2d 54, 63 (D.D.C. 2010); *see also Weiner v. FBI*, 943 F.2d 972, 982 (9th Cir. 1991); Pl. Mem. for Summ. J. ("Pl. Mem.") at 9-10, 12-17 (ECF No. 41); Pl. Rep. at 3-5 (ECF No. 45). While "producing a properly detailed *Vaughn* Index [may be a] considerable burden" for Defendant, "Congress, in enacting FOIA, has chosen to place this burden upon agencies, giving them a clear, if difficult, choice:" either properly describe the withheld records and the justification for their withholding, or disclose the records. *Judicial Watch v. USPS*, 297 F. Supp. 2d 252, 271 (D.D.C. 2004). Defendant simply cannot choose to do nothing.

    I.    *Defendant Failed to Comply with the Court's Order to Further Articulate the Alleged Harm to National Security Threatened by Disclosure*

Defendant's articulation of the harm that purportedly would flow from disclosure of responsive records is identical to the description it initially provided—and that the Court already rejected as insufficient. *See* Order at 2 (noting the Bradley Declaration's "one blanket justification for withholding" did "not provide sufficient information and specificity"). Defendant's original (and insufficient) justification stated that "[d]isclosure of [requested records] would provide our adversaries and foreign intelligence targets with insight into the United States Government's foreign intelligence collection capabilities, which in turn could be used to develop the means to degrade and evade those collection capabilities." Decl. of Mark Bradley ("First Bradley Decl.") ¶ 10 (ECF No. 40-1). Identically, the "additional" information provided by Defendant states: "Disclosure of [requested records] would provide our adversaries and foreign intelligence targets with insight into the United States Government's foreign intelligence collection capabilities, which in turn could be used to develop the means to degrade and evade those collection capabilities." For all practical purposes, Defendant simply repeated the original description verbatim.[3] *Compare* First

---

[3] The two descriptions contain some minor variations in phrasing. *Compare* First Bradley Decl. ¶¶ 9-10, *with* Third Bradley Decl. ¶¶ 5-6.

Bradley Decl. ¶¶ 9-10, *with* Third Bradley Decl. ¶¶ 5-6. Defendant clearly failed to comply with the Court's Order.[4]

Defendant still makes no attempt to explain why the government has been able to provide information about the use of Section 215 in other contexts, but somehow is unable to provide even *general* information about the provision's use here. *See* Pl. Rep. at 4-5. Defendant again asserts that the documents contain "*specific* descriptions of highly sensitive intelligence activities, sources and methods." Third Bradley Decl. ¶ 6 (emphasis added). But, from the outset, EFF has made clear it does not seek disclosure of *specific* information concerning sources or methods: EFF only seeks the release of *generalized* information—whether through adequate *Vaughn* descriptions or through segregating and releasing information—about the scope of the government's authority under the provision. *See* Order at 2; Pl. Mem. at 1 ("EFF has not requested, nor does it seek, the disclosure of specific intelligence sources, methods, activities, or targets of national security investigations.").

Further, Defendant also asserts that the disclosure of dates for specific FISC materials would "tend to reveal classified information." Third Bradley Decl. ¶ 12. Mr. Bradley asserts that disclosure of the particular dates would allow the public to "extrapolate how and when, and how often, the government has used its Section 215 authority[.]" Third Bradley Decl. ¶ 12. But "when" and "how often" the government used Section 215 is already publicly known: in 2004, the FBI used its Section 215 authority seven times; in 2005, 155 times; in 2006, 44 times. *See* Supp. Decl. of Mark Rumold, Ex. 1 (ECF No. 45-1). Indeed, the Department of Justice recently released the number of times the government used its Section 215 authority in 2012. Letter from Peter J. Kadzik, Principal Deputy Assistant Attorney General, Department of Justice, to the Honorable Harry Reid, Senate Majority Leader (Apr. 30, 2013)[5] (noting the "Government made 212 applications to the FISC for access to certain business records (including the production of tangible

---

[4] Defendant also failed to provide its assessment of the alleged harm to national security on a document-by-document basis, as required by the Court's Order. *See* Third Bradley Decl. ¶¶ 5-6; Order at 3. Even if there is less document-by-document variability in the purported rationale for its exemption claims, Defendant, at minimum, should have explained its decision to provide only a second "blanket" justification.

[5] *Available at* https://www.fas.org/irp/agency/doj/fisa/2012rept.pdf.

things)" during 2012). And Mr. Bradley offers no explanation for his claim that disclosure of a date would reveal "how" the government employs its authority under Section 215. Finally, and without explanation, Defendant provides dates for *some* material submitted to the FISC while withholding others. *Compare Vaughn* Index at 5, 6, 8, 10 (providing dates for Documents 42, 55, 77, and 95), *with id*. at 4, 5 (providing date ranges for Documents 33-39).

It is precisely this type of arbitrary and unexplained inconsistency—coupled with Defendant's failure to comply with the Court's order—that undermines the deference that might otherwise be owed Defendant's declarations. As such, Defendant is not entitled to summary judgment.

II. *Defendant Failed to Comply with the Court's Order to Provide an Adequate Segregability Analysis*

This Court also directed Defendant to "particularly address," on a document-by-document basis, "why there is no reasonably segregable portion of [any] document that can be disclosed." Order at 3. Defendant's additional submissions do nothing to cure the defects originally identified by the Court. Most fundamentally, and in contravention of the Court's order, Defendant again refuses to provide both EFF and the Court with a *document-by-document* segregability analysis. *See* Third Bradley Decl. ¶¶ 8-11 (providing blanket segregability analysis).

Indeed, the provision of page counts for each document underscores precisely why a document-by-document explanation of segregability is necessary: for example, Document 89— consisting of 236 pages of "FISC opinions and underlying documents"—likely requires a substantially different segregability calculus than, for example, Document 96—three pages of "[g]uidelines pertaining to implementation of [S]ection 215 authority." *Vaughn* Index at 9, 10.

Further, the absence of *any* segregable information is particularly suspect where, as is the case here, some of the documents contain hundreds of pages. *See, e.g., id*. at 9, 10, 11 (Document 82, consisting of 234 pages; Document 97, consisting of 114 pages; Document 99, consisting of 268 pages). Moreover, Defendant now admits that "otherwise unclassified information" exists within the withheld records. Third Bradley Decl. ¶ 8. "FOIA mandates disclosure of information, not solely disclosure of *helpful* information." *Stolt-Nielsen Transp. Grp. v. United States*, 534 F.3d

Case4:11-cv-05221-YGR Document55 Filed05/09/13 Page6 of 9

728, 734 (D.C. Cir. 2008) (rejecting argument that redacted documents could be withheld because they "would provide no meaningful information") (emphasis added). Thus, FOIA requires the disclosure of this information, even if it does not shed light on the government's secret legal interpretation of Section 215.

Defendant's repeated failure to comply with the segregability requirement of FOIA and, indeed, this Court's own directive, casts substantial doubt on the propriety of Defendant's claims generally. Without a more searching segregability assessment, Defendant's claims remain incomplete and lack credibility. Nevertheless, and despite failing to comply with the Court's Order, Defendant did provide some additional, general information concerning segregability. However, even with the provision of this additional information, Defendant's claims fail to justify the withholding of over 3,000 pages of responsive records in their entirety.

First, Defendant invokes E.O. 13,526 § 1.7(e) as a justification for withholding unclassified, segregable information from responsive records. Third Bradley Decl. ¶ 10. Mr. Bradley asserts that Section 1.7(e) constitutes a "recognition that seemingly mundane and non-sensitive material could, when viewed in the context of other available information, reveal highly sensitive information to sophisticated adversaries." *Id*. However, Section 1.7(e) is not a justification for the classification of innocuous information: indeed, Section 1.7 is titled "Classification *Prohibitions and Limitations*." E.O. 13,526 § 1.7 (emphasis added). Contrary to Defendant's claims, Section 1.7(e) recognizes that the government's *compilation* of individually unclassified information can create a new, potentially-classifiable document or record. *See* E.O. 13,526 (information classifiable only if *the compiled* information "reveals an additional association or relationship"). Section 1.7(e) does not, as Defendant suggests, provide additional, independent authority to classify information that does not fall within Section 1.4's classification categories. *See id*. (compilation may only be classified if it "meets the standards for classification" and "is not otherwise revealed in the individual items of information").

Defendant further suggests "the disclosure of even seemingly mundane portions of FISC materials, when considered in conjunction with other publicly available information, could

reasonably be expected to assist a sophisticated adversary in deducing particular intelligence activities or sources." Third Bradley Decl. ¶ 10. Thus, Defendant acknowledges two facts: (1) the FISC materials contain "seemingly mundane portions" and (2) the disclosure of these "mundane portions," alone, would not disclose intelligence sources, methods, or threaten national security. *See id*. At the bare minimum, Defendant can describe the *type* of "seemingly mundane" information contained within the records; in reality, Defendant can likely segregate and release this information.

Defendant further suggests that even legal analysis cannot be segregated and disclosed because:
> [L]egal analysis would tend to reveal the *legal question* being analyzed and the *particular aspects of the statute being considered*, and thus would reveal how *statutory authority and judicial authority is being applied in a specific context* to the use or application of a particular intelligence source or method.

Third Bradley Decl. ¶ 11 (emphasis added). Far from a justification for non-disclosure, this is precisely the type of information that cannot be withheld from the public under FOIA. *See* Pl. Mem. at 10-12; Pl. Rep. 7-11; *see also Gordon v. FBI*, 388 F. Supp. 2d 1028, 1036-37 (N.D. Cal. 2005) ("legal basis for detaining" individual on "No Fly" list not exempt under Exemptions 2 or 7(E)). Indeed, the consideration of "legal question[s]," the "particular aspects of the statute being considered," and the application of "statutory authority and judicial authority" is the information that enables the public to ratify or reject the government's interpretation of public laws.

Indeed, Defendant's generalized attempt to justify such an extraordinary claim is, at best, half-hearted. *See* Third Bradley Decl. ¶ 11 (suggesting that "something as seemingly innocuous as a particular case citation or statutory provision" could threaten disclosure of sources and methods). Defendant does not—and, indeed, cannot—support the improbable contention that a citation to 50 U.S.C. § 1861(a)(1), or to 50 U.S.C. § 1861(b)(2)(A), or to 50 U.S.C. § 1861(g) could reveal intelligence sources or methods; or, far less likely still, that disclosure of this information could harm the nation's security.

At its core, Defendant's claim is that it is free to withhold any information about the use of Section 215, "beyond the general notion that the Government may be using the provision to collect

information." Third Bradley Decl. ¶ 11. But such a broad assertion of exemption is incompatible with FOIA and the public's fundamental interest in, and right to know, how the government interprets public laws.

### III. In Camera *Review of Responsive Records is Both Appropriate and Necessary in Light of Defendant's Repeated Failure to Provide the Court and EFF with Adequate Information*

In light of Defendant's failure to provide the Court and EFF with credible and consistent information concerning the withheld records, Defendant has not satisfied its burden to withhold over 3,000 pages of responsive records in their entirety. As EFF's moving papers suggested, *see* Pl. Rep. at 14-15, *in camera* review of responsive records is an option available to aid this Court's assessment of Defendant's extraordinary withholding claims. Indeed, should the Court review Defendant's *ex parte* declarations, EFF respectfully urges the Court to also order the submission of responsive records to supplement this Court's *in camera* review. Defendant's public declarations have, thus far, been inaccurate, inconsistent, and unspecific: *in camera* review of withheld records is the only reliable method of ensuring Defendant's *ex parte* submissions do not suffer from similar defects.

To best balance the voluminous number of records still at issue in this case and the Court's *de novo* review obligations, EFF respectfully submits that the production of a representative sample of responsive documents for the Court's *in camera* review may provide the best avenue for this case moving forward. *See Bonner v. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991) ("Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved."); *Feshbach v. SEC*, 5 F. Supp. 2d 774, 782 n. 6 (N.D. Cal. 1997) (employing representative sampling). If the Court believes *in camera* review appropriate at this juncture, EFF respectfully suggests the Court order the submission of the following documents: Documents 1, 14, 29, 36, 39, 47, 82, 88, 95, and 100. *Vaughn* Index at 1, 2, 4, 5, 9, 10, 11.[6]

---

[6] Mr. Bradley also asserts, for the first time in his third declaration in this case, that the FISC's rules and procedures prevent the release of the FISC materials at issue in this case. Third Bradley Decl. ¶ 13. First, Mr. Bradley's claims are without merit. *See, e.g.*, *In re Mot. for Release of Court Records*, 526 F. Supp. 2d 484, 496 (FISC Dec. 11, 2007) (FISC opinion rejecting First Amendment

-7-

Defendant's supplemental filing ignored this Court's clear order and still fails to satisfy Defendant's burden at summary judgment. Consequently, the continued withholding of responsive records is not justified, and EFF respectfully urges this Court to order the disclosure of responsive records.

DATED: May 9, 2013

Respectfully submitted,

    /s/ Mark Rumold
Mark Rumold
Jennifer Lynch
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

---

and common law claims of access to FISC materials, but noting that the public is not "foreclose[d] . . . from pursuing whatever remedies may be available to it in a district court through a FOIA request addressed to the Executive Branch"). Second—because Defendant has raised a legal argument in a declaration and, making matters worse, only after full briefing on summary judgment—Defendant's improper and belated attempt to erect yet another obstacle to disclosure should be disregarded. *Bazuaye v. INS,* 79 F.3d 118, 120 (9th Cir. 1996) (*per curiam*) ("Issues raised for the first time in the reply brief are waived.").