STUART F. DELERY
Assistant Attorney General
MELINDA HAAG
United States Attorney
ELIZABETH J. SHAPIRO
Deputy Branch Director
STEVEN Y. BRESSLER D.C. Bar No. 482492
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 305-0167
Facsimile:  (202) 616-8470
Email: Steven.Bressler@usdoj.gov

Attorneys for the United States Department of Justice

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, )<br>        )<br>                Plaintiff, )<br>        )<br>        v. )<br>        )<br>UNITED STATES DEPARTMENT OF )<br>JUSTICE, )<br>        )<br>                Defendant. )<br>        )<br>        )<br>_____ ) | Case No. 4:11-cv-05221-YGR<br><br>Date:  June 3, 2014<br>Time:  2:00 p.m.<br>Place:  Oakland U.S. Courthouse<br>Judge:  Hon. Yvonne Gonzalez Rogers<br><br>**NOTICE OF MOTION AND MOTION<br>FOR SUMMARY JUDGMENT AND<br>MEMORANDUM IN SUPPORT** |

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................... 1

MOTION FOR SUMMARY JUDGMENT ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................ 2

    A.  Section 215 of the USA PATRIOT Act .................................................................. 2

    B.  Plaintiff's FOIA Request and This Civil Action ..................................................... 5

ARGUMENT ...................................................................................................................... 7

    I.  FOIA Requires the Disclosure Only of Non-Exempt Records, and This
        Court Lacks Authority to Compel the Disclosure of Exempt Records .................. 7

    II.  The Defendants Have Properly Withheld Records that Are Exempt
        from Disclosure under FOIA ............................................................................. 9

    A.  The Defendants Have Properly Withheld Records under FOIA Exemption 1 ............... 9

    B.  Defendant Has Properly Withheld Records under FOIA Exemption 3 ......................... 5

    C.  Defendant Has Properly Withheld a Privileged Legal Advice Memorandum
        under FOIA Exemption 5 .................................................................................... 7

    D.  The Government Has Properly Withheld Information Subject To Exemption
        7(E) .................................................................................................................. 21

    E.  The Government Has Properly Withheld Information Subject To Exemption
        7(E) .................................................................................................................. 23

    F.  Defendants Have Produced All Reasonably Segregable Portions of
        Responsive  Records ........................................................................................... 4

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Clapper*,
959 F. Supp. 2d 724 (S.D.N.Y. 2013)..................................................................... 11

*ACLU v. Dep't of Defense*,
628 F.3d 612 (D.C. Cir. 2011) ................................................................................ 23

*ACLU v. Dep't of Justice*,
265 F. Supp. 2d  20 (D.D.C. 2003) ......................................................................... 32

*ACLU Found. v. Dep't of Justice*,
833 F. Supp. 399 (S.D.N.Y. 1993).......................................................................... 30

*Al-Haramain Islamic Found. v. Bush*,
507 F.3d 1190 (9th Cir. 2007) ................................................................................ 19

*Amnesty Int'l v. CIA*,
728 F. Supp. 2d 479 (S.D.N.Y. 2010)............................................................... 21, 26

*Assembly of State of Cal. v. Dep't of Commerce*,
968 F.2d 916 (9th Cir. 1992) ............................................................................. 25, 26

*Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*,
830 F.2d 331 (D.C. Cir. 1987) ................................................................................ 16

*Balridge v. Shapiro*,
455 U.S. 345 (1982) ................................................................................................ 22

*Berman v. CIA*,
501 F.3d 1136 (9th Cir. 2007) ................................................................................ 18

*Binion v. Dep't of Justice*,
695 F.2d 1189 (9th Cir. 1983) ........................................................................... 29, 30

*Bonner v. Dep't of State*,
928 F.2d 1148 (D.C. Cir. 1991) .............................................................................. 13

*Brinton v. Dep't of State*,
636 F.2d 600 (D.C. Cir. 1980) ................................................................................ 27

*Carter v. United States Dep't of Commerce*,

  307 F.3d 1084 (9th Cir. 2002) ...................................................................... 24, 25

*Church of Scientology of Cal. v. Dep't of the Army*,

  611 F.2d 738 (9th Cir. 1980) ...................................................... 16, 29, 30

*CIA v. Sims*,

  471 U.S. 159 (1985) ...................................................... 14, 22, 23, 24

*Coastal Delivery Corp. v. U.S. Customs Serv.*,

  272 F. Supp. 2d 958 (C.D. Cal. 2003) ................................................ 15

*Coastal States Gas Corp. v. Dep't of Energy*,

  617 F.2d 854 (D.C. Cir. 1980) ........................................................ 25

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,

  331 F.3d, 918  (D.C. Cir. 2003) ...................................................... 16

*Dep''t of Air Force v. Rose*,

  425 U.S. 352 (1976) ........................................................................ 14

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,

  532 U.S. 1 (2001) ...................................................................... 25, 26

*Dow Jones & Co. v. Dep't of Justice*,

  917 F.2d 571 (D.C. Cir. 1990) ........................................................ 25

*Elec. Privacy Info. Ctr. v. Dep't of Justice*,

  584 F.Supp.2d 65 (D.C. Cir. 2008) .................................................. 28

*Essential Info., Inc. v. U.S. Info. Agency*,

  134 F.3d 1165 (D.C. Cir. 1998) ...................................................... 22

*Fisher v. Dep't of Justice*,

  772 F. Supp. 7 (D.D.C. 1991), ........................................................ 30

*Fitzgibbon v. CIA*,

  911 F.2d 755 (D.C. Cir. 1990) .................................................. 22, 32

*Frontier Found. v. Dep't of Justice*,

  No 11-939, 2012 WL 4319901 (D.D.C. Sept. 21, 2012) ...................... 27

*Frontier Found. v. Dep't of Justice*,

  739 F.3d 1 (D.C. Cir. 2014) ........................................................................... 27, 28

*Frugone v. CIA*,

  169 F.3d 772 (D.C. Cir. 1999) ....................................................................... 16, 17

*FTC v. Warner Commc'ns, Inc.*,

  742 F.2d 1156 (9th Cir. 1984) ............................................................................. 25

*Greyshock v. U.S. Coast Guard*,

  107 F.3d 16, 1997 WL 51514 (9th Cir. Feb. 6, 1997) ......................................... 21

*Hale v. U.S. Dep't of Justice*,

  973 F.2d 894 (10th Cir. 1992), ........................................................................... 14

*Halkin v. Helms*,

  598 F.2d 1 (D.C. Cir. 1978) ................................................................................ 18

*Halperin v. CIA*,

  629 F.2d 144 (D.C. Cir. 1980) ............................................................................ 17

*Hayden v. NSA,*,

  608 F.2d 1381 (D.C. Cir. 1979) .......................................................................... 24

*Hunt v. CIA*,

  981 F.2d 1116 (9th Cir. 1992) ................................................................. 15, 16, 18

*John Doe Agency v. John Doe Corp.*,

  493 U.S. 146 (1989) ..................................................................................... 14, 15

*Kasza v. Browner*,

  133 F.3d 1159 (9th Cir. 1998) ............................................................................ 22

*Keys v. Dep't of Justice*,

  830 F.2d 337 (D.C. Cir. 1987) ............................................................................ 30

*Klamath Siskiyou Wildlands Ctr. v. Dep't of Interior*,

  Civ. No. 07-325-CL, 2007 WL 4180685 (D. Or. Nov. 21, 2007) ........................ 31

*Klayman v. Obama*,

  957 F. Supp. 2d 1 (D.D.C. 2013) ....................................................................... 11

*Krikorian v. Dep't of State,*
   984 F.2d 461 (D.C. Cir. 1993) ............................................................................. 20

*Lane v. Dep't of the Interior,*
   523 F.3d 1128 (9th Cir. 2008) ............................................................................. 15

*Larson v. Dep't of State,*
   565 F.3d 857 (D.C. Cir. 2009) ............................................................................. 23

*Lewis v. IRS,*
   823 F.2d 375 (9th Cir. 1987) ...................................................................... 29, 31

*Linder v. NSA,,*
   94 F.3d 693 (D.C. Cir. 1996) ............................................................................. 24

*Lion Raisins v. Dep't of Agric.,*
   354 F.3d 1072 (9th Cir. 2004) ...................................................................... 15, 21

*MacPherson v. IRS,*
   803 F.2d 479 (9th Cir. 1986) ...................................................................... 30, 31

*Maricopa Audubon Soc'y v. U.S. Forest Serv.,*
   108 F.3d 1082 (9th Cir. 1997) ............................................................... 24, 25, 28

*Maynard v. CIA,*
   986 F.2d 547 (1st Cir. 1993) ............................................................................. 20

*Meeropol v. Meese,*
   790 F.2d 942 (D.C. Cir. 1986) ............................................................................. 13

*Milner v. Dep't of Navy,*
   --- U.S. ----, 131 S. Ct. 1259 (2011) .......................................................... 29, 30

*Minier v. CIA,*
   88 F.3d 796 (9th Cir. 1996) ................................................................ 15, 17, 18, 22

*Miscavige v. IRS,*
   2 F.3d 366 (11th Cir. 1993) ............................................................................. 15

*Mobley v. Department of Justice,*
   870 F. Supp. 2d 61 (D.D.C. 2012) ............................................................................. 21

*Mohamed v. Jeppesen*,

   614 F.3d 1070 (9th Cir. 2010) ............................................................................. 19

*Nat'l Sec. Archive Fund, Inc. v. CIA*,

   402 F. Supp. 2d 211 (D.D.C. 2005) ...................................................................... 31

*New York Times Co. v. DOD*,

   499 F. Supp. 2d 501 (S.D.N.Y. 2007) .................................................................. 23

*NLRB v. Robbins Tire & Rubber Co.*,

   437 U.S. 214 (1978) .............................................................................................. 31

*NLRB v. Sears, Roebuck & Co.*,

   421 U.S. 132 (1975) ......................................................................................... passim

*North Dartmouth Prop., Inc. v. Dep't of Hous. & Urban Dev.*,

   984 F. Supp. 65 (D. Mass. 1997) ......................................................................... 25

*People for the Am. Way Fund. v. NSA,*,

   462 F. Supp. 2d 21 (D.D.C. 2006) ....................................................................... 32

*PHE, Inc. v. Dep't of Justice*,

   983 F.2d 248 (D.C. Cir. 1993) .............................................................................. 29

*Rockwell Int'l Corp. v. Dep't of Justice*,

   235 F.3d 598 (D.C. Cir. 2001) .............................................................................. 26

*Rosenfeld v. United States Dep't of Justice*,

   57 F.3d 803 (9th Cir. 1995) ............................................................................ 29, 30

*Russell v. Dep't of Air Force*,

   682 F.2d 1045 (D.C. Cir. 1982) ............................................................................ 25

*Safecard Servs., Inc. v. SEC*,

   926 F.2d 1197 (D.C. Cir. 1991) ............................................................................ 16

*Salisbury v. United States*,

   690 F.2d 966 (D.C. Cir. 1982) .............................................................................. 17

*Southam News v. INS*,

   674 F. Supp. 881 (D.D.C.1987) ............................................................................ 27

*Spurlock v. FBI,*

   69 F.3d 1010 (9th Cir. 1995) ........................................................................ 15

*Tax Analysts v. IRS,*

   294 F.3d 71 (D.C. Cir. 2002) ....................................................................... 32

*United States v. Weber Aircraft Corp.,*

   465 U.S. 792 (1984) ..................................................................................... 24

*Vaughn v. Rosen,*

   523 F.2d 1136 (D.C. Cir. 1975) ................................................................... 26

*Weinberger v. Catholic Action of Haw.,*

   454 U.S. 139 (1981) ................................................................................ 16, 17

*Weiner v. FBI,*

   943 F.2d 972 (9th Cir. 1991) ....................................................................... 21

*Wilkinson v. FBI,*

   633 F. Supp. 336 (C.D. Cal. 1986) .............................................................. 29

## STATUTES

5 U.S.C. § 552 ..................................................................................... passim

13 U.S.C. § 8 ........................................................................................... 26

13 U.S.C. § 9 ........................................................................................... 26

13 U.S.C. § 214 ....................................................................................... 26

50 U.S.C. § 1801, et seq. .......................................................................... 10

50 U.S.C. § 1803 ..................................................................................... 10

50 U.S.C. § 1843 ..................................................................................... 20

50 U.S.C. § 1861 ................................................................................... 8, 10

50 U.S.C. § 3605 ................................................................................. 23, 24

50 U.S.C. § 403-1(i) ................................................................................. 23

## RULES

Fed. R. Civ. P. 56 .................................................................................. 8, 15

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on June 3, 2014, at 2:00 p.m. in the United States Courthouse at Oakland, California, defendant, the United States Department of Justice, by and through undersigned counsel, will move this Court for summary judgment on all of plaintiff's claims in its Amended Complaint.

**MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States Department of Justice, hereby moves for summary judgment on all of the claims in plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 56 and the Freedom of Information Act, 5 U.S.C. § 552, for the reasons more fully set forth in the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

One of the greatest challenges the United States faces in combating international terrorism and preventing potentially catastrophic terrorist attacks on our country is identifying terrorist operatives and networks, particularly those operating within the United States. The identification and exploitation of terrorist communications are critical tools in this effort.

In response to unauthorized disclosures about intelligence-gathering activities conducted by the National Security Agency ("NSA"), the government has acknowledged the existence and certain details of a counter-terrorism program to identify and exploit such terrorist communications. Under Section 215 of the USA PATRIOT Act, 50 U.S.C. § 1861(a)(1), the NSA obtains and may review, pursuant to orders of the Foreign Intelligence Surveillance Court ("FISC"), bulk telephony metadata – business records created by telecommunications service providers that include such information as the telephone numbers placing and receiving calls, and the time and duration of those calls, but not their content.

Plaintiff in this Freedom of Information Act ("FOIA") case, the Electronic Frontier Foundation, seeks release of documents that contain a significant legal interpretation of the government's authority under Section 215. As a result of discretionary decisions by the Director of National Intelligence ("DNI") to acknowledge and declassify certain information concerning

telephony metadata collection and other counter-terrorism activities, the government has released to the public thousands of pages of declassified documents.  Among those are over 1000 pages produced to plaintiff and responsive to its FOIA request.  Nonetheless, many operational details related to specific applications of the intelligence sources and methods used by the United States to carry out its authority under Section 215 remain classified today.  That is because exposure of those highly sensitive intelligence sources and methods to the United States' adversaries would risk serious or exceptionally grave damage to national security.   As a result, defendant has withheld some documents, and redacted information from others, responsive to plaintiff's FOIA request.

The information that the government continues to withhold is exempt from FOIA disclosure because it is currently and properly classified, and therefore subject to FOIA Exemption 1; because it is protected by statute, and therefore subject to FOIA Exemption 3; because its release would interfere with an ongoing national security investigation, and therefore is subject to Exemption 7(A); and/or because it concerns sensitive law enforcement methods and techniques still employed today by the government in national security investigations, and therefore is subject to FOIA Exemption 7(E).  By agreement of the parties, their cross-summary judgment motions will focus on withholding of such information in a sample of documents, opinions and orders of the FISC.  In addition, defendant has withheld a single legal advice memorandum prepared by the Office of Legal Counsel ("OLC") for the Department of Commerce, which is protected by the deliberative process privilege and, therefore, subject to FOIA Exemption 5.

As set forth below, and in the declarations of government officials submitted herewith, the withheld documents or portions of documents over which the parties will cross-move for summary judgment are properly exempt from disclosure under FOIA.  The Court should, therefore, grant summary judgment to defendant on plaintiff's FOIA claim.

# BACKGROUND

## A.  Section 215 of the USA PATRIOT Act

Section 215 – originally enacted on October 26, 2001 as part of USA PATRIOT Act, Pub. L. 107-56, 115 Stat. 272 (2001) – amends the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801, *et seq.* ("FISA").  Section 215 authorizes the FISC, an Article III court composed of 11 appointed U.S. district judges, *see* 50 U.S.C. § 1803, to issue an order for the "production of any tangible things (including books, records, papers, documents, and other items) for an investigation [1] to obtain foreign intelligence information not concerning a United States person or [2] to protect against international terrorism." 50 U.S.C. § 1861(a)(1). The investigation must be authorized and conducted under guidelines approved by the Attorney General under Executive Order 12333 (or a successor thereto), *id.* § 1861(a)(2)(A), (b)(2)(A), and the Government's application must include, among other things, a statement of facts showing that there are "reasonable grounds to believe that the tangible things sought are relevant" to the investigation in question.  *Id.* § 1861(b)(2)(A).

Information contained in the records or other items received in response to a Section 215 order "concerning any United States person may be used and disclosed by [the Government] without the consent of [that] person only in accordance with . . . minimization procedures," adopted by the Attorney General and enumerated in the Government's application, that "minimize the retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need . . . to obtain, produce, and disseminate foreign intelligence information." *Id.* § 1861(b)(2)(B), (g)(2), (h).  The FISC must find these requirements have been met before it issues the requested order, which must direct that the minimization procedures set forth in the application be followed.  *Id.* § 1861(c)(1).

As initially enacted, Section 215 was set to expire on December 31, 2005.  USA PATRIOT Act, § 224.  Congress subsequently reauthorized Section 215 for limited periods of time on several occasions.  *See* 50 U.S.C. § 1861 note.  On May 26, 2011, Congress reauthorized

1    Section 215 until June 1, 2015.  *See* PATRIOT Sunsets Extension Act of 2011, Pub. L. No. 112-

2    14, 125 Stat. 216 (2011).

3            Under the bulk telephony metadata collection program acknowledged by the DNI, the

4    FBI has since May 2006 obtained orders from the FISC under Section 215 directing certain

5    telecommunications service providers to produce to the NSA, on a daily basis, electronic copies

6    of "call detail records" containing "telephony metadata," created by the recipient providers for

7    calls to, from, or within the United States.  The NSA has then stored and queried the metadata for

8    counter-terrorism purposes.  Under the FISC's orders, the NSA's authority to continue the

9    program expires after approximately 90 days and must be renewed.  The FISC first authorized

10   the program in May 2006, and since then has renewed the program over 35 times, under orders

11   issued by at least 15 different FISC judges, most recently on the date of this filing, March 28,

12   2014.[1]

13           The President made changes to the program in 2014, and Congress is considering further

14   changes.  On January 17, 2014, the President ordered a transition that would end the Section 215

15   bulk telephony metadata program as it then existed and establish a new mechanism to preserve

16   critical capabilities without the government holding bulk telephony metadata.  *See* "FACT

17   SHEET:  The Administration's Proposal for Ending the Section 215 Bulk Telephony Metadata

18   Program," *available at* http://www.whitehouse.gov/the-press-office/2014/03/27/fact-sheet-

19   administration-s-proposal-ending-section-215-bulk-telephony-m (last visited March 28, 2014).

20   Pursuant to the President's direction, the Department of Justice asked the FISC to modify the

21   orders under which telephony metadata program is conducted to ensure that (1) absent an

22

23           [1] *See In re Application of the FBI for an Order Requiring the Production of Tangible
     Things from [Redacted]*, Dkt. No. BR 13-109 (F.I.S.C. Aug. 29, 2013) (Exh. C) at 29; *In re
24   Application of the FBI for an Order Requiring the Production of Tangible Things from
     [Redacted]*, Dkt. No. BR 13-158 (F.I.S.C. Oct.  11, 2013) (Exh. D) at 2-6.  *See also ACLU v.
25   Clapper*, 959 F. Supp. 2d 724 (S.D.N.Y. 2013) (discussing and upholding legality of Section 215
     bulk telephony metadata collection program) (appeal docketed).  *But see Klayman v. Obama*,
26   957 F. Supp. 2d 1 (D.D.C. 2013) (granting preliminary injunction against application of program
     to two plaintiffs) (appeal docketed).  As the Court is aware, the Section 215 telephony metadata
27   collection program is also the subject of a pending suit before another judge of this Court.  *See
     First Unitarian Church of Los Angeles, et al. v. NSA*, Case No. 3:13-cv-03287-JSW (N.D. Cal.).

28

emergency situation, a FISC judge approves the specific identifiers (*e.g.*, telephone numbers) used to query the telephony metadata collected pursuant to the program, based on reasonable, articulable suspicion that each identifier is associated with a specified foreign terrorist group; and (2) the results of any query are limited to metadata within two "hops" (*i.e.*, degrees of contact) of the selection term being used, instead of three.  *Id.*  The FISC approved the government's requested modifications on February 5, 2014.  *Id.*  And this week, following a review by the Department of Justice and the Office of the Director of National Intelligence, the President made a further proposal to, with the passage of appropriate legislation, allow the government to end bulk collection of telephony metadata records under Section 215, while ensuring that the government has access to the information it needs to meet its national security requirements.  *Id.* As stated in the proposal, "[g]iven that this legislation will not be in place by March 28 and given the importance of maintaining the capabilities in question, the President has directed DOJ to seek from the FISC a 90-day reauthorization of the existing program, which includes the substantial modifications in effect since February."  *Id.* The Department of Justice received such a 90-day reauthorization on March 28, 2014.

## B.  Plaintiff's FOIA Request and This Civil Action

Background concerning plaintiff's original FOIA request and the government's response is set out in detail in defendant's first Motion for Summary Judgment, which is incorporated herein by reference.  *See* ECF No. 40.  Plaintiff's FOIA request, as narrowed by the parties both before and during litigation, seeks documents from defendant that contain significant legal analysis or interpretations of Section 215.  *See id. See also* Letter from Steven Y. Bressler to the Court dated August 22, 2012, ECF No. 32, & Letter from Mark Rumold to the Court dated August 24, 2012, ECF No. 33 (summary judgment motion pre-filing letters identifying categories of documents that were included and excluded, respectively, from further litigation at that time).

The posture of this action changed markedly in the summer and fall of 2013.  On June 6, 2013, newspapers published articles and documents received from a former NSA contractor.  *See* Declaration of Jennifer L. Hudson (Exh. A) ¶ 15.  This "unauthorized disclosure of TOP

SECRET documents touched on some of the U.S. Government's most sensitive national security programs, including highly classified and on-going signals intelligence collection programs." *Id.* These unauthorized disclosures included previously classified information regarding Section 215. *Id.* ¶ 19. In response, the Director of National Intelligence ("DNI") declassified certain information regarding the collection of bulk telephony metadata pursuant to Section 215. *Id.* ¶ 21. Defendant informed the Court of the DNI's action, and the parties asked the Court to hold their fully-briefed Cross Motions for Summary Judgment in abeyance while the government determined what impact the change in classification would have on the records at issue in this FOIA case. *Id.* ¶ 22; ECF Nos. 57, 59, 61.

In response to the unauthorized disclosures, on June 20, 2013, the President directed the DNI to continue to review whether further information could be declassified regarding, *inter alia*, activities authorized under Section 215. Hudson Decl. ¶ 23. Since that time, at presidential direction and under guidance by the DNI, the U.S. Government has "engaged in a large-scale, multi-agency review process" to "determine what further information concerning programs under Section 215 and other surveillance programs could be declassified and released consistent with the national security for the purpose of restoring public confidence and better explaining the legal rationale and protections surrounding the programs." *Id.* ¶ 24. The government reprocessed documents responsive to plaintiff's FOIA request as part of this broader review. *Id.*

As a result of this initiative, the DNI exercised his discretion under Executive Order 13526 to declassify and publicly release a number of documents pertaining to telephony metadata collection under Section 215, including over 1,000 pages responsive to plaintiff's FOIA request as well as additional documents outside the scope of that request. *Id.* ¶ 26; see also "Office of the DNI: IC On the Record," *available at* ICOntheRecord.tumblr.com (last visited March 28, 2014).

The parties recently proposed, and the Court agreed, that summary judgment motion practice would "focus on a representative sample of withheld documents consisting of all responsive Orders and Opinions of the FISC." ECF Nos. 71, 72. The parties agree that the Court's determinations on the withholding of specific information from the representative

1  sample will "count not simply for" the sample, but for similar information in "non-sample

2  documents still withheld." *Bonner v. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991). *See*

3  *Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986) (such sampling allows a reviewing court

4  "to extrapolate its conclusions from the representative sample to the larger group of withheld

5  material") (internal quotation omitted).

6         While the DNI declassified considerable information pertaining to Section 215,

7  operational details as to specific applications of the sources and methods used by the United

8  States pursuant to Section 215 remain classified.  Hudson Decl. ¶ 27.   Therefore, the information

9  redacted from documents produced to plaintiff is exempt from FOIA disclosure under various

10 statutory exemptions.  In particular, as described below and in the public and classified

11 Declarations of Jennifer Hudson and the Declaration of Paul Colborn, defendant has withheld

12 information pursuant to FOIA Exemptions 1, 3, 5, 6, 7(A), 7(C),[2] and 7(E).

13         Accordingly, the United States Department of Justice now seeks summary judgment

14 concerning its withholding of exempt information under the FOIA.

**ARGUMENT**

15

16 I.     **FOIA Requires the Disclosure Only of Non-Exempt Records, and This Court
           Lacks Authority to Compel the Disclosure of Exempt Records**
17

18         The Freedom of Information Act was enacted to "pierce the veil of administrative secrecy

19 and to open agency action to the light of public scrutiny."  *Dep't of Air Force v. Rose*, 425 U.S.

20 352, 361 (1976) (internal quotation omitted).  However, the public's interest in government

21 information under FOIA is not absolute – "[i]t extends only to information that sheds light upon

22 the government's performance of its duties."  *Hale v. U.S. Dep't of Justice*, 973 F.2d 894, 898

23 (10th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993).  "Congress recognized . . . that

24 public disclosure is not always in the public interest."  *CIA v. Sims*, 471 U.S. 159, 166-67 (1985).

25         FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless

26 information is exempted under clearly delineated statutory language."  *John Doe Agency v. John*

27

28         [2] Plaintiff has informed defendant that plaintiff does not challenge the withholdings
    pursuant to Exemptions 6 and 7(C), which include the names of individuals.

*Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting *Rose*, 425 U.S. at 360-361 (1976)) (other citation

omitted).  FOIA is designed to achieve a "workable balance between the right of the public to

know and the need of the Government to keep information in confidence to the extent necessary

without permitting indiscriminate secrecy." *Id.* (citation omitted).

Toward that end, FOIA incorporates "nine exemptions . . . which a government agency

may invoke to protect certain documents from public disclosure." *Minier v. CIA*, 88 F.3d 796,

800 (9th Cir. 1996).  Despite the "liberal congressional purpose" of FOIA, the Supreme Court

has recognized that the statutory exemptions are intended to have "meaningful reach and

application." *John Doe*, 493 U.S. at 152.  "A district court only has *jurisdiction* to compel an

agency to disclose *improperly withheld* agency records," *i.e.*, records that do "not fall within an

exemption." *Minier*, 88 F.3d at 803 (emphasis in original).  Thus, "[r]equiring an agency to

disclose exempt information is not authorized by FOIA." *Id.* (quoting *Spurlock v. FBI*, 69 F.3d

1010, 1016 (9th Cir. 1995)).

FOIA actions are generally resolved through summary judgment motions pursuant to

Fed. R. Civ. P. 56.  *See Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA

cases should be handled on motions for summary judgment . . ."); *Coastal Delivery Corp. v. U.S.

Customs Serv.*, 272 F. Supp. 2d 958, 962 (C.D. Cal. 2003) (same, citing *id.*).  Under FOIA,

courts conduct *de novo* review to determine whether the government properly withheld records

under any of the FOIA's nine statutory exemptions.  5 U.S.C. § 552(a)(4)(B).  The government

bears the burden of justifying non-disclosure. *Minier*, 88 F.3d at 800.  "The agency may meet its

burden by submitting a detailed affidavit showing that the information 'logically falls within the

claimed exemptions.'" *Id.* (quoting in part *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)).

Thus, "[c]ourts are permitted to rule on summary judgment in FOIA cases solely on the basis of

government affidavits describing the documents sought." *Lion Raisins v. Dep't of Agriculture*,

354 F.3d 1072, 1082 (9th Cir. 2004) (citation omitted).  "If the affidavits contain reasonably

detailed descriptions of the documents and allege facts sufficient to establish an exemption, the

district court need look no further." *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th

Cir. 2008) (internal quotation omitted).

Critically, although the government "may not rely upon conclusory and generalized allegations of exemptions," it "need not specify its objections in such detail as to compromise the secrecy of the information." *See Church of Scientology of Cal. v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979) (internal quotation omitted). The Court must accord a presumption of good faith to agency declarations submitted in support of claimed exemptions. *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Moreover, courts afford deference to the agency's declarations regarding withholding in instances of national security – "a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926-27 (D.C. Cir. 2003). Although the court still conducts *de novo* review of an agency's actions, "*de novo* review in FOIA cases is not everywhere alike." *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987). Because "courts have little expertise in either international diplomacy or counterintelligence operations, [they] are in no position to dismiss the [agency's] facially reasonable concerns" about the harm that disclosure could cause to national security. *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999). As the Ninth Circuit has directed, for exemptions related to national security, "the district court [is] required to accord 'substantial weight' to [the agency's] affidavits" as long as it is not "controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Hunt*, 981 F.2d at 1119 (citation, internal quotation omitted).

The discussion below, the declarations, and the *Vaughn* index demonstrate that the government has provided the proper bases for all of the challenged withholdings pursuant to 5 U.S.C. § 552(b). Because defendant has shown that it has properly withheld materials that are exempt from disclosure, the government is entitled to summary judgment on plaintiff's claims.

## II.   The Defendants Have Properly Withheld Records that Are Exempt from Disclosure under FOIA

### A.   The Defendants Have Properly Withheld Records under FOIA Exemption 1

FOIA Exemption 1 protects records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to Executive order." 5 U.S.C. § 552

(b)(1); *accord, e.g.*, *Weinberger v. Catholic Action of Haw.*, 454 U.S. 139, 144 (1981).  In other words, under Exemption 1 material that has been properly classified is exempt from disclosure. *Id.* at 144-45.  For information to be properly classified pursuant to Exemption 1, it must meet the requirements of Executive Order 13,526, "Classified National Security Information," 75 Fed. Reg. 707 (Dec. 29, 2009):

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

*Id.* § 1.1, 75 Fed. Reg. at 707; *see* Hudson Decl. ¶ 31.  The Executive Order lists three classification levels for national security information:  top secret, secret, and confidential.  *Id.* § 1.2, 75 Fed. Reg. at 707-08.  The government's declarant, Jennifer L. Hudson, is an original classification authority.  *See* Hudson Decl. ¶ 3.

As noted, in reviewing classification determinations under Exemption 1, the courts have repeatedly stressed that "substantial weight" must be accorded agency affidavits concerning classified status of the records at issue, and that summary judgment is appropriate if the agency submits a detailed affidavit showing that the information logically falls within the exemption. *See Minier*, 88 F.3d at 800; *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) ("summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith").  Moreover, if "the agency's statements meet this standard, the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency."  *Id.*; *see also Frugone*, 169 F.3d at 775 ("Mindful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns."); *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982) ("'The

Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [effects] might occur as a result of public disclosure of a particular classified record.'") (quoting S. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974)).

The declarations and *Vaughn* index submitted herewith fully support application of Exemption 1, as they describe "the justifications for nondisclosure with reasonably specific detail," *Hunt*, 981 F.2d at 1119, and "demonstrate that the information withheld logically falls within the claimed exemption[]." *Id.*; *see also Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) (same); *Minier*, 88 F.3d at 800 (same). *See* Hudson Decl. ¶¶ 30-119; Classified Hudson Decl. Ms. Hudson's declarations establish that the government has withheld classified information that relates to intelligence activities, sources, and methods that, if disclosed, could be expected to cause serious or exceptionally grave damage to national security. *See* Hudson Decl., ¶¶ 39-114; Classified Hudson Decl. *See also* Exec. Ord. No. 13,526 § 1.4(c) (information pertaining to "intelligence activities (including covert action), intelligence sources or methods, or cryptology" may be classified if its disclosure could reasonably be expected to damage national security).

For example, the government has withheld information that would identify telecommunications service providers who were ordered to produce business records containing information about communications between telephone numbers. As Ms. Hudson explains in her declaration, disclosing whether particular telecommunications companies assisted with NSA intelligence activities could be expected to cause exceptionally grave damage to national security by, *inter alia*, revealing to foreign adversaries which channels of communication may or may not be secure and, thus, providing a roadmap to avoid U.S. government surveillance and find alternative means to communicate in the course of plotting activity such as terrorist attacks. Hudson Decl. ¶ 58-65, 84. *Accord Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978) (rejecting argument "that admission or denial of the fact of acquisition of [certain] communications … would not reveal which circuits NSA has targeted" as "naïve"). The potentially grave damage to national security of such disclosures, or other, further disclosures, is not reduced by the fact that the government has now declassified the existence of the telephony metadata program under

Section 215.   As the Ninth Circuit has recognized, official confirmation of general information about an intelligence program (such as its existence) does not eliminate the risk to national security of compelling further disclosures of information about the program's details.  *Mohamed v. Jeppesen*, 614 F.3d 1070, 1086, 1090 (9th Cir. 2010) (official acknowledgment of existence of CIA extraordinary rendition program did not preclude details of program remaining state secrets if details' disclosure would risk harm to national security); *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007) (concluding that even though the Government had publicly acknowledged the existence of terrorist surveillance program, disclosing whether the plaintiff had been surveilled would compromise national security).   As discussed below, the identities of telecommunications carriers served with Section 215 orders are also protected from disclosure by FOIA Exemption 3.[3]

The government has also withheld specific and detailed statistical information that would reveal the scope of bulk telephony metadata collection.  Hudson Decl. ¶¶ 46-47, 51.  As Ms. Hudson explains, disclosing statistics such as the aggregate number of call detail records collected by the NSA under the Section 215 bulk telephony metadata program would reveal the types of communications that are safe from collection, as well as the scope of the program.  *Id.* ¶ 47.  This would allow for possible deduction of the service providers subject to the relevant FISC orders, which, like direct revelation of carriers' identities, could allow adversaries of the United States to devise ways to evade surveillance.  *Id.*  As discussed below, this material

---

[3] Congress also recognized the need to protect the identities of telecommunications carriers alleged to have assisted the United States when Congress enacted provisions of the FISA Amendments Act of 2008, Pub. L. 110-261, 122 Stat. 2467, Title II, § 201 (July 10, 2008), which provided such carriers immunity from civil suit when certain conditions are met.  In recommending enactment of the legislation, the Senate Select Committee on Intelligence found that "electronic surveillance for law enforcement and intelligence purposes depends in great part on the cooperation of private companies that operate the nation's telecommunications system." S. Rep. 110-209, at 9 (2007) (accompanying S. 2248).  The Report expressly stated that, in connection with alleged assistance by telecommunications companies after the attacks of September 11, 2001, "it would be inappropriate to disclose the names of the electronic communication service providers from which assistance was sought" and that the "identities of persons or entities who provide assistance to the intelligence community are properly protected as sources and methods of intelligence."  *Id. Accord* 50 U.S.C. § 403-1(i) (protecting intelligence sources and methods from disclosure; discussed *infra*).

concerning signals intelligence and NSA activities is also exempt from disclosure under FOIA Exemption 3.

The government has also withheld certain details related to the collection of signals intelligence with pen register/trap and trace devices pursuant to provisions of FISA separate from Section 215, 50 U.S.C. §§ 1841-1846.  Those details include the dates and docket numbers of FISC orders or opinions.  The DNI has publicly acknowledged that email metadata was collected under a program reauthorized by the FISC approximately every 90 days from its inception until its termination in 2011, except for a brief period.  *See* Hudson Decl. ¶ 717.  As Ms. Hudson explains, revealing FISC docket numbers and dates of opinions or orders regarding this program would permit adversaries of the United States to "deduce or infer the time period for which the program was not operational, thereby determining which of their communications (email metadata) may have escaped NSA collection and querying."  *Id.* As discussed below, this information is also subject to Exemption 3.

The government has also withheld certain information pertaining to an operational technique that the FISC authorized the government to use to query a database of telephony metadata, using certain approved telephone identifiers.  Hudson Decl. ¶¶ 98-103.  As Ms. Hudson explains, disclosure of this intelligence method would compromise NSA's ability to analyze bulk metadata which, in turn, would hamper the Intelligence Community's "identification of previously unknown persons of interest in support of anti-terrorism efforts" and may allow adversaries of the United States to take countermeasures and degrade the effectiveness of the NSA's surveillance and analysis.  *Id.* ¶ 102.  As Ms. Hudson testifies, the government cannot provide further public explanation of the classification of this intelligence method without risking disclosure of the very information the government seeks to protect.  *Id.* ¶ 103.  Should the Court require further information concerning this method, Ms. Hudson provides it in her classified, *ex parte* submission to the Court. [4]   As discussed below, intelligence methods including this one are also protected from disclosure by FOIA Exemption 3.

---

[4]     *In camera, ex parte* review of classified declarations in FOIA cases is common and appropriate where a more detailed public explanation cannot be provided without revealing the very information that is sought to be protected.  *See, e.g.*, *Krikorian v. Dep't of State*, 984 F.2d

Finally, the government has also withheld in full, pursuant to Exemptions 1 and 3, five FISC orders to protect intelligence sources and methods used by the government to gather intelligence data.   Hudson Decl. ¶¶ 105-110.  The orders discuss specific techniques authorized by the FISC, the details of the underlying investigations, and details concerning how the government operationally and technically implements the FISC-authorized techniques, which the government continues to employ.  *Id.* ¶ 107.   As Ms. Hudson explains, revelation of the intelligence activities or methods described in the FISC orders would allow sophisticated targets of national security investigations to divine what information the United States was collecting at particular times, as well as gaps in surveillance, thus providing a roadmap for evading such surveillance.  *Id.* Details, such as docket numbers, would also allow targets to piece together a fuller picture of the FISC-authorized surveillance in question, and therefore better devise countermeasures.  *Id.* ¶ 108.   As Ms. Hudson explains, in combination with already-public information this would permit the targets of national security investigations to thwart those investigations, thereby risking serious damage to national security.  *Id.*  As discussed below, this information is also protected from FOIA disclosure by Exemptions 3 and/or 7(E).  Should the Court require further information concerning this method, Ms. Hudson provides it in her classified, *ex parte* submission to the Court.

The bases for Ms. Hudson's conclusions that the information withheld pursuant to Exemption 1 remains classified is well documented in both her public and classified, *ex parte*

461, 464-65 (D.C. Cir. 1993); *Maynard v. CIA*, 986 F.2d 547, 557 (1st Cir. 1993); *Hayden v. NSA*, 608 F.2d 1381, 1385 (D.C. Cir. 1979); *Greyshock v. U.S. Coast Guard*, No. 96-15266, 107 F.3d 16, 1997 WL 51514, at *3 (9th Cir. Feb. 6, 1997) (unpublished) ("It is well settled that a court may examine an agency declaration *in camera* and *ex parte* when release of the declaration would disclose the very information that the agency seeks to protect." (citation omitted)).  Of course, the Court should "require the government to justify FOIA withholdings in as much detail as possible on the public record before resorting to *in camera* review."  *Lion Raisins*, 354 F.3d at 1084 (requiring government to submit public declarations where it had previously submitted none, but had relied solely on an *in camera* submission).  However, the government has provided "as detailed public affidavits and testimony as possible," and so in camera review of classified affidavits, if necessary, is "appropriate."  *See Weiner v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991) (internal quotation omitted).  Thus, should the Court find the public declaration sufficient, it need not consider the classified submission, but if additional justification is needed, the Court may then find it in the classified material.  *E.g., Mobley v. Dep't of Justice*, 870 F. Supp. 2d 61, 69 (D.D.C. 2012); *Amnesty Int'l v. CIA*, 728 F. Supp. 2d 479, 507-08 (S.D.N.Y. 2010).

declarations, and her judgment that disclosure of that information would be harmful to national security is entitled to "utmost deference" by the courts.  *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998).

### B.    Defendant Has Properly Withheld Records Under FOIA Exemption 3

The government has properly invoked Exemption 3, which applies to records that are "specifically exempted from disclosure" by other federal statutes "if that statute – establishes particular criteria for withholding or refers to the particular types of material to be withheld."  5 U.S.C. § 552(b)(3).  In promulgating FOIA, Congress included Exemption 3 to recognize the existence of collateral statutes that limit the disclosure of information held by the government, and to incorporate such statutes within FOIA's exemptions.  *See Balridge v. Shapiro*, 455 U.S. 345, 352-53 (1982); *Essential Info., Inc. v. U.S. Info. Agency*, 134 F.3d 1165, 1166 (D.C. Cir. 1998).  Under Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  *Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990).  Exemption 3 also applies to every document for which the government has asserted Exemption 1.

The government's declarations support the "two-part inquiry [that] determines whether Exemption 3 applies to a given case."  *Minier*, 88 F.3d at 800-01 (citing *Sims*, 471 U.S. at 167). "First, a court must determine whether there is a statute within the scope of Exemption 3.  Then, it must determine whether the requested information falls within the scope of the statute."  *Id.*  In this case, the government has withheld responsive FISC opinions and orders interpreting or discussing Section 215.  *See generally* Hudson Decl.; *id.* ¶¶ 34-38.  As Ms. Hudson explains in her public declaration (and even more fully in her classified declaration), many of these materials are properly withheld under one or more Exemption 3 statutes.

First, the government has withheld information that would reveal intelligence sources and methods under the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i), which protects intelligence sources and methods from unauthorized disclosure.  *See, e.g.,* Hudson Decl. ¶¶ 50 (aggregate numbers of call detail records that would risk disclosure of the identities of service providers who are intelligence

sources), 65, 79, 83 (identities of service providers who are intelligence sources); 87 (NSA operational technique is an intelligence method); 101 (intelligence method used to query telephony metadata or call detail records); 106, 111-12.  This statute indisputably qualifies as an Exemption 3 statute.  *See ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009); *N.Y. Times Co. v. Dep't of Justice*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012); *N.Y. Times Co. v. DOD*, 499 F. Supp. 2d 501, 512 (S.D.N.Y. 2007).

As the Supreme Court discussed in *Sims*, it is the duty of the responsible Executive Branch officials, "not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising" intelligence sources and methods.  471 U.S. at 180.  The Court observed that, in the National Security Act of 1947, Congress did not limit the scope of "intelligence sources and methods" in any way.  *Id.* at 169.  Rather, it "simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the [responsible agency] needs to perform its statutory duties with respect to [the relevant intelligence activities]."  *Id.* at 169-170.  Applying this deferential standard, the government's classified submission establishes that the documents withheld pursuant to Exemption 3 are, in fact, protected from disclosure under Exemption 3.

Second, some information was properly withheld under Section 6 of the National Security Agency Act of 1959, *codified at* 50 U.S.C. § 3605, which provides that "[n]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof . . . ."  Ms. Hudson explains that various pieces of withheld information would, if not redacted, disclose the organization, activities, and/or functions of the NSA.  *E.g.*, Hudson Decl. ¶¶ 49 (aggregate number of call detail records collected by NSA), 62, 80-82 (telecommunications providers ordered to produce call detail records to NSA), 71 (dates and scope of NSA collection of data using PR/TT devices); 87 (NSA operational technique); 101 (intelligence method used by NSA to query telephony metadata or call detail records).   It is plain

that information such as the name of an internal NSA organization, *id.* ¶ 52, the name of an NSA intelligence analytic tool, *id.* ¶ 54, and the name of an NSA database that stores Section 215 metadata, *id.* ¶ 97, involve "the organization or any function of the [NSA], or . . . information with respect to the activities thereof." 50 U.S.C. § 3605.  That is sufficient to invoke Exemption 3:  "The protection afforded by section 6 is, by its very terms, absolute.  If a document is covered by section 6, NSA is entitled to withhold it regardless of the requesting party's needs." *See Linder v. NSA*, 94 F.3d 693, 698 (D.C. Cir. 1996); *see id.* at 696 ("A specific showing of potential harm to national security is irrelevant to the language of [section 6].  Congress has already decided that disclosure of NSA activities is potentially harmful.") (alterations omitted); *Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C. Cir. 1979).

## C.    Defendant Has Properly Withheld a Privileged Legal Advice Memorandum under FOIA Exemption 5

Defendant has withheld a legal advice memorandum from the Office of Legal Counsel to the Department of Commerce pursuant to Exemption 5, which shields from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  The Supreme Court has clarified that Exemption 5 exempts "those documents, and only those documents [that are] normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also Carter v. Dep't of Commerce*, 307 F.3d 1084, 1088 (9th Cir. 2002).  Exemption 5 thus protects from disclosure records that would be privileged in civil litigation under doctrines such as the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984); *see also Sears*, 421 U.S. at 132, 149, 154; *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082 (9th Cir. 1997).

The principal purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151.  Courts have recognized that this privilege is an "ancient [one] . . . predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Dow*

*Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 573 (D.C. Cir. 1990) (internal quotations marks and citation omitted).  Thus, agencies may invoke the privilege:  (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.  *See Sears*, 421 U.S. at 150-54; *Assembly of State of Cal. v. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992); *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

Documents covered by Exemption 5 include those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Sears*, 421 U.S. at 150 (internal quotation omitted).

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal quotation marks and citations omitted).

The deliberative process privilege of Exemption 5 extends to those documents that are both "predecisional" and "deliberative."  *See Carter*, 307 F.3d at 1089; *Maricopa Audubon Soc'y*, 108 F.3d at 1093; *Assembly of the State of Cal.*, 968 F.2d at 920.  The Ninth Circuit has "adopted the D.C. Circuit's definition of these terms."  *Maricopa Audubon Soc'y*, 108 F.3d at 1093.  A document is "predecisional" if it was "generated before the adoption of an agency policy."  *FTC v. Warner Comm'ns,* 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)); *see also Carter*, 307 F.3d at 1089 (a predecisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision); s*ee also N. Dartmouth Prop., Inc. v. Dep't of Hous. & Urban Dev.*, 984 F. Supp. 65, 69 (D. Mass. 1997) (emphasizing the importance of protecting the "ingredients" of the agency's decisionmaking process).  A document is "deliberative" if it is "a direct part of the deliberative process" in that it "makes recommendations or expresses opinions on legal or policy

matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). "In practice, there is some overlap" between these two terms. *Assembly of State of Cal.*, 968 F.2d at 920.

Here, the government has withheld a single OLC legal advice memorandum pursuant to Exemption 5 and the deliberative process privilege. That memorandum, dated January 4, 2010, was prepared by OLC for the purpose of providing confidential legal advice to the Department of Commerce regarding the interaction between disclosure provisions in the Patriot Act, as amended, and prohibitions on disclosure in the Census Act, 13 U.S.C. §§ 8, 9, 214 (2006). Declaration of Paul Colborn (Exh. B) ¶ 13. As Mr. Colborn explains,

> [t]he Memorandum is pre-decisional because it was prepared by OLC to aid the Department of Commerce in considering what actions to take, consistent with the agency's legal obligations, with respect to the potential disclosure of census information to federal law enforcement or national security officers. The Memorandum is deliberative because it constitutes legal advice from OLC to the Department of Commerce for use in the agency's deliberations regarding how to comply with its legal obligations regarding the confidentiality of census information.

*Id.* ¶ 15.[5] The government has properly determined that these materials are subject to the deliberative process privilege, and should be withheld as exempt from disclosure under FOIA Exemption 5. As noted, the memorandum is deliberative in nature, such that its disclosure would harm Executive Branch deliberative processes by chilling free and frank discussions on matters of law and policy. Colborn Decl., ¶¶ 13-21. "Protecting the confidentiality of OLC's memoranda conveying legal advice provided in the context of Executive Branch deliberations is essential both to ensure that creative and sometimes controversial legal arguments and theories may be examined candidly, effectively, and in writing, and to ensure that the President, his advisers, and other Executive Branch officials continue to request and rely on frank legal advice

---

[5]     As Mr. Colborn explains in his declaration, the Census Memorandum was shared with the U.S. Senate Select Committee on Intelligence in April 2011. Colborn Decl. ¶ 17 & Exh. D. In a letter accompanying the memorandum, the Department of Justice "asked that 'the Committee maintain the confidentiality of this opinion, which provided confidential legal advice to a client and has not been released publicly.'" *Id.* Disclosure to a congressional committee of a document protected by the deliberative process privilege does not waive the privilege. *See, e.g.*, *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001). This is particularly true when, as here, the disclosure is accompanied by a request that the congressional committee preserve the document's confidentiality. *Id.*

from OLC on sensitive matters." *Id.* ¶ 16; *see also Sears*, 421 U.S. at 150-51 ("[T]hose who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process.") (internal quotation marks omitted).  Legal advice "fits exactly within the deliberative process rationale for Exemption 5." *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980).

Courts have affirmed this principle with specific reference to OLC legal advice documents such as the one at issue here.  Notably, the D.C. Circuit recently rejected EFF's contrary arguments and held that an OLC memorandum conveying legal advice regarding the FBI's authority to employ a certain investigative method is protected by the deliberative process privilege.  *See Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 10 (D.C. Cir. 2014) (*reh'g en banc denied* per curiam March 11, 2014).[6]  There, EFF contended that the OLC memorandum at issue was not protected by the deliberative process privilege because it served as the "working law" of the agency receiving the advice.  *Id.* at 9.  The court, however, concluded that the OLC memorandum was not the "working law" of the client agency "[b]ecause OLC cannot speak authoritatively on the FBI's policy."  *Id.*  Instead, the memorandum "amounts to advice offered by OLC for consideration by officials of the FBI.  Such a memorandum is not the law of an agency unless the agency adopts it."  *Id.* at 8.

This is so even where the legal advice in question may be authoritative.  *See id.* at 9 ("EFF argues that the OLC Opinion must be 'working law' because it is controlling (insofar as agencies customarily follow OLC advice that they request), precedential, and can be withdrawn.  That the OLC Opinion bears these indicia of a binding legal decision does not overcome the fact that OLC does not speak with authority on the FBI's policy.") As another court explained, an argument to the contrary

---

[6] *See also, e.g.*, *N.Y. Times Co.*, 2013 WL 20543, at *23 (holding "Exemption 5 plainly applies" to, *inter alia*, OLC memo); *Elec. Frontier Found. v. Dep't of Justice*, Civ. No. 11-939, 2012 WL 4319901, at *7 (D.D.C. Sept. 21, 2012) (OLC opinion protected by deliberative process privilege because it constitutes advice used by agency decisionmakers); *Southam News v. INS*, 674 F. Supp. 881, 886 (D.D.C.1987) (OLC opinion letters "generated in the course of formulating policies and positions that were being considered" fall within the deliberative process privilege) (internal quotation omitted).

is utterly without merit.  It is nonsensical to state that legal opinions can never be protected by the deliberative process privilege because of their authoritative nature.  If legal opinions are disclosable simply because they are authoritative or conclusive, this 'would mean that virtually all legal advice OLC provides to the executive branch would be subject to disclosure.'  This would significantly chill the ability of the executive branch to obtain legal advice."

*Elec. Privacy Info. Ctr.*, 584 F. Supp. 2d at 75-76 (quoting *CREW*, 249 F.R.D. at 6).

Here, the Department of Commerce faced a decision on the formulation of a policy on how to respond to potential requests from government officials for census information.  As Mr. Colborn explained in his declaration, "OLC does not purport to make policy decisions, and in fact lacks authority to make such decisions.  OLC's legal advice and analysis may inform the decision-making of Executive Branch officials on matters of policy, but OLC's legal advice does not dictate the policy choice to be made." Colborn Decl. ¶ 2.  Rather, the memorandum "was prepared by OLC to aid the Department of Commerce in considering what actions to take, consistent with the agency's legal obligations, with respect to the potential disclosure of census information to federal law enforcement or national security officers." *Id.* ¶ 15.  Just as "OLC is not authorized to make decisions about the FBI's investigative policy," *EFF v. DOJ*, 739 F.3d at 9, it lacks authority to make decisions about the Department of Commerce's policy with respect to disclosure of census information.  OLC's legal advice thus is not the "working law" of the Department of Commerce; rather, OLC advice is an input to an Executive Branch decisionmaking process whose protection is at the core of the deliberative process privilege. *See Sears*, 421 U.S. at 150-51.  Defendant therefore properly withheld the OLC legal advice memorandum under FOIA Exemption 5.

### D.  The Government Has Properly Withheld Information Subject To Exemption 7(E)

Exemption 7(E) protects from disclosure information compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions," or where it would "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to

risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Congress intended that Exemption 7(E) protect from disclosure techniques and procedures used to prevent and protect against crimes as well as techniques and procedures used to investigate crimes after they have been committed.  *See, e.g., PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)).  *See also Milner v. Dep't of Navy*, --- U.S. ----, 131 S. Ct. 1259, 1272-73 (2011) (Alito, J., concurring) (stating that "Particularly in recent years, terrorism prevention and national security measures have been recognized as vital to effective law enforcement efforts in our Nation[;]" also stating that "'law enforcement purposes'" under FOIA Exemption 7 "involve more than just investigation and prosecution," and that "security measures are critical to effective law enforcement as we know it.").

To determine if Exemption 7(E) applies, the Court must determine whether the records were "compiled for law enforcement purposes" within the meaning of FOIA.  *Rosenfeld v. United States Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995).  To satisfy this threshold requirement, the government need only demonstrate that the records were compiled pursuant to authorized law enforcement duties of a law enforcement agency.  *See Lewis v. IRS*, 823 F.2d 375, 379 (9th Cir. 1987); *Wilkinson v. FBI*, 633 F. Supp. 336, 343 (C.D. Cal. 1986); *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979).  *Accord Milner*, 131 S. Ct. at 1272 (law enforcement purposes within the meaning of Exemption 7 include national security measures).  The Ninth Circuit accords special deference to law enforcement agencies in an Exemption 7 threshold determination.  *Binion v. Dep't of Justice*, 695 F.2d 1189, 1194 (9th Cir. 1983).  Thus, an agency with a clear law enforcement mandate need only establish a "rational nexus" between its law enforcement duties and the document for which Exemption 7 is claimed.  *Id.* at 1193-1194; *Church of Scientology*, 611 F.2d at 748; *MacPherson v. IRS*, 803 F.2d 479 (9th Cir. 1986) (citing *Binion*, 695 F.2d at 1194).  "The rational nexus test requires courts to accord a degree of deference to a law enforcement agency's decisions to investigate."  *Rosenfeld*, 57 F.3d at 808.  *See also Keys v. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987).

Plaintiff requested only information related to Section 215, a tool used by the FBI (a component of defendant which is indisputably a law enforcement agency) to obtain business record information pursuant to a court order and as part of authorized national security investigations, sometimes to be shared with the NSA.  The rational nexus to "law enforcement purposes" under FOIA is clear.  *See id.*; *Milner*, 131 S. Ct. at 1272.  Accordingly, plaintiff's request necessitates review under Exemption 7(E).

The government has asserted Exemption 7(E) to protect a certain confidential law enforcement technique used by the Intelligence Community in national security investigations, and details concerning that technique.  *See* Hudson Decl. ¶¶ 115-117.  Although Ms. Hudson discusses the harm that could reasonably be expected to flow from public release of this information, *id.* ¶ 117, such techniques and procedures are categorically protected by the Exemption, without any need for inquiry into the harm that would result from their disclosure. *Fisher v. Dep't of Justice*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992) (unpublished table decision).  *See also ACLU Found. v. Dep't of Justice*, 833 F. Supp. 399, 407 (S.D.N.Y. 1993).
Accordingly, the Court should grant summary judgment for the government as to its Exemption 7(E) withholdings.

### E.  The Government Has Properly Withheld Information Subject To Exemption 7(A)

The government has also properly withheld information relating to a pending national security investigation pursuant to Exemption 7(A).  That exemption authorizes withholding of records compiled for law enforcement purposes, the disclosure of which "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  To satisfy its burden justifying the applicability of this exemption, the government need only demonstrate that (1) a law enforcement proceeding is pending or prospective, and (2) release of the information could reasonably be expected to cause some articulable harm to the proceeding.  *See Robbins Tire & Rubber Co.*, 437 U.S. at 224.  *See also, e.g., id.* at 232 ("[T]he release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding

was precisely the kind of interference that Congress continued to want to protect against.").  And the applicability of Exemption 7(A) may be demonstrated generically, based on the category of records involved. *See Robbins Tire*, 437 U.S. at 236; Lewis, 823 F.2d at 380 (Exemption 7(A) is a categorical "general exclusion").

Information subject to Exemption 7(A) is redacted from a FISC Supplemental Order in docket B.R. 10-82 dated November 23, 2010.  Hudson Decl. ¶¶ 93-96.  As Ms. Hudson states, it concerns a still-pending FBI counterterrorism investigation of a single subject , *id.* ¶ 93, and that the redacted information could, if disclosed, reasonably be expected to interfere with the FBI's investigation and/or any eventual prosecution by alerting the target of the investigation, *id.* ¶ 95.  Should the Court require further detail than Ms. Hudson is able to provide on the public record, it is contained in her classified declaration.  *See* id.; Classified Hudson Decl.

## F.   Defendants Have Produced All Reasonably Segregable Portions of Responsive Records

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b)(9).  This provision does not require disclosure of records in which the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information exists because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words."); *see also Klamath Siskiyou Wildlands Ctr. v. Dep't of Interior*, Civ. No. 07-325-CL, 2007 WL 4180685, at *8 (D. Or. Nov. 21, 2007) ("In cases where nonexempt material is inextricably intertwined with exempt material and the deletion of the exempt material would leave only meaningless words and phrases, the entire document is exempt.").  The defendant has reviewed the withheld material and have disclosed all non-exempt information that reasonably could be disclosed.  *See* Hudson Decl. ¶¶ 118-122, Colborn Decl. ¶ 15.  Accordingly, the Department of Justice has produced all "reasonably segregable portion[s]" of the responsive records.  5 U.S.C. § 552(b).

Nor is the legal analysis contained in the FISC opinions and orders at issue somehow *per se* segregable, as plaintiff has argued before.  Legal analysis protected by Exemption 1, 3, 5, or 7 (or any other Exemption) of the FOIA need not be produced to a requester.  To find otherwise would allow the forced disclosure of information despite a court's own acknowledgement that such disclosure would cause the national security harm and expose sensitive intelligence sources and methods.  However, the law is clear that "[t]he Court's role with regard to Exemption 1 is only to review the sufficiency and reasonableness of the agency's explanation for its classification decision, giving the agency's determination the heightened deference it is due under the law."  *People for the Am. Way Fund. v. NSA*, 462 F. Supp. 2d 21, 33 (D.D.C.  2006). *See also ACLU v. Dep't of Justice*, 265 F. Supp. 2d  20, 31 (D.D.C. 2003) ("That the public has a significant and entirely legitimate desire for th[e] information simply does not, in an Exemption 1 case, alter the analysis.").  Similarly, "the sole issue for decision" on an Exemption 3 claim "is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Fitzgibbon*, 911 F.2d at 761-62.  *Cf. Sears*, 421 U.S. at 161 (if a document constitutes "working law" and therefore cannot be withheld under Exemption 5, it "may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5.").

The government has, therefore, produced all reasonably segregable portions of the responsive records.

## CONCLUSION

For all of the foregoing reasons, the Court should grant defendant's Motion for Summary Judgment and enter judgment for the Department of Justice.

Dated: March 28, 2014                    Respectfully submitted,

                                         STUART F. DELERY
                                         Assistant Attorney General

                         BY:    */s/ Steven Y. Bressler*
                                         STEVEN Y. BRESSLER D.C. Bar #482492
                                         U.S. Department of Justice, Civil Division