Mark Rumold (SBN 279060)
*mark@eff.org*
Jennifer Lynch (SBN 240701)
*jlynch@eff.org*
ELECTRONIC FRONTIER FOUNDATION
815 Eddy St.
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,      ) | Case No. 4:11-cv-05221-YGR |
|                  ) | |
|             Plaintiff,   ) | **NOTICE OF MOTION AND CROSS** |
|                  ) | **MOTION FOR SUMMARY JUDGMENT** |
|    v.                ) | **AND OPPOSITION TO DEFENDANT'S** |
|                  ) | **MOTION FOR SUMMARY JUDGMENT** |
| DEPARTMENT OF JUSTICE,        ) | |
|                  ) | Date: June 3, 2014 |
|            Defendant.   ) | Time: 2:00 p.m. |
|                  ) | Courtroom 1 – 4th Floor |
|                  ) | Hon. Yvonne Gonzalez Rogers |
| _____ ) | |

1

## NOTICE OF MOTION

2        PLEASE TAKE NOTICE that on June 3, 2014, at 2:00 pm in the United States Courthouse

3  at Oakland, California, plaintiff, Electronic Frontier Foundation, will, and hereby does, cross move

4  this Court for summary judgment on all of its claims.

5        Pursuant to Federal Rule of Civil Procedure 56, EFF seeks a court order requiring the

6  Department of Justice to release records under the Freedom of Information Act, 5 U.S.C. § 552.

7  EFF respectfully asks that this Court issue an order requiring the government to release all records

8  improperly withheld from the public. This cross motion is based on this notice of motion, the

9  memorandum of points and authorities in support of this cross motion, the declaration of Mark

10  Rumold and attached exhibits in support of this cross motion, and all papers and records on file

11  with the Clerk or which may be submitted prior to or at the time of the hearing, and any further

12  evidence which may be offered.

13

14  DATED: April 18, 2014                    Respectfully submitted,

15

16                                        _____/s/ Mark Rumold_____
                                          Mark Rumold
17                                        Jennifer Lynch
                                          ELECTRONIC FRONTIER FOUNDATION
18                                        815 Eddy Street
                                          San Francisco, CA 94109
19                                        Telephone: (415) 436-9333
                                          Facsimile: (415) 436-9993
20
21                                        Attorneys for Plaintiff
                                          ELECTRONIC FRONTIER FOUNDATION
22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 2

I.    Section 215 and the Bulk Collection of Americans' Records. ........................... 2

II.   Procedural History of this Case. ....................................................................... 5

ARGUMENT ............................................................................................................ 7

I.    FOIA Establishes a Presumption of Disclosure and the Government Bears the Burden of
      Demonstrating that Withheld Information is Clearly Exempt. ............................ 8

II.   The Government Misrepresented the Nature of Previously Withheld Records, Which
      Constitutes Bad Faith, Undermines the Deference Typically Afforded Government
      Affidavits, and Necessitates the Court's *In Camera* Review of Responsive Records.......... 9

      A.   The Government Materially Misrepresented the Scope And Quantity of Sensitive
           Information in the Withheld Documents. .................................................. 10

      B.   These Misrepresentations Warrant A Finding of Bad Faith and Preclude the Deference
           Normally Afforded Agency Affidavits in FOIA Cases.............................. 13

      C.   To Ensure the Accuracy of the Government's Representations and to Facilitate This
           Court's *De Novo* Review, *In Camera* Review of the Withheld Opinions Is Needed. 15

III.  The Withholding, In Full, of Six Additional FISC Opinions is Unwarranted. .................. 17

      A.   None of the Claimed Exemptions Justify the Withholding, In Full, of the Six Opinions
           ......................................................................................................... 17

      B.   The Government Has Again Failed to Segregate and Release Non-Exempt
           Information from the Withheld Opinions................................................. 18

IV.   The Telecommunication Service Providers Participating in the Call Record Collection
      Program Have Been Officially Acknowledged. .............................................. 20

V.    The Deliberative Process Privilege Does Not Apply to the OLC Opinion....................... 23

CONCLUSION ....................................................................................................... 25

1

# TABLE OF AUTHORITIES

2

### Federal Cases

3

*ACLU v. CIA,*
   710 F.3d 422 (D.C. Cir. 2013) ........................................................................................ 23

4

5

*ACLU v. Clapper,*
   No. 13-3994, 2013 WL 6819708 (S.D.N.Y. Dec. 27, 2013)........................................... 4

6

7

*Afshar v. Dep't of State,*
   702 F.2d 1125 (D.C. Cir. 1983) ............................................................................... 21, 22

8

*Alfred A. Knopf, Inc. v. Colby,*
   509 F.2d 1362 (4th Cir. 1975)....................................................................................... 22

9

10

*Allen v. CIA,*
   636 F.2d 1287 (1980) ..................................................................................................... 15

11

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State,*
   818 F. Supp. 1291 (N.D. Cal. 1992)............................................................................. 19

12

13

*Berman v. CIA.*
   501 F.3d 1136 (9th Cir. 2007)....................................................................................... 18

14

15

*Birch v. USPS,*
   803 F.2d 1206 (D.C. Cir. 1986) ..................................................................................... 9

16

*Carter v. Dep't of Commerce,*
   830 F.2d 388 (D.C. Cir. 1987) ..................................................................................... 14

17

18

*Carter, Fullerton & Hayes v. FTC,*
   2013 WL 653288, (E.D. Va Feb. 21, 2013) ................................................................ 14

19

20

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ......................................................................................................... 8

21

*Church of Scientology v. Dep't of the Army,*
   611 F.2d 738 (9th Cir. 1979)......................................................................................... 19

22

23

*Coastal States Gas Corp. v. Dep't of Energy,*
   617 F.2d 854 (D.C. Cir. 1980) ................................................................................ 24, 25

24

25

*Ctr. for Auto Safety v. EPA,*
   731 F.2d 16 (D.C. Cir. 1984) ....................................................................................... 19

26

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
   532 U.S. 1 (2001) ............................................................................................................. 8

27

28

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ........................................................................ 8, 9

*Dep't of Justice v. Tax Analysts*,
   492 U.S. 136 (1989) ............................................................................ 8

*Dep't of the Air Force v. Rose*,
   425 U.S. 352 (1976) .......................................................................... 17

*EFF v. Dep't of Justice*,
   12-1441 (D.D.C. *filed* Aug. 30, 2012) ............................................. 16

*EFF v. Dep't of Justice*,
   739 F.3d 1 (D.C. Cir. 2014) ............................................................. 24

*Feshbach v. SEC*,
   5 F. Supp. 2d 774  (N.D. Cal. 1997) .................................................. 8

*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990) ................................................. 7, 21, 22

*Goldberg v. Dep't of State*,
   818 F.2d 71 (D.C. Cir. 1987) ............................................................. 9

*Gordon v. FBI*,
   388 F. Supp. 2d 1028  (N.D. Cal. 2005) ........................................... 18

*Halperin v. CIA*,
   629 F.2d 144  (D. C. Cir. 1980) ........................................................ 13

*Hardy v. ATF*,
   631 F.2d 653 (9th Cir. 1980) ............................................................ 17

*In re Application of the FBI for an Order Requiring the Production of Tangible Things from [Redacted]*,
   BR 06-05 (FISC May 24, 2006) ......................................................... 13

*In re Application of the FBI For An Order Requiring the Production of Tangible Things From Verizon*,
   BR 13-80 (FISC July 19, 2013) ........................................................... 3

*In Re Application of the Federal Bureau of Investigation for an Order Requiring the Production of Tangible Things from [Redacted]*,
   BR 10-82 (FISC Nov. 23, 2010) ........................................................ 12

*In Re Production of Tangible Things From [Redacted]*,
   BR 08-13 (FISC Dec. 12, 2008) ........................................................ 12

*In Re Production of Tangible Things from [Redacted]*,
   BR 08-13 (FISC Mar. 2, 2009) ............................................................ 1

*In re Production of Tangible Things*,
    BR 08-13 (FISC Jan. 28, 2009) ................................................................ 11

*Jones v. FBI*,
    41 F.3d 238 (6th Cir. 1994) ........................................................ 7, 13, 16

*Jordan v. Dep't of Justice*,
    591 F.2d 753  (D.C. Cir. 1978) ............................................................ 17

*Judicial Watch, Inc. v. U.S. Postal. Serv.*,
    297 F. Supp. 2d 252 (D.D.C. 2004) .................................................... 25

*King v. Dep't of Justice*,
    830 F.2d 210 (D.C. Cir. 1987) ............................................................... 9

*Klayman v. Obama*, No. 13-0881,
    2013 WL 6571596 (D.D.C. Dec. 16, 2013) ........................................... 4

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ............................................................... 9

*Nat'l Wildlife Fed'n v. U.S. Forest Service*,
    861 F.2d 1114 (9th Cir. 1988) ............................................................... 8

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) .......................................................................... 7, 8

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ............................................................ 8, 17, 24, 25

*NRDC v. Dep't of Defense*,
    388 F. Supp. 2d 1086 (C.D. Cal. 2005) ............................................... 19

*Pacific Fisheries, Inc. v. United States*,
    539 F.3d 1143 (9th Cir. 2008) ............................................................. 19

*Pickard v. Dep't of Justice*,
    653 F.3d 782 (9th Cir. 2011) ............................................................... 21

*Ray v. Turner*,
    587 F.2d 1187 (D.C. Cir. 1978) ........................................................... 16

*Rugiero v. Dep't of Justice*,
    257 F.3d 534  (6th Cir. 2001) ........................................................ 14, 15

*SafeCard Services, Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ........................................................... 13

*Spirko v. USPS*,
    147 F.3d 992 (D.C. Cir. 1998) ............................................................. 16

*Sterling Drug v. FTC*,
    450 F.2d 698 (D.C. Cir. 1971) ...................................................................... 24

*Students Against Genocide v. Dep't of State*,
    257 F.3d 828  (D.C. Cir. 2001) .................................................................... 23

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ........................................................................ 9

*Wash. Post Co. v. Dep't of State*,
    840 F.2d 26 (D.C. Cir. 1988),
    *vacated on other grounds*, 898 F.2d 793 (D.C. Cir. 1990) ............................. 14

*Whitaker v. CIA*,
    CV 12-316, 2014 WL 914603 (D.D.C. Mar. 10, 2014) .................................. 18

*Willamette Indus. v. United States*,
    689 F.2d 865 (9th Cir. 1982) ......................................................................... 18

**Federal Statutes**

5 U.S.C. § 552(a)(4)(B) .......................................................................... 9, 15

5 U.S.C. § 552(b) ..................................................................................... 8, 19

5 U.S.C. § 552(b)(1) ..................................................................................... 17

5 U.S.C. § 552(b)(3) ..................................................................................... 17

5 U.S.C. § 552(b)(5) ............................................................................... 23, 24

5 U.S.C. § 552(b)(7)(E) ................................................................................ 17

50 U.S.C. § 1861(a)(1) ................................................................................... 2

50 U.S.C. § 1861(c) ....................................................................................... 2

50 U.S.C. § 3024(i)(1) .................................................................................. 17

50 U.S.C. § 3605 .......................................................................................... 17

50 U.S.C. §§ 1801, *et seq.* ............................................................................ 2

50 U.S.C. 1803(i) ......................................................................................... 11

50 USC 1861(c)(1) ....................................................................................... 12

USA PATRIOT Act (Pub. L. 107-56, 115 Stat. 272 (2001)) ..................... *passim*

## Rules

Fed. R. Civ. P. 56 (a) ........................................................................................................ 8

## Legislative Materials

157 Cong. Rec. S3386 (daily ed. May 26, 2011) ............................................................. 3

Ending Secret Law Act, S. 1130, 113th Cong (2013) ..................................................... 4

*Executive Business Meeting of the Senate Comm. on the Judiciary*, 111 Cong. (Oct. 1, 2009)
    (remarks of Senator Richard Durbin) ........................................................................ 3

FISA Court in the Sunshine Act, H.R. 2440, 113th Cong. (2013) .................................. 4

Relevancy Act, H.R. 2603, 113th Cong. (2013) ............................................................. 4

USA FREEDOM Act, H.R. 3361, 113th Cong. (2013) ................................................... 4

*USA PATRIOT ACT Reauthorization: Hearing Before the Subcomm. On Crime, Terrorism, and
    Homeland Security of the House Committee on the Judiciary*, 112 Cong. 13 (2011) (statement of
    Todd M. Hinnen, Acting Assistant Attorney General, Department of Justice) .......................... 12

## Executive Branch Materials

25 Op. Att'y. Gen. 301, 303 (1904) ............................................................................... 24

28 C.F.R. § 0.25(a) ......................................................................................................... 24

5 Op. Att'y. Gen. 97 (1849) ........................................................................................... 24

Exec. Order 13,526, § 1.7 ............................................................................................... 11

## Other Authorities

Charlie Savage & Mark Mazzetti, *CIA Collects Global Data on Transfers of Money*, N.Y. Times
    (Nov. 14, 2013) ......................................................................................................... 5

Charlie Savage, *Obama to Call for End to NSA's Bulk Data Collection*, N.Y. Times (Mar. 24,
    2014) .......................................................................................................................... 4

*Counterterrorism, National Security, and the Rule of Law*, Aspen Security Forum Panel (July 18,
    2013) (remarks of Raj De) ........................................................................................ 21

Department of Justice, Office of Inspector General, *A Review of the FBI's Use of Section 215
    Orders for Business Records in 2006*, 21, 65 (2008) ................................................ 12

*DNI Announces the Declassification of the Existence of Collection Activities Authorized by
    President George W. Bush*, Office of the Director of National Intelligence (Dec. 21, 2013) ........ 3

Ellen Nakashima, *et al.*, *Declassified Court Documents Highlight NSA Violations in Data Collection for Surveillance*, Wash. Post (Sep. 10, 2013) ................................................................. 4

Geoffrey Stone, *Understanding Obama's NSA Proposals*, Daily Beast (Mar. 27, 2014) ............... 22

Glenn Greenwald, *NSA Collecting Phone Records of Millions of Verizon Customers Daily*, Guardian (June 5, 2013) ....................................................................................................... 3

James R. Clapper, *DNI Statement on Recent Unauthorized Disclosures of Classified Information*, Office of the Director of National Intelligence (June 6, 2013) ..................................................... 6

Kevin Johnson, *Feds Release Details of Secret Spying Program*, USA Today (Sep. 10, 2013) ....... 4

*Memorandum for Attorneys of OLC, OLC Best Practices*, (July 16, 2010)................................... 24

President's Review Group on Intelligence and Communications Technologies, *Liberty and Security in a Changing World* (2013) ....................................................................................................... 4

Privacy and Civil Liberties Oversight Board, *Report on the Telephone Records Program Conducted Under Section 215 of the USA Patriot Act and On the Operations of the Foreign Intelligence Surveillance Court* (2014) ......................................................................................... 4

Siobhan Gorman, *et al.*, *CIA's Financial Spying Bags Data on Americans*, Wall Street J. (Jan. 25, 2014)......................................................................................................................................... 5

Siobhan Gorman, *et al.*, *U.S. Collects Vast Data Trove*, Wall. St. J. (June 7, 2013)..................... 21

Spencer Ackerman, *NSA Violations Led Judge to Consider Viability of Surveillance Program*, Guardian (Sep. 10, 2013) ....................................................................................................... 4

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

3   During earlier proceedings in this case, the government materially misrepresented to both

4   the Court and plaintiff, Electronic Frontier Foundation ("EFF"), the scope and quantity of

5   classified and otherwise exempt information within the withheld records. The government claimed

6   that every word, every phrase, every sentence, and every paragraph of the records at issue were so

7   sensitive that nothing could be released without causing grave damage to national security. Indeed,

8   the records were so sensitive, the government contended, that even disclosing the number of pages

9   in some Foreign Intelligence Surveillance Court ("FISC") opinions would reveal classified

10   information that would cause exceptional damage to our nation.

11   Over a year later, and with the benefit of the government's belated disclosure of many of

12   the records previously withheld in full, it is apparent those claims were untrue. For example, the

13   disclosure of this sentence,[1] according to the government, would have caused "exceptionally grave

14   damage" to national security: "[T]he orders of the FISC have been so frequently and systemically

15   violated that it can fairly be said that this critical element . . . has never functioned effectively."

16   Order at 11, *In Re Production of Tangible Things from [Redacted]*, BR 08-13 (FISC Mar. 2, 2009)

17   ("March 2, 2009 Order").[2] The sentence says nothing about a particular intelligence program; it

18   says nothing about an intelligence source or a method; nor could its disclosure, at any time,

19   possibly have threatened harm to the nation's security. Instead, its release would only have

20   informed the public that the government's use of Section 215 was in dire need of improved

21   oversight and reform. This is *precisely* the type of information the Freedom of Information Act

22   ("FOIA") was designed to provide. At no time did the FOIA—or any other law—permit

23   withholding such significant information from the American public.

24

25

26

27

[1] EFF has used ellipses to omit certain arguably sensitive information that may, at the time, have revealed information about the government's underlying Section 215 program. Such omissions, however, only demonstrate the ease with which sensitive material could have been redacted from otherwise- meaningful but non-sensitive information.

[2] *Available at* http://www.dni.gov/files/documents/0328/039.%20A4000915%20%20BR%2008-13%20%20Order%20%283-2-09%29%20Redacted%2020140327.pdf

28

-1-

The government's previous claims raise serious questions concerning the propriety of its classification and withholding decisions and the integrity and candor of its representations to EFF and the Court. Importantly, the government's misrepresentations were no tangential matter: they went directly to the heart of EFF's central claim—that *some* meaningful information existed within the responsive records that could be redacted and released. Instead of accurately representing the contents of the withheld records, and instead of complying with FOIA's disclosure and segregability requirements, the government chose to avoid its obligations through deception. The Court should not countenance such an approach.

Nevertheless, the government again attempts to shield additional bulk collection programs, besides the NSA's call records program, from public disclosure. Indeed, the government continues to withhold six opinions of the FISC, in full, relying on precisely the same incomplete and inaccurate justifications that it previously advanced. While public disclosure and criticism have spurred changes to the call records program operated under Section 215, the government's continued withholdings here appear calculated—not to protect legitimate national security interests—but to obstruct similar public scrutiny and reform. The government's claims of absolute exemption were unwarranted previously. Those same claims remain unwarranted now.

For the reasons that follow, EFF respectfully urges the Court to deny the government's motion for summary judgment, grant EFF's cross-motion, and to uphold the public's right to know.

## BACKGROUND

### I.    Section 215 and the Bulk Collection of Americans' Records.

Section 215 of the USA PATRIOT Act which amended the Foreign Intelligence Surveillance Act ("FISA") of 1978, 50 U.S.C. §§ 1801, *et seq.*, authorizes the FBI to apply for a secret court order for "any tangible things" relevant to an authorized national security investigation. 50 U.S.C. § 1861(a)(1). The orders, issued *ex parte* and under seal by the Foreign Intelligence Surveillance Court ("FISC"), are accompanied by a gag order, forbidding a recipient—such as telecommunication companies, credit card companies, hospitals, or educational institutions—from ever disclosing having received the order. 50 U.S.C. § 1861(c).

In 2006, the government began relying on Section 215 to compel the production of millions of Americans' call records from the nation's largest telecommunication carriers. *See DNI Announces the Declassification of the Existence of Collection Activities Authorized by President George W. Bush*, Office of the Director of National Intelligence (Dec. 21, 2013).[3] From 2006 to 2013, elected officials familiar with this use repeatedly voiced concerns about the government's secret reinterpretation of the statute. In 2009, Senator Durbin stated: "Section 215 is unfortunately cloaked in secrecy. Some day that cloak will be lifted, and future generations will ask whether our actions today meet the test of a democratic society: transparency, accountability, and fidelity to the rule of law and our Constitution." *Executive Business Meeting of the Senate Comm. on the Judiciary*, 111 Cong. (Oct. 1, 2009) (remarks of Senator Richard Durbin).[4] Two years later, during a debate on the reauthorization of Section 215, Senator Ron Wyden ominously declared:

> I have served on the Intelligence Committee for over a decade and I wish to deliver a warning this afternoon. When the American people find out how their government has secretly interpreted the PATRIOT Act, they are going to be stunned and they are going to be angry.

157 Cong. Rec. S3386 (daily ed. May 26, 2011).

That day arrived on June 5, 2013: the *Guardian* published a FISC order, issued under Section 215, requiring Verizon to produce to the NSA the call records of millions of Americans. *See* Glenn Greenwald, *NSA Collecting Phone Records of Millions of Verizon Customers Daily*, Guardian (June 5, 2013).[5] *see also* Secondary Order, *In re Application of the FBI For An Order Requiring the Production of Tangible Things From Verizon*, BR 13-80 (FISC July 19, 2013).

Since that disclosure, elected officials and the public have engaged in the most wide-ranging and vigorous public debate on surveillance policy since the 1970s and the proceedings of the Church Committee. That debate has been aided, at least in part, by documents released in response to this case. *See, e.g.*, Ellen Nakashima, *et al*., *Declassified Court Documents Highlight*

---

[3] *Available at* http://tmblr.co/ZZQjsq11r4_sd.

[4] *Available at* http://www.judiciary.senate.gov/meetings/executive-business-meeting-2009-10-01 [Remarks begin at 68:00].

[5] *Available at* http://www.theguardian.com/world/2013/jun/06/nsa-phone-records-verizon-court-order

*NSA Violations in Data Collection for Surveillance*, Wash. Post (Sep. 10, 2013);[6] Spencer Ackerman, *NSA Violations Led Judge to Consider Viability of Surveillance Program*, Guardian (Sep. 10, 2013);[7] Kevin Johnson, *Feds Release Details of Secret Spying Program*, USA Today (Sep. 10, 2013).[8] Two separate, independent executive branch oversight groups have recommended significant reform to the government's use of Section 215. *See, e.g.,* President's Review Group on Intelligence and Communications Technologies, *Liberty and Security in a Changing World* 79-89, 108-19, 122-29 (2013); Privacy and Civil Liberties Oversight Board, *Report on the Telephone Records Program Conducted Under Section 215 of the USA Patriot Act and On the Operations of the Foreign Intelligence Surveillance Court* 168-70 (2014). Numerous bills are pending in Congress to reform and restrict the government's use of Section 215. *See, e.g.*, USA FREEDOM Act, H.R. 3361, 113th Cong. (2013); USA FREEDOM Act, S. 1599, 113th Cong. (2013); Ending Secret Law Act, S. 1130, 113th Cong (2013); FISA Court in the Sunshine Act, H.R. 2440, 113th Cong. (2013); Relevancy Act, H.R. 2603, 113th Cong. (2013). At least one court has found the call record program unconstitutional. *See Klayman v. Obama*, No. 13-0881, 2013 WL 6571596 (D.D.C. Dec. 16, 2013); *but see ACLU v. Clapper*, No. 13-3994, 2013 WL 6819708 (S.D.N.Y. Dec. 27, 2013). And, recently, President Obama proposed substantial modifications to the government's call records collection program—modifications that would effectively end the government's bulk collection of Americans' call records under Section 215. *See* Charlie Savage, *Obama to Call for End to NSA's Bulk Data Collection*, N.Y. Times (Mar. 24, 2014).[9]

Nevertheless, the government continues to operate *other* bulk collection programs under the auspices of Section 215. For example, in November, the *New York Times* reported the CIA was collecting records of international money transfers in bulk. Charlie Savage & Mark Mazzetti, *CIA*

---

[6]   *Available at* http://www.washingtonpost.com/world/national-security/declassified-court-documents-highlight-nsa-violations/2013/09/10/60b5822c-1a4b-11e3-a628-7e6dde8f889d_story.html.

[7]   *Available at* http://www.theguardian.com/world/2013/sep/10/nsa-violated-court-rules-data-documents.

[8]   *Available at* http://www.usatoday.com/story/news/nation/2013/09/10/nsa-classified-documents-released-domestic-spying/2795115/./

[9] *Available at* http://www.nytimes.com/2014/03/25/us/obama-to-seek-nsa-curb-on-call-data.html.

-4-

*Collects Global Data on Transfers of Money*, N.Y. Times (Nov. 14, 2013) (noting the CIA is "secretly collecting bulk records of international money transfers handled by companies like Western Union. . . under the same law that the [NSA] uses for its huge database of Americans' phone records").[10] In January, a separate report in the *Wall Street Journal* disclosed not only that the CIA was "building a vast database of international money transfers" but that the CIA's database "includes millions of Americans' financial and personal data[.]" Siobhan Gorman, *et al.*, *CIA's Financial Spying Bags Data on Americans*, Wall Street J. (Jan. 25, 2014).[11] And, according to government officials, at least one other bulk collection program exists. Savage & Mazzetti, *CIA Collects Global Data on Transfers of Money*, *supra*.

The FISC opinions analyzing and authorizing these bulk collection programs have been withheld, in full, from the public. They remain at issue in this case.

## II.     Procedural History of this Case.

EFF filed this suit in October 2011, seeking disclosure of documents containing "significant legal analysis or interpretation of Section 215." *See* Compl. ¶ 14 (ECF No. 1); Cross Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment ("First Cross Motion") at 5 (ECF No. 41).

In late 2012, the parties cross-moved for summary judgment, with briefing focusing on documents—opinions and orders of the FISC, briefings for Congress, and internal executive branch memoranda—that the government had withheld in full from public disclosure. After briefing and oral argument, the Court ordered the government to supplement the public record. *See* Order Re: Further Submission on Cross-Motion for Summary Judgment ("Order Re: Further Submissions") (ECF No. 49). In particular, the Court ordered the government to provide, on a "document-by-document basis," an "articulation of the harm to national security that would result from disclosure of the information" and "an explanation of why there is no reasonably segregable portion of the

---

[10] *Available at* http://www.nytimes.com/2013/11/15/us/cia-collecting-data-on-international-money-transfers-officials-say.html.
[11] *Available at* http://online.wsj.com/news/articles/SB1000142405270230355950457919837011316 3530.

document that can be disclosed." *Id.* at 3. The Court ordered the government to "particularly address the issue of segregability," noting that non-exempt information "may be segregable despite the need for substantial redaction." *Id*. at 3. The parties submitted supplemental briefing in response to the Court's order. (ECF Nos. 51, 55, 56)

Two weeks after the government's last filing and while the matter was still pending, the *Guardian* published its June 5 article, and the government quickly confirmed the existence of the program and its operation under Section 215. *See* James R. Clapper, *DNI Statement on Recent Unauthorized Disclosures of Classified Information*, Office of the Director of National Intelligence (June 6, 2013).[12] Following a stipulated stay of proceedings (ECF No. 59) and the filing of a Joint Status Report (ECF No. 61), and in light of the DNI's confirmations, the Court ordered the government to undertake a declassification review of withheld records and to provide dates for the production of responsive records to EFF. *See* Order at 2 (ECF No. 62). From September to November 2013, and pursuant to orders of the Court, *see id*.; Order at 2 (ECF No. 64), the government produced hundreds of pages of responsive documents that were previously withheld in full from EFF and the public.

The parties agreed further summary judgment briefing would be necessary to resolve the propriety of the remaining withholdings. Joint Status Report, ¶ 2 (ECF No. 68). EFF informed the government that it intended to challenge the withholding of any document withheld in full, but agreed to substantially narrow the categories of information it would challenge in partially-released records. *See* Joint Status Report and Proposed Schedule for Further Proceedings, ¶ 4 (ECF No. 70). With the Court's permission, the parties agreed that summary judgment briefing would be based on a "representative sample" of withheld records, consisting of responsive "Orders and Opinions of the FISC." *See* Stipulation (ECF No. 71); Order (ECF No. 72).

The government filed its second motion for summary judgment on March 28. (ECF No. 77). In an effort to help further refine and narrow the matters in dispute for the Court and the

---

[12]   *Available    at*    http://www.dni.gov/index.php/newsroom/press-releases/191-press-releases-2013/868-dni-statement-on-recent-unauthorized-disclosures-of-classified-information.

1   parties, EFF now withdraws its challenges to the majority of the information withheld from records

2   released in part. However, EFF continues to challenge: (1) the withholding, in full, of any opinion

3   or order of the FISC; (2) the withholding of the names of telecommunication service providers

4   participating in the call record collection program under Section 215; and (3) the withholding, in

5   full, of a formal opinion of the Office of Legal Counsel ("OLC").

6                                           **ARGUMENT**

7           FOIA safeguards the public's ability to hold the government accountable. *NLRB v. Robbins*

8   *Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The government's earlier representations in this case

9   sought to subvert that safeguard. Seeking to exploit the deference typically afforded in national

10  security cases, the government grossly overstated the sensitivity of withheld records and

11  misrepresented its ability to segregate and release meaningful information. The government's

12  previous claims, based on those misrepresentations, constitute bad faith and render their current

13  submissions unworthy of this Court's deference. *See Jones v. FBI*, 41 F.3d 238, 242-43 (6th Cir.

14  1994). Thus, in order to conduct the meaningful *de novo* review FOIA requires, the Court's *in*

15  *camera* inspection of withheld documents is necessary.

16          Indeed, the need for *in camera* review is particularly acute here: the government, relying on

17  an identical theory of exemption (and identically worded declarations), still seeks to withhold six

18  opinions of the FISC in their entirety. The government's previous representations concerning FISC

19  opinions lacked merit. There is little reason to believe those same representations, resurrected a

20  year later, carry any more validity.

21          Additionally, the government may no longer withhold the names of telecommunications

22  companies—specifically, AT&T, Sprint, and Verizon—from responsive records. Government

23  officials have publicly confirmed the participation of these three companies in the NSA's call

24  records program. As such, this "official acknowledgement" overcomes whatever otherwise valid

25  exemption the government might assert. *See Fitzgibbon v. CIA,* 911 F.2d 755, 765 (D.C. Cir.

26  1990).

27          Finally, the deliberative process privilege does not justify the withholding of the OLC

28

opinion at issue here. The opinion is a controlling statement of the executive branch's legal position and, therefore, falls outside the privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975). Even if the OLC opinion could be considered deliberative, it lost that protection through "adoption" of the opinion by the executive branch in proceedings before the FISC. *See id.* at 161. Under either theory, it must be disclosed.

For the reasons that follow, EFF's cross-motion for summary judgment should be granted and the government's motion for summary judgment should be denied.

## I.     FOIA Establishes a Presumption of Disclosure and the Government Bears the Burden of Demonstrating that Withheld Information is Clearly Exempt.

FOIA is intended to safeguard the American public's right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Robbins*, 437 U.S. at 242.

FOIA requires disclosure of all agency records at the request of the public unless the records fall within one of nine narrow exemptions. *See* 5 U.S.C. § 552(b). These "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The exemptions "have been consistently given a narrow compass," and agency records that "do not fall within one of the exemptions are improperly withheld." *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

FOIA disputes involving the propriety of agency withholdings are commonly resolved on summary judgment. *See*, *e.g.*, *Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1115 (9th Cir. 1988). Summary judgment is proper when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); *Feshbach v. SEC*, 5 F. Supp. 2d 774, 779 (N.D. Cal. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In FOIA cases, a court reviews the government's decision to

withhold records *de novo*, and the government bears the burden of proving records have been properly withheld. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. Even national security claims of the type invoked here do not alter a court's "independent responsibility" to undertake a thorough *de novo* evaluation of the government's withholdings. *Goldberg v. Dep't of State*, 818 F.2d 71, 76-77 (D.C. Cir. 1987) (noting Congress amended FOIA to clarify its "intent that courts act as an independent check on challenged classification decisions").

To satisfy its burden to withhold information, the agency "must provide a relatively detailed justification [for its withholding decisions], specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) (internal citations omitted).[13] "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action.'" *Reporters Comm.*, 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). Thus, when claiming one of FOIA's exemptions, the agency bears the burden of demonstrating to a reviewing court that withheld information is "*clearly* exempt." *Birch v. USPS,* 803 F.2d 1206, 1209 (D.C. Cir. 1986) (emphasis added) (citing *Vaughn*, 484 F.2d at 823).

**II.    The Government Misrepresented the Nature of Previously Withheld Records, Which Constitutes Bad Faith, Undermines the Deference Typically Afforded Government Affidavits, and Necessitates the Court's *In Camera* Review of Responsive Records.**

Because many of the documents have now been released in part, the Court is uniquely positioned to evaluate the government's previous withholding claims, as well as the representations

---

[13] In *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), the D.C. Circuit established the procedural requirements that "an agency seeking to avoid disclosure" must follow in order to carry its burden in a FOIA case. *Id*. at 828. These procedural obligations are typically satisfied by the submission of an index describing each withheld record (a "*Vaughn* index") and an affidavit from an agency official, further describing the agency's rationale for withholding the record. *See King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987). The government has submitted both here. *See* Declaration of Jennifer Hudson ("Hudson Decl.") (ECF No. 77-1) and *Vaughn* Index (ECF No. 77-2).

on which those withholdings were based. As discussed below, the government's claims were legally meritless and demonstrably overbroad, and those claims were based on material misrepresentations and distortions of fact. Because of those misrepresentations, the presumption of regularity and good faith that typically attaches to agency declarations should not apply here. Instead, the Court's *in camera* review of the documents is the only appropriate method to resolve this case and ensure the government's compliance with FOIA.

> A.  The Government Materially Misrepresented the Scope And Quantity of Sensitive Information in the Withheld Documents.

At an earlier stage in this case, the government claimed every word, phrase, sentence, and paragraph in withheld FISC opinions was classified and exempt from disclosure. As even a cursory review of the documents demonstrates, the government's blanket exemption claims swept far more broadly than the law allows. Those overbroad assertions concealed generic statements of law, straightforward legal analyses, and, most troublingly, admonishments by the FISC for government misconduct. At no time was this information subject to a valid exemption from disclosure.

The government unambiguously—and repeatedly—asserted that *all* information contained within responsive records would disclose "intelligence sources and methods" and that the disclosure of that information would threaten grave harm to national security. *See* Bradley Decl., ¶¶ 9, 10, 12, 13; Second Suppl. Bradley Decl., ¶¶ 5, 9. The government also unambiguously—and repeatedly—asserted that nothing could be segregated and released from otherwise classified information without, itself, revealing classified "sources and methods." *See* Bradley Decl., ¶ 12; Second Suppl. Bradley Decl., ¶¶ 8, 10-11. Indeed, in direct response to this Court's order to specifically "address the issue of segregability," Order Re: Further Submissions at 3, the government again averred that disclosure was impossible: *any* portion of the withheld documents would either "reveal information about classified intelligence sources, methods, and activities" or would produce only "incomplete, fragmented, or unintelligible sentences and or phrases." Second Suppl. Bradley Decl. ¶ 11.

Those representations were false. Substantial portions of the withheld FISC opinions were readily segregable from surrounding material. Perhaps most significantly, the government

attempted to shield evidence of misconduct from public scrutiny behind a veil of classification, despite the practice's explicit prohibition by executive order. *See* Exec. Order 13,526, § 1.7 (prohibiting classification to "prevent embarrassment to a person, organization, or agency" or to "conceal violations of law, inefficiency, or administrative error.") The released opinions contain numerous passages in which the FISC admonished the government for "flagrant" or "systemic" failures to comply with FISC orders. The passages contain limited, if any, reference to sources or methods and easily could have been released in full or with minimal redactions. Examples include:[14]

- "The Court is exceptionally concerned about what appears to be a flagrant violation of its order in this matter[.]" Order Regarding Preliminary Notice of Compliance Incident at 4-5, *In re Production of Tangible Things*, BR 08-13 (FISC Jan. 28, 2009).[15]

- "After considering [remedial] measures in the context of the historical record of non-compliance and in view of the Court's authority and responsibility to 'determine [and] enforce compliance' with Court orders and Court-approved procedures, 50 U.S.C. 1803(i), the Court has concluded that further action is, in fact, necessary. March 2, 2009 Order at 14.

- "In light of what appear to be systemic problems . . . the Court believes that more is needed to protect the privacy of U.S. person information acquired and retained pursuant to the FISC orders in this matter." *Id*. at 17.

- "[T]he Court must have every confidence that the government is doing its utmost to ensure that those responsible for implementation fully comply with the Court's orders. The Court no longer has such confidence." *Id.* at 12

Nor are these isolated examples. *See also id*. at 3 (requiring briefing to determine, among other things, "whether the Court should take action regarding persons responsible for any misrepresentations to the Court or violations of its Orders"); *id.* at 16 (government's "systemic, ongoing violation" is unlikely to "be the last"). Even assuming *some* of the information in these passages may have been properly classified at the time, *all* of the information was not.

---

[14] Again, EFF has used ellipses to omit certain information that, at the time, may have been arguably sensitive. *See supra* at 1 n. 1.
[15] *Available at* http://www.dni.gov/files/documents/section/pub_Jan%2028%202009%20Order%20Regarding%20Prelim%20Notice%20of%20Compliance.pdf

In addition to concealing evidence of misconduct, two previously withheld opinions epitomize the information EFF sought—legal analysis of Section 215, segregable from any sensitive material—and the information the government swore did not exist. *See* Second Suppl. Bradley Decl., ¶ 11 (disclosure of any "legal analysis" would "tend to reveal information about classified intelligence sources, methods, and activities"). The first opinion analyzes Section 215's relationship to the Stored Communications Act, *see* Supplemental Opinion, *In Re Production of Tangible Things From [Redacted]*, BR 08-13 (FISC Dec. 12, 2008) (Second Declaration of Mark Rumold, Ex. A) ("Second Rumold Decl."); the second, Section 215's relationship to the Right to Financial Privacy Act. *See* Supplemental Order, *In Re Application of the Federal Bureau of Investigation for an Order Requiring the Production of Tangible Things from [Redacted]*, BR 10-82 (FISC Nov. 23, 2010) (Second Rumold Decl., Ex. B). With the exception of isolated paragraphs, neither opinion discusses a particular intelligence source or method. Nor do they contain sensitive information. The opinions simply analyze Section 215's relationship with other statutes.[16] No FOIA exemption could justify the withholding of these opinions in full.

Other released FISC orders similarly demonstrate the overbreadth of the government's previous claims. For example, according to the government, this straightforward recitation of statutory authority was properly classified at the "TOP SECRET level":

> The director of the FBI is authorized to make an application for an order requiring the production of any tangible things for an investigation to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism, provided that such investigation of a United States person is not conducted solely on the basis of activities protected by the first amendment to the constitution of the United States. 50 USC 1861(c)(1).

---

[16] Nor can the government argue that the analysis of those particular statutes somehow revealed a classified fact. It was already a matter of public record that the government had relied on Section 215 to obtain communication records and financial records in the past. *USA PATRIOT ACT Reauthorization: Hearing Before the Subcomm. On Crime, Terrorism, and Homeland Security of the House Committee on the Judiciary*, 112 Cong. 13 (2011) (statement of Todd M. Hinnen, Acting Assistant Attorney General, Department of Justice) ("Section 215 has been used to obtain . . . credit card records, and the like"); *see also* Department of Justice, Office of Inspector General, *A Review of the FBI's Use of Section 215 Orders for Business Records in 2006*, 21, 65 (2008) (discussing 215's use to obtain communication records and financial records).

Order at 2, *In re Application of the FBI for an Order Requiring the Production of Tangible Things from [Redacted]*, BR 06-05 (FISC May 24, 2006);[17] *see also* 50 U.S.C. § 1861(a)(1) (describing authority recited in order). Indeed, the BR 06-05 Order contains an entire page consisting largely of statutory recitation. *See id.* at 3. Defendant did not—and, indeed, *cannot*—establish that disclosure of this type of recitation *at any time* would have caused "exceptionally grave damage to the national security of the United States" or would have disclosed "intelligence sources and methods," the necessary predicates for its withholding claims.

In short, the agency's earlier, overbroad classification claims served to shield the executive branch and intelligence agencies from public scrutiny, not to protect sensitive sources and methods, as they claimed. Such base attempts to distort the public's understanding of government operations are never valid grounds for classification or withholding under FOIA. The government's repeated representations—that all information was properly classified and exempt, and that no material could be segregated and released—were false.

> B.   These Misrepresentations Warrant A Finding of Bad Faith and Preclude the Deference Normally Afforded Agency Affidavits in FOIA Cases.

As described above, the government materially misrepresented to EFF and the Court the scope and extent of exempt information contained within responsive documents, as well as the feasibility of segregating and releasing information. While agency affidavits submitted in FOIA cases are generally "accorded a presumption of good faith," *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), this presumption only exists if the affidavits "are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Halperin v. CIA,* 629 F.2d 144, 148 (D. C. Cir. 1980). Where evidence of agency bad faith is strong, "it would be an abdication of the court's responsibility to treat the case in the standard way and grant summary judgment" on the basis of agency affidavits alone. *Jones*, 41 F.3d at 242-43.

Tangible evidence of bad faith, rather than a mere allegation, is typically required to

---

[17] *Available at* http://www.dni.gov/files/documents/section/pub_May%2024%202006%20Order%20from%20FISC.pdf

1   overcome the presumption of good faith and legitimacy. *Carter v. Dep't of Commerce*, 830 F.2d

2   388, 393 (D.C. Cir. 1987). Courts have declined to rely on agency affidavits and questioned the

3   good faith of the agency where representations made in agency affidavits are called into question,

4   *see Wash. Post Co. v. Dep't of State*, 840 F.2d 26, 28 (D.C. Cir. 1988), *vacated on other grounds*,

5   898 F.2d 793 (D.C. Cir. 1990); where the agency delayed processing a FOIA request and relied

6   upon "erroneous withholdings and inaccurate *Vaughn* [indices]," *Carter, Fullerton & Hayes v.*

7   *FTC*, 2013 WL 653288, *6 (E.D. Va Feb. 21, 2013); or "where it becomes apparent that the subject

8   matter of a request involves activities which, if disclosed would publicly embarrass the agency or

9   that a so-called 'cover up' is presented." *Rugiero v. Dep't of Justice*, 257 F.3d 534, 546-47 (6th

10  Cir. 2001) (citations omitted).

11      Here, the evidence of bad faith in the agency's prior representations is ample. The

12  misrepresentations were not isolated: instead, the government repeatedly asserted that *nothing* from

13  the withheld records could be disclosed without threating grave harm to national security. *See*

14  *supra* at pages 10-13 (describing government's repeated assertions that *all* information was exempt

15  *in full* under FOIA). Nor were the misrepresentations limited to some collateral or insignificant

16  matter. Rather, the government's misrepresentations went to the heart of EFF's primary claim—

17  that disclosure of information, with redaction, was possible and would aid the public in assessing

18  the government's use of Section 215. *See* First Cross-Motion at 15 ("Defendant provides no reason

19  to support its claim that *no* part of those [legal] analyses can be separated"); Plaintiff's Reply in

20  Support of Cross-Motion at 6 ("Defendant still urges this Court to approve the withholding of

21  every word, of every line, of every page, of over 2,000 pages of records.") (ECF No. 45);

22  Plaintiff's Response to Defendant's Further Submissions at 4 ("the absence of *any* segregable

23  information is particularly suspect where . . . some of the documents contain hundreds of pages")

24  (ECF No. 55).

25      Finally, the government's misrepresentations came in direct response to this Court's order.

26  After this Court expressed skepticism that withheld documents "would be so replete with

27  descriptions of intelligence activities, sources and methods that no portions thereof would contain

28

1   non-exempt information," the government only re-doubled its claim. Order Re: Further Submission

2   at 2. In response to the Court's order, the government again emphasized that, "after careful

3   review," the information "in the withheld documents cannot reasonably segregated and released

4   without risking disclosure of the manner and means by which the United States acquires tangible

5   things for certain authorized investigations pursuant to Section 215." Second Suppl. Bradley Decl.

6   ¶ 8. Redaction, according to the government, would only "produce misleading and/or meaningless

7   sets of words and phrases which would have minimal or no informational content." Second Suppl.

8   Bradley Decl. ¶ 8. As the earlier recitation demonstrates, those representations were untrue.

9       Instead of embarking on a searching review of the withheld information and attempting to

10  provide the public with as much information about its use of Section 215 as possible, the

11  government vastly overstated—and materially misrepresented—the sensitive nature of the withheld

12  material. That much of the information would have painted the government's use of Section 215 in

13  an unflattering light only compounds error. The withholdings were calculated more to stifle public

14  inquiry and oversight than to protect any legitimately sensitive material. Such conduct constitutes

15  bad faith and undermines the deference that might otherwise be due.

16
        C.    To Ensure the Accuracy of the Government's Representations and to Facilitate
17            This Court's *De Novo* Review, *In Camera* Review of the Withheld Opinions Is
              Needed.

18      In light of the concrete evidence of bad faith present here, the agency's affidavits cannot

19  govern the resolution of this case: the Court's *in camera* review of the withheld documents is

20  necessary. In conducting its *de novo* review, FOIA empowers the Court to examine "agency

21  records *in camera* to determine whether such records or any part thereof shall be withheld." 5

22  U.S.C. § 552(a)(4)(B). Given the circumstances present here, EFF respectfully submits that *in

23  camera* review of the withheld documents is the only appropriate method to resolve this case.

24      "Where there is evidence of bad faith on the part of the agency," as there is here, "the

25  representations of the agency lose all trustworthiness. In camera inspection in such situations is

26  'plainly necessary. . .'" *Allen v. CIA*, 636 F.2d 1287, 1298 (1980); *see also Rugiero*, 257 F.3d at

27  544 (A "showing of bad faith" rebuts "the presumption of regularity the government enjoys" and

28

should "weigh heavily in the decision to conduct an *in camera* review of responsive documents withheld or redacted.") (citing cases). Indeed, this is precisely the approach taken by Judge Jackson in *EFF v. Dep't of Justice*, 12-1441 (D.D.C. *filed* Aug. 30, 2012)—another case involving a single FISC opinion disclosed after similarly overbroad representations about classification and segregability. *See* Minute Order of Mar. 25, 2014 in *EFF v. Dep't of Justice*, 12-1441 (D.D.C.) (directing government to "deliver the October 3, 2011 FISC Opinion and Order. . . for in camera inspection to assist the Court in making a responsible de novo determination").

Even in the absence of bad faith, there is a "greater call for *in camera* inspection" in "cases that involve a strong public interest in disclosure." *Id.* at 1298. As the D.C. Circuit has explained, (in language particularly pertinent here):

> When citizens request information . . . the agency often deems it in its best interest to stifle or inhibit the probes. It is in these instances that the judiciary plays an important role in reviewing the agency's withholding of information. But since it is in these instances that the representations of the agency are most likely to be protective and perhaps less than accurate, the need for *in camera* inspection is greater.

*Id.* at 1299; *see also Jones*, 41 F.3d at 243 (noting *in camera* inspection warranted where there is "*strong public interest* — where the effect of disclosure or exemption clearly extends to the public at large") (emphasis in original). The documents at issue in this case are the topic of intense public scrutiny and interest. As noted, the scope, legality, and propriety of the government's current surveillance practices has been vigorously debated, both in this country and abroad, for nearly a year. In light of this overriding public interest, the need for *in camera* inspection is particularly acute.

"A judge has discretion to order *in camera* inspection on the basis of an uneasiness, on a doubt" she wants satisfied before taking "responsibility for a de novo determination." *Spirko v. USPS*, 147 F.3d 992, 996 (D.C. Cir. 1998) (quoting *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978)) (internal quotation marks omitted). EFF respectfully submits that the Court has ample reason here for "uneasiness" and "doubt."

///

///

-16-

**III.    The Withholding, In Full, of Six Additional FISC Opinions is Unwarranted.**

The government asks this Court to again countenance the withholding, in full, of significant FISC opinions concerning Section 215, relying on assertions and depictions of withheld records that are functionally identical to those previously advanced by the agency. As described above, the government's earlier representations were untrue. There is every reason to suspect those same arguments, reprised a year later, suffer from similar defects. For the reasons that follow, the government should not be allowed to withhold, in their entirety, the six remaining FISC opinions.

A.    None of the Claimed Exemptions Justify the Withholding, In Full, of the Six Opinions

The government asserts a constellation of exemptions in an attempt to shield the six remaining FISC opinions from disclosure. None of the exemptions goes as far as the government would like. While the asserted exemptions allow for the withholding of "intelligence sources and methods" (Exemption 1, 5 U.S.C. § 552(b)(1) and Exemption 3, 5 U.S.C. § 552(b)(3))[18] and "law enforcement techniques" (Exemption 7E, 5 U.S.C. § 552(b)(7)(E)), none authorize the withholding of federal law.[19] The withheld FISC opinions are just that: they are opinions and orders, issued by an Article III court, containing "significant interpretation or analysis" of Section 215, a federal law. Critically, the opinions are not, themselves, intelligence sources and methods, nor are they law enforcement techniques. While the opinions may *contain* such information, targeted redaction can

---

[18] Exemption 3 protects information that is "specifically exempted from disclosure" by another federal statute. 5 U.S.C. § 552(b)(3). Here, the government (publicly) relies on Section 102A(i)(1) of the National Security Act to withhold five of the opinions in full. *See* Hudson Decl., ¶ 111. The statute authorizes the Director of National Intelligence to protect "intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). One opinion is withheld under the NSA's statutory exemption, 50 U.S.C. § 3605. *See id.*, ¶101.

[19] It bears emphasizing that Congress passed FOIA to "pierce the veil of administrative secrecy[,]" *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal citation omitted), and combating the development of agency secret law "was the primary target of the [A]ct's disclosure requirements." *Hardy v. ATF*, 631 F.2d 653, 657 (9th Cir. 1980) *Jordan v. Dep't of Justice*, 591 F.2d 753, 781 (D.C. Cir. 1978) (Bazelon, J., concurring) (noting one of FOIA's "principle purposes" was "to eliminate secret law"). It is against this overarching purpose—the elimination of secret law—that the government's sweeping invocations of FOIA's exemptions must be assessed. *See NLRB v. Sears*, 421 U.S. 132, 138 (1975) (noting, in Exemption 5 context, Act's purpose is "to prevent the creation of 'secret law'").

adequately protect any sensitive information from public disclosure, as recent disclosures amply demonstrate.

To the extent the government claims that the FISC opinions, themselves, constitute intelligence "sources and methods" or "law enforcement techniques," that claim is without merit. Indeed, the Ninth Circuit has rejected a similar argument in *Berman v. CIA*. 501 F.3d 1136 (9th Cir. 2007). In *Berman*, the court considered whether the President's Daily Briefs ("PDBs")[20] were, as the CIA contended, protected intelligence methods exempt under Exemptions 1 and 3. *Id.* at 1146. The Court rejected this argument, noting that "[a]lthough PDBs will typically contain information that reveals intelligence sources and methods, this does not mean that PDBs *themselves* are intelligence methods." *Id.* (emphasis in original). The same logic applies with equal force here: Although a FISC opinion may often "contain information that reveals intelligence sources and methods," the opinion, itself, is not such a source, method, or technique. *See also Whitaker v. CIA*, CV 12-316, 2014 WL 914603 (D.D.C. Mar. 10, 2014) (finding that CIA's claim that internal "FOIA processing materials" constituted intelligence sources and methods "goes too far"); *see also Gordon v. FBI*, 388 F. Supp. 2d 1028, 1036-37 (N.D. Cal. 2005) (finding "legal basis" for detaining individual on "No Fly" list not exempt under Exemption 7(E)).

The FISC opinions are the law, not an intelligence source, method, or technique. They are therefore not exempt, in full, under Exemptions 1, 3, or 7(E).

> ## B. The Government Has Again Failed to Segregate and Release Non-Exempt Information from the Withheld Opinions.

The government cannot withhold the six FISC opinions, *in full*, simply because some information contained therein may be classified or sensitive. FOIA's focus "is information, not documents," and the government "cannot justify withholding an entire document simply by showing that it contains some exempt material." *Willamette Indus. v. United States*, 689 F.2d 865, 867 (9th Cir. 1982). Just as before, it is apparent that information within the six remaining FISC

---

[20] A PDB is a report, generated daily by the CIA for the President, containing "highly classified summary of the most important and timely intelligence relating to this country's national defense and foreign policy priorities." *Berman*, 501 F.3d at 1137.

1     opinions can be segregated and released.

2         FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . .

3 after deletion of the [exempt] portions." 5 U.S.C. § 552(b); *Pacific Fisheries, Inc. v. United States*,

4 539 F.3d 1143, 1148 (9th Cir. 2008). "The 'segregability' requirement applies to all documents and

5 all exemptions in the FOIA." C*tr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984). In this

6 circuit, "the district court must review the agency's 'segregability' decisions on a document-by-

7 document basis." *NRDC v. Dep't of Defense,* 388 F. Supp. 2d 1086, 1096 (C.D. Cal. 2005). "The

8 district court must make specific factual findings on the issue of segregability to establish that the

9 required *de novo* review of the agency's withholding decision has in fact taken place." *Bay Area*

10 *Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1296 (N.D. Cal.

11 1992). "It is error for a district court to simply approve the withholding of an entire document

12 without entering a finding on segregability, or the lack thereof." *Church of Scientology v. Dep't of*

13 *the Army*, 611 F.2d 738, 744 (9th Cir. 1979) (citations and internal quotation marks omitted).

14         To support its claim that no segregable material exists within the withheld FISC opinions,

15 the government relies on the Declaration of Jennifer Hudson. However, the Hudson Declaration's

16 segregability assessment is functionally identical to the government's assertions a year ago—and

17 which proved to be untrue. Where differences between the two exist, they are a matter of phrasing;

18 for all practical purposes, they are identical. Selections from those two statements are provided

19 below:

| *Second Supplemental Bradley Declaration*, filed April 18, 2013 (ECF No. 51-1) | *Hudson Declaration*, filed March 28, 2014 (ECF No. 77-1) |
|---|---|
| 10. . . . [I]t is my judgment that any information in those documents that, viewed in isolation, could be considered unclassified, . . . can reasonably be expected to reveal (directly or by implication) classified national security information concerning the timing or nature of intelligence activities. In these circumstances, the disclosure of even seemingly mundane portions of the FISC materials, when considered in conjunction with other publicly available information, could reasonably be expected to assist a sophisticated adversary in | 117. . . . [I]t is my judgment that any information in those documents that, viewed in isolation, could be considered unclassified, . . . can reasonably expected to reveal (directly or implication) classified national security information concerning the timing or nature of intelligence activities[.] . . . In these circumstances, the disclosure of even seemingly mundane portions of these FISC opinions or orders, when considered in conjunction with other publicly available information, could reasonably be expected to assist a sophisticated |

| deducing particular intelligence activities or sources and methods, and possibly lead to the use of countermeasures that may deprive the United States of critical intelligence. | adversary in deducing particular intelligence activities or sources and methods, and possibly lead to the use of countermeasures that may deprive the United States of critical intelligence. |
|---|---|
| 11. For example, in my judgment, although certain legal analysis set forth in the FISC materials at issue in this case would be unclassified when viewed in isolation, it is not reasonably segregable because, particularly when viewed in the context of this FOIA request, it would tend to reveal information about classified intelligence sources, methods, and activities at issue in the balance of the document. In particular, legal analysis would tend to reveal the legal question being analyzed and the particular aspects of the statute being considered, and thus would reveal how statutory authority and judicial authority is being applied in a specific context to the use or application of a particular intelligence source and method. | 118. Thus, for example, it is my judgment that, although certain legal analysis set forth in the withheld in full FISC opinions may be unclassified when viewed in isolation, it is not reasonably segregable here because, when viewed in the context of this FOIA request and other public information, it would tend to reveal information about classified intelligence sources, methods, and activities at issue in the balance of the document. In particular, legal analysis would tend to reveal how statutory and judicial authority are being applied in a specific context to the use or application of a particular intelligence source and method. |

The government's previous representations concerning segregability were incomplete, inaccurate, and misleading. There is no reason for either EFF or this Court to believe that identical representations—now cut and pasted into a different document and submitted by a different declarant—are somehow more accurate. Such generalizations proved unworthy of deference in the last round of briefing and are equally unworthy now. Just as before, there is no reason these documents "would be so replete with descriptions of intelligence activities, sources and methods that no portions thereof would contain non-exempt information." Order Re: Further Submissions at 2. Accordingly, EFF respectfully urges the Court to order the six FISC Opinions produced for its *in camera* inspection and to order the disclosure of all reasonably segregable information contained therein.

**IV. The Telecommunication Service Providers Participating in the Call Record Collection Program Have Been Officially Acknowledged.**

The government cannot continue to withhold the names of telecommunication providers participating in the NSA's call record collection program because the names of those providers have already been "officially acknowledged" by the government. Although the government asserts

Exemptions 1 and 3 to withhold the information, official acknowledgement works to overcome an otherwise valid FOIA exemption. *Fitzgibbon,* 911 F.2d at 765 ("When information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim."). Accordingly, the government cannot continue to withhold AT&T, Sprint, and Verizon from responsive records.

Official acknowledgment of information by prior disclosure cannot be based on mere public speculation, no matter how widespread. *Afshar v. Dep't of State,* 702 F.2d 1125, 1130 (D.C. Cir. 1983) (rejecting public speculation constituted prior disclosure). Instead, an official acknowledgment must meet three criteria:

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed. . . . Third, . . . the information requested must already have been made public through an official and documented disclosure.

*Pickard v. Dep't of Justice*, 653 F.3d 782, 786 (9th Cir. 2011) (citing *Fitzgibbon*, 911 F.2d at 765). AT&T, Sprint, and Verizon's participation in the NSA's call record program has been a matter of public record for some time. *See, e.g.*, Siobhan Gorman, *et al.*, *U.S. Collects Vast Data Trove*, Wall. St. J. (June 7, 2013) (noting "people familiar with the NSA's operations said the initiative also encompasses phone-call data from AT&T Inc. and Sprint Nextel Corp.," in addition to Verizon).[21] More fundamentally, however, government officials have publicly confirmed the participation of these companies.

First, NSA General Counsel Raj De stated that "three different providers" participate in the NSA's Section 215 call record collection program. *Counterterrorism, National Security, and the Rule of Law*, Aspen Security Forum Panel (July 18, 2013) (remarks of Raj De) at 13 (discussing need to aggregate data from "three different providers" to conduct analytics) (Second Rumold

---

[21] *Available at* http://online.wsj.com/news/articles/SB10001424127887324299104578529112289298922?mg=reno64wsj&url=http%3A%2F%2Fonline.wsj.com%2Farticle%2FSB10001424127887 324299104578529112289298922.html.

Decl., Ex. C).[22] Second, Geoffrey Stone—a member of the President's Review Group on Intelligence and Communications Technologies—wrote:

> Under the telephone metadata program, which was created in 2006, telephone companies like *Sprint, Verizon, and AT&T* are required to turn over to the NSA, on an ongoing daily basis, huge quantities of telephone metadata involving the phone records of millions of Americans, none of whom are themselves suspected of anything.

Geoffrey Stone, *Understanding Obama's NSA Proposals*, Daily Beast (Mar. 27, 2014) (Second Rumold Decl., Ex. D) (emphasis added).[23] Taken together, these disclosures satisfy the standard for "official acknowledgement," even if, from the government's perspective, they were regrettable or unplanned. *See Fitzgibbon,* 911 F.2d at 765. First, the disclosed information "match[es]" the withheld information. *Id.* at 765. The disclosures describe the identities of the "telecommunication service provider[s]" that participate, and have participated, in the NSA's call records program. Hudson Decl., ¶ 59. Second, the information is "as specific" as that withheld. *Fitzgibbon*, 911 F.2d at 765. The public disclosures describe the companies involved in the program since its migration to FISC supervision in 2006. Third, the information was made public through both "official and documented disclosure[s]." *Id*. The disclosures were "official": Raj De (as General Counsel of the NSA) and Geoffrey Stone (as a member of the President's Review Group) are both fully informed about the NSA program's operation and the companies participating in the program. *See Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (noting public disclosure by "an authoritative source" constitutes official acknowledgement); *see also Alfred A. Knopf, Inc. v. Colby,* 509 F.2d 1362, 1370 (4th Cir. 1975) ("It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so."). Second, the disclosures are both "documented:" links to both Mr. De and Professor Stone's comments are readily available on the

---

[22] A video of the forum is also available online at http://www.huffingtonpost.com/2013/07/18/count erterrorism-aspen-security-forum_n_3618066.html (discussing call records collection program from 16:36-18:40)

[23] *Available at* http://www.thedailybeast.com/articles/2014/03/27/president-obama-is-trying-to-tame-the-nsa.html.

Internet. *See supra* at 22 nn. 22-23; *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001) ("For the public domain doctrine to apply, the specific information sought must have already been disclosed and preserved in a permanent public record.") (internal citations and quotations omitted).[24]

These disclosures thus confirm what the public already surmised: that AT&T, Sprint, and Verizon have participated, since 2006, in the NSA's call records program. Although the government may wish to deny or ignore these official disclosures, FOIA was intended pry from "possibly unwilling official hands" government information "shielded unnecessarily" from the public. *Dep't of Air Force v. Rose,* 425 U.S. 352, 361 (1976)) (internal quotation marks omitted). As the D.C. Circuit has noted, "[t]here comes a point where . . . Court[s] should not be ignorant as judges of what [they] know as men and women. We are at that point with respect" to the participation of AT&T, Sprint, and Verizon in the NSA's call records collection program. *ACLU v. CIA*, 710 F.3d 422, 431 (D.C. Cir. 2013) (internal citations omitted).

**V.      The Deliberative Process Privilege Does Not Apply to the OLC Opinion.**

Defendant has improperly asserted Exemption 5 to withhold a final, controlling statement of the executive branch's legal position. The document, issued by OLC in response to a question from the Department of Commerce, describes the executive branch's controlling interpretation on the relationship between Section 215 and the Census Act. Declaration of Paul Colborn ("Colborn Decl."), ¶¶ 13-14 (ECF No. 40-2). Because the OLC opinion (the "Census Opinion") is controlling on the executive branch, it cannot be withheld under the deliberative process privilege of Exemption 5. Alternatively, even if the Census Opinion was deliberative when it was authored, it lost the privilege's protection when it was adopted by the agency.

---

[24] Additionally, because the participation of AT&T, Sprint, and Verizon has been "officially acknowledged," for essentially similar reasons, the government should not withhold words (such as "billions" or "trillions") describing the scope of the program. *See* Hudson Decl., ¶ 47 (withholding "aggregate number of call detail records" to avoid revealing the "scope of this program" and to prevent "possible deduction of the telecommunications service providers who are subject to FISC orders.").

Exemption 5 provides a narrow exception for "inter-agency or intra-agency" records that would "not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). One of the privileges incorporated into Exemption 5 is the "deliberative process privilege." The privilege applies to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). However, the privilege does not apply to "opinions and interpretations which embody the agency's effective law and policy[.]" *Sears,* 421 U.S. at 152 (internal quotations omitted). Additionally, even if a document is protected by the privilege at the time it is created, the document can lose its protection "if it is adopted, formally or informally, as the agency position on an issue[.]" *Coastal States*, 617 F.2d at 866.

First, Defendant's withholding of the Census Opinion under the privilege is improper because the document constitutes an "opinion" embodying the executive branch's "effective law." *Sears*, 421 U.S. 152. As OLC readily admits, its legal opinions constitute "*controlling* legal advice to Executive Branch officials." *Memorandum for Attorneys of OLC, OLC Best Practices*, (July 16, 2010) at 1 (emphasis added) (Decl. of Mark Rumold, Ex. 5) (ECF No. 42-5). Indeed, the opinions of the Attorney General—on whose behalf OLC issues its opinions, *see* 28 C.F.R. § 0.25(a)—have been "considered as law" within the executive branch for at least 150 years. 5 Op. Att'y. Gen. 97 (1849); *see also* 25 Op. Att'y. Gen. 301, 303 (1904) (Opinions of the Attorney General are "controlling and conclusive" interpretations that establish "a rule for the guidance of other officers of the Government[.]"). Thus, OLC opinions are far from "the ideas and theories which go into the making of the law"; they are the "law itself" within the executive. *Sterling Drug v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971). The Census Opinion, therefore, cannot be withheld.[25]

---

[25] The government relies primarily on the D.C. Circuit's recent decision in *EFF v. Dep't of Justice*, 739 F.3d 1 (D.C. Cir. 2014) (*reh'g* en banc *denied*), which held that, despite the controlling nature of OLC's legal interpretations, OLC opinions are not generally "final" agency opinions. *Id.* at 9. With due respect to the D.C. Circuit, EFF respectfully disagrees with the Court's conclusion. EFF notes that the controlling nature of OLC opinions and the application of the deliberative process privilege has not yet been considered by this Circuit.

1    Alternatively, even if the Census Opinion was privileged at the time it was created, it lost

2    its privilege through adoption by the Department of Justice. *See Sears*, 421 U.S. at 161; *see also*

3    *Coastal States*, 617 F.2d at 866. An otherwise deliberative document loses its privilege if it is

4    adopted, "formally or informally, as the agency position on an issue." *Judicial Watch, Inc. v. U.S.*

5    *Postal. Serv.*, 297 F. Supp. 2d 252, 261 (D.D.C. 2004). As the government admits, the Census

6    Opinion was "provided to the [FISC] in connection with an application submitted by the

7    Department in a matter that was concluded." Colborn Decl., ¶ 17. The Census Opinion's

8    submission as legal support for the executive branch's application evidences an adoption of the

9    legal interpretation contained within the opinion. This is precisely the type of "express" adoption

10   that operates to waive the privilege. *See Sears*, 421 U.S. at 161.[26]

11   Agencies are not allowed "to develop a body of 'secret law,' used by it in the discharge of

12   its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege."

13   *Coastal States*, 617 F.2d at 867. The government cannot shield the Census Opinion from

14   disclosure, simply "because it is not designated as 'formal,' 'binding,' or 'final.'" *Id*. For this

15   reason, the Census Opinion must be disclosed.

16                                        **CONCLUSION**

17   For all the foregoing reasons, the Court should deny the government's motion for summary

18   judgment, grant EFF's cross-motion for summary judgment, and order the government to

19   immediately produce, with appropriate redaction (if any), all records responsive to EFF's FOIA

20   request.

21

22

23   [26] In previous briefing, the government suggested it is "not correct to infer" that the Census
     Opinion was submitted in support of the government's application—and thereby adopted—
24   because "there are many circumstances in which the Department of Justice might provide an OLC
     opinion to the FISC." Def. Rep. at 23 n. 8 (ECF No. 44). If that is the case, it is the government's
25   burden to explain the Census Opinion's use and the circumstances of its submission to the FISC.
     *See Coastal States*, 617 F.2d at 867 (application of the privilege is "so dependent upon the
26   individual document and the role it plays in the administrative process"). In the absence of such an
     explanation, common sense suggests the government submitted the Census Opinion in support of
27   its application to the FISC, thus constituting adoption of the legal analysis contained therein.

28

1

2

DATED: April 18, 2014                    Respectfully submitted,

3                                                  _/s/ Mark Rumold_____

4                                                  Mark Rumold
                                                   Jennifer Lynch
                                                   ELECTRONIC FRONTIER FOUNDATION

5                                                  815 Eddy Street
                                                   San Francisco, CA 94109

6                                                  Telephone: (415) 436-9333
                                                   Facsimile: (415) 436-9993

7

8                                                  Attorneys for Plaintiff
                                                   ELECTRONIC FRONTIER FOUNDATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28