STUART F. DELERY
Assistant Attorney General
MELINDA HAAG
United States Attorney
ELIZABETH J. SHAPIRO
Deputy Branch Director
STEVEN Y. BRESSLER D.C. Bar No. 482492
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch

P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 305-0167
Facsimile: (202) 616-8470
Email: Steven.Bressler@usdoj.gov

Attorneys for the United States Department of Justice

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>JUSTICE, )<br>)<br>Defendant. )<br>_____ ) | Case No. 4:11-cv-05221-YGR<br><br>Date: June 3, 2014<br>Time: 2:00 p.m.<br>Place: Oakland U.S. Courthouse<br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>**CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................3

I.   The Government Has Demonstrated as a Matter of Law that the
     Responsive Records in This Case are Exempt from Disclosure
     Under the FOIA ....................................................................................................3

II.  The Government's Declarations are Supported by a Presumption of Good
     Faith and Regularity, and are Due Substantial Deference Under the Law
     of this Circuit ........................................................................................................4

     A.   The Government Has Explained Why No Information Could be
          Segregated From Classified Material And Released From Documents
          Pertaining to NSA in the Context of Plaintiff's FOIA Request.............................5

     B.   The Government Explained Why No Information Could Be Segregated
          and Released From FISC Materials .........................................................7

III. The Government Has Not Officially Released the Identities of
     Telecommunications Providers Subject to FISC Orders for Production
     of Telephony Metadata .........................................................................................9

IV.  The Government Has Established That the Five FISC Opinions that Remain
     Withheld-in-Full are Properly Withheld-in-Full...............................................13

V.   Defendant Has Properly Withheld a Privileged Legal Advice Memorandum
     under FOIA Exemption 5.....................................................................................14

VI.  The Court Need Not Resort to *In Camera* Review of the Withheld Documents ..............18

VII. If the Court is Inclined to Order the Release of Any Withheld Material, the
     Court Should Stay Any Such Order to Provide the Government an Opportunity
     to Appeal ..............................................................................................................19

CONCLUSION................................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*ACLU v. United States Dep't of Def.,*
    628 F.3d 612 (D.C. Cir. 2011) ........................................................................4, 9

*Afshar v. Dep't of State,*
    702 F.2d 1125 (D.C. Cir. 1983) ...................................................................11, 17

*Agee v. CIA,*
    524 F. Supp. 1290 (D.D.C. 1981) .....................................................................9

*Agster v. Maricopa County,*
    422 F.3d 836 (9th Cir. 2005) ..........................................................................19

Al-Haramain,
    451 F. Supp. 2d 1215 (D. Or. 2006) ...............................................................13

*Al-Haramain Islamic Found., Inc. v. Bush,*
    507 F.3d 1190 (9th Cir. 2007) ......................................................................9, 13

*Bassiouni v. CIA,*
    392 F.3d 244 (7th Cir. 2004) ..........................................................................14

*Berman v. CIA,*
    501 F.3d 1136 (9th Cir. 2007) ........................................................................14

*Brinton v. Dep't of State,*
    636 F.2d 600 (D.C. Cir. 1980) ........................................................................15

*Carter v. Dep't of Commerce,*
    830 F.2d 388 (D.C. Cir. 1987) ..........................................................................4

*CIA v. Sims,*
    471 U.S. 159 (1985) ....................................................................................7, 19

*Ctr. for Nat'l Sec. Studies v. DOJ,*
    331 F.3d 918 (D.C. Cir. 2003) ..........................................................................3

*Dep't of Navy v. Egan,*
    484 U.S. 518 (1988) ........................................................................................7

*EFF v. Dep't of Justice,*
    739 F.3d 1 (D.C. Cir. 2014) ............................................................................15

*Elec. Privacy Info. Ctr. v. Dep't of Justice,*
    584 F. Supp. 2d 65 (D.D.C. 2008) ...............................................................17

*Eslaminia v. FBI,*
    2011 WL 5118520 (N.D. Cal. October 28, 2011) ........................................7

*Fitzgibbon v. CIA,*
    911 F.2d 755 (D.C. Cir. 1990) .............................................................7, 10

*Gardels v. CIA,*
    689 F.2d 1100 (D.C. Cir. 1982) ............................................................6, 13

*Halkin v. Helms,*
    598 F.2d 1 (D.C. Cir. 1978) ....................................................................14

*Halperin v. CIA,*
    629 F.2d 144 (D.C. Cir. 1980) .......................................................7, 13, 14

*Hayden v. NSA,*
    608 F.2d 1381 (D.C. Cir. 1979) ................................................................4

*Hersh & Hersh v. Dep't of Health and Human Servs., No. C 06-4234 PJH,*
    2008 WL 901539 (N.D. Cal. March 31, 2008) .........................................4

*Holder v. Humanitarian Law Project,*
    130 S. Ct. 2705 (2010) .......................................................................7, 19

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,*
    891 F.2d 414 (2d Cir. 1989) ...............................................................11, 13

*Hunt v. CIA,*
    981 F.2d 1116 (9th Cir. 1992) ...............................................................3, 4

*Kasza v. Browner,*
    133 F.3d 1159 (9th Cir. 1998) ..................................................................9

*Lane v. Dep't of the Interior,*
    523 F.3d 1128 (9th Cir. 2008) ...............................................................3, 4

*Leiva-Perez v. Holder,*
    640 F.3d 962 (9th Cir. 2011) ..................................................................19

*Lesar v. Dep't of Justice,*
    636 F.2d 472 (D.C. Cir. 1980) ..................................................................9

*Lion Raisins v. Dep't of Agriculture,*
    354 F.3d 1072 (9th Cir. 2004) ........................................................................4, 18

*McGehee v. Casey,*
    718 F.2d 1137 (D.C. Cir. 1983) ...............................................................7, 14, 19

*Military Audit Project v. Casey,*
    656 F.2d 724 (D.C. Cir. 1981) .................................................................3, 13, 14

*Minier v. CIA,*
    88 F.3d 796 (9th Cir. 1996) ....................................................................................3

*Mohamed v. Jeppesen Dataplan,*
    614 F.3d 1070 (9th Cir. 2010) ..............................................................................6

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) .............................................................................................16

*N.Y. Times Co. v. Dep't of Justice,*
    --- F.3d ----, 2014 WL 1569514 (2d Cir. April 21, 2014).................................17

*Nat'l Council of La Raza v. Dep't of Justice,*
    411 F.3d 350 (2d Cir. 2005).................................................................................17

*Phillippi v. CIA,*
    655 F.2d 1325 (D.C. Cir. 1981) ..........................................................................11

*Pickard v. DOJ,*
    653 F.3d 782 (9th Cir. 2011) .........................................................................10, 13

*Providence Journal Co. v. FBI,*
    595 F.2d 889 (1st Cir. 1979).................................................................................19

*Pub. Citizen v. Dep't of State,*
    11 F.3d 198 (D.C. Cir. 1993) ........................................................................10, 13

*Quiñon v. FBI,*
    86 F.3d 1222 (D.C. Cir. 1996)..............................................................................18

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,*
    421 U.S. 168 (1975)..............................................................................................16

*Robi v. Five Platters.,*
    838 F. 2d 318 (9th Cir. 1988) ..............................................................................15

*Shermco Indus., Inc. v. Sec'y of the Air Force,*
      613 F.2d 1314 (5th Cir. 1980) ........................................................17

*Swisher v. Dep't of the Air Force,*
      660 F.2d 369 (8th Cir. 1981) .........................................................17

*Syverson v. IBM,*
      472 F.3d 1072 (9th Cir. 2007) .......................................................15

*Taylor v. Sturgell,*
      128 S. Ct. 2161 (2008)...................................................................15

*United States v. Marchetti,*
      466 F.2d 1309 (4th Cir. 1972) .......................................................14

*Wilner v. NSA,*
      592 F.3d 60 (2d Cir. 2009)...............................................................6

*Wilson v. CIA,*
      586 F.3d 171 (2d Cir. 2009)...........................................................11

*Wolf v. CIA,*
      473 F.3d 370 (D.C. Cir. 2007) ...............................................7, 10, 13

## STATUTES

5 U.S.C. § 552(b)(1) ...............................................................................3
5 U.S.C. § 552(b)(5) ...................................................................3, 14, 18

## RULES AND REGULATIONS

75 Fed. Reg. 707, 710 (Dec. 29, 2009) ....................................................9

## MISCELLANEOUS

*Counterterrorism, National Security and the Rule of Law*, Aspen Security
      Forum Panel (July 18, 2013).........................................................12

Geoffrey Stone, *Understanding Obama's NSA Proposals*, Daily Beast
      (March 27, 2014) ...........................................................................11

*Liberty and Security in a Changing World:  Report and Recommendations of
      the President's Review Group on Intelligence and Communications
      Technologies* (December 12, 2013) ...............................................10

Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE .................................16

# PRELIMINARY STATEMENT

To inform the public debate while continuing to protect national security, since last June the government has released to the public thousands of pages of formerly highly classified documents that discuss, among other things, the collection of telephony metadata pursuant to Section 215 of the USA PATRIOT Act and under supervision of the Foreign Intelligence Surveillance Court ("FISC"). Nonetheless, many operational details related to specific applications of the intelligence sources and methods used by the United States to carry out its authority under Section 215 remain classified because their disclosure would risk serious or exceptionally grave damage to national security.

In its opposition and cross-motion for summary judgment, plaintiff, the Electronic Frontier Foundation ("EFF"), has little of substance to say. Plaintiff does not, in fact, oppose defendant's dispositive motion on a number of points, and indeed has abandoned its challenge to various categories of withheld information. *See* Pl. Mem. 7 ("EFF now withdraws its challenges to the majority of the information withheld from records released in part."). Plaintiff makes strident but baseless assertions that the government's prior declarations misrepresented facts and evince bad faith such that the Court should all but disregard the government's declarations submitted in support of its renewed motion for summary judgment. At bottom, this amounts to a disagreement, in hindsight, with the government's substantive classification decisions and predictive judgments regarding the harm to national security of certain disclosures in 2012, prior to the government's declassification of considerable information. That disagreement provides no basis to disregard the government's declarations, or to rebut the presumption of good faith and regularity which they are accorded under the law. Moreover, courts have long accorded the utmost deference to the expert national security judgments of Executive Branch officials, while recognizing that contrary judgments of parties like plaintiff are due no weight.

In any event, the government's prior public and classified declarations explained why no further information could be released in response to plaintiff's Freedom of Information Act ("FOIA") request at the time, when the National Security Agency's ("NSA") collection of telephony metadata in bulk under Section 215 was highly classified and, indeed, the NSA's

association with collection under Section 215 was itself highly classified.  Likewise, the public and classified Declarations of Jennifer L. Hudson submitted with the government's renewed Motion for Summary Judgment establish that the limited information still withheld is exempt from release under the FOIA.  Plaintiff largely does not take issue with the government's arguments, but instead argues there must be some portion of the documents still withheld in full that can be released.  As Ms. Hudson's declarations establish, however, plaintiff is mistaken.

Plaintiff also argues that the government must release the identities of telecommunications companies that have been ordered by the FISC to produce telephony metadata to the government, although plaintiff offers nothing to contradict the government's explanation why such a disclosure would cause exceptionally grave damage to national security. Rather, plaintiff argues that the government has already officially released that information.  This argument is specious – plaintiff cannot meet the stringent test for official acknowledgment or disclosure of classified information, which requires that the information exactly matching that in question has been subject to an official, authorized disclosure.  Plaintiff relies on a statement by a former member of the Review Group on Intelligence and Communications Technologies, which on its face does not purport to reveal anything and which, as the statement of a former contractor, not a current, authorized official, does not bind the government regardless; and on a statement by the NSA's general counsel, taken out-of-context, which was made in a hypothetical discussion, not as an official disclosure of Top Secret information.

Plaintiff also argues that it is entitled to a confidential legal advice memorandum concerning Section 215 from the Department of Justice Office of Legal Counsel ("OLC") to the Department of Commerce, but plaintiff has no answer to the numerous cases cited by the government establishing that such legal advice memos are protected by the deliberative process privilege and, therefore, exempt from disclosure under FOIA.  Rather, plaintiff speculates that the Department of Justice must have expressly adopted the OLC memo when it provided it to the FISC and, therefore, waived the privilege.  There is no basis for this speculation, which defendant fully rebuts with a classified declaration lodged *ex parte* for the Court.

As set forth below, in the government's opening brief, and in the supporting declarations of government officials, the withheld documents or portions of documents over which the parties cross-move for summary judgment are properly exempt from disclosure under FOIA. The Court should, therefore, grant summary judgment to defendant and deny plaintiff's cross-motion.

**ARGUMENT**

**I.** **The Government Has Demonstrated as a Matter of Law that the Responsive Records in This Case are Exempt From Disclosure Under the FOIA.**

In a FOIA case like this one, the government "may meet its burden" to justify summary judgment "by submitting a detailed affidavit showing that the information 'logically falls within the claimed exemptions.'" *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996) (quoting in part *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)). "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (citations and internal quotation marks omitted). The government has met that burden here with the public and classified declarations of Jennifer L. Hudson, which explain why the withheld FISC materials at issue contain classified national security information protected by FOIA Exemption 1, 5 U.S.C. § 552(b)(1), and/or Exemption 3, *id.* § 552(b)(3), as well as law enforcement-sensitive information protected by FOIA Exemptions 7(A) and 7(E), *id.* § 552(b)(7)(A) & (7)(E); and with the declaration of Paul Colborn, which establishes that the single, withheld OLC memorandum is a pre-decisional advice memo protected by the deliberative process privilege and FOIA Exemption 5, *id.* § 552(b)(5). These declarations "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Based on that showing, and in view of the "deference to the executive in the context of FOIA claims which implicate national security," *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927-28 (D.C. Cir. 2003), this Court should grant summary judgment to the Department.

As explained below, plaintiff's contrary arguments are meritless.

## II. The Government's Declarations are Supported by a Presumption of Good Faith and Regularity, and are Due Substantial Deference Under the Law of this Circuit.

Plaintiff, presumably recognizing that the government's declarations establish it is entitled to judgment as a matter of law, seeks to undercut those declarations with unsubstantiated allegations of bad faith against the testifying officials. Plaintiff thus attempts to persuade the Court to depart from the normal means of resolving FOIA cases – on the basis of such declarations. Plaintiff's allegations are spurious, however, and despite plaintiff's strident rhetoric, the Court should apply substantial deference to the government's classification decisions consistent with the law of this Circuit.

"Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits describing the documents sought." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004) (citation omitted); *see Lane*, 523 F.3d at 1135-36. For claims of exemption related to national security, "the district court [is] required to accord 'substantial weight' to [the agency's] affidavits" as long as it is not "controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Hunt*, 981 F.2d at 1119 (citation, internal quotation omitted). *See ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (courts "must accord substantial weight to an agency's affidavit concerning the details of the classified status of [a] disputed record" because they "'lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case" (internal quotations omitted)).

It is well-established that "the mere allegation of bad faith does not undermine the sufficiency of agency submissions. There must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions." *Carter v. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987); *Hersh & Hersh v. Dep't of Health and Human Servs.*, No. C 06-4234 PJH, 2008 WL 901539, *5 (N.D. Cal. March 31, 2008). *See Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("The sufficiency of the affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith, nor by past agency misconduct in other unrelated cases." (footnote omitted)). Plaintiff offers no such "tangible evidence," but rather

argues based on responsive documents that the government has now released as a matter of discretion that those documents were never properly withheld in the first place, and that the government's prior declarations supporting the decision to withhold the documents in full must have been made in bad faith. This argument is based only on plaintiff's substantive disagreement with the government's classification determinations made 18 months ago and predictive judgments of national security harm. In any event, plaintiff is mistaken.

### A. The Government Has Explained Why No Information Could be Segregated From Classified Material And Released From Documents Pertaining to NSA in the Context of Plaintiff's FOIA Request.

The government's first Motion for Summary Judgment (ECF No. 40) was made in 2012, at a time when the government's bulk collection and analysis of telephony metadata to uncover terrorist attacks was highly classified, as was NSA's participation in any collection under Section 215. While the government could say little on the public record at that time, its Motion was supported by an ample classified submission. The government now submits a portion of that classified submission, the November 6, 2012, Declaration of Diane M. Janosek, a NSA official, as redacted for public filing (Exhibit A hereto). Far from misrepresenting anything to the Court, Ms. Janosek's declaration (originally an exhibit to the classified Declaration of Mark Bradley, lodged for *ex parte* submission to the Court), explains why nothing could be segregated from classified information and released to plaintiff – *e.g.*, why even information marked as "(U)" or unclassified within responsive documents pertaining to the NSA could not be released in response to plaintiff's FOIA request at that time without revealing Top Secret information. *See id.* ¶¶ 29-34. The same logic, explicitly presented for the Court's consideration, applies to the isolated quotations that plaintiff now claims (without any expertise or authority to determine what disclosures would harm national security) could have been released in 2012.

As Ms. Janosek explained, at the time, public revelation of "NSA's association with Section 215 could reasonably be expected to cause exceptionally grave damage to the national security of the United States[.]" *Id.* ¶ 34; *see also id.* ¶ 13. The NSA's association with Section 215 was, therefore, a classified fact. *Id.* ¶¶ 23, 32. Ms. Janosek stated, "in the context of this

FOIA Request, the particular content of the paragraphs portion-marked (U) in the responsive material is immaterial because the classification designations at the top and bottom of each page themselves reveal NSA's participation in a classified intelligence collection operation under Section 215." *Id.* ¶ 32. Ms. Janosek further testified why any attempt to release portions of the documents, or to redact the classification markings that indicated NSA affiliation, could allow a sophisticated adversary of the United States to determine that the NSA was collecting business records containing telephony metadata. *Id.* ¶ 23.

Ms. Janosek's declaration explained why the vast majority of FISC records were withheld in full; the public declarations of Department of Justice official Mark A. Bradley, which relied on the government's classified, *ex parte* submission, thus *did not* contain "material misrepresentations and distortions of fact," (Pl. Mem. 10) or "overbroad assertions," (*id.*), and are in no way evidence of "bad faith" (*id.* at 7). To the contrary, the government's explanation as to why no material could be segregated from any of the records involving the NSA was not obscured or "misrepresented" but available for the Court to evaluate under the law. As noted, plaintiff's accusations amount to no more than a substantive disagreement, in hindsight, with the government's classification determination. Plaintiff is free to disagree, but its view regarding classification is due no weight. *E.g., Wilner v. NSA*, 592 F.3d 60, 76 (2d Cir. 2009) ("Recognizing the relative competencies of the executive and judiciary, we believe that it is bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies"); *Gardels v. CIA*, 689 F.2d 1100, 1106 n. 5 (D.C. Cir. 1982) (even affidavit of former CIA official attesting to lack of harm to national security did not undermine agency's affidavits) (citation, internal quotation marks omitted). And the Ninth Circuit has "acknowledge[d] the need to defer to the Executive on matters of foreign policy and national security" and noted courts "cannot legitimately . . . second guess[] the Executive in this arena." *Mohamed v. Jeppesen Dataplan*, 614 F.3d 1070, 1081-82 (9th Cir. 2010) (upholding state secrets privilege assertion; citation omitted). Thus, "courts must accord *substantial weight* to an agency's affidavit concerning the details of the classified status" of a particular record. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quotation marks omitted, emphasis in original);

*Eslaminia v. FBI*, No. C 99-3249-MHP, 2011 WL 5118520, *2 (N.D. Cal. October 28, 2011) (same).[1]

### B. The Government Explained Why No Information Could Be Segregated and Released From FISC Materials.

The only FISC record plaintiff points to as allegedly improperly withheld in 2012 that does not fall within Ms. Janosek's clear explanation is a November 23, 2010 Supplemental Order ("BR 10-82 Supplemental Order," Exhibit B to plaintiff's Second Rumold Declaration).[2] The BR 10-82 Supplemental Order was classified "Secret," and its classification markings did not implicate the NSA. This document, like all of the records now at issue, was a FISC document, and as the government informed plaintiff and the Court in 2013, it believed that all

---

[1] Indeed, "the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (disapproving the district court's use of "its own calculus as to whether or not harm to the national security or to intelligence sources and methods would result from disclosure"). The primary rationale for judicial deference in this context is the underlying difference in institutional capacities between the Judicial Branch and the Executive Branch in making judgments about the risks to national security posed by the disclosure of particular confidential information. Federal courts have traditionally exercised great restraint in reviewing decisions by the government to withhold information in the interest of national security. *See, e.g.*, *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988); *CIA v. Sims*, 471 U.S. 159, 179 (1985). For their part, "the Executive departments responsible for national defense and foreign policy have unique insights into what adverse effects might occur as a result of [disclosure of] a particular classified record." *McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983). *See also Holder v. Humanitarian Law Project*, 561 U.S. 1, 33 (2010).

[2] Non-identical copies of this Supplemental Order are identified as documents 88D and 103 on the *Vaughn* index submitted with Ms. Hudson's unclassified declaration. Due to an administrative error, they are identified as Top Secret although they were classified as Secret. The entries for 88D and 103 also include five additional pages (for a total of seven) because the two-page Supplemental Order was found in defendant's files with five pages of additional Orders, although those five pages are not responsive to plaintiff's FOIA request as narrowed by the parties because, unlike the Supplemental Order, they do not include a significant legal interpretation of Section 215. In addition, due to an oversight, the index mistakenly identifies the documents as an opinion and order, though they are copies of the Supplemental Order and other orders; and the index mistakenly lists the copy of the Supplemental Order that is document 88D as withheld in full, though it correctly lists document 103 as released in part. Defendant regrets these errors.

FISC records were essentially sealed by the FISC, and that the FISC's procedures prevented the government from releasing any portion of them. Second Supplemental Bradley Declaration (ECF No. 51-1) ¶ 13. In response to a petition by plaintiff, in June of last year – after the government had declassified certain information concerning Section 215 and asked the Court to stay consideration of the parties' first Cross-Motions for Summary Judgment – the FISC clarified that its rules do not independently prevent the government from releasing any portion of a FISC record. Nonetheless, plaintiff adduces nothing to indicate that the government's position prior to that FISC Order was taken in bad faith.

FISC opinions and orders like the B.R. 10-82 Supplemental Order were also classified in full because, as Mr. Bradley explained in a public declaration last year:

> Even something as seemingly innocuous as a particular case citation or statutory provision, when juxtaposed with the fact that the document in question contains significant legal analysis of an application of Section 215, could reveal the particular issue being examined and, thus, risks disclosure of the existence, nature, or scope of an underlying intelligence collection method, or other sensitive information concerning an intelligence method. . . . [T]he very nature of how the law is set forth and examined in a particular application or opinion of the FISC, the nature of how the Government has proposed to use FISA authority, and how the FISC has analyzed whether to approve that use, would tend to reveal the intelligence capabilities and particular activities far beyond the general notion that the Government may be using Section 215 to collect information.

Second Supplemental Bradley Declaration ¶ 11. At a time when virtually all details concerning the government's use of Section 215 authority were classified, these FISC opinions – including the 10-82 Supplemental Order – would have revealed far more than, *e.g.*, that "Section 215 has been used to obtain . . . credit card records, and the like[.]" Pl. Mem. 12 n.16 (in a parenthetical, quoting statement of a then-Department of Justice official; citation omitted). It would have revealed that, at a particular point in time, the government had sought – presumably for the first time, since it resulted in the Supplemental Order – to obtain records that may be covered by the Right to Financial Privacy Act, and that this had led to a "significant" opinion of the FISC. *See Jeppesen*, 614 F.3d at 1090 (official acknowledgment of existence of CIA extraordinary rendition program did not preclude details of program remaining state secrets if details' disclosure would risk harm to national security); *accord Al-Haramain Islamic Found., Inc. v.*

*Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007) (although the Government had acknowledged the existence of terrorist surveillance program, disclosing whether the plaintiff had been surveilled would compromise national security). The government's (unclassified) explanation that such information was properly classified was provided publicly to the Court as well as plaintiff, and was due the "utmost deference." *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998). Further, plaintiff remains in no position to credibly dispute the merits of the Executive Branch's expert predictive judgments concerning the risk of national security harm or resulting classification decision. *E.g., Jeppesen*, 614 F.3d at 1081-82.

Plaintiff has made no substantial showing of bad faith,[3] and the presumption of good faith and regularity applies to the government's declarations submitted in this case.

## III. The Government Has Not Officially Released the Identities of Telecommunications Providers Subject to FISC Orders for Production of Telephony Metadata.

As noted, plaintiff has now withdrawn and waived its challenge to the majority of information withheld from documents released in part. Plaintiff does, however, continue to seek the identity of telecommunications service providers who were ordered to produce business records containing information about communications between telephone numbers, although

---

[3] This conclusion does not change because some of the FISC opinions which the government has now declassified and released discuss incidents in which the government failed to comply with FISC orders before taking corrective action. *Cf., e.g., ACLU v. Dep't of Def.*, 628 F.3d at 622 (rejecting argument "that illegal activities cannot produce classified documents" and concluding that the prohibition on the "use of certain interrogation techniques and conditions of confinement does not diminish the government's otherwise valid authority to classify information about those techniques and conditions and to withhold it from disclosure under exemptions 1 and 3"); *Lesar v. Dep't of Justice*, 636 F.2d 472, 483 (D.C. Cir. 1980) (holding that notwithstanding that the FBI's activities "strayed beyond the bounds of its initial lawful security aim, that does not preclude the possibility that the actual surveillance documents and the Task Force materials that comment upon those documents may nevertheless contain information of a sensitive nature, the disclosure of which could compromise legitimate secrecy needs"); *Agee v. CIA*, 524 F. Supp. 1290, 1292 (D.D.C. 1981) (concluding that "[w]hile some of the documents shed light on the legality or illegality of CIA's conduct, . . . [a]ny possibility of illegal conduct on the part of the CIA does not defeat the validity of the [(b)(1) or (b)(3)] exemptions claimed"). Executive Order 13526 clearly prohibits only the classification of information "*in order to*" "conceal violations of law" or "prevent embarrassment to a[n] . . . agency." 75 Fed. Reg. 707, 710 (Dec. 29, 2009) (emphasis added). Nothing in the record suggests that the government classified anything at issue in this case for that purpose.

plaintiff does not take issue with the government's logical explanation of why that information remains classified. *See* Hudson Decl. ¶¶ 58-65, 84 (disclosing whether particular telecommunications companies assisted with NSA intelligence activities could be expected to cause exceptionally grave damage to national security by, *inter alia*, revealing to foreign adversaries which channels of communication may or may not be secure and, thus, providing a roadmap to avoid U.S. government surveillance and find alternative means to communicate in the course of plotting activity such as terrorist attacks). Rather, plaintiff misconstrues an out-of-context quotation by a government official and another by a former government contractor to argue the government has officially disclosed the underlying information and thus waived Exemption 1. Plaintiff's argument is specious.

There has been no official acknowledgment that waives these exemptions. As plaintiff concedes, *see* Pl. Mem. 21, the standard for official disclosure requires plaintiff to identify "an intentional, public disclosure made by or at the request of a government officer acting in an authorized capacity by the agency in control of the information at issue," that is "'as specific as the information previously released.'" *See Pickard v. DOJ*, 653 F.3d 782, 786, 787 (9th Cir. 2011) (quoting, in part, *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).). This test is a "stringen[t]" one, *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 202 (D.C. Cir. 1993), to be applied with "exactitude," *Wolf*, 473 F.3d at 378. It thus presents a "high hurdle" out of deference to "'the Government's vital interest in information relating to national security and foreign affairs.'" *Pub. Citizen*, 11 F.3d at 203.[4]

Plaintiff relies largely on the purported statement of Professor Geoffrey Stone, a former member of the Review Group on Intelligence and Communications Technologies ("Review Group"), which produced a Report in December 2013. *See Liberty and Security in a Changing World: Report and Recommendations of the President's Review Group on Intelligence and Communications Technologies* (December 12, 2013), *available at* http://www.whitehouse.gov/sites/default/files/docs/2013-12-12_rg_final_report.pdf. As plaintiff

---

[4] For these reasons, the press accounts cited by plaintiff (*e.g.*, Pl. Mem. 4-5) amount to mere speculation and do not alter the classification of any document. *See Pickard*, 653 F.3d at 786-87.

notes, Prof. Stone wrote an opinion piece in late March 2014 in which he stated that "[u]nder the telephone metadata program, which was created in 2006, telephone companies *like* Sprint, Verizon, and AT&T are required to turn over to the NSA" telephony metadata. *See* Pl. Mem. 22 (emphasis defendant's), quoting Geoffrey Stone, *Understanding Obama's NSA Proposals*, Daily Beast (March 27, 2014). First, it is critical to note that, even assuming *arguendo* that Prof. Stone was ever a government official,[5] his affiliation ended in January 2014 and he could not, therefore, speak for any agency of the United States. *See* Declaration of Mark Ewing ¶¶ 5, 8; *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 421-22 (2d Cir. 1989) ("Admiral Carroll's statements cannot effect an official disclosure of information since he is no longer an active naval officer. . . . Officials no longer serving with an executive branch department cannot continue to disclose official agency policy[.]"); *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983) (books written by former agency official did not constitute official disclosures); *Phillippi v. CIA,* 655 F.2d 1325, 1331 (D.C. Cir. 1981) (statements by former CIA director that had been pre-cleared by agency for public disclosure do not constitute agency disclosure). Indeed, as someone contracted to serve on the Review Group, not an official of the Intelligence Community, Prof. Stone was never in a position to speak for, or declassify anything on behalf of, the United States. *See Wilson v. CIA,* 586 F.3d 171, 186 (2d Cir. 2009) ("the law will not infer" official disclosure of classified information from "(1) widespread public discussion of a classified matter, . . . (2) statements made by a person not authorized to speak for the Agency, . . . or (3) release of information by another agency, or even by Congress." (citations omitted)); Ewing Decl. ¶ 8. This would be the case even if the government had reviewed and approved Prof. Stone's article for publication, *see Afshar*, 702 F.2d at 1133-34, although it did not, in fact, review or approve the article, *see* Ewing Decl. ¶¶ 7-8.[6]

---

[5] He was not: in fact, Prof. Stone was a contractor to the Office of the Director of National Intelligence, not an Executive Branch employee or official. *See* Ewing Decl. ¶¶ 5, 8.

[6] Given all of the foregoing, the content of Prof. Stone's article is irrelevant – it does not and cannot constitute an official acknowledgment or release of classified information, including the identities of telecommunications service providers ordered by the FISC to produce telephony metadata. Nonetheless, it bears noting that the language of the very article upon which plaintiff relies does not even purport to identify a single telecommunications carrier. Rather, Prof. Stone

Plaintiff also takes out-of-context a quote from Raj De, General Counsel of the NSA, which plaintiff argues confirms that "'three different providers' participate in the NSA's Section 215 call record collection program." Pl. Mem. 21, quoting *Counterterrorism, National Security and the Rule of Law*, Aspen Security Forum Panel (July 18, 2013) ("Aspen Panel transcript") (transcript attached as Exhibit C to plaintiff's Second Rumold Decl.). Plaintiff selects those three words from Mr. De's answer to a question, which he began by stating he would be "using a hypothetical example I think will be helpful, instructive for me anyway[.]" Aspen Panel transcript at 13. Thus, Mr. De was not confirming, declassifying, or acknowledging anything; rather, he was speaking hypothetically. He went on to say that:

> in order to do the sort of analytics that need to happen on that [telephony meta]data [concerning a possible terrorist], the data needs to be aggregated to most effectively do that in short time. And so with three different providers that *would* also be additional step of bringing the data back, putting it together and trying to analyze it in short order.

*Id.* (emphasis added). Mr. De's use of the word "would" also makes it clear that he was speaking hypothetically; *i.e.*, he was explaining what "would" be the case were the hypothetical he was discussing reality, not making an official disclosure of classified information. Indeed, the hypothetical he presented used actual events that took place around the time of the September 11, 2001 terrorist attacks on the United States, well prior to the collection of any telephony metadata in bulk under Section 215. *See id.*

Mr. De, therefore, also neither officially released nor acknowledged any classified information. Moreover, even if his statement was somehow regarded as an official acknowledgment that there were "three different providers" participating in the telephony metadata collection program at an unknown particular, rather than hypothetical, point in time, it would still not require release of the information plaintiff seeks: the actual identities of telecommunications carriers subject to FISC production orders, at particular points in time. The information allegedly revealed by Mr. De does not exactly match, and is not as specific as, the

---

stated only that companies "*like*" the companies he lists (Sprint, Verizon, and AT&T – three large and well-known carriers) are required to provide business records containing telephony metadata.

information withheld pursuant to Exemptions 1 and 3 of the FOIA. *See Pickard*, 653 F.3d at 786 ("the information requested must match the information previously disclosed; we [have] noted, for example, that official disclosure did not waive the protection to be accorded information that pertained to a later time period") (citation omitted); *see also Al-Haramain Islamic Found. v. Bush*, 451 F. Supp. 2d 1215, 1228 (D. Or. 2006) ("inadvertent disclosure of [classified information] does not declassify it."), *rev'd on other grounds*, 507 F.3d at 1193, 1202-04 (agreeing that inadvertently produced document remained a state secret).[7]

## IV. The Government Has Established That the FISC Records that Remain Withheld-in-Full are Properly Withheld-in-Full.

As defendant explained in its opening memorandum, the government has withheld in full, pursuant to Exemptions 1, 3, and/or 7(E), a limited number of FISC orders and opinions to protect intelligence sources and methods used by the government to gather intelligence data. Hudson Decl. ¶¶ 105-110. The records discuss specific techniques authorized by the FISC, the details of the underlying investigations, and details concerning how the government operationally and technically implements the FISC-authorized techniques, which the government continues to employ. *Id.* ¶¶ 107-108. Plaintiff asserts, without basis, that these exemptions cannot justify withholding in full, and that – after producing over 1000 pages to plaintiff – the government must have failed to properly segregate and release non-exempt information from these remaining, sensitive FISC documents. Pl. Mem. 17-20. Plaintiff is simply mistaken, and fails to account for the well-established proposition that "each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." *Gardels*, 689 F.2d at 1106 (quoting *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980)). Courts commonly refer to this as the "mosaic theory" of intelligence:

---

[7] The public availability of "similar" or "overlapping" information does not suffice to negate the government's classification; "instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure." *Wolf*, 473 F.3d at 378 (citing *Public Citizen*, 11 F.3d at 201, 203; *Military Audit*, 656 F.2d at 752-53); *accord Hudson River*, 891 F.2d at 421.

It requires little reflection to understand that the business of foreign intelligence gathering in this age of computer technology is more akin to the construction of a mosaic than it is to the management of a cloak and dagger affair. Thousands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate . . . . "The courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area."

*Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978) (quoting *United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir. 1972); *see McGehee v. Casey*, 718 F.2d 1137, 1149 (D.C. Cir. 1983). Such "bits and pieces of seemingly innocuous information" may include legal citations and analysis that pertain to exempt information. Thus, Exemptions 1 and 3 of the FOIA Exemption 3 protect against the disclosure not only of intelligence sources and methods themselves, but also of information that would tend to disclose an intelligence source or method. *See, e.g., Berman v. CIA,* 501 F.3d 1136, 1141-1142 (9th Cir. 2007); *Halperin v. CIA,* 629 F.2d 144, 147-150 (D.C. Cir. 1980). As the government has established, the remaining documents withheld in full contain no segregable information. *See* Hudson Decl. ¶¶ 115-19; *see also* Classified Hudson Decl.[8]

## V.  Defendant Has Properly Withheld a Privileged Legal Advice Memorandum under FOIA Exemption 5.

Defendant explained in its opening memorandum why a legal advice memorandum from the Office of Legal Counsel to the Department of Commerce is protected by the deliberative process privilege and therefore properly withheld pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5). *See* Def. Mem. 17-21; Declaration of Paul Colborn. In opposition, plaintiff argues that the opinion must be "working law," not exempt from the FOIA, because OLC opinions may

---

[8] As courts have noted, the public is ill-served by plaintiff's efforts to force disclosure of further specific, classified details from the considerable public disclosures that have been made. To do so would discourage public officials from discussing important national security matters even in broad generalities. *See Bassiouni v. CIA*, 392 F.3d 244, 247 (7th Cir. 2004) ("And [the FOIA requestor] is better off under a system that permits the CIA to reveal some things . . . without revealing everything; if even a smidgen of disclosure required the CIA to open its files, there would be no smidgens."); *cf. Military Audit Project,* 656 F.2d at 754 (rejecting the "perverse theory that a forthcoming agency is less to be trusted in its allegations than an unyielding agency" and reasoning that the government's voluntary release of substantial amounts of responsive documents suggests "a stronger, rather than a weaker, basis for the classification of those documents still withheld").

be treated as binding on legal questions within the Executive Branch. Pl. Mem. 22-24. But as defendant has explained, this is wrong. Plaintiff has not alleged that OLC attorneys have policymaking authority at the Department of Commerce; indeed, they do not. *See* Colborn Decl. ¶ 2. Legal advice memoranda written by agency attorneys with no policymaking authority for consideration by a decisionmaker "fit[] exactly within the deliberative process rationale for Exemption 5," and do not qualify as "final opinions" subject to disclosure as "secret law" or working law. *Brinton v. Dep't of State*, 636 F.2d 600, 604-05 (D.C. Cir. 1980). Plaintiff cites not a single case in support of its position that OLC memoranda, by their very nature, are unprotected by the deliberative process privilege; and plaintiff has no answer to the litany of cases supporting the government's position. *See* Def. Mem. 17-21 (citing cases).

Indeed, as noted, the D.C. Circuit recently and persuasively rejected EFF's position. *EFF v. Dep't of Justice*, 739 F.3d 1, 8-10 (D.C. Cir. 2014) (*reh'g* en banc *denied* per curiam March 11, 2014). Plaintiff states its disagreement with the D.C. Circuit opinion and opines that the "controlling nature of OLC opinions and the application of the deliberative process privilege" to them have not been considered by this Circuit (Pl. Mem. 24 n.25), but that is of no moment: mutual collateral estoppel precludes plaintiff from relitigating the issue here. Collateral estoppel, or issue preclusion, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation and citation omitted). The doctrine applies here because plaintiff EFF had a full and fair opportunity to litigate the identical issue (whether the deliberative process privilege can apply to OLC opinions or whether they are, *ipso facto*, "working law" of the government, *see* Pl. Mem. 24 n.25), the issue was actually litigated in the prior action, it was decided in and essential to a final judgment (now affirmed by the D.C. Circuit), and the parties in that action and this one are identical – EFF and the Department. *See Syverson v. IBM*, 472 F.3d 1072, 1078 (9th Cir. 2007) (discussing nonmutual offensive collateral estoppel). Issue preclusion applies although plaintiff may still seek Supreme Court review of the D.C. Circuit's decision. *See Robi v. Five Platters.*, 838 F.2d 318, 327 (9th Cir. 1988) ("[I]n federal courts . . . the preclusive effects of a lower court

judgment cannot be suspended simply by taking an appeal that remains undecided.") (quoting Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE, § 4433).

In the alternative, plaintiff argues based on sheer speculation that the OLC memorandum must have been "adopted" not by the agency to which it was directed, but by the Department of Justice, because it was provided to the FISC in connection with an application submitted by the Department. Pl. Mem. 25 (citing Colborn Decl. ¶ 17). But the adoption doctrine does not apply based on conjecture; rather, only on an "express" adoption by the government of an otherwise-protected document.

In *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975), the Supreme Court addressed the adoption doctrine in a case where the final decision of the National Labor Relations Board was documented in a memorandum summarizing the facts and providing an "answer to the legal or policy issue submitted together with a detailed legal rationale" for the final decision. *Id.* at 140-42. The *Sears* Court held that the memorandum explained the basis for the agency's decision, and thus constituted a "final opinion . . . made in the adjudication of cases" that should be published under 5 U.S.C. § 552(a)(2). *Id.* at 148-54. The Court also held that predecisional documents which the agency chose to *expressly* adopt or incorporate by reference into the non-exempt final opinion were no longer exempt from disclosure. *Id.* at 161. In a companion case, the Supreme Court made clear that public disclosure of a predecisional document is not required under FOIA, "even when [the agency] agrees with [a privileged document's] conclusion" in a final opinion, unless the agency *expressly* adopts the reasoning of that predecisional document as the basis for the final opinion. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). The Court elaborated in *Grumman* that, "absent indication that [the] reasoning" of a predecisional document has been adopted by the agency as its own, "there is little public interest in disclosure of a report." *Id.* at 186.

Here, plaintiff has not identified a single instance in which an Executive Branch decisionmaker expressly or publicly invoked the OLC Memorandum as the basis for agency policy. Even if the memorandum had been cited in support of the Department's position in an *ex parte* proceeding before the FISC, that would not serve to waive the deliberative process

privilege; rather, under *Sears*, "[t]here 'must be evidence that an agency has actually adopted or incorporated by reference the document at issue'" to prove express adoption. *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 65, 78 (D.D.C. 2008) (citing *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 359 (2d Cir. 2005)).[9] Plaintiff provides no such evidence, and there is no basis to infer, as plaintiff suggests, based on "common sense" that there has been express adoption. Pl. Mem. 25 n.26. The memorandum is thus subject to the deliberative process privilege and Exemption 5.[10]

Nonetheless, plaintiff speculates that the opinion must have been submitted "as legal support for the executive branch's application," and if not, the government should "explain the Census Opinion's use and the circumstances of its submission to the FISC." *Id.* at 25 & n.26. Defendant accepts this invitation: the OLC memorandum simply was not expressly adopted, nor was it submitted "as legal support for" the Department's application to the FISC. The government cannot fully explain the circumstances of the memorandum's submission to the FISC without revealing classified information concerning the Department's application which is not at issue in this litigation, or without revealing the very information subject to Exemption 5

---

[9] *See also, e.g.*, *Afshar*, 702 F.2d at 1143 n.22 (concluding that, under the circumstances there, "only express adoption in a nonexempt memorandum explaining a final decision will serve to strip [the] memoranda [in question] of their predecisional character"); *Shermco Indus., Inc. v. Sec'y of the Air Force*, 613 F.2d 1314, 1320 (5th Cir. 1980) (legal memoranda prepared to advise Air Force contracting officer regarding award of a contract remained privileged because they "were not expressly incorporated by reference" into the contracting officer's decision.); *Swisher v. Dep't of the Air Force*, 660 F.2d 369, 371 (8th Cir. 1981) (non-factual portions of an investigative report remained privileged despite references in a final decision by the Air Force Inspector General because the decision did not "expressly adopt or incorporate" the report's rationale and conclusions).

[10] The Second Circuit's recent decision in *N.Y. Times Co. v. Dep't of Justice*, --- F.3d ----, 2014 WL 1569514 (2d Cir. April 21, 2014), is not to the contrary. There, the Second Circuit held that the government lost the protections of FOIA Exemptions over the portions of an OLC memorandum containing OLC's legal analysis through a combination of public statements, which the court deemed to be official acknowledgments by Executive Branch officials, and the release of a Department of Justice "White Paper." 2014 WL 1569514 at *11-*12. The holding is inapposite here: as discussed in the text and the *ex parte* declaration of a senior National Security Division official, there has been no express public discussion by the government of the OLC memorandum concerning Section 215 and census data, nor has there been adoption of the memorandum in filings before the FISC.

and the deliberative process privilege, *i.e.*, the content of the OLC memorandum. Accordingly, should the Court find further information about the OLC memorandum helpful, the government is lodging *ex parte* a classified Declaration by the Chief of Operations, Office of Intelligence, National Security Division, Department of Justice, explaining why the memorandum was submitted to the FISC and that it was not adopted by the Department. That declaration will be available for the Court's *in camera* consideration along with Ms. Hudson's classified submission.

Accordingly, the OLC memorandum is protected by the deliberative process privilege, plaintiff cannot establish that the privilege was waived by adoption or otherwise, and the memorandum is therefore exempt from disclosure under FOIA, 5 U.S.C. § 552(b)(5).

## VI. The Court Need Not Resort to *In Camera* Review of the Withheld Documents.

Without substantive arguments in opposition to the government's Motion for Summary Judgment, plaintiff primarily argues that the Court should view the withheld documents themselves *in camera*. But as defendant has noted before, *in camera* document review burdens the resources of the Court, is contrary to judicial economy, and should not be "resorted to as a matter of course, simply on the theory that 'it can't hurt.'" *Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). For that reason, *in camera* inspection of documents withheld under a FOIA exemption should "not be resorted to lightly" and is disfavored where, as here, "the government sustains its burden of proof by way of its testimony or affidavits." *See Lion Raisins v. Dep't of Agriculture*, 354 F.3d 1072, 1079 (9th Cir. 2004).

The relevant "testimony or affidavits" in this case includes defendant's classified submission. Should the Court direct defendant to provide withheld documents for *in camera* review, the government will, of course, promptly arrange to make the documents in question available consistent with procedures for the handling of classified information. In the interests of judicial economy, however, and consistent with the law of this Circuit, the government urges the Court to fully consider defendant's *ex parte*, classified submission before resorting to *in camera* review of the withheld documents. This is particularly appropriate with respect to the documents

withheld as classified: "when it comes to collecting evidence and drawing factual inferences in th[e] area [of national security], 'the lack of competence on the part of the courts is marked,' and respect for the Government's conclusions is appropriate." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010) (citation omitted). *See also McGehee*, 718 F.2d at 1148 ("the Executive departments responsible for national defense and foreign policy have unique insights into what adverse effects might occur as a result of [disclosure of] a particular classified record.").

## VII. If the Court is Inclined to Order the Release of Any Withheld Material, the Court Should Stay Any Such Order to Provide the Government an Opportunity to Appeal.

Defendant has established that it is entitled to judgment as a matter of law. Nonetheless, if the Court is inclined to rule against defendant and order the release of any of the withheld information, the Court should stay such an order pending appeal (or a decision not to appeal).[11]

The government plainly meets the traditional standards for a stay pending appeal. *See Leiva-Perez v. Holder*, 640 F.3d 962, 966, 968 (9th Cir. 2011) (per curiam). For example, based on the government's showing in the classified and unclassified Declarations of Jennifer Hudson concerning the documents withheld for national security or law enforcement reasons, the government has raised "serious legal questions" and has at least a "substantial case on the merits." *Leiva-Perez*, 640 F.3d at 967-68. *Cf. CIA v. Sims*, 471 U.S. 159, 180 (1985) ("it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process"). It is likewise clear the government has raised serious legal questions and has at least a substantial case on the merits to withhold the OLC memorandum based on the wealth of supporting authority cited in Part V, *supra*, as well as the government's opening brief. And it is axiomatic that, should the government be forced to disclose classified or otherwise exempt information, it would suffer irreparable harm. *See Agster v. Maricopa County*, 422 F.3d 836, 838 (9th Cir. 2005) ("[o]nce '[t]he cat is already out of the bag,' it may not be possible to get back in." (citation omitted)); *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979)

---

[11] The decision whether to authorize any appeal by the government is vested in the Solicitor General.

("Appellants' right of appeal here will become moot unless the stay is continued pending determination of the appeals. Once the documents are surrendered pursuant to the . . . court's order, confidentiality will be lost for all time. The status quo could never be restored."). For the same reasons, if the Court reviews the government's *ex parte* submissions or the withheld documents themselves *in camera*, it should not include any discussion of them in any opinion or order to be shared with plaintiff or the public at this time. *Accord id.*

## CONCLUSION

For all of the foregoing reasons, the Court should grant defendant's Motion for Summary Judgment, deny plaintiff's Cross-Motion, and enter judgment for the Department of Justice.

Dated: May 2, 2014                         Respectfully submitted,

                                            STUART F. DELERY
                                            Assistant Attorney General

                                            MELINDA HAAG
                                            United States Attorney

                                            ELIZABETH J. SHAPIRO
                                          Deputy Director, Federal Programs Branch

                                         */s/ Steven Y. Bressler*
                                         STEVEN Y. BRESSLER D.C. Bar #482492
                                         Senior Counsel
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         P.O. Box 883
                                         Washington, D.C. 20044
                                         Telephone:    (202) 305-0167
                                         Facsimile:     (202) 616-8470
                                         Steven.Bressler@usdoj.gov

                                         *Counsel for the U.S. Department of Justice*