1  Jennifer Lynch (SBN 240701)
2  *jlynch@eff.org*
   Mark Rumold (SBN 279060)
3  *mark@eff.org*
   ELECTRONIC FRONTIER FOUNDATION
4  815 Eddy St.
   San Francisco, CA 94110
5  Telephone: (415) 436-9333
   Facsimile: (415) 436-9993
6
7  Attorneys for Plaintiff
   ELECTRONIC FRONTIER FOUNDATION

8

9

10

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | Case No. 4:11-cv-05221-YGR |
| Plaintiff, | **REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| DEPARTMENT OF JUSTICE, | Date: June 3, 2014 |
| Defendant. | Time: 2:00 p.m. |
| | Courtroom 1 – 4th Floor |
| | Hon. Yvonne Gonzalez Rogers |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I.   The Government's prior representations warrant a finding of bad faith. ................... 3

II.  The continued withholding, in full, of FISC opinions is unwarranted. ..................... 6

     A.   The Court's *in camera* review of the withheld FISC opinions is necessary. ...................... 6

     B.   No exemption justifies the withholding, in full, of the remaining FISC opinions. ............... 7

III. The participation of AT&T, Sprint, and Verizon in the NSA's call records collection program has been officially disclosed. ..................................................................... 8

IV.  The Census Opinion is not exempt from disclosure under Exemption 5. ................. 13

V.   EFF would not oppose a stay pending an expedited appeal. ................................... 15

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

## Federal Cases

*Afshar v. Dep't of State,*
   702 F.2d 1125 (D.C. Cir. 1983) .................................................................. 10, 11

*Berman v. CIA,*
   378 F. Supp. 2d 1209 (E.D. Ca. 2005) ............................................................. 7

*Brennan Center v. Dep't of Justice,*
   697 F.3d 184 (2nd Cir. 2012) .......................................................................... 15

*Clapper v. Amnesty Int'l,*
   133 S. Ct. 1138 (2013) .................................................................................... 11

*Coastal States v. Dep't of Energy,*
   617 F.2d 854 (D.C. Cir. 1980) .................................................................. 14, 15

*Commissioner of Internal Revenue v. Sunnen,*
   333 U.S. 591 (1948) ........................................................................................ 14

*Detroit Free Press v. Ashcroft,*
   303 F.3d 681 (6th Cir. 2002) ........................................................................ 7, 8

*EFF v. Dep't of Justice,*
   739 F.3d 1 (D.C. Cir. 2014) ............................................................................ 14

*EFF v. Dep't of Justice,*
   No. 11-1441-ABJ (D.D.C. March 1, 2013) ...................................................... 5

*Fitzgibbon v. CIA,*
   911 F.2d 755 (D.C. Cir. 1990) .................................................................... 8, 11

*Founding Church of Scientology v. NSA,*
   610 F.2d 824 (D.C. Cir. 1979) ........................................................................ 13

*Goldberg v. Dep't of State,*
   818 F.2d 71 (D.C.Cir. 1987) ......................................................................... 5, 8

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,*
   891 F.2d 414 (2d Cir. 1989) ........................................................................... 10

*In re Washington Post Co.,*
   807 F.2d 383 (4th Cir. 1986) ............................................................................ 5

*Int'l Counsel Bureau v. Dep't of Defense,*
   723 F. Supp. 2d 54 (D.D.C. 2010) .................................................................... 8

*Lardner v. Dep't of Justice,*
   638 F. Supp. 2d 14 (D.D.C. 2009) .................................................................. 14

*N.Y. Times Co. v. Dep't of Justice,*
   2014 WL 1569514 (2d Cir. Apr. 21, 2014) ...................................................... 7

*Nat'l Treasury Employees Union v. IRS,*
765 F.2d 1174 (D.C. Cir. 1985) ...........................................................................14

*NLRB v. Sears,*
421 U.S. 132 (1975) ....................................................................................14, 15

*Phillippi v. CIA,*
655 F.2d 1325 (D.C. Cir. 1981) ...........................................................................10

*Pickard v. Dep't of Justice,*
653 F.3d 782 (9th Cir. 2011) ...............................................................................11

*Quinon v. FBI,*
86 F.3d 1222 (D.C. Cir. 1996) ...............................................................................6

*W. Oil & Gas Ass'n v. EPA,*
633 F.2d 803 (9th Cir. 1980) ...............................................................................14

*Wash. Post v. Dep't of Defense,*
766 F. Supp. 1 (D.D.C. 1991) ...............................................................................13

*Weiner v. FBI,*
943 F.2d 972 (9th Cir. 1991) ...............................................................................15

*Wolf v. CIA,*
473 F.3d 370 (D.C. Cir. 2007) ...............................................................................11

**Federal Statutes**

5 U.S.C. § 552(b)(1) ....................................................................................................7

5 U.S.C. § 552(c)(2) ..................................................................................................11

US PATRIOT Act (Pub.L. 107-56, 115 Stat. 272 (2001)).............................3, 4, 6, 11

**Rules**

9th Cir. R. 27-12 .......................................................................................................15

Fed. R. Evid. 1002 ....................................................................................................10

**Executive Materials**

E.O. 13526, §1.1(a)(4) .................................................................................................7

E.O. 13526, §1.4(c) .....................................................................................................8

E.O. 13526, §1.7(a)(2) ...............................................................................................13

E.O. 13526, §1.7(a)(3) ...............................................................................................13

*Presidential Memorandum—Reviewing Our Global Signals Intelligence Collection and
Communications Technologies* (Aug. 12, 2013) .......................................................9

1

**Other Authorities**

Eli Lake, *Spy Chief: We Should've Told You We Track Your Calls*, Daily Beast
(Feb 17, 2014) ...........................................................................................................1

Ellen Nakashima, *U.S. Revealed Secret Legal Basis for NSA Program to
Sprint, Documents Show*, Wash. Post (May 13, 2014)...............................................13

Geoffrey Stone, *Understanding Obama's NSA Proposals*, Daily Beast (Mar. 27, 2014) .............9

Geoffrey Stone, *What I Told the NSA*, Huff. Post (Mar. 31, 2014)............................................10

ODNI, *About the Review Group on Intelligence and Communications Technologies* ................10

President Obama, Address at the Department of Justice on Intelligence Reforms
(Jan. 17, 2014) ....................................................................................................9, 12

President's Review Group on Intelligence and Communications Technology, *Liberty and
Security in a Changing World* (2013) ..........................................................................12

Privacy and Civil Liberties Oversight Board, *Report on the Telephone Records Program
Conducted Under Section 215 of the USA Patriot Act and On the Operations of the
Foreign Intelligence Surveillance Court* (2014) ......................................................12

Rick Salgado, *Shedding Some Light on Foreign Intelligence Surveillance Act (FISA) Requests*,
Google's Official Blog (Feb. 3, 2014) ........................................................................12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

The Director of National Intelligence ("DNI") now concedes that hiding the bulk collection of Americans' call records from the public was a mistake. *See* Eli Lake, *Spy Chief: We Should've Told You We Track Your Calls*, Daily Beast (Feb 17, 2014) (quoting DNI James Clapper saying, "Had we been transparent about [the call records collection program] from the outset . . . We wouldn't have had the problem we had.").[1] Nevertheless, the government continues to hide aspects of that program—as well as other bulk collection programs operating under Section 215—from the American public. Records concerning these programs remain at issue in this case.

As EFF's cross-motion demonstrated, at an earlier stage in this case, the government materially misrepresented the nature of the withheld documents and the information those documents contained. The government repeatedly claimed that *all* information was so sensitive that disclosure of *any* of the information would threaten grave harm to national security. The government made those representations in response to EFF's arguments and in response to this Court's pointed and direct order. It made those representations on the public record and *ex parte*.

Those representations were false.

With the benefit of the government's belated disclosures, it is now apparent that many of the documents could have been redacted and released without disclosing any national security-sensitive information. Indeed, much of that non-sensitive information concerned the government's repeated violations of the FISC's orders. FOIA was designed to provide the public with precisely this type of information, and the government—through its misrepresentations—sought to undermine the public's right to know and to hold the government accountable.

What the government now characterizes as merely a "disagreement, in hindsight, with the government's substantive classification decisions," Defendant's Opposition and Reply ("Def. Rep.") at 1 (ECF No. 80), is much more than that: this case is about the limits of the government's authority to invoke "national security" to shield information—particularly non-

---

[1] *Available at* http://thebea.st/1kPoaZX

sensitive information concerning government misconduct—from the public, and the limits of the deference owed by this Court when the government makes such claims. EFF respectfully submits that, in this case, the government has pushed those limits beyond what they can bear. Accordingly, the government's earlier submissions warrant a finding of bad faith and undermine the deference it might otherwise be afforded.

That bad faith and lack of deference necessarily feature in assessing the government's current withholding of five (and perhaps many more)[2] FISC opinions. The government's reply does little more than reassert its belief that the Court owes it unyielding deference. But the record in this case—and Congress' plain mandate to review the agency's withholdings *de novo*—warrant nothing of the sort. EFF urges the Court to order the opinions produced for its *in camera* inspection and to order any and all reasonably segregable portions disclosed.

Additionally, the government can no longer redact AT&T, Sprint, and Verizon from responsive records. The involvement of these companies has been disclosed by government officials with knowledge of the companies' participation. In addition, and contrary to the government's hyperbolic claims, these disclosures will cause no harm to national security. Finally, the government cannot continue to withhold a controlling legal opinion of the Office of Legal Counsel ("OLC") from disclosure under Exemption 5.

For the reasons that follow, EFF urges the Court to deny the government's motion for summary judgment, grant EFF's, and order the production of any improperly withheld material.

---

[2] EFF's cross-motion described its belief—based on the government's public representations—that six FISC opinions, containing significant interpretations of Section 215, were withheld in full and remain at issue in this case. Pl. Mem. at 17-18. With the correction of the government's *Vaughn* index, *see* Def. Rep. at 7 n.2, EFF now believes that, without justification, the government has failed to provide a public accounting of several additional FISC opinions containing significant interpretations of Section 215. The government has provided no reason for failing to account for these opinions, and no reason exists. Disclosure of the existence of additional FISC opinions would not reveal any classified fact, and no other exemption could justify such a material omission. Ultimately, this appears to be yet another misrepresentation, intended to obscure intelligence agencies from public scrutiny without attendant benefits to national security. The failure to even note the opinions is unjustifiable, and their continued withholding, in full, is identically suspect.

**ARGUMENT**

**I.      The Government's prior representations warrant a finding of bad faith.**

The government unambiguously and repeatedly misrepresented, both to this Court and to EFF, the nature of the withheld material and the feasibility of redacting and releasing non-sensitive, non-exempt information from FISC documents. Neither the government's arguments in reply, nor the belated disclosure of its *ex parte* declaration, alter this conclusion.

EFF's motion showed that—contrary to the government's repeated claims—redaction and release was not only possible, but it would have provided the public with information vital to ensuring public accountability of the government's use of Section 215. Pl. Mem. at 9-13. EFF also showed that the government's misrepresentations came in direct response to EFF's central argument and to this Court's direct order to "particularly address the issue of segregability" of the documents. Order Re: Further Submission on Cross-Motions for Summary Judgment ("Order Re: Further Submissions") at 3 (ECF No. 49). As this Court noted, non-exempt information "may be segregable despite the need for substantial redaction." *Id.* In fact, that was precisely the case.

In reply, the government submits its previous *ex parte* declaration, which the government argues, "explains why nothing could be segregated from classified information and released to plaintiff." Def. Opp. at 5. Far from explaining the propriety of the its previous assertions, the Janosek Declaration provides only further evidence of the government's prior overbroad and unwarranted exemption claims. *See* Janosek Decl., ¶ 21 ("I have determined that *all* of the responsive material was properly withheld *in full*, as all of this information is currently and properly classified[.]") (emphasis added). Even assuming the government could legitimately withhold all information that revealed "NSA's association with Section 215," meaningful, segregable information existed within responsive documents that would not have revealed that association. For example, neither the government's reply brief, nor the declassified declaration, even begin to explain how the following sentence could have revealed the NSA's association with—or any other sensitive, legitimately classifiable fact about—the government's use of Section 215:

To approve such a program,[3] the Court must have every confidence that the government is doing its utmost to ensure that those responsible for implementation fully comply with the Court's orders. The Court no longer has such confidence.

Order at 12, *In re Production of Tangible Things From [Redacted]*, BR 08-13 (FISC Mar. 2, 2009). Nor *could* the government's submissions explain such a claim. The sentence discloses nothing about the "'who,' 'how,' 'when,' and 'where' of NSA's programs." Janosek Decl. ¶ 18. It does not mention—either directly or by implication—the types of records that were collected or the NSA's involvement in that collection. As with other examples EFF provided, *see* Pl. Mem. at 9-13, the *only* information this sentence imparts is that the government's use of Section 215 was in dire need of reform. Obviously, that is no basis for withholding the information.

The government's other attempts to justify its overbroad and misleading assertions fare no better. The government specifically cites to "the classification designations at the top and bottom of each page" as a justification for refusing to disclose non-segregable information. Def. Rep. at 6 (citing Janosek Decl). But those markings, like any other purportedly sensitive information, could have been redacted. The government also suggests disclosure of the BR 10-82 supplemental opinion "would have revealed that, at a particular point in time, the government had sought . . . to obtain records covered by the Right to Financial Privacy Act." Def. Rep. at 8. But, as EFF's cross-motion showed, government officials had already disclosed the fact that Section 215 had been used to obtain records covered by the RFPA. Pl. Mem. at 12 n. 16. Redacting the date and docket number from the supplemental opinion would have concealed the "particular point in time" the government sought to protect. Perhaps most tenuously, the government suggests an argument it advanced *in another case* justified its representations here.[4] *See* Def. Rep. at 8 (discussing theory

---

[3] In 2009, government officials disclosed that Section 215 was being used to support a "sensitive collection program." *See* First Rumold Decl., Ex. 1 (Testimony of Todd Hinnen, House Judiciary Committee, "Hearing on the USA PATRIOT ACT" (Sept. 22, 2009) at 8) (ECF No. 42-1).

[4] The government states it "informed plaintiff and the Court in 2013" that "it believed that all FISC records were essentially sealed by the FISC, and that the FISC's procedures prevented the government from releasing any portion of them." Def. Rep. at 7-8. That argument was not advanced in any of the government's prior summary judgment papers and, indeed, was only raised in a supplemental *declaration* filed in response to this Court's order. *See* Second Suppl. Bradley

that "FISC records were essentially sealed by the FISC," which the government advanced in its Motion for Summary Judgment in *EFF v. Dep't of Justice*, No. 11-1441-ABJ (D.D.C. March 1, 2013) (ECF No. 11)). Such an argument requires no response.

If any more evidence were needed, EFF respectfully—and, for a FOIA case, paradoxically—submits for the Court's consideration a redacted version of one of the subsequently released opinions. *Compare* Suppl. Rumold Decl., Ex. 1 (redacted version), *with* Ex. 2 (partially released version). EFF has created this redacted version to show, despite the government's repeated claims to the contrary, that meaningful information within these FISC opinions was readily segregable from its sensitive context. As the example demonstrates, the government easily could have redacted and released words, phrases, and sentences—such as "The Court is exceptionally concerned about what appears to be a flagrant violation of its Order in this matter[.]"—without compromising any of the allegedly sensitive "sources and methods" the government sought to protect. *See* Ex. 1 at 4.

Ultimately, the government argues this Court must defer to its purportedly "expert predictive judgments"—no matter how facile those judgments may appear. But a "blind acceptance by the courts of the government's insistence on the need for secrecy . . . without argument, and without a statement of reasons, would impermissibly compromise the independence of the judiciary and open the door to possible abuse." *In re Washington Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986). Fortunately, "blind acceptance" is not the course Congress has charted for FOIA cases. Even in cases implicating national security, the judiciary has been specifically empowered by Congress to review, *de novo*, the executive's classification claims. *See Goldberg v. Dep't of State*, 818 F.2d 71, 76 (D.C.Cir. 1987) (describing Congress' "intent that courts act as an independent check on challenged classification decisions").

With the benefit of access to the opinions, it is now apparent that the government's earlier claims were legally unsupportable and demonstrably overbroad. The government withheld

---

Decl., ¶ 13 (ECF No. 51-1). A legal argument raised in passing and in a declaration does not absolve the government of its prior misrepresentations.

information about its use of Section 215 about which the public had a clear right to know. Thus, the record in this case warrants a finding of bad faith and requires heightened scrutiny of the agency's continued withholding claims.

## II.    The continued withholding, in full, of FISC opinions is unwarranted.

Given the record of agency misrepresentation in this case, and the demonstrable feasibility of segregating and releasing non-exempt information, it is all but assured that the government has withheld more information from the remaining FISC opinions than the law allows. Absent some justification that *every word* contained within the opinions would reveal classified or otherwise exempt information, the opinions cannot be withheld in full. Defendant has not even attempted to make such a showing here. As such, EFF urges the Court to order the records produced for its *in camera* inspection, and to order all reasonably segregable information released.

A.    The Court's *in camera* review of the withheld FISC opinions is necessary.

In light of the government's prior misrepresentations, this case cannot be decided based on government declarations alone. Accordingly, and as EFF's cross-motion described, *in camera* review of the withheld documents is necessary. Pl. Mem. at 15-16.

The government offers only a half-hearted opposition to this Court's *in camera* review. It correctly notes that *in camera* inspection need not be "resorted to as a matter of course, simply on the theory that 'it can't hurt.'" Def. Rep. at 18 (quoting *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996)). But that is far from the case here. The government's prior representations have undermined the deference typically owed government affidavits. Against this factual backdrop, the Court's *in camera* is the only way to resolve this case.[5]

---

[5] To be clear, EFF does not object to the Court reviewing the withheld FISC opinions in conjunction with the government's *ex parte* declarations. However, as the declassification of the Janosek Declaration demonstrates, the government's prior *ex parte* declarations suffered from the same defects as their public counterparts. *See supra* at 3-4 (discussing misrepresentations in prior *ex parte* declaration). Consequently, the Court should view the government's *ex parte* declarations with the same skepticism owed the government's public declarations. Additionally, should *in camera* review of the withheld opinions raise additional issues or questions, EFF would welcome the opportunity to provide the Court with supplemental briefing on any topic.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B.    No exemption justifies the withholding, in full, of the remaining FISC opinions.

As EFF's cross-motion demonstrated, and as the government now apparently concedes, FISC opinions are not, themselves, intelligence "sources and methods." Pl. Mem. at 17-18; *N.Y. Times Co. v. Dep't of Justice*, 2014 WL 1569514, at *13 (2d Cir. Apr. 21, 2014) (finding "legal analysis is not an 'intelligence source or method.'") (quoting district court). The government, therefore, cannot withhold these opinions in full simply by asserting Exemptions 1 and 3.

Instead, the government invokes the "mosaic theory" in an attempt to justify its overbroad withholdings. But the mosaic theory is unavailing for two reasons. First, judicial acceptance of the theory hinges on deference, arising from executive branch credibility and specificity—in this case, two qualities the government lacks. *See, e.g.*, *Berman v. CIA*, 378 F. Supp. 2d 1209, 1217 (E.D. Ca. 2005), *aff'd* 501 F3d 1136 (9th Cir. 2007) (noting "deference to the Agency" was warranted because there is "no showing that the CIA's decision [to withhold] bits and pieces of information . . . is made in bad faith or is unreasonable."). In contrast, there is ample evidence here that the government's previous representations concerning classification and the feasibility of releasing non-exempt information were both "made in bad faith" and "unreasonable." *Id*. Additionally, the government's affidavits do not even approach the level of specificity necessary to justify such sweeping withholdings. *See N.Y. Times*, 2014 WL 1569514 at *15 (noting excessive secrecy only "justified in unusual circumstances, and only by a particularly persuasive affidavit."). Instead, the government has simply re-filed identical boilerplate concerning the feasibility of segregating and releasing information. *See* Pl. Mem. at 19-20 (comparing government declarations).

Second, the mosaic theory—as the government seeks to apply it in this case—would offer a near blanket exemption from FOIA for any subject even tangentially related to national security, regardless of the harm that would flow from the information's disclosure. *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 709-10 (6th Cir. 2002) (noting "there seems to be no limit to the Government's" mosaic theory argument). The executive is only authorized to withhold information when that information's disclosure would reveal "intelligence sources or methods" *and* disclosure would threaten harm to national security. 5 U.S.C. § 552(b)(1); E.O. 13526, §1.1(a)(4) (requiring classification authority to determine that disclosure "reasonably could be expected to result in

damage to the national security"), §1.4(c). However, the approach the government advances here would allow it to "operate in virtual secrecy in all matters dealing, even remotely, with 'national security[.]'" *Detroit Free Press,* 303 F.3d at 709-10. Such a sweeping, expansive approach is owed no deference by the Court. *Int'l Counsel Bureau v. Dep't of Defense,* 723 F. Supp. 2d 54, 63 (D.D.C. 2010) (noting "[d]eference is not equivalent to acquiescence" in national security cases) (quotation marks and citation omitted). Indeed, acquiescing to such an approach would directly contradict Congress' decision to empower the courts with the authority to review, *de novo*, the propriety of the agency's classification claims. *Goldberg*, 818 F.2d at 76. There is no justification for departing from this standard under normal circumstances, and this is particularly true here, where concrete evidence of agency bad faith already exists. The mosaic theory therefore cannot support the government's withholdings.

## III. The participation of AT&T, Sprint, and Verizon in the NSA's call records collection program has been officially disclosed.

EFF's cross-motion demonstrated that statements by NSA's general counsel, Raj De, and Geoffrey Stone, a member of the President's Review Group on Intelligence and Communications Technologies, constituted official acknowledgement of the participation of AT&T, Sprint, and Verizon in the NSA's call records collection program. Because this fact has been "officially acknowledged," the information is improperly withheld. *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).

The government does not contest Mr. De is an official capable of formally disclosing, as he did, that "three different providers" participate in the NSA's call record program. Instead, the government argues that Mr. De's disclosure was merely Mr. De "speaking hypothetically." Def. Rep. at 12. Examination of Mr. De's statement, in context, reveals the government's argument is nothing more than a belated attempt to justify the disclosure.

The disclosure came in Mr. De's discussion of the ways in which the NSA's current collection program differs from typical law enforcement procedures for obtaining call records. Second Rumold Decl., Ex. C (*Counterterrorism, National Security, and the Rule of Law*, Aspen Security Forum (July 18, 2013) (Excerpt of remarks of Raj De) ("De Transcript") (ECF No. 79-2).

The "hypothetical" Mr. De used was a discussion of Khalid Al-Mihdhar, one of the 9/11 hijackers. Thus, contrary to the government's suggestion, the hypothetical was not a hypothetical at all: it was an "example," as Mr. De acknowledged. De Transcript at 13 ("So that's a – I think that's a good example to use here.").[6] Using the example of the Al-Mihdhar case, Mr. De explained why the use of traditional law enforcement methods of obtaining call records would not operate as the NSA's program does: one reason, Mr. De noted, was that the agency would need to aggregate data from "three different providers" in order to duplicate the program's current capability. *Id.* ("And, so with three different providers that would also be [an] additional step of bringing the data back, putting it together and trying to analyze it in short order."). EFF does not doubt that Mr. De's disclosure was inadvertent and that the government may view that disclosure as regrettable. Nevertheless, Mr. De's disclosure constitutes an authoritative, official disclosure.

As the government rightly notes, confirmation of this fact, alone, would not require the disclosure of the particular telecom providers noted in the withheld documents. That confirmation, however, was supplied by Mr. Stone's disclosure that "telephone companies like Sprint, Verizon, and AT&T" participate in the 215 program. Geoffrey Stone, *Understanding Obama's NSA Proposals*, Daily Beast (Mar. 27, 2014). The government portrays Mr. Stone as a "contractor" of the executive branch. In reality, Mr. Stone was a member of the President's independent, blue-ribbon commission, created pursuant to "the authority vested in [the President] by the Constitution and the laws of the United States of America." *Presidential Memorandum—Reviewing Our Global Signals Intelligence Collection and Communications Technologies* (Aug. 12, 2013).[7] Nor was Mr. Stone a contractor *for* the DNI, as the government contends. DNI only provided "administrative

---

[6] Indeed, the facts surrounding Al-Mihdhar are not *an* example—they are *the* example the NSA used as the impetus, and the ongoing justification, for the NSA's call records collection program. *See, e.g.*, President Obama, Address at the Department of Justice on Intelligence Reforms (Jan. 17, 2014) ("President's Jan. 17 Speech") (transcript available at http://www.washingtonpost.com/politics/full-text-of-president-obamas-jan-17-speech-on-nsa-reforms/2014/01/17/fa33590a-7f8c-11e3-9556-4a4bf7bcbd84_story.html) ("The program grew out of a desire to address a gap identified after 9/11. One of the 9/11 hijackers, Khalid al-Mihdhar, made a phone call from San Diego to a known al-Qaida safehouse in Yemen.").

[7] *Available* at http://www.whitehouse.gov/the-press-office/2013/08/12/presidential-memorandum-reviewing-our-global-signals-intelligence-collec.

support" for the group, not any supervision or control. *See* ODNI, *About the Review Group on Intelligence and Communications Technologies*.[8] Instead, Mr. Stone was an independent official, tasked with reviewing the propriety of intelligence community surveillance.[9]

Even if the Review Group's work has been completed, that does not strip Mr. Stone of the knowledge he gained as part of the Review Group. He thus remains an "authoritative" source on the participation of AT&T, Sprint, and Verizon in the NSA's program. *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).[10] The government cites a series of cases that determined the statements of former executive branch officials did not amount to an official disclosure. *See* Def. Rep. at 11 (citing *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 421-22 (2d Cir. 1989), *Afshar*, 702 F.2d at 1133, and *Phillippi v. CIA*, 655 F.2d 1325, 1331 (D.C. Cir. 1981)). Closer examination of each of these precedents reveals they do not go as far as the government would like. Although the decisions indeed held that disclosures by an ex-official or ex-employee were insufficient to waive the government's exemption claims, each court's decision focused on the fact that the information was less likely to be reliable (or regarded as true by a foreign government)—not upon the individual's status as a former employee or official. *See Hudson*, 891 F.2d at 421 (rejecting affidavit of ex-Admiral because it contained "only his personal conclusions based on speculation"); *Afshar*, 702 F.2d at 1134 (noting books by ex-CIA official are "not generally treated as official disclosures *by foreign governments*") (emphasis added); *see also Phillippi*, 655 F.2d at 1331 (rejecting claim that ex-CIA director's disclosures constituted official

---

[8] *Available at* http://www.dni.gov/index.php/intelligence-community/review-group#;

[9] The government also argues that Mr. Stone's affiliation with the government has ended. In support of that position, the government submits a declaration from Mark Ewing, Chief Management Officer of the ODNI (ECF No. 80-2). Mr. Ewing argues that, pursuant to contract, Mr. Stone's affiliation with ODNI ended on January 31, 2014. *Id.*, ¶ 5. But the government has not produced that contract. *See id.* As the best evidence of the contract's terms (and especially, in light of the record of this case), the contract must be produced to establish that fact. *See* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.").

[10] Indeed, and further attesting to Mr. Stone's authoritative status, only four days after the publication of his article in the *Daily Beast*, he was invited to NSA headquarters to address its staff. *See* Geoffrey Stone, *What I Told the NSA*, Huff. Post (Mar. 31, 2014), *available at* http://www.huffingtonpost.com/geoffrey-r-stone/what-i-told-the-nsa_b_5065447.html.

disclosures concerning all aspects of a subject because "[t]here may be much left to hide, and if there is not, that itself may be worth hiding."). In contrast, here, there is no question of Mr. Stone's knowledge of AT&T, Sprint, and Verizon's participation in the programs; nor are there delicate questions of foreign policy which might otherwise counsel against treating Mr. Stone's disclosure as authoritative and official. His disclosure therefore cannot be disregarded, simply because the Review Group has completed its task. *See Wolf v. CIA*, 473 F.3d 370, 379 (D.C. Cir. 2007) (finding ex-CIA director's testimony constituted official acknowledgement). As an "authoritative" source on the subject, Mr. Stone's disclosure constitutes an official acknowledgment. *Afshar*, 702 F.2d at 1130.[11]

Finally, the government suggests EFF "does not take issue with the government's logical explanation of why" disclosure of these companies' participation would cause "exceptionally grave damage" to the nation's security. Def. Rep. at 10. Nothing could be further from the truth. First, the suggestion that disclosure would allow "foreign adversaries" insight into "which channels of communication may or may not be secure" is utterly without merit. If the disclosures of the past year have shown anything, it is that the government has multiple, and redundant, methods for intercepting communications. Whether or not a particular provider's records were included in the NSA's collection program under Section 215 says *nothing* about whether "a particular channel" of communications was accessible to NSA in the past, or whether it will be accessible in the future— under Section 215, a different collection program, or a different legal authority. *See Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1149 (2013) (noting the "[g]overnment has numerous other methods of conducting surveillance," including other "provisions of FISA," "obtaining information from the intelligence services of foreign nations," and "FISA-exempt human and technical

---

[11] The government argues that an official disclosure requires identification of "'an intentional, public disclosure made by or at the request of a government officer acting in an authorized capacity by the agency.'" Def. Rep. at 10 (quoting *Pickard v. Dep't of Justice*, 653 F.3d 782 (9th Cir. 2011)). That requirement, however, applies to the statutory-based "official confirmation" standard in 5 U.S.C. § 552(c)(2). *Pickard*, 653 F.3d at 787. Although the court noted similarities between the "official confirmation" and "official acknowledgment" doctrines, the *Fitzgibbon* standard, which the Court in *Pickard* acknowledged as the correct test for "official acknowledgment," does not contain such a limitation.

surveillance programs that are governed by Executive Order 12333"). Even if it were true that disclosure would reveal "secure channels" outside the 215 program, disclosure of the providers would still not threaten harm to the nation's security for a simple reason: the program, itself, does not meaningfully contribute to the nation's security. This is not, as the government would contend, merely EFF's "inexpert judgment": it is the view of the two independent executive branch oversight bodies to review the program. *See* President's Review Group on Intelligence and Communications Technology, *Liberty and Security in a Changing World*, 119 (2013) ("We recommend that this program should be terminated as soon as reasonably practicable."); Privacy and Civil Liberties Oversight Board, *Report on the Telephone Records Program Conducted Under Section 215 of the USA Patriot Act and On the Operations of the Foreign Intelligence Surveillance Court*, 168 (2014) ("The Section 215 bulk telephone records program is not sustainable from a legal or policy perspective. . . [and] the government should end the program."). Indeed, President Obama has formally stated that the program, as it is currently conceived, should end. President's Jan. 17 Speech ("I am therefore ordering a transition that will end the Section 215 bulk metadata program as it currently exists[.]") It is difficult to understand how disclosure of the providers participating in the program would threaten the nation, when the program's very existence is not so valuable as to require its continuation. Finally, the government's claim of harm is particularly unbelievable because the government allows other communications providers to disclose their participation in national security surveillance programs. *See, e.g.*, Rick Salgado, *Shedding Some Light on Foreign Intelligence Surveillance Act (FISA) Requests*, Google's Official Blog (Feb. 3, 2014) (publishing statistics on FISA requests sent to Google).[12]

Taken together, the government's continued effort to shield AT&T, Sprint, and Verizon from further scrutiny is not designed to protect national security—it is designed to protect the cozy relationship the government enjoys with these providers; it is designed to protect the government and these providers from public criticism; and it is designed to protect these companies' bottom lines. None of those reasons, however, is a valid justification for classifying information.

---

[12] *Available at* http://googleblog.blogspot.com/2014/02/shedding-some-light-on-foreign.html

1  See E.O. 13526, § 1.7(a)(2), (3) (prohibiting classification to "prevent embarrassment to a person,

2  organization, or agency" or to "restrain competition").

3        Under any circumstances, the foregoing is beside the point: "[i]t is a matter of common

4  sense that the presence of information in the public domain makes the disclosure of that

5  information less likely to 'cause damage to the national security.'" *Wash. Post v. Dep't of Defense*,

6  766 F. Supp. 1, 9 (D.D.C. 1991). The statements of Mr. De and Mr. Stone, taken together,

7  constitute official, authoritative acknowledgement of the companies participating in the NSA's call

8  records collection program. Because Mr. De and Mr. Stone have already confirmed the

9  participation of these three companies, the disclosure of AT&T, Sprint, and Verizon from the

10  withheld records will pose no threat to the nation's security.[13] In circumstances such as these,

11  where "suppression of [well-acknowledged] information . . . would frustrate the pressing policies

12  of [FOIA] without even arguably advancing countervailing considerations," the government's

13  withholdings should not be upheld. *Founding Church of Scientology v. NSA*, 610 F.2d 824, 832

14  (D.C. Cir. 1979).

15  **IV.    The Census Opinion is not exempt from disclosure under Exemption 5.**

16        As EFF's cross-motion demonstrated, the single OLC opinion at issue in this case (the

17  "Census Opinion") cannot be withheld under the deliberative process privilege of Exemption 5 for

18  two reasons: first, the Census Opinion constitutes the agency's working law and must be disclosed.

19  Pl. Mem. at 24. Alternatively, the legal interpretation set forth in the Census Opinion was adopted

20  by the executive branch, as demonstrated by the opinion's submission to the FISC in conjunction

21  with an application. *Id.* at 25. The government's arguments in reply do not justify the Census

22  Opinion's withholding.

23        First, contrary to the government's suggestion, the D.C. Circuit's decision in *EFF v. Dep't*

24  _____

25  [13] And, although the government dismisses the point, the fact of AT&T, Sprint, and Verizon's participation in the program is widely known and continues to be published in the nation's largest

26  media outlets. *See, e.g.*, Ellen Nakashima, *U.S. Revealed Secret Legal Basis for NSA Program to Sprint, Documents Show*, Wash. Post (May 13, 2014), *available at* http://www.washingtonpost.co

27  m/world/national-security/us-revealed-secret-legal-basis-for-nsa-program-to-sprint-documents-show/2014/05/14/f593612a-ce28-11e3-937f-d3026234b51c_story.html

28

1   *of Justice*, 739 F.3d 1 (D.C. Cir. 2014), does not preclude EFF from arguing that the Census

2   Opinion constitutes the "working law" of the executive branch. Because the application of "the

3   deliberative process privilege is so dependent on the individual document and the role it plays in

4   the administrative process," *Coastal States v. Dep't of Energy,* 617 F.2d 854, 867 (D.C. Cir. 1980),

5   estoppel cannot bar similar legal arguments over a *separate* OLC opinion, generated under

6   different factual circumstances. *See Lardner v. Dep't of Justice*, 638 F. Supp. 2d 14, 22 (D.D.C.

7   2009) (noting that "the fact that the FOIA requests in the two actions, as well as the materials

8   responsive to those requests, differ considerably counsels against application of collateral

9   estoppel"). Even if the factual conditions are similar, courts recognize that there is more room for a

10  "second look" where, as here, a party "seeks to apply the doctrine [of collateral estoppel] to

11  litigation of a legal issue, not a factual one," *Id.* at 23 (citing *Nat'l Treasury Employees Union v.

12  IRS,* 765 F.2d 1174, 1177 (D.C. Cir. 1985)). This is particularly true "in the context of agency

13  relitigation of legal issues with substantial public policy implications." *W. Oil & Gas Ass'n v. EPA*,

14  633 F.2d 803, 809 (9th Cir. 1980) ("[I]f the relevant facts in the two cases are separable, even

15  though they be similar or identical, collateral estoppel does not govern the legal issues which recur

16  in the second case.") (quoting *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591 (1948)).

17      The estoppel argument aside, the government offers little more to contradict EFF's

18  "working law" argument than the uncontested assertion that OLC attorneys do not "have

19  policymaking authority at the Department of Commerce." Def. Rep. at 15. But authority to make

20  policy is only one part of the analysis: Exemption 5 does not protect documents constituting an

21  agency's "effective law" *and* an agency's "policy." *NLRB v. Sears*, 421 U.S. 132, 152 (1975)

22  (emphasis added). Thus, even if OLC opinions do not establish an agency's "policy," because

23  OLC's legal interpretations are controlling on executive branch officials, the opinions still

24  generally constitute the executive branch's working "law." Accordingly, and absent a showing that

25  would rebut this presumption, Exemption 5 should not apply to the Census Opinion.

26      Alternatively, and as EFF's opening motion demonstrated, the Census Opinion has been

27  expressly adopted by the executive branch. Pl. Mem. at 23-24. In response, the government

28

suggests that the OLC Opinion has not been "expressly" adopted because it was not adopted *publicly*. But "express" adoption does not require that the adoption be "public," and the rule requiring disclosure applies with equal—if not greater force[14]—to those documents that are expressly adopted only within the agency. *See Coastal States*, 617 F.2d at 866 (noting the privilege can be lost if the document is "adopted, formally or informally, as the agency position"). Accordingly, the Census Opinion should be disclosed.[15]

## V.   EFF would not oppose a stay pending an expedited appeal.

Perhaps recognizing the inadequacy of its arguments, the government asks the Court, preemptively, to enter a stay of any disclosure order pending an appeal. Def. Opp. at 19. EFF would not oppose a stay pending appeal, provided the appeal was sought on an expedited basis. *See* 9th Cir. R. 27-12. In light of the substantial public interest in the material at issue and the ongoing legislative reform debate, the public requires access to the withheld material as soon as practicable, and the government should not be permitted to unnecessarily delay disclosure through the pace of a traditional appeal. As such, should the Court order disclosure of withheld records, EFF would consent to a five-day stay of the Court's order to allow the parties time to confer with respect to a stay of longer duration.

## CONCLUSION

For the foregoing reasons, EFF's motion should be granted and the government's denied.

---

[14] The rule stems from the Supreme Court's observation that "the public is vitally concerned with the reasons which did supply the basis for agency policy actually adopted." *Sears*, 421 U.S. at 152. As the Second Circuit has noted, it is "offensive to FOIA" for an agency to "adopt a legal position while shielding from public view the analysis that yielded that position." *Brennan Center v. Dep't of Justice*, 697 F.3d 184, 201 (2nd Cir. 2012) (internal quotations omitted).

[15] Additionally, the government submits yet another *ex parte* declaration, this time to support the withholding of a document that is not, itself, classified. Def. Rep. at 17-18 Obviously, EFF is at a loss to contest arguments made *ex parte*. Nevertheless, given the Census Opinion's unclassified status, it seems particularly likely that the government could describe in more detail—but in still general and unclassified terms—the circumstances surrounding the Opinion's submission to the FISC. Because the government is required to provide "as much detail on the public record as is reasonably possible," EFF urges the Court not to rely on the government's *in camera* submission to decide the propriety withholding the Census Opinion. Order re: Further Submissions at 1 (citing *Weiner v. FBI*, 943 F.2d 972, 979, 988 (9th Cir. 1991)).

1

DATED: May 16, 2014                    Respectfully submitted,

2

3                                          _/s/ Mark Rumold_____
                                          Mark Rumold
4                                          Jennifer Lynch
                                          ELECTRONIC FRONTIER FOUNDATION
5                                          815 Eddy Street
                                          San Francisco, CA 94109
6                                          Telephone: (415) 436-9333
                                          Facsimile: (415) 436-9993
7

8                                          Attorneys for Plaintiff
                                          ELECTRONIC FRONTIER FOUNDATION
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28