**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,**<br><br>      Plaintiff,<br><br>   vs.<br><br>**DEPARTMENT OF JUSTICE,**<br><br>      Defendant. | Case No.: 4:11-cv-05221-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 77 AND 79)** |

Presently before the Court are the renewed cross-motions for summary judgment on the claim of plaintiff Electronic Frontier Foundation ("EFF" or "Plaintiff") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522. EFF alleges that defendant Department of Justice ("DOJ") is withholding agency records without legitimate justification under any of the limited exemptions in the statute. (Dkt. Nos. 77 and 79.) DOJ responds that information concerning the details of a government counter-terrorism program undertaken pursuant to Section 215 of the USA PATRIOT Act, 50 U.S.C. § 1861(a)(1), ("Section 215"), including the documents sought by EFF containing significant legal interpretation of the government's authority under Section 215, is exempt from disclosure under FOIA.

By way of background, the parties previously filed and argued cross-motions for summary judgment, and supplemented briefing as to the sufficiency of the public identification of the documents withheld and the basis therefor in response to this Court's order. While those cross-motions were still pending, certain classified information was the subject of unauthorized disclosures, widely reported in the press. These unauthorized disclosures led to the government's declassification and production of hundreds of pages of formerly highly classified documents that

discuss, among other things, the collection of telephony metadata pursuant to Section 215 of the USA PATRIOT Act ("the call record collection program"). Apparently among the declassified documents were many documents responsive to EFF's FOIA request and previously withheld.

The parties agreed that further summary judgment briefing would be necessary to resolve the propriety of the remaining withholdings. Pursuant to the parties' stipulation, the Court ordered that further summary judgment briefing would be based on a "representative sample" of withheld records. (*See* Stipulation at Dkt. No. 71; Order at Dkt. No. 72.) In its opposition and cross-motion, EFF further narrowed its challenge to DOJ's: (1) withholding, in full, of any opinion or order of the Foreign Intelligence Surveillance Court ("FISC"); (2) withholding of the names of telecommunication service providers participating in the call record collection program under Section 215; and (3) withholding, in full, of a formal opinion of the Office of Legal Counsel ("OLC") described in the Declaration of Paul P. Colborn (Dkt. No. 77-5) as a memorandum provided to the Department of Commerce dated January 4, 2010 regarding "the interaction between disclosure in the Patriot Act, as amended, and prohibitions in the Census Act." (*Id.* at ¶ 13 [describing the document referred to hereinafter as "the Census Memorandum"].)

The Court has thoroughly reviewed the parties' submissions and heard oral argument on the new cross-motions for summary judgment. The Court has also conducted an *in camera* review of the *ex parte*, classified version of the declaration of Jennifer L. Hudson, the *ex parte* Declaration by the Chief of Operations, Office of Intelligence, National Security Division, Department of Justice ("the NSD Declaration") concerning DOJ's use of the Census Memorandum, and certain documents at issue in the cross-motions, specifically:

(1) FISC opinion dated 8/20/2008 (6 pages);

(2) FISC order dated 10/31/2006 (19 pages);

(3) FISC orders dated 2/17/2006 (17 pages);

(4) FISC orders dated 2/24/2006 (8 pages);

(5) FISC orders dated 12/16/2005 (16 pages);

(6) the Census Memorandum and the related application of the Department of Justice in connection with which the Census Memorandum was submitted to the FISC.

(*See* Dkt. No. 77-2, *Vaughn* Index, at 1-3, Doc. No. 14A, 86J, 89D, 89K, 89S; *see also* Order dated June 13, 2014, Dkt. No. 85, and Ordered dated July 24, 2014, Dkt. No. 88.)

Having carefully considered the papers and arguments submitted, and for the reasons set forth below, the Court hereby Orders that the cross-motions are **GRANTED IN PART AND DENIED IN PART**. DOJ has established a proper basis for withholding, in full, the FISC orders and opinions at issue, and for withholding all names of telecommunications providers participating in the Call Records Collection Program, under FOIA Exemptions 1 and 3. Thus, summary judgment is **GRANTED** in favor of DOJ on the claim for disclosure of this information. However, DOJ has not established that the Census Memorandum is properly withheld under Exemption 5, and EFF is **GRANTED** summary judgment on its claim for FOIA violation as to this document.

## I.     APPLICABLE LEGAL STANDARDS

FOIA safeguards the public's ability to hold the government accountable for its actions. *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA requires disclosure of all agency records at the request of the public unless the records fall within one of nine narrow exemptions. *See* 5 U.S.C. § 552(b); *see also Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996). These "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal citation omitted). The exemptions "have been consistently given a narrow compass," and agency records that "do not fall within one of the exemptions are improperly withheld." *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

The exemptions invoked with respect to the documents at issue here are those allowing the government to withhold matters disclosing information:

- "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" when properly classified as such (Exemption 1, 5 U.S.C. § 552(b)(1));

- specifically exempted from disclosure by other federal statutes if the statute establishes particular criteria for withholding or refers to the particular types of material to be withheld. (Exemption 3, 5 U.S.C. § 552(b)(3));

- constituting "inter-agency or intra-agency" records not otherwise available "by law to a party other than an agency in litigation with the agency" (Exemption 5, 5 U.S.C. § 522(b)(5));

- concerning "procedures for law enforcement investigations or prosecutions…if such disclosure could reasonably be expected to risk circumvention of the law." (Exemption 7E, 5 U.S.C. § 552(b)(7)(E)).[1]

The Court addresses each exemption in turn.

Under Exemption 1, material that has been properly classified is exempt from disclosure. *Weinberger v. Catholic Action of Hawaii*, 454 U.S. 139, 144-45 (1981). For information to be properly classified pursuant to Exemption 1, it must meet the requirements of Executive Order 13,526, "Classified National Security Information," 75 Fed. Reg. 707 (Dec. 29, 2009):

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

*Id.* § 1.1, 75 Fed. Reg. at 707. The Executive Order lists three classification levels for national security information: top secret, secret, and confidential. *Id.* § 1.2, 75 Fed. Reg. at 707-08.

Under Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Fitzgibbon v. CIA*, 911 F.2d 755, 761-

---

[1] As to certain withheld FISC Orders, the government also invoked Exemptions 6 and 7C in its *Vaughn* index (Dkt. No. 77-2). Those exemptions concern records that would, if disclosed, constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 522(b)(6) and 522(b)(7)(C). EFF does not challenge the portions withheld on those grounds. (*See* Mtn. at n.2, Dkt. No. 77.) Because the Court finds that the documents are properly withheld under Exemptions 1, 3 and 7(E), this decision does not reach the propriety of the government's withholding under Exemptions 6 and 7C.
   Although not listed in its *Vaughn* index with respect to the narrowed set of documents at issue in the motion, DOJ's brief indicates that it is also withholding documents under Exemption 7(A), interference with an ongoing national security investigation. 5 U.S.C. § 522(b)(7)(A); *see* Motion at p. 2:13-14, 23:18-24:11.). Because the Court finds the other exemptions support withholding and this exemption was not invoked particularly as to the documents now at issue, the Court need not reach the merits of withholding pursuant to Exemption 7(A).

62 (D.C. Cir. 1990). Congress included Exemption 3 to recognize the existence of collateral statutes that limit the disclosure of information held by the government, and to incorporate such statutes within FOIA's exemptions. *See Balridge v. Shapiro*, 455 U.S. 345, 352-53 (1982); *Essential Info., Inc. v. U.S. Info. Agency*, 134 F.3d 1165, 1166 (D.C. Cir. 1998). Here, DOJ relies on two other statutes to support withholding: (1) the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i), which protects intelligence sources and methods from unauthorized disclosure; and (2) Section 6 of the National Security Agency Act of 1959, *codified at* 50 U.S.C. § 3605, which provides that "[n]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof…."

Exemption 5 shields from disclosure "those documents, and only those documents [that are] normally privileged in the civil discovery context," such as under the deliberative process privilege, attorney-client privilege, or attorney work-product privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) ("*Sears*"); *see also Carter v. Dep't of Commerce*, 307 F.3d 1084, 1088 (9th Cir. 2002). Under Exemption 5, the deliberative process privilege extends to those documents that are both "predecisional" and "deliberative." *See Carter*, 307 F.3d at 1089. Documents covered by Exemption 5 include those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150. Agencies may invoke the deliberative process privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See Sears*, 421 U.S. at 150-54.

Exemption 7(E) protects from disclosure techniques and procedures used to prevent and protect against crimes as well as techniques and procedures used to investigate crimes after they have been committed. *See, e.g., PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns of violations, investigative techniques, and

5

sources of information available to investigators were protected by Exemption 7(E)).  To determine if Exemption 7(E) applies, the Court must determine whether the records were "compiled for law enforcement purposes" within the meaning of FOIA.  *Rosenfeld v. United States Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995).  The Ninth Circuit accords special deference to law enforcement agencies in an Exemption 7 threshold determination.  *Binion v. Dep't of Justice*, 695 F.2d 1189, 1194 (9th Cir. 1983).  Thus, an agency with a clear law enforcement mandate need only establish a "rational nexus" between its law enforcement duties and the document for which Exemption 7 is claimed.  *Id.* at 1193-1194; *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979); *MacPherson v. IRS*, 803 F.2d 479, 482 (9th Cir. 1986) (citing *Binion*, 695 F.2d at 1194).

FOIA disputes involving the propriety of agency withholdings are commonly resolved on summary judgment.  *See*, *e.g.*, *Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1115 (9th Cir. 1988).  Summary judgment is proper when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In FOIA cases, a court reviews the government's decision to withhold records *de novo*, and the government bears the burden of proving records have been properly withheld.  5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755.  Even when the exemptions invoked raise national security concerns, the court continues to have an "independent responsibility" to conduct a thorough *de novo* evaluation of the government's withholdings.  *Goldberg v. Dep't of State*, 818 F.2d 71, 76-77 (D.C. Cir. 1987) (noting Congress amended FOIA to clarify its "intent that courts act as an independent check on challenged classification decisions").  The government bears the burden of demonstrating to a reviewing court that withheld information is "clearly exempt."  *Birch v. U.S. Postal Svc.,* 803 F.2d 1206, 1209 (D.C. Cir. 1986) (citing *Vaughn v. Rosen,* 484 F.2d 820, 823 (D.C. Cir. 1973)).  To satisfy that burden, the government "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

Bearing these principles in mind, the Court turns to the responsive information withheld by DOJ and whether DOJ has established that the information may be withheld under the FOIA exemptions asserted.

**II.    DISCUSSION**

    **A.    Withholding In Full of FISC Opinions and Orders**

DOJ has withheld certain FISC Orders and Opinions in full pursuant to Exemptions 1 and 3. (*Vaughn* Index, Documents 14A, 86J, 89D, 89K, 89S). With respect to a subset of these (Documents 89D, 89K, and 89S), DOJ also asserts Exemption 7(E).

The Court finds DOJ's showing, and the Court's review of the documents themselves, supports withholding under these exemptions. The FISC orders are properly withheld to protect intelligence sources and methods used by the government to gather intelligence data. The orders discuss specific techniques authorized by the FISC, the details of the underlying investigations, and details concerning how the government operationally and technically implements the FISC-authorized techniques, which the government continues to employ. Disclosure of the documents would reveal intelligence activities or methods described in the FISC orders could allow targets of national security investigations to divine what information was collected when, as well as gaps in surveillance, thus providing a roadmap for evading surveillance. As set forth in the DOJ's evidence, the withheld information, in combination with already-public information, would allow targets of government investigations to evade surveillance, thereby jeopardizing national security. Moreover, based upon the Court's review, the documents must be withheld in full and contain no reasonably segregable information. Consequently, the documents are properly exempted from disclosure under Exemptions 1, 3 and 7(E).

    **B.    Withholding of Names of Telecommunication Service Providers Participating in the Call Record Collection Program**

EFF withdrew its challenges as to most of the information withheld in those documents DOJ released in part. However, EFF continues to seek the identity of those telecommunications service providers who were ordered to produce their business records as part of the telephone records collection program.

1 DOJ offers evidence that disclosing which telecommunications companies assisted with NSA
2 intelligence activities could lead to serious national security problems, since it could reveal which
3 channels of communication may or may not be secure and thereby provide a roadmap for avoiding
4 government surveillance for those who might plot activity such as terrorist attacks. *See Halkin v.*
5 *Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978) (rejecting argument "that admission or denial of the fact of
6 acquisition of [certain] communications…would not reveal which circuits NSA has targeted" as
7 "naïve").

8     EFF's argument for disclosure does not question whether the information about the particular
9 identities would implicate national security and investigation methods exemptions, but instead
10 contends that this information has lost its exempt character because the providers' names have been
11 officially acknowledged, and any exemption for the information thereby waived. *See Fitzgibbon v.*
12 *CIA,* 911 F.2d 755, 765 (D.C. Cir. 1990). More particularly, EFF argues that two government
13 officials—Geoffrey Stone and Raj De—have publicly confirmed the participation of three
14 telecommunications companies in the NSA's call records program. As such, this "official
15 acknowledgement" overcomes whatever otherwise valid exemption the government might assert.

16     The standard for official disclosure requires plaintiff to identify "an intentional, public
17 disclosure made by or at the request of a government officer acting in an authorized capacity by the
18 agency in control of the information at issue," that is "'as specific as the information previously
19 released.'" *See Pickard v. DOJ*, 653 F.3d 782, 787, 786 (9th Cir. 2011) (quoting, in part, *Fitzgibbon*,
20 911 F.2d at 765). "[A]lthough an agency bears the burden of proving that a FOIA exemption applies
21 to a given document, a plaintiff asserting that information has been previously disclosed bears the
22 initial burden of pointing to specific information in the public domain that duplicates that being
23 withheld." *Public Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993) (citing *Afshar v.*
24 *Department of State,* 702 F.2d 1125, 1130 (D.C. Cir. 1983)). The test is a stringent one and presents
25 a "high hurdle for a FOIA plaintiff...[as the] Government's vital interest in information relating to
26 national security and foreign affairs dictates that it must be.'" *Public Citizen,* 11 F.3d at 203.

27     The Court finds that Plaintiff has not met its burden. Neither of the two supposed "official
28 acknowledgements" waived the exemptions asserted by DOJ. The Court analyzes each:

1 EFF first contends that statements by Geoffrey Stone, a former member of the federal
2 government's Review Group on Intelligence and Communications Technologies, disclosed the
3 telecommunications providers' identities. Leaving aside the issue of whether Stone's position as a
4 member of that Review Group did or did not make him a "government official," the timing of the
5 statements shows that they were not made while he was acting in an authorized government capacity.
6 The statements at issue were made in an opinion piece in late March 2014, in which he stated that
7 "telephone companies like Sprint, Verizon, and AT&T are required to turn over [records] to the
8 NSA." Stone's membership on the Review Group ended in January 2014. Thus, he could not speak
9 for any agency of the United States at that point. *Hudson River Sloop Clearwater, Inc. v. Dep't of
10 Navy*, 891 F.2d 414, 421-22 (2d Cir. 1989) ("Admiral Carroll's statements cannot effect an official
11 disclosure of information since he is no longer an active naval officer…Officials no longer serving
12 with an executive branch department cannot continue to disclose official agency policy[.]"); *Afshar*,
13 702 F.2d at 1133 (books written by former agency official did not constitute official disclosures);
14 *Phillippi v. CIA,* 655 F.2d 1325, 1331 (D.C. Cir. 1981) (statements by former CIA director that had
15 been pre-cleared by agency for public disclosure do not constitute agency disclosure).

16 Moreover, his statement was that companies "*like* Sprint, Verizon, and AT&T" are part of the
17 program, indicating that the list was hypothetical or, at least, non-exclusive. The ambiguity of the
18 statement is not a sufficient basis to require that the DOJ specifically identify all telecommunications
19 service providers associated with the program. "[E]ven if a fact has been the subject of media
20 speculation, its official acknowledgment could damage national security." *Public Citizen*, 11 F.3d at
21 201 (citing *Afshar,* 702 F.2d at 1130).

22 Next, EFF argues that the statements of Raj De, General Counsel of the NSA, confirmed that
23 "three different providers" participated in the call record collection program. The Court does not
24 agree. De's statement was a response to a question presented to him on a discussion panel about the
25 need for a program that aggregated data from telecommunications providers in advance, rather than
26 the government seeking information from individual providers on a "one-off basis." (Second
27 Rumold Declaration, Exh. C [*Counterterrorism, National Security, and the Rule of Law*, Aspen
28 Security Forum Panel (July 18, 2013)] at 12.) De's reference to "three different providers" cannot be

9

analyzed in a vacuum.  The remark was preceded by his statement that he was "using a hypothetical example" to illustrate his answer.  (*Id.* at 13.)  De went on to say that, if an investigation were done in the traditional way, under the hypothetical presented (tracking down the phone contacts made by a particular phone number tied to a terrorist organization), the investigation would require searches by "multiple providers" followed by analytics to aggregate the data from "three different providers."  (*Id.*)  De did not release or acknowledge officially any classified information in the context of discussing this hypothetical example.  Further, even if the statement could be considered an acknowledgement that "three different providers" participated in the program, that information is not identical to what EFF seeks here: the specific identities of all telecommunications service providers that participated in the program.  The public availability of "similar" or "overlapping" information does not suffice to negate the government's classification; "instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure." *Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citing *Public Citizen*, 11 F.3d at 201, 203; *Military Audit Project v. Casey*, 656 F.2d 724, 752-53 (D.C.Cir. 1981)); *accord Hudson River*, 891 F.2d at 421.

The inherent risks to national security and government investigations of identifying the specific telecommunications carriers is not mitigated by the government's declassification of general information about the call record collection program.  As the Ninth Circuit has recognized, official confirmation of the existence of or general information about an intelligence program does not eliminate the dangers to national security of compelling disclosure of the program's details.  *Mohamed v. Jeppesen*, 614 F.3d 1070, 1086, 1090 (9th Cir. 2010) (official acknowledgment of existence of CIA extraordinary rendition program did not preclude details of program remaining state secrets if details' disclosure would risk harm to national security); *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007) (concluding that even though the government had publicly acknowledged the existence of terrorist surveillance program, disclosing whether the plaintiff had been surveilled would compromise national security).

**C.    Withholding Formal OLC Advice Memorandum**

Finally, EFF challenges the withholding of the Census Memorandum, a legal advice memorandum from OLC to the Department of Commerce.  DOJ has withheld the OLC

10

1 memorandum pursuant to Exemption 5, asserting that it was prepared by OLC for the purpose of
2 providing confidential legal advice to the Department of Commerce regarding the interaction
3 between disclosure provisions in the Patriot Act, as amended, and prohibitions on disclosure in the
4 Census Act, 13 U.S.C. §§ 8, 9, 214, and therefore subject to the deliberative process privilege.  DOJ
5 submits evidence that the Census Memorandum was prepared to aid the Department of Commerce in
6 determining its legal obligations with respect to disclosure of census information to federal law
7 enforcement of national security officers.

8     EFF argues that, even if the deliberative process privilege might have shielded the Census
9 Memorandum from disclosure when it was initially created, it can no longer be withheld because it
10 has become a controlling statement of the executive branch's legal position and, specifically, has
11 been adopted as the opinion of the executive branch in proceedings before the FISC.  *Sears*, 421 U.S.
12 at 152161.  The Court agrees.

13     "[T]he public is vitally concerned with the reasons…for an agency policy actually adopted."
14 *Sears*, 421 U.S. at 152.  "These reasons, if expressed within the agency, constitute the 'working law'
15 of the agency" and cannot be withheld from disclosure under Exemption 5.  *Sears*, 421 U.S. at 152-
16 53.  Thus, an agency is "required to disclose 'orders and interpretations which it actually applies to
17 cases before it,' in order to prevent the development of 'secret law.'"  *Coastal States Gas Corp. v.*
18 *Dep't of Energy*, 617 F.2d 854, 867-68 (D.C. Cir. 1980) (citing *Sterling Drug, Inc. v. FTC*, 146 U.S.
19 App. D.C. 237, 247 (1971)); *see also Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S.*
20 *Dep't of Justice*, 697 F.3d 184, 208 (2d Cir. 2012) (finding documents otherwise subject to
21 deliberative process and attorney-client privileges required to be disclosed because OLC's draft legal
22 opinion was incorporated into client-agency's guidance documents).

23     The Second Circuit's recent decision in *New York Times Co. v. U.S. Dep't of Justice*, 13-422
24 L, __F.3d__, 2014 WL 2838861 (2d Cir. June 23, 2014) is instructive.  In the *New York Times* case,
25 the court held that an OLC advice memorandum provided to the Department of Defense ("DOD")
26 lost its privileged character because numerous DOD and DOJ officials referred to the legal analysis
27 in public statements, and an officially released DOJ White Paper incorporated the details of the
28 OLC's analysis in a manner that "virtually paralleled" the OLC advice memorandum.  *Id*. at *12, 13-

11

1  16; *see also Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 357 (2d Cir. 2005) ("repeated

2  references" to OLC memorandum by the Attorney General and high-ranking DOJ officials

3  "demonstrate[d] that the Department regarded the [m]emorandum as the exclusive statement of, and

4  justification for, its new policy...."). Thus, DOJ could no longer withhold the OLC advice

5  memorandum under FOIA Exemption 5.

6  Here, the Court's review of the evidence, both in the public record and *in camera*, establishes

7  that the Census Memorandum was cited as legal authority and adopted as the working law of DOJ.

8  The declaration of Paul P. Colborn, Special Counsel in the OLC, stated that the OLC memorandum

9  was "provided to the [FISC] in connection with an application submitted by the Department [of

10 Justice] in a matter that was concluded." (Colborn Decl., ¶ 17.)[2] The Court's *in camera* review

11 confirms that DOJ cited the Census Memorandum in an application to the FISC, referencing it as

12 DOJ's legal position on the census-related issues therein, and contrasting it with other legal issues

13 argued in the application. DOJ offered the Census Memorandum as a statement of the law to bolster

14 its legal arguments concerning matters unrelated to the subject of the Census Memorandum itself.

15 Thus, DOJ cited the Census Memorandum in the context of carrying out its duties, and in connection

16 with matters completely unrelated to the OLC's provision of advice to the Department of Commerce.

17 Moreover, DOJ has indicated that it will continue to rely on the Census Memorandum in other

18 contexts as necessary.

19 DOJ argues that the D.C. Circuit recently determined that OLC memoranda are exempt from

20 disclosure under Exemption 5 and do not qualify as final opinions or secret law, citing *Elec. Frontier*

21 *Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 9 (D.C. Cir. 2014) ("[b]ecause OLC cannot speak

22 authoritatively on the FBI's policy, the OLC Opinion differs from memoranda we have found to

23 constitute the "working law" of an agency"). Such a blanket argument ignores that the proper

24 determination of whether a document can be withheld under "the deliberative process privilege

25 is…dependent on the individual document and the role it plays in the administrative process."

26 *Coastal States v. Dep't of Energy,* 617 F.2d 854, 867 (D.C. Cir. 1980); *see also Lardner v. Dep't of*

27

28  [2] In addition to its submission to the FISC, the Census Memorandum was shared, in confidence, with the U.S. Senate Select Committee on Intelligence. (Colborn Dec. at ¶17, Exh. D.)

*Justice*, 638 F. Supp. 2d 14, 22 (D.D.C. 2009) (noting that "the fact that the FOIA requests in the two actions, as well as the materials responsive to those requests, differ considerably counsels against application of collateral estoppel"). Regardless of whether OLC attorneys have policymaking authority within the Department of Commerce (the agency to whom the advice was given) or DOJ (the agency that used the advice), it was the DOJ that cited the document as a statement of applicable law and policy in an unrelated proceeding.

### III.  CONCLUSION

Based upon the foregoing, the DOJ's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** and EFF's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**

The parties are directed to submit a proposed form of judgment, approved as to form by both parties, forthwith.

This terminates Dkt. Nos. 77 and 79.

**IT IS SO ORDERED.**

Date: August 11, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**